Case 2:23-cv-00065-GMN-DJA Document 14 Filed 05/12/23 Page 1 of 2

Electronically Filed
5/19/2023 1:31 AM
Steven D. Grierson
CLERK OF THE COURT

Allanna Warren
9620 S. Las Vegas Blvd., Suite E461
Las Vegas, NV 89123
D1A2N3N4@PROTON.ME

CASE NO: A-23-870956-C
Department 9

DISTRICT COURT

CLARK COUNTY, NEVADA

| | |
|---|---|
| ALLANNA WARREN,<br>Plaintiff,<br>vs.<br>MICHAEL SILVA,<br>Defendant | Case No.:<br>Dept. No.:<br>COMPLAINT JURY TRIAL DEMANDED |

Plaintiff, ALLANNA WARREN, hereby submits her COMPLAINT JURY TRIAL DEMANDED. Plaintiff complains against Michael Silva as follows.

## I.

## STATEMENT OF THE CASE

This case is linked and related to two police misconduct cases currently in litigation. The first case is against the City of Sparks et. al. and The county of Washoe Jail et. al in the Second Judicial District case number CV2201525. The second case is against Las Vegas Metropolitan Police Departments (LAS VEGAS METROPOLITAN POLICE DEPARTMENT) in the US District Court with case number 2:23-cv-00065-GMN-DJA. After an unlawful detainment on June 14, 2020 and an unlawful arrest on June 20, 2020 by Sparks Police officers Ginger Miller, Ryan Patterson and Daniel Jones, PLAINTIFF and her elderly mother were harassed, followed, stalked, illegally surveilled, had their communications devices illegally monitored and would go into any business, school, store, retail business, apartment, doctor's offices, townhome,

employers (Anthem Blue Cross and Blue Shield (BCBS), AppleOne and HILTON GRAND VACATIONS), box store like Walmart, 99 Cent Only Stores or Dollar Tree, private home or any place PLAINTIFF and her mother visited even once and slander, libel and character assassinate them both. Law enforcement would illegally stalk and follow MS. WARREN to continue the harassment, slander, libel and character assassination to landlords, neighbors, employees, co-workers, supervisors, doctor's office staff, doctors, physician assistants etc. in Southern Nevada as well. Ms. WARREN had no criminal record at the time of her arrest and should have been released on her own recognizance. Regardless of this, Ms. WARREN languished in WASHOE COUNTY JAIL for a week, from June 20, 2020 to June 26, 2020. During this *entire* time, she was placed in solitary confinement for no reason. By "solitary confinement," PLAINTIFF means that she was in a small, separate place in the basement of the WASHOE COUNTY JAIL, completely alone, and that this place only had room for one person. Ms. WARREN languished in this small space for six solid days. She was given no reason for her segregation from the main jail population. The charges against Ms. WARREN were entirely dropped on September 15, 2021.

Washoe County had a motive for disliking Ms. WARREN. From August 5, 2019 to September 24, 2019, WARREN had actually worked for Washoe County in their Alternative Sentencing Department. In that capacity, she worked in a makeshift crime lab near to the county courthouse. There, she was expected to analyze evidence chemically despite having no formal scientific training. Ms. WARREN'S hiring for the lab was rushed and did not meet typical employment protocols. In the lab, which was not properly licensed, Ms. WARREN regularly worked with caustic chemicals but was given no personal protective equipment (PPE) to perform her work. The lab had no eye wash station, no labels for chemicals, and no hazardous waste

disposal. Without hazardous waste disposal, corrosive chemicals were being left in the trash where they could leach into the water system outside. On September 23, 2019, Ms. WARREN went to the hospital with contact dermatitis acquired as a direct result of her unsafe employment. The next day, she complained to the Occupational Safety and Health Administration (OSHA) about the conditions in the lab and gave her supervisor a doctor's note.

Ms. WARREN was fired by Washoe County at around 6 PM on Tuesday, September 24, 2019. When Nevada OSHA investigated Washoe County, County was fined upwards of $4,000 for facilities violations as a direct result of Ms. WARREN's complaint regarding unsafe working conditions. Prior to working for the Alternative Sentencing Department of Washoe County, Ms. WARREN worked as an administrative assistant at China Spring Youth Camp in Douglas County. In this capacity, Ms. WARREN observed that the camp was doctoring their accounting files and was prescribing psychotropic medication to children under 18 in exchange for Medicaid subsidies. Rather than go along with these financial malfeasance schemes as her supervisor expected her to, Ms. WARREN reported what she saw to the state and was subsequently fired. Ms. WARREN had worked at the camp for eleven months and one week and was fired right before her probationary period was over.

A Northern Nevada judge, named Pete Sfrazza, had a son, Giovanni Sfrazza, who was incarcerated at the camp. This judge was best friends with another judge, Judge Tod Young, who oversaw the camp. When Ms. WARREN was hired by Washoe County, Pete Sfrazza was overseeing the Alternative Sentencing Department. The same judge whose son had once been incarcerated at China Spring at the time when Ms. WARREN brought her concerns about the juvenile facility to state regulators. In June of 2021, China Spring Youth Camp temporarily

closed the half of its camp dedicated to the care of boys due to, among other problems, "financial instability."

The police misconduct problems for Ms. WARREN did not stop in Washoe County or Northern Nevada. In November 2021, during a training course for her new job, working for AppleOne Temporary Agency and placed at Anthem BCBS in Las Vegas, a co-worker named Glenn Taylor teased Ms. WARREN by showing her a copy of her booking photo that had been taken when she was arrested. Ms. WARREN suffers from alopecia. When she was booked by the police in Sparks on June 20, 2020, OFFICER MILLER removed Ms. WARREN'S hat before her booking photo was taken, so Ms. WARREN appears bald in the photo. Somehow, Ms. WARREN's co-workers, Glenn Taylor, Gennifer Ross, Tyranisha Watson, Rachel Post and others, got their hands on this photo, and stated that he had actually gotten the photo from their training instructor, Shelia Williams of Anthem Blue Cross and Blue Shield. Thereupon, Ms. WARREN's classmates in the training program teased her with photos of bald people and Shelia Williams harassed her also. The booking photo cannot be found online. Ms. WARREN called the Washoe County Sherriff's Office, who stated to her that such a photo is only a public record when an individual is incarcerated, but that after incarceration is over, the photo is removed from their website. The Washoe County Sherriff's office additionally stated that the only way the picture could be released at this point would be either at Ms. WARREN's own request for it, or, in response to a request from someone inside SPARKS POLICE DEPARTMENT. Therefore, on information and belief, SPARKS POLICE DEPARTMENT impermissibly released Ms. WARREN'S booking photo online or to her then current employer in Las Vegas in an effort to harass, embarrass, stalk, and belittle her. After PLAINTIFF complained about the arrest photo to her employer, she was placed on administrative leave and ultimately fired by Apple One

Case 2:23-cv-01065-GMN-DJA Document 53 Filed 05/12/23 Page 5 of 109

Temporary agency. It is also possible that LAS VEGAS METROPOLITAN POLICE DEPARTMENT additionally had a hand in the booking photo getting released to Ms. WARREN'S new employer in Las Vegas.

Ms. WARREN has been the victim of a wide variety of suspicious behavior at the hands of LAS VEGAS METROPOLITAN POLICE DEPARTMENT since having moved from Reno to Las Vegas in July 2021. Ms. WARREN regularly finds herself followed by both uniformed and plain clothes LAS VEGAS METROPOLITAN POLICE DEPARTMENT officers when she leaves her apartment building by car, taxi, Uber, Lyft or rental car. She cannot take videos of this behavior when she is alone in her car for fear of being pulled over for using a cell phone while driving. Ms. WARREN'S mother is elderly and disabled and also cannot take videos of this behavior on the rare occasions when she is in the car alongside her daughter. Prior to her ordeal, Ms. WARREN suffered from anxiety, depression, and alopecia. Now, subsequent to her ordeal at the hands of SPARKS POLICE DEPARTMENT and LAS VEGAS METROPOLITAN POLICE DEPARTMENT, PLAINTIFF additionally suffers from PTSD and paranoia. Following her confinement, and likely due to stress and the filthy conditions inside the WASHOE COUNTY JAIL, Ms. WARREN developed hidradenitis suppurativa, a painful skin condition that causes small, painful lumps to form under her skin. Following her jailing, MS. WARREN developed these sores and pustules all over her body, for she sought the help of a dermatologist.

After fleeing Northern Nevada to try to escape the relentless retribution from law enforcement there, PLAINTIFF and her mother moved to Las Vegas Nevada in July 2021. MS. WARREN'S family's first lease in Las Vegas was with BDJ Realty. They moved into an apartment located at 5821 Smoke Ranch Road, Unit C Las Vegas NV 89108. The 12 month lease started on November 7, 2021 and ended November 30, 2022. As stated above, MS.

WARREN had been acquitted of all the false “stalking’ charges brought against her from Sparks PD and MS. WARREN had no criminal record. MS. WARREN and her mother had to undergo a rental background check, which both passed with flying colors. This rental background check included a criminal check and credit check. There were issues almost immediately upon moving into the unit. PLAINTIFF first encountered Michael Silva when she went to throw away her trash at the complex dumpster located outside his residence located at 5817 Smoke Ranch Road, Unit C, Las Vegas, NV 89108. As PLAINTIFF threw away her trash she saw Mr. Silva staring and glaring at her. She never spoke to Mr. Silva nor had ever seen him before in her life. The next encounter PLAINTIFF had with Mr. Silva was when he let his large black pit bull off its leash. He allowed the dog to run around the complex without his supervision, which is a crime and violates the leash law for Las Vegas. One day as MS. WARREN was outside her house with her cat, she saw Mr. Silva letting his unleashed dog run up to the wire fence and growl at her and her cat. It alarmed the PLAINTIFF, who called the animal control. Mr. Silva must have been told that MS. WARREN called animal control to report his habit of letting his dog off the leash and harass her while she enjoyed her home. Because the next encounter PLAINTIFF had with Mr. Silva ended in a false call to the Las Vegas Metropolitan Police Department (LVMPD). On Fevurary 7, 2022 MS. WARREN was throwing away her trash and Mr. Silva must have been stalking and watching her as every time she happen to throw away her trash he would appear. Mr. Silva started shouting that PLAINTIFF was insane. PLAINTIFF knew Mr. Silva was speaking to her as no one else was around. As PLAINTIFF was heading back to her house after throwing her trash away, she saw Mr. Silva head inside his home. When MS. WARREN was in front of her home and let her cat out, as usual, she sees Mr. Silva with the large black dog again. MS. WARREN had ear pods in her ears to avoid any further harassment from Mr. Silva.

Case 2:23-cv-01065-MMD-NJK Document 15-4 Filed 05/12/23 Page 7 of 109

However, MS. WARREN started laughing at a podcast she was listening to. Then a thin woman joined Mr. Silva with the unleashed dog. The next thing MS. WARREN knew she could hear Mr. Silva screaming "call the cops she's harassing me with her laughing." PLAINTIFF could hear this clearly over having her EarPods in her ears. Mr. Silva screamed that loudly. PLAINTIFF went inside her home. Soon after entering her home, she sees two male LVMPD officers knocking at her door. MS. WARREN was on the phone with her former attorney Robert S. Melcic at the time. She had no idea what the police were doing at her door. One officer leaves MS. WARREN'S house to knock on her neighbor's door. The neighbor was Laura Martinez. They tell Laura Martinez that they got a complaint about a black female walking by. Laura Martinez states that "this lady giggles and whistles." The officer says, "yup that's her." PLAINTIFF was puzzled that the officers knew PLAINTIFF whistled and giggled. This officer said he was there for a complaint about a black female walking by not whistling or giggling. One officers comes back to PLAINTIFF's door to continue knocking. They knocked over PLAINTIFF belongints in the front of her home and continue to walk over her belongings. Both officers did this and looked down and saw that they vandalized PLAINTIFF'S property but did not care. They spend some time gossiping with Laura Martinez about PLAINTIFF and finally left the premises. The next day, February 8, 2022, Michael Silva called the police on me for a false call again. On this day MS. WARREN did not throw her trash away and had no idea Mr. Silva was stalking and watching her again from an unknown location as PLAINTIFF did not see him. PLAINTIFF outside tending to her garden and listening to music on her EarPods. She sang along with the music and whistled as well. Shortly after going inside her home, she sees two more male LVMPD officers at her door. This time they seemed agitated because they knocked hard on her door with a baton, one came and knocked hard on her front window, both officers

were yelling Las Vegas police open the door, then one continues to pound on PLAINTIFF'S front glass door continually with his baton. This officer stands in PLAINTIFF'S yard with his right hand on his gun. The officer keeps knocking on the front glass door with his baton. PLAINTIFF thought this office was going to break the door with the force he was slamming the baton against the glass front door with. The officers finally leave the premises. PLAINTIFF called the records department of the LVMPD and discovered that Mr. Silva was making the swatting calls on PLAINTIFF on both days. Mr. Silva actually said that the PLAINTIFF harassed him because she whistled, laughed and sang. PLAINTIFF reported this swatting by Mr. Silva to Mr. Melcic who advised her that if another LVMPD showed up again, he would press charges against Mr. Silva for making false police calls. MS. WARREN informed her landlord, Bo Jones, who inquired about the police showing up two days in a row at PLAINTIFF's apartment.

> Michael Silva is guilty of violating H.R.6003 — 115th Congress Anti-Swatting Act of 2018, which states **"**bill amends the Communications Act of 1934 to provide for enhanced penalties for the transmission of misleading or inaccurate caller identification information with the intent to trigger an emergency response by: (1) a law enforcement agency of the United States, a state, or a political subdivision of a state…" and NRS 207.161 TO 207.167 – EMERGENCY COMMUNICATIONS INTERFERENCE. Michael should be held accountable for making two

The harassment did not stop with Mr. Silva, as he stalked her, when he saw PLAINTIFF going to throw away her garage he would come out of his home and scream and yell that she was insane, crazy and nuts. Just as Laura Martinez was notified by Northern Nevada law enforcement

about PLAINTIFF's false arrest for stalking, Michael Silva was informed of the false narrative law enforcement has, that PLAINTIFF is mentally 'unstable". This narrative started with PLAINTIFF'S false arrest in Sparks in 2020 and continues on until today. It is not a joke that PLAINTIFF suffers from preexisting conditions which stress and anxiety worsen. So, when Mr. Silva called LVMPD to PLAINTIFF's house because she laughed, giggled, sang and whistled it made her conditions worse and severely exacerbated them as a result. LVMPD harassed the PLAINTIFF and exacerbated her medical conditions based on Michael Silva's 911 calls about PLAINTIFF laughing, singing and whistling. PLAINITFF has since checked the Las Vegas Penal code, and whistling, singing or giggling are not against the law. Whistling, giggling and singing are neither a felony nor a misdemeanor?

PLAINTIFF has preexisting conditions that stress and anxiety exacerbate. After the harassment, mental anguish and racism Michael Silva subjected PLAINTIFF to she had to see a doctor. Since PLAINTIFF moved to Las Vegas she has had issues trying to find suitable medical treatment because of the constant police involvement in MS. WARREN's civil matters. PLAINTIFF's first appointment with Hilton Grand Vacations located at 5701 W Charleston Blvd, Unit 100, Las Vegas, NV 89146 was on November 18, 2022. At this appointment MS. WARREN saw Physician's assistant Jesse Connors. In this appointment PLAINTIFF explained that law enforcement chased her and her mother out of Northern Nevada and that LAS VEGAS METROPOLITAN POLICE DEPARTMENT has picked up the harassment where Northern Nevada Law enforcement left off. PLAINTIFF explained that she has a history of depression, anxiety, asthma and other ailments that stress exacerbated. PLAINTFF asked Mr. Connors to obtain copies of her medical records from her medical facility in Reno Nevada. It was revealed later that Mr. Connors never sought to obtain copies of PLAINTIFF's medical records from her previous medical facility in Reno as she asked on 11/18/22. MS. WARREN asked Mr. Connors

for a referral for mental health as law enforcement's constant interference was affecting her negatively. Mr. Connors said that he would obtain medical records from PLAINITFF'S previous medical facility and would get her a mental health referral. Mr. Connors suggested that PLAINTIFF get an EKG, get a chest x ray and he would set up an appointment for a Pulmonary Function Test (PFT). Without an evaluation or ever treating PLAINTIFF, Mr. Connors prescribed MS. WARREN 10mg tablets of Escitalopram with two refills. Escitalopram is part of a Bi-Polar treatment. However, PLAINTIFF had not been diagnosed with bi-polar disorder by anyone. A major warning for this medication is that one should seek medical attention right away if you have symptoms of serotonin syndrome, such as: agitation, hallucinations, fever, sweating, shivering, fast heart rate, muscle stiffness, twitching, loss of coordination, nausea, vomiting, or diarrhea. MS. WARREN had never been on this medication and was not informed of any side effects of the medication before taking it per Mr. Connors instructions. MS. WARREN was not on any mental medication before encountering the treatment from BDJ Realty, Laura Martinez, Michael Silva, Hilton Grand Vacations, Dollar Tree, Cano Health, T-mobile, Southwest Airlines, Hilton, Apple One, Anthem Blue Cross and Blue Shiels, VIP Auto Services nor Walmart.

Mr. Connors told PLAINTIFF that the scheduling department would be contacting her shortly after her 11/18/22 visit. Immediately after the appointment with Mr. Connors, his medical assistant, Juliana Ramirez, took MS. WARREN to get her EKG test. While in the room Juliana instructed PLAINTIFF to undress above the waist, including removing her bra and shirt. PLAINTIFF complied with the instructions. The EKG was performed by Ms. Ramirez. After the testing, Juliana instructed PLAINTIFF to keep her bra off but put on her shirt because she was going to get her chest Xray. PLAINTIFF complied with these instructions as well. Juliana

led MS. WARREN to a chair outside a small room. A Hispanic male came out of the small room and asked PLAINTIFF her name. MS WARREN told the male her name and he led her inside the room. After the chest x ray, the male instructed PLAINTIFF to "get dressed" in the same room. The male could see the PLAINTIFF clearly and she inquired about the visibility of dressing in front of the male. The male told MS. WARREN that everyone gets dressed in the room with him in the room. Outside the small room, PLAINTIFF saw a bathroom right next to the room and wondered why the male would not have instructed her to change inside the bathroom right next door.

MS. WARREN's mother is over 70 years old so having a medical provider in close proximity is paramount to her health. PLAINTIFF, despite her apprehensions, recommended Hilton Grand Vacations to her mother. On 11/29/2022 PLAINTIFF's mother went to an appointment with Mr. Connors at the Hilton Grand Vacations located at 5701 W Charleston Blvd, Unit 100, Las Vegas, NV 89146. Mr. Connors told PLAINTIFF's mother that he would be getting her medical records from her medical facility in Carson City just like he told the PLAINTIFF. PLAINTIFF's mother is not sure if Mr. Connors actually sought to obtain those records. Mr. Connors also advised MS. WARREN's mother to get a PFT, get a chest x ray and be seen by a Ear Nose and Throat (ENT) specialist. Immediately after the appointment, PLAINTIFF went to the waiting room and PLAINTIFF's mother went to get her chest x ray. Upon exiting Hilton Grand Vacations PLAINTIFF's mother told her that she experienced the same "undressing" incident that PLAINTIFF had with the male who conducts the x rays. PLAINTIFF could see her mother was uncomfortable and this bothered her immensely.

It has to be noted that before the 11/29/22 appointment at Cano Health, which was scheduled at 10:30 am, PLAINTIFF and her mother were stalked and followed by LAS VEGAS

Case 2:23-cv-01065-GMN-DJA Document 15-34 Filed 05/12/23 Page 12 of 21

METROPOLITAN POLICE DEPARTMENT officers. They were pulled over by a black male officer who was the driver of the police SUV and had a white female officer in the passenger seat. PLAINTIFF knows they were being stalked and followed because PLAINTIFF and her mother had just moved into a new place, less than a week before being pulled over by LAS VEGAS METROPOLITAN POLICE DEPARTMENT, and no one had their new address. There would have been no way LAS VEGAS METROPOLITAN POLICE DEPARTMENT had their new address, without illegally stalking, following and monitoring the PLAINTIFF and her mother as their new place is in another city/jurisdiction and far away from their previous home where LAS VEGAS METROPOLITAN POLICE DEPARTMENT were falsely called multiple times by PLAINTIFF'S neighbors. In the previously mentioned police misconduct cases involving LAS VEGAS METROPOLITAN POLICE DEPARTMENT, neighbors Laura Martinez and Michael Silva are named, with video evidence, as being the culprits who were prompted by LAS VEGAS METROPOLITAN POLICE DEPARTMENT to call them so PLAINTIFF could be falsely arrested again or evicted.

PLAINTIFF's mother, had her PFT scheduled for 12/8/22. While in the waiting room the PFT specialist, his name is Uday, approached MS. WARREN's mother and told her that he does not have the mouth pieces, which are mandatory to conduct the test, and he has no idea when he would get them and that she needs to reschedule her PFT somewhere else as he was going out of town on a vacation for two months. There was no forewarning or a courtesy call to inform PLAINTIFF'S mother of this issue.

PLAINTIFF's mother had her Ear Nose and Throat (ENT) appointment on 12/12/22 with Dr. Kim of the UNLV medical center located at 5320 S. Rainbow, Suite 250 Las Vegas, NV. While in her appointment PLAINTIFF and her mother complained to Dr. Kim about their

Case 2:23-cv-01065-MMD-NJK Document 15-4 Filed 05/12/23 Page 13 of 21

treatment by Cano Health. They both explained what happened with "undressing" in front of a male x ray tech, Uday having no equipment to conduct PFTs for patients with breathing issues, and just the entire medical negligence of Cano Health. Dr. Kim thanked both ladies for their honesty and informed them that he would take their concerns seriously and inform the proper authorities. Dr. Kim told PLAINTIFF and her mother that he did not want to send any of his patient's to this medical facility after hearing their horror stories. PLAINTIFF and her mother noticed a LAS VEGAS METROPOLITAN POLICE DEPARTMENT SUV parked outside the medical facility during the mother's appointment. They made a comment to Dr. Kim and noticed that the LAS VEGAS METROPOLITAN POLICE DEPARTMENT SUV did not leave until right before the appointment was over. Again, this proves the constant stalking, following, surveilling, monitoring etc. by law enforcement illegally.

During the month of November and December PLAINTIFF heard from the Cano Health's scheduling department. They informed MS. WARREN that Axis psychiatry would be scheduling her an appointment. MS. WARREN heard from Axis and they scheduled her for an appointment on 12/26/22. Later in December when PLAINTIFF called Axis to confirm the appointment the receptionist told PLAINTIFF that their building was closed due to the observance of Christmas on 12/26/22. When PLAINTIFF inquired as to why she was scheduled for an appointment on a day they knew they were closed PLAINTIFF received no response. Then PLAINTIFF was informed that Axis would not have an appointment open for several months.

On 12/18/22 PLAINTIFF had a follow up appointment with Mr. Connors. PLAINTIFF informed Mr. Connors that Axis psychiatry scheduled her on a day they were closed and she wanted another referral. At the 12/18/22 appointment PLAINTIFF's blood pressure was

extremely high as she had been chased around Cano Health parking lot by strangers and had several LAS VEGAS METROPOLITAN POLICE DEPARTMENT squad cars tailing her from her new home to the appointment. PLAINTIFF was scared and her blood pressure exhibited this. Mr. Connors had PLAINTIFF's blood pressure checked several times and it was elevated the entire time. Having law enforcement involving themselves in every aspect of PLAINTIFF's life was affecting her health.

PLAINTIFF waited to hear from Cano Health's scheduling department to schedule another psych appointment. PLAINTIFF ended up calling Hilton Grand Vacations as she did not hear from the scheduling department as expected. PLAINTIFF was informed that she would have to call around Las Vegas for a psych doctor as their scheduling department would not help her. PLAINTIFF informed the scheduling department that it is their job to find a doctor for the PLAINTIFF. PLAINTIFF was told that "normally" their department does call around and find doctors for patients but in PLAINTIFF's case they would not help her.

Because law enforcement went to PLAINFIFF's job at Hilton Grand Vacations (HGV) and slandered her there, she was on an ongoing ADA medical leave of absence since 11/15/22. She was trying to get Short Term Disability from Lincoln Financial Group (LFG). While trying to get all the medical paperwork for LFG to make a decision, MS. WARREN was run around by Mr. Connors office and LFG. A decision on PLAINTIFF'S case was intentionally delayed from both sides. After all the stress of PLAINTIFF'S job, her mother's health, trying to get mental help, no income from any source, law enforcement constantly bothering her, and no one helping the PLAINTIFF, all this stress was taking a toll on her health.

One of the reasons LFG denied PLAINTIFF's short term disability was because their nurse stated that PLAINTIFF was not seen from a licensed doctor or psychiatric doctor to

Case 3:23-00601065-MN-DJA Document 1534 Filed 05/12/2023 Page 15 of 2109

correctly diagnose the PLAINTIFF, no evaluation was performed before giving PLAINTIFF Escitalopram and no follow up was performed by Hilton Grand Vacations Ito see if the medication was correct and helped the PLAINTIFF.   Mr. Connors did not have the medical license to prescribe the PLAINTIFF any psych medication, especially with a medication like Escitalopram.

During December and January 2023 PLAINTIFF never saw Mr. Connors again until January 31, 2023.  PLAINTIFF was scheduled for a Zoom appointment.  During this appointment, Mr. Connors was clearly upset, and his facial expressions and treatment of PLAINTIFF exhibited this disdain.  Mr. Connors stated on a recorded Zoom call that PLAINTIFF needs a doctor and Cano Health doesn't have a doctor therefore Cano Health can not see or treat the PLAINTIFF anymore.

When PLAINTIFF went out on her ADA leave from Hilton Grand Vacations she was asked to provide her former employer with a Team Member Accident Report.  In this report PLAINTIFF explained that along with the stress and discrimination she faced at work, Michael Silva and Laura Martinez's harassment and constant false police calls while she worked from home led to her having to go out sick on the continuous ADA leave.   On 11/25/22 PLAINITFF went to Hilton Grand Vacation's worker's comp doctor at the Polaris Concentra medical facility. In PLAINTIFF'S Injury care Patient Information form MS. WARREN explained, "I have preexisting medical conditions which are exacerbated by stress.  Because LVMPD and Sparks PD are stalking me and retaliating against me for suing them because of a false arrest in 2020, they have used my neighbors, coworkers, supervisors, landlords and strangers to continue to harass me."    The doctor recommended that PLAINTIFF be treated with counseling to help her. Hilton Grand Vacations denied PLAINTIFF'S claims so she is without treatment to this day.

## II.

## JURISDICTION AND VENUE

1. "A court of this state may exercise jurisdiction over a party to a civil action on any basis not inconsistent with the Constitution of this state or the Constitution of the United States." NRS 14.065.
2. Jurisdiction in this Court is proper because this is a complaint seeking monetary relief in excess of $10,000, the PLAINTIFF is a resident citizen of Nevada, and the DEFENDANT MICHAEL SILVA lives in Las Vegas, Nevada.
3. Venue is proper in the Eighth Judicial District Court of Clark County because:

a. Under NRS 13.020, "Actions for the following causes must be tried in the county where the cause, or some part thereof, arose, subject to the power of the court to change the place of trial." All of the events giving rise to this claim have occurred within Clark County;

b. The PLAINTIFF currently resides in Las Vegas, Nevada, where the events or omissions giving rise to the claims of this case occurred.

## III.

## PARTIES

4. At all times relevant to this action, PLAINTIFF was a resident of the State of Nevada, County of Clark.
5. DEFENDANT MICHAEL SILVA lives in Clark County, Nevada.

## IV.

## GENERAL ALLEGATIONS COMMON TO ALL CLAIMS

6. PLAINTIFF is a forty-five year old African-American woman.
7. PLAINTIFF suffers from pre-existing alopecia, depression, and anxiety; as a result of her ordeal at the hands of LAURA MARTINEZ, SPARKS POLICE DEPARTMENT and LAS VEGAS METROPOLITAN POLICE DEPARTMENT, she now also suffers from hidradenitis suppurativa, PTSD, and paranoia.
8. PLAINTIFF has been a resident of the state of Nevada throughout the entirety of this ordeal.
9. In July 2021, PLAINTIFF and her elderly mother moved to Las Vegas from Reno due to her fear of retribution by SPARKS POLICE DEPARTMENT.
10. Since her move, PLAINTIFF has been subject to ongoing surveillance and interference in Las Vegas by LAS VEGAS METROPOLITAN POLICE DEPARTMENT, detailed infra.
11. PLAINTIFF has had additional problems happen to her as a result of interference by, on information and belief, the LAS VEGAS METROPOLITAN POLICE DEPARTMENT; these include but are not limited to:

a. Possible involvement in PLAINTIFF'S booking photo being released to her new employer in Las Vegas;

b. Known interference with PLAINTIFF'S and her mother's property as it was being transported by U-Haul from Northern to Southern Nevada, who admitted to PLAINTIFF on the telephone their employees' collusion with both SPARKS POLICE DEPARTMENT and the LAS VEGAS METROPOLITAN POLICE DEPARTMENT when transporting and temporarily losing the property;

c. Unwarranted surveillance at PLAINTIFF'S new Airbnb upon first moving to Las Vegas;

d. Being followed by both uniformed and plain clothes LAS VEGAS METROPOLITAN POLICE DEPARTMENT officers when PLAINTIFF leaves her apartment building by car, Uber, Lyft, Taxi or rental car;

e. Being told by her internet service provider T-Mobile that the POLICE paid for her internet connection;

f. Being harassed at home, including by having LAS VEGAS METROPOLITAN POLICE DEPARTMENT bang on her door, allegedly at the behest of a neighbor, and wait around her apartment at night;

g. Being accused by the property managers at her building of violating community standards using videos skimmed from PLAINTIFF'S own surveillance cameras operating on PLAINTIFF'S own WiFi connection (the WiFi that T-Mobile has admitted the POLICE compensate).

h. On information and belief, Law enforcement contacted MICHAEL SILVA.

## —STATE CLAIMS—

## V.

## FIRST CLAIM FOR RELIEF

***Unlawful Injury or Loss Suffered by a Vulnerable Person, NRS § 41.1395***

12. PLAINTIFF incorporates by reference all other allegations in this Complaint, as though fully set forth herein.

13. PLAINTIFF is a vulnerable person as defined by NRS § 41.1395 4(e)(1-2) in that she has a physical health impairment—alopecia—and psychological health impairments—depression and anxiety—that limit one or more of her major life activities, and she has medical records of these impairments.

14. Because of her ordeal, PLAINTIFF now also suffers from a very painful skin condition called hidradenitis suppurativa, and from new psychological problems including PTSD and paranoia.

15. DEFENDANT MICHAEL SILVA was unjustified when they inflicted injury, pain, and anguish on PLAINTIFF with their negligence and failure to provide fair and appropriate treatment to her.

16. DEFENDANT has additionally exploited the medical vulnerability of a vulnerable Nevadan, in contravention of state law.

17. DEFENDANT MICHAEL SILVA working in tandem with law enforcement agencies are severely exacerbating PLAINTIFF'S pre-existing disabilities, in contravention of state law.

18. Accordingly, PLAINTIFF is entitled to recover all available damages, including—but not limited to—lost wages, pain and suffering, emotional distress and punitive damages, if available, as allowed by law, in an amount to be determined at trial.
19. In this particular Claim for Relief, PLAINTIFF is entitled to recover two times her damages, as allowed under NRS § 41.1395(1), in an amount to be determined at trial.

**VI.**

**SECOND CLAIM FOR RELIEF**

***Intentional Infliction of Emotional Distress***

20. PLAINTIFF incorporates by reference all other allegations in this Complaint, as though fully set forth herein.
21. DEFENDANT MICHAEL SILVA acted to intentionally to ignore PLAINITFF'S rights, the laws and the lease. Laura allowed her mother, guests, boyfriend and children to ignore PLAINTIFF'S rights to safe living conditions, quiet enjoyment of her home and not be called racial epithets in English and Spanish.
22. DEFENDANT MICHAEL SILVA continued to act intentionally to have law enforcement get involved in PLAINTIFF'S lease when PLAINTIFF passed a background check and had no criminal history. When MICHAEL SILVA lied and made false police calls on PLAINTIFF two days in a row. He made false 911 calls stating that PLAINTIFF harassed him because she was laughing, giggling, singing and whistling outside her apartment in public during business hours. MICHAEL SILVA slandered, defamed PLAINTIFF'S character and gave libelous statements against PLAINTIFF. MICHAEL SILVA did establish a connection between law enforcement in Northern Nevada and Southern Nevada.
23. After months of showing evidence that MICHAEL SILVA harassed, stalked, followed, falsely calling LVMPD on PLAINTIFF and made fun of PLAINTIFF's medical conditions, MICHAEL SILVA continued this behavior until she moved out of the complex on 11/30/22.
24. MS. WARREN still has not been able to get a regular doctor in the Las Vegas area since negligently being thrown out by Mr. Connors and Cano Health.
25. Now, PLAINTIFF faces ongoing harassment and surveillance by LAS VEGAS METROPOLITAN POLICE DEPARTMENT and HENDERSON POLICE DEPARTMENTS even though she has committed no crime in either Clark or Washoe Counties. In order to help LAS VEGAS METROPOLITAN POLICE DEPARTMENT in their ongoing litigation, MICHAEL SILVA negligently involved himself in PLAINTIFF'S police misconduct cases.
26. As a result of the actions of the DEFENDANT, the PLAINTIFF has suffered severe emotional distress and physical harm.
27. The intentional behavior of DEFENDANT is the direct and proximate cause of PLAINTIFF'S deteriorated health and ongoing mental anguish.
28. Accordingly, PLAINTIFF is entitled to recover all available damages, including—but not limited to— lost wages, pain and suffering, emotional distress and punitive damages, if available, as allowed by law, in an amount to be determined at trial.

## VII.

## FOURTH CLAIM FOR RELIEF

### *Civil Conspiracy*

29. PLAINTIFF incorporates by reference all other allegations in this Complaint, as though fully set forth herein.

30. In Nevada, "[a]n actionable civil conspiracy is a combination of two or more persons who, by some concerted action, intend to accomplish some unlawful objective for the purpose of harming another which results in damage." Collins v. Union Fed. Savings Loan, 99 Nev. 284, 303 (Nev. 1983).

31. PLAINTIFF has been harassed by LAS VEGAS METROPOLITAN POLICE DEPARTMENT and HENDERSON POLICE DEPARTMENT since moving to Southern Nevada.

32. PLAINTIFF has never been convicted of a crime in Las Vegas or Clark County, so it is a mystery why LAS VEGAS METROPOLITAN POLICE DEPARTMENT or HENDERSON POLICE DEPARTMENT would harass her—but for their knowledge that she is disliked by SPARKS POLICE DEPARTMENT and law enforcement in general.

33. It would be unlawful for LAS VEGAS METROPOLITAN POLICE DEPARTMENT and HENDERSON POLICE DEPARTMENT to do the following without a warrant and without probable cause (this list is not exhaustive):

a. Surveil Ms. WARREN at her Airbnb right when she moved to Las Vegas;

b. Place Ms. WARREN under investigation right when she moved to Las Vegas;

c. Participate in frustrating Ms. WARREN's access to her property as it was being transported south by U-Haul;

d. Release Ms. WARREN'S booking photo from Washoe County to her new, Las Vegas employer long after she had been released from jail;

e. Tail Ms. WARREN in her car whenever she is driving in Las Vegas, using a rental car or taking a Lyft or Uber;

f. On information and belief, conspire with the property managers at Ms. WARREN's apartment building to entrap Ms. WARREN in perceived community standard violations using videos "skimmed" from her own surveillance cameras operating on PLAINTIFF'S own WiFi

g. Intercept Ms. WARREN'S telecommunications, including her telephone and internet connection, as by paying for the connection out of a "police account."

h. Stop or interfere with PLAINTIFF and/or PLAINTIFF'S mother from obtaining medical help in either Northern or Southern Nevada. Medical help includes dental, medical, psychiatric, physical rehabilitation, psychology and any other "medical" help they may need.

i. Conduct false wellness checks based on hearsay and erroneous information from unknown sources.

34. If LAS VEGAS METROPOLITAN POLICE DEPARTMENT or HENDERSON POLICE DEPARTMENT has a cognizable warrant or probable cause against Ms. WARREN for an alleged violation of the law in Clark County, PLAINTIFF asks to see that document.

35. Barring this, her treatment by LAS VEGAS METROPOLITAN POLICE DEPARTMENT and HENDERSON POLICE DEPARTMENT is harassment meant to frighten, embarrass and belittle her.

36. To the extent that LAS VEGAS METROPOLITAN POLICE DEPARTMENT and HENDERSON POLICE DEPARTMENT illegally undertakes such treatment of Ms. WARREN at the behest of or for the benefit of SPARKS POLICE DEPARTMENT in Washoe County, the three police departments are engaged in a civil conspiracy with one another against Ms. WARREN.
37. The "primary purpose" of such partnership is not protection of the community, but rather, "to cause injury" to Ms. WARREN, who is alone but for taking care of her elderly mother. Ungaro v. Desert Palace, Inc., 732 F. Supp. 1522, 1533 n.3 (D. Nev. 1989).
38. And such civil conspiracy, based in intentional tort, is illegal in this state.
39. Accordingly, PLAINTIFF is entitled to recover all available damages, including—but not limited to— lost wages, pain and suffering, emotional distress and punitive damages, if available, as allowed by law, in an amount to be determined at trial.

## —REMEDIES COMMON TO ALL CLAIMS—

## XII.

## *Declaratory Relief*

50. PLAINTIFF incorporates by reference all other allegations in this Complaint, as though fully set forth herein.
51. Pursuant to NRS 30.030, NRS 30.100, NRS 651.090(2)(a), and the Court's inherent equitable powers, PLAINTIFF seeks, and is entitled to have, declaratory relief awarded in her favor, to declare her rights and obligations of the DEFENDANT sued herein, where such declaratory relief is necessary and proper to the termination of the disputes raised herein, including as specifically prayed for below.
52. This includes declaratory relief whereby the Court issues a declaration that DEFENDANT unlawfully discriminated against, harassed, and retaliated against PLAINTIFF and otherwise violated PLAINTIFF'S rights under the law, and any other declaration the Court finds necessary and proper.

## XIII.

## PRAYER FOR RELIEF

WHEREFORE, PLAINTIFF prays for judgment against the DEFENDANT as follows:
1. For general damages in an amount in excess of $250,000.00;
2. For special damages in an amount in excess of $250,000.00;
3. For past and future compensatory damages, and other expenses incurred by reason of DEFENDANTS' intentional misconduct, acts, omissions, carelessness, recklessness, negligence, gross negligence, deliberate indifference, and other culpable conduct, described herein, in an amount in excess of $250,000.00;
4. For punitive and exemplary damages as allowed by law;
5. For costs of the suit incurred herein;

6. PLAINTIFF'S medical expenses as a result of DEFENDANT'S actions and conduct.

Dated this 19th day of May, 2023.

Allanna Warren
Pro Se Name Allanna Warren

Case 2:23-cv-00601-GMN-DJA Document 5-3 Filed 05/19/23 Page 22 of 22

CERTIFICATE OF SERVICE

I hereby certify that I sent the foregoing COMPLAINT JURY TRIAL DEMANDED for electronic filing to the Eight Judicial District Court on the 19th day of May, 2023. I caused the foregoing COMPLAINT JURY TRIAL DEMANDED to be served as follows:

[ ] BY U.S. MAIL: By placing a true and correct copy of the same to be deposited for mailing in the U.S. Mail in Las Vegas, Nevada, enclosed in a sealed envelope upon which First-Class postage was fully prepaid to the following address:

[ ] BY PERSONAL SERVICE: By hand delivery of the document(s) listed above to the person(s) at the following address:

[ X ] BY ELECTRONIC FILING: By EFS service pursuant to Rule 5(b)(2)(E) of the NRCP and Rule 9 of the NEFCR.

[ ] BY ELECTRONIC MAIL: By e-mail, consented to in writing, pursuant to Rule 5(b)(2)(F) of the NRCP at the following e-mail address:

Allanna Warren
PLAINTIFF

Electronically Filed
5/10/2023 11:24 PM
Steven D. Grierson
CLERK OF THE COURT

Allanna Warren
9620 S. Las Vegas Blvd., Suite E461
Las Vegas, NV 89123
D1A2N3N4@PROTON.ME

CASE NO: A-23-870530-C
Department 14

DISTRICT COURT

CLARK COUNTY, NEVADA

| | |
|---|---|
| ALLANNA WARREN,<br>Plaintiff,<br>vs.<br>LAURA MARTINEZ,<br>Defendant | Case No.:<br>Dept. No.:<br>COMPLAINT JURY TRIAL DEMANDED |

Plaintiff, ALLANNA WARREN, hereby submits her COMPLAINT JURY TRIAL DEMANDED. Plaintiff complains against Laura Martinez as follows.

**I.**

**STATEMENT OF THE CASE**

This case is linked and related to two police misconduct cases currently in litigation. The first case is against the City of Sparks et. al. and The county of Washoe Jail et. al in the Second Judicial District case number CV2201525. The second case is against Las Vegas Metropolitan Police Departments (LAS VEGAS METROPOLITAN POLICE DEPARTMENT) in the US District Court with case number 2:23-cv-00065-GMN-DJA. After an unlawful detainment on June 14, 2020 and an unlawful arrest on June 20, 2020 by Sparks Police officers Ginger Miller, Ryan Patterson and Daniel Jones, PLAINTIFF and her elderly mother were harassed, followed, stalked, illegally surveilled, had their communications devices illegally monitored and would go into any business, school, store, retail business, apartment, doctor's offices, townhome,

employers (Anthem Blue Cross and Blue Shield (BCBS), AppleOne and HILTON GRAND VACATIONS), box store like Walmart, 99 Cent Only Stores or Dollar Tree, private home or any place PLAINTIFF and her mother visited even once and slander, libel and character assassinate them both. Law enforcement would illegally stalk and follow MS. WARREN to continue the harassment, slander, libel and character assassination to landlords, neighbors, employees, co-workers, supervisors, doctor's office staff, doctors, physician assistants etc. in Southern Nevada as well. Ms. WARREN had no criminal record at the time of her arrest and should have been released on her own recognizance. Regardless of this, Ms. WARREN languished in WASHOE COUNTY JAIL for a week, from June 20, 2020 to June 26, 2020. During this *entire* time, she was placed in solitary confinement for no reason. By "solitary confinement," PLAINTIFF means that she was in a small, separate place in the basement of the WASHOE COUNTY JAIL, completely alone, and that this place only had room for one person. Ms. WARREN languished in this small space for six solid days. She was given no reason for her segregation from the main jail population. The charges against Ms. WARREN were entirely dropped on September 15, 2021.

Washoe County had a motive for disliking Ms. WARREN. From August 5, 2019 to September 24, 2019, WARREN had actually worked for Washoe County in their Alternative Sentencing Department. In that capacity, she worked in a makeshift crime lab near to the county courthouse. There, she was expected to analyze evidence chemically despite having no formal scientific training. Ms. WARREN'S hiring for the lab was rushed and did not meet typical employment protocols. In the lab, which was not properly licensed, Ms. WARREN regularly worked with caustic chemicals but was given no personal protective equipment (PPE) to perform her work. The lab had no eye wash station, no labels for chemicals, and no hazardous waste

Case 3:23-cv-00065-HEJ-DJA Document 1-1 Filed 02/10/23 Page 3 of 25

disposal. Without hazardous waste disposal, corrosive chemicals were being left in the trash where they could leach into the water system outside. On September 23, 2019, Ms. WARREN went to the hospital with contact dermatitis acquired as a direct result of her unsafe employment. The next day, she complained to the Occupational Safety and Health Administration (OSHA) about the conditions in the lab and gave her supervisor a doctor's note.

Ms. WARREN was fired by Washoe County at around 6 PM on Tuesday, September 24, 2019. When Nevada OSHA investigated Washoe County, County was fined upwards of $4,000 for facilities violations as a direct result of Ms. WARREN's complaint regarding unsafe working conditions. Prior to working for the Alternative Sentencing Department of Washoe County, Ms. WARREN worked as an administrative assistant at China Spring Youth Camp in Douglas County. In this capacity, Ms. WARREN observed that the camp was doctoring their accounting files and was prescribing psychotropic medication to children under 18 in exchange for Medicaid subsidies. Rather than go along with these financial malfeasance schemes as her supervisor expected her to, Ms. WARREN reported what she saw to the state and was subsequently fired. Ms. WARREN had worked at the camp for eleven months and one week and was fired right before her probationary period was over.

A Northern Nevada judge, named Pete Sfrazza, had a son, Giovanni Sfrazza, who was incarcerated at the camp. This judge was best friends with another judge, Judge Tod Young, who oversaw the camp. When Ms. WARREN was hired by Washoe County, Pete Sfrazza was overseeing the Alternative Sentencing Department. The same judge whose son had once been incarcerated at China Spring at the time when Ms. WARREN brought her concerns about the juvenile facility to state regulators. In June of 2021, China Spring Youth Camp temporarily

closed the half of its camp dedicated to the care of boys due to, among other problems, "financial instability."

The police misconduct problems for Ms. WARREN did not stop in Washoe County or Northern Nevada. In November 2021, during a training course for her new job, working for AppleOne Temporary Agency and placed at Anthem BCBS in Las Vegas, a co-worker named Glenn Taylor teased Ms. WARREN by showing her a copy of her booking photo that had been taken when she was arrested. Ms. WARREN suffers from alopecia. When she was booked by the police in Sparks on June 20, 2020, OFFICER MILLER removed Ms. WARREN'S hat before her booking photo was taken, so Ms. WARREN appears bald in the photo. Somehow, Ms. WARREN's co-workers, Glenn Taylor, Gennifer Ross, Tyranisha Watson, Rachel Post and others, got their hands on this photo, and stated that he had actually gotten the photo from their training instructor, Shelia Williams of Anthem Blue Cross and Blue Shield. Thereupon, Ms. WARREN's classmates in the training program teased her with photos of bald people and Shelia Williams harassed her also. The booking photo cannot be found online. Ms. WARREN called the Washoe County Sherriff's Office, who stated to her that such a photo is only a public record when an individual is incarcerated, but that after incarceration is over, the photo is removed from their website. The Washoe County Sherriff's office additionally stated that the only way the picture could be released at this point would be either at Ms. WARREN's own request for it, or, in response to a request from someone inside SPARKS POLICE DEPARTMENT. Therefore, on information and belief, SPARKS POLICE DEPARTMENT impermissibly released Ms. WARREN'S booking photo online or to her then current employer in Las Vegas in an effort to harass, embarrass, stalk, and belittle her. After PLAINTIFF complained about the arrest photo to her employer, she was placed on administrative leave and ultimately fired by Apple One

Temporary agency. It is also possible that LAS VEGAS METROPOLITAN POLICE DEPARTMENT additionally had a hand in the booking photo getting released to Ms. WARREN'S new employer in Las Vegas.

Ms. WARREN has been the victim of a wide variety of suspicious behavior at the hands of LAS VEGAS METROPOLITAN POLICE DEPARTMENT since having moved from Reno to Las Vegas in July 2021. Ms. WARREN regularly finds herself followed by both uniformed and plain clothes LAS VEGAS METROPOLITAN POLICE DEPARTMENT officers when she leaves her apartment building by car, taxi, Uber, Lyft or rental car. She cannot take videos of this behavior when she is alone in her car for fear of being pulled over for using a cell phone while driving. Ms. WARREN'S mother is elderly and disabled and also cannot take videos of this behavior on the rare occasions when she is in the car alongside her daughter. Prior to her ordeal, Ms. WARREN suffered from anxiety, depression, and alopecia. Now, subsequent to her ordeal at the hands of SPARKS POLICE DEPARTMENT and LAS VEGAS METROPOLITAN POLICE DEPARTMENT, PLAINTIFF additionally suffers from PTSD and paranoia. Following her confinement, and likely due to stress and the filthy conditions inside the WASHOE COUNTY JAIL, Ms. WARREN developed hidradenitis suppurativa, a painful skin condition that causes small, painful lumps to form under her skin. Following her jailing, MS. WARREN developed these sores and pustules all over her body, for she sought the help of a dermatologist.

After fleeing Northern Nevada to try to escape the relentless retribution from law enforcement there, PLAINTIFF and her mother moved to Las Vegas Nevada in July 2021. MS. WARREN'S family's first lease in Las Vegas was with BDJ Realty. They moved into an apartment located at 5821 Smoke Ranch Road, Unit C Las Vegas NV 89108. The 12 month lease started on November 7, 2021 and ended November 30, 2022. As stated above, MS.

WARREN had been acquitted of all the false “stalking’ charges brought against her from Sparks PD and MS. WARREN had no criminal record. MS. WARREN and her mother had to undergo a rental background check, which both passed with flying colors. This rental background check included a criminal check and credit check. There were issues almost immediately upon moving into the unit. PLAINTIFF informed her landlord, BDJ Realty, and the community’s HOA in an email dated 11/26/2021 that Laura Martinez who lives at 5821 Smoke Ranch Unit D Las Vegas NV 89108 harassed her. In this email to the HOA and BDJ Realty PLAINTIFF states, “I also have footage of the kids from 5821 Unit D in front of my home. I don't have kids and believe their parents should keep watch of them. I have not been in this neighborhood long but seeing the strange man loitering around my door should alarm any parent, especially parents of young girls under 10 years old.” Right away Laura Martinez allowed her three children to play unsupervised all up and around PLAINTIFF’S front porch and yard. Laura Martinez allowed her three daughters, who are all under 10 years old, to loiter outside PLAINTIFF’S home unsupervised, vandalize PLAINTIFF’s property and violate the lease for the rest of the year that PLAINTIFF lived at this property. The response from the HOA was “We cannot take any kind of action needed for the property from a tenant.” There was no concern expressed by the HOA. On November 16, 2021, Laura Martinez’s mother had three dogs illegally off their leash and allowed to pee on PLAINTIFF’s lawn. PLAINTIFF shot video footage of the illegal activity. Ms. Martinez’s mother did not apologize to the PLAINTIFF. PLAINTIFF notified the Las Vegas Animal Control department, who came out and put a notice on Ms. Martinez’s door concerning the leash law, dogs must be spayed or neutered and have a current rabies vaccine. In the Animal Control report, it stated that Laura Martinez admitted that she let her mother’s dogs out to use the bathroom. She failed to mention to the officer that they were on PLAINTIFF’S

Case 2:23-cv-00065-GMN-DJA Document 1-1 Filed 01/12/23 Page 29 of 109

side of the yard. This is the very same situation which led to PLAINTIFF's false arrest in Sparks Nevada. Alana and Steven Saults who live at 3353 Culpepper Drive, Sparks, NV 89434. They had their two large dogs illegally off the leash and when PLAINTIFF asked them to put the dogs on a leash PLAINTIFF was called a "fat, black nigger bitch who can't get or keep a man," by Mr. Sault's. There is a pattern emerging with connections between Northern and Southern Nevada. On December 10, 2021 Plaintiff informed BDJ Realty that Laura Martinez harassed her again. In this email PLAINTIFF stated, "this evening i was harassed from the people from number D. She tried to stand in front of me to ask me about some items. She went to the neighbors across the way. I did not say anything to her and ignored her. She yelled at me for no reason. I am new to this neighborhood and am not sure what kind of neighbors I have but so far it has been a little scary. Please address this. She had her video tape and saw me basically ignore her as she yelled at me. The lady from the next building came over and they both talked loud. The lady from D had her children on my side as well again unsupervised. I have video attached to back up what I am reporting. I don't' want any trouble! Please help. I also have attached a copy of the animal control who was called out here for her mom's dogs off leash." PLAINTIFF was clearly upset and scared because she emphasized to BDJ Realty and the HOA that, "I [PLAINTIFF] don't' want any trouble! Please help." Bo Jones's response to PLAINTIFF'S concerns was ," You are living in a privately owned townhome/condo community and space is tight." The disparate treatment and racial discrimination that BDJ Realty showed against PLAINTIFF was becoming apparent right away. PLAINTIFF responded, " Whatever that tenant was yelling and harassing me about I have no idea. But her children were unsupervised and playing on my side of the property. You clearly saw it was not in the common area. I want to make sure I am keeping a written documentation for future reference. I appreciate

you and the HOA taking my complaints seriously and addressing them ASAP! I appreciate it Bo. That's why I made sure to include the leash law they violated with the City of Las Vegas!" BDJ Realty did not care about the PLAINTIFF or that Laura Martinez broke the law by allowing her three dogs to be off leash and urinate and defecate in PLAINTIFF'S front yard. PLAINTIFF became aware that the owner's of Laura Martinez's unit and the owners of PLAINTIFF'S unit were the same. Therefore, the PLAINTIFF was being racially discriminated against by BDJ Realty per the The Fair Housing Act, 42 U.S.C. 3601 et seq..

> The Fair Housing Act, 42 U.S.C. 3601 et seq. prohibits discrimination by direct providers of housing, such as landlords and real estate companies as well as other entities, such as municipalities, banks or other lending institutions and homeowners insurance companies whose discriminatory practices make housing unavailable to persons because of:
>
> - race or color
> - religion
> - sex
> - national origin
> - familial status, or
> - disability.

Another of PLAINTIFF'S neighbors, named Michael Silva, spent his time harassing PLAINTIFF along with Laura Martinez. On information and belief this neighbor harassment was at the behest of the LAS VEGAS METROPOLITAN POLICE DEPARTMENT (LVMPD). On February 7 and 8, 2022 Michael Silva called the LVMPD to PLAINTIFF'S house on false calls. On the February 7, 2022 police interaction, two Hispanic officers pound on PLAINTIFF'S door. LVMPD officer DOE 1 knocks on Laura Martinez's door. Laura Martinez comes out of her house and engages the police as they were harassing the PLAINTIFF. The Officer DOE 1 tells Laura that they got a complaint of a black female growling like a dog. Laura Martinez says, "The only thing this lady does is whistle and giggle." To which the officer says, "Yup, Yup that

would be it, that's her that's her." PLAINTIFF would like to know where in the Las Vegas Penal Code is laughing, giggling or whistling? Are these emotions misdemeanors or felonies?

Michael Silva is guilty of violating H.R.6003 — 115th Congress Anti-Swatting Act of 2018, which states "bill amends the Communications Act of 1934 to provide for enhanced penalties for the transmission of misleading or inaccurate caller identification information with the intent to trigger an emergency response by: (1) a law enforcement agency of the United States, a state, or a political subdivision of a state…" and NRS 207.161 TO 207.167 – EMERGENCY COMMUNICATIONS INTERFERENCE. Michael should be held accountable for making two false 911 swatting call on February 7, 2022 and February 8, 2022.

In the February 8, 2022 video evidence PLAINTIFF has, the LVMPD officer's pound, loudly knock, use their batons on PLAINTIFF'S windows and yell at the top of their lungs for the PLAINTIFF. MS. WARREN had committed no crime on either day and she had no idea why the LVMPD were at her door. After contacting the Las Vegas records office, PLAINTIFF found out that Michael Silva called both times stating that he was harassed by hearing the PLAINTIFF whistle, laugh and sing near her home and he did not like that. LVMPD acted like the PLAINTIFF killed someone on a false call from a racist neighbor because she laughed, sang and whistled near her home. PLAINTIFF attempted to get the dash and body cam footage from LVMPD but she was charged $266 and $88, which PLAINTIFF could not afford at the time. On 2/8/22 Bo Jones emailed PLAINTIFF'S mother stating, "Dear Nancy, I need to speak to you ASAP about Allanna." PLAINTIFF emailed Bo to discuss why Bo Jones was contacting PLAINTIFF'S mother about the PLAINTFF who is a grown woman. Bo Jones wanted to

discuss the LVMPD coming to PLAINTIFF'S house two days in a row. PLAINTIFF then emailed Ms. Jones and asked how she knew about LVMPD coming to PLAINTIFF's house two days in a row. Instead of answering specifically, Bo Jones starts with hearsay. She writes, "We have received reports from several of your neighbors that you are not acting normal." Bo Jones even says that the neighbors were complaining about PLAINTIFF whistling & giggling'. PLAINITFF asked Ms. Jones where in the Las Vegas Penal code does it say whistling and singing or giggling is against the law. Is whistling, giggling or singing a felony or misdemeanor? Once again, the desperate treatment is evident. Instead of Bo Jones addressing PLAINTIFF's complaints, she starts with hearsay, inuendo and feelings from unknown neighbors.

Laure Martinez started making false police calls on the PLAINTIFF on August 25, 2022. While PLAINTIFF was working from home LVMPD was pounding on PLAINTIFF'S door after speaking to Laura Martinez. PLAINTIFF could not obtain any information on what Laura Martinez reported or why LVMPD was knocking on her door. Just like Michael Silva, Laura Martinez is guilty of violating H.R.6003 — 115th Congress Anti-Swatting Act of 2018, which states "bill amends the Communications Act of 1934 to provide for enhanced penalties for the transmission of misleading or inaccurate caller identification information with the intent to trigger an emergency response by: (1) a law enforcement agency of the United States, a state, or a political subdivision of a state…" and NRS 207.161 TO 207.167 – EMERGENCY COMMUNICATIONS INTERFERENCE. Laura Martinez should be held accountable for making a false 911 swatting call on August 25, 2022.

PLAINTIFF had been subjected to constant bullying, harassment and stalking by Laura Martinez, her boyfriend and her guests. PLAINTIFF has evidence of Laura's youngest daughter

vandalizing PLAINTIFF'S property in broad day light as PLAIJNTIFF worked on 8/23/22, when PLAINTIFF was moving out of the property on 11/30/22 Laura's mother comes out her unit to call PLAINTIFF a "Mayate" which is Spanish for nigger, on September 17, 2022 are waiting outside to harass her as she is bringing groceries inside her home as Laura's large boyfriend tried to stand in front of PLAINTIFF as she was trying to get by him too her home, on 10/16/22 Laura calls Uber Eats to come to my door for a delivery order MS. WARREN didn't order, it is clear from the video that PLAINTIFF was at work and you can hear Laura's voice orchestrating the person knocking on PLAINTIFF's door, and on 7/11/22 PLAINTIFF's former lawyer, Robert Melcic, emailed MS. WARREN a video dated 6/29/22. This video had been doctored/edited video from LVMPD and Sparks PD. PLAINTIFF asked her former lawyer's clerk, Gigi Genereaux, to give her the date and time that video was taken. Ms. Genereaux could not give MS. WARREN the time or date because the police had taken video footage, illegally obtained, from PLAINTIFF's Nest cameras inside her home. Ms. Generaux explained that Bo Jones stated that Laura Martinez gave Bo the video and Bo in turn gave it to Ms. Genereaux who in turn gave it to Ms. Warren. Law enforcement edited the footage to look like PLAINTIFF was making racial comments about Mexican people outside her home. PLAINTIFF had a camera operating at the time of this video and asked her former attorney to give MS. WARREN the date and time so she can pull up her version of the events. PLAINTIFF never was given the date nor time of the events because the footage was an illegally obtained video that was edited and doctored to make a false narrative about the PLAINTIFF and her family. PLAINTIFF has been reporting for years that the police, FBI, CIA as well as other law enforcement and governmental agencies were illegally tapping, surveilling and monitoring MS. WARREN's phones, cameras,

videos, phones, wifi and all communication devices.   This video finally gave PLAINTIFF hard proof that law enforcement was violating her and her family's constitutional rights.

PLAINTIFF has preexisting conditions that stress and anxiety exacerbate.  After the harassment, mental anguish and racism Laura Martinez subjected PLAINTIFF to she had to see a doctor.  Since PLAINTIFF moved to Las Vegas she has had issues trying to find suitable medical treatment because of the constant police involvement in MS. WARREN's civil matters. PLAINTIFF's first appointment with Hilton Grand Vacations located at 5701 W Charleston Blvd, Unit 100, Las Vegas, NV 89146 was on November 18, 2022.  At this appointment MS. WARREN saw Physician's assistant Jesse Connors.  In this appointment PLAINTIFF explained that law enforcement chased her and her mother out of Northern Nevada and that LAS VEGAS METROPOLITAN POLICE DEPARTMENT has picked up the harassment where Northern Nevada Law enforcement left off.  PLAINTIFF explained that she has a history of depression, anxiety, asthma and other ailments that stress exacerbated.  PLAINTFF asked Mr. Connors to obtain copies of her medical records from her medical facility in Reno Nevada.  It was revealed later that Mr. Connors never sought to obtain copies of PLAINTIFF's medical records from her previous medical facility in Reno as she asked on 11/18/22.  MS. WARREN asked Mr. Connors for a referral for mental health as law enforcement's constant interference was affecting her negatively.   Mr. Connors said that he would obtain medical records from PLAINITFF'S previous medical facility and would get her a mental health referral.  Mr. Connors suggested that PLAINTIFF get an EKG, get a chest x ray and he would set up an appointment for a Pulmonary Function Test (PFT).   Without an evaluation or ever treating PLAINTIFF, Mr. Connors prescribed MS. WARREN 10mg tablets of Escitalopram with two refills.  Escitalopram is part of a Bi-Polar treatment.  However, PLAINTIFF had not been diagnosed with bi-polar disorder by

anyone. A major warning for this medication is that one should seek medical attention right away if you have symptoms of serotonin syndrome, such as: agitation, hallucinations, fever, sweating, shivering, fast heart rate, muscle stiffness, twitching, loss of coordination, nausea, vomiting, or diarrhea. MS. WARREN had never been on this medication and was not informed of any side effects of the medication before taking it per Mr. Connors instructions. MS. WARREN was not on any mental medication before encountering the treatment from BDJ Realty, Laura Martinez, Michael Sliva, Hilton Grand Vacations, Dollar Tree, Cano Health, T-mobile, Southwest Airlines, Hilton, Apple One, Anthem Blue Cross and Blue Shiels, VIP Auto Services nor Walmart.

Mr. Connors told PLAINTIFF that the scheduling department would be contacting her shortly after her 11/18/22 visit. Immediately after the appointment with Mr. Connors, his medical assistant, Juliana Ramirez, took MS. WARREN to get her EKG test. While in the room Juliana instructed PLAINTIFF to undress above the waist, including removing her bra and shirt. PLAINTIFF complied with the instructions. The EKG was performed by Ms. Ramirez. After the testing, Juliana instructed PLAINTIFF to keep her bra off but put on her shirt because she was going to get her chest Xray. PLAINTIFF complied with these instructions as well. Juliana led MS. WARREN to a chair outside a small room. A Hispanic male came out of the small room and asked PLAINTIFF her name. MS WARREN told the male her name and he led her inside the room. After the chest x ray, the male instructed PLAINTIFF to "get dressed" in the same room. The male could see the PLAINTIFF clearly and she inquired about the visibility of dressing in front of the male. The male told MS. WARREN that everyone gets dressed in the room with him in the room. Outside the small room, PLAINTIFF saw a bathroom right next to

the room and wondered why the male would not have instructed her to change inside the bathroom right next door.

MS. WARREN's mother is over 70 years old so having a medical provider in close proximity is paramount to her health. PLAINTIFF, despite her apprehensions, recommended Hilton Grand Vacationsto her mother. On 11/29/2022 PLAINTIFF's mother went to an appointment with Mr. Connors at the Hilton Grand Vacationslocated at 5701 W Charleston Blvd, Unit 100, Las Vegas, NV 89146. Mr. Connors told PLAINTIFF's mother that he would be getting her medical records from her medical facility in Carson City just like he told the PLAINTIFF. PLAINTIFF's mother is not sure if Mr. Connors actually sought to obtain those records. Mr. Connors also advised MS. WARREN's mother to get a PFT, get a chest x ray and be seen by a Ear Nose and Throat (ENT) specialist. Immediately after the appointment, PLAINTIFF went to the waiting room and PLAINTIFF's mother went to get her chest x ray. Upon exiting Hilton Grand Vacations PLAINTIFF's mother told her that she experienced the same "undressing" incident that PLAINTIFF had with the male who conducts the x rays. PLAINTIFF could see her mother was uncomfortable and this bothered her immensely.

It has to be noted that before the 11/29/22 appointment at Cano Health, which was scheduled at 10:30 am, PLAINTIFF and her mother were stalked and followed by LAS VEGAS METROPOLITAN POLICE DEPARTMENT officers. They were pulled over by a black male officer who was the driver of the police SUV and had a white female officer in the passenger seat. PLAINTIFF knows they were being stalked and followed because PLAINTIFF and her mother had just moved into a new place, less than a week before being pulled over by LAS VEGAS METROPOLITAN POLICE DEPARTMENT, and no one had their new address. There would have been no way LAS VEGAS METROPOLITAN POLICE DEPARTMENT had their

new address, without illegally stalking, following and monitoring the PLAINTIFF and her mother as their new place is in another city/jurisdiction and far away from their previous home where LAS VEGAS METROPOLITAN POLICE DEPARTMENT were falsely called multiple times by PLAINTIFF'S neighbors. In the previously mentioned police misconduct cases involving LAS VEGAS METROPOLITAN POLICE DEPARTMENT, neighbors Laura Martinez and Michael Silva are named, with video evidence, as being the culprits who were prompted by LAS VEGAS METROPOLITAN POLICE DEPARTMENT to call them so PLAINTIFF could be falsely arrested again or evicted.

PLAINTIFF's mother, had her PFT scheduled for 12/8/22. While in the waiting room the PFT specialist, his name is Uday, approached MS. WARREN's mother and told her that he does not have the mouth pieces, which are mandatory to conduct the test, and he has no idea when he would get them and that she needs to reschedule her PFT somewhere else as he was going out of town on a vacation for two months. There was no forewarning or a courtesy call to inform PLAINTIFF'S mother of this issue.

PLAINTIFF's mother had her Ear Nose and Throat (ENT) appointment on 12/12/22 with Dr. Kim of the UNLV medical center located at 5320 S. Rainbow, Suite 250 Las Vegas, NV. While in her appointment PLAINTIFF and her mother complained to Dr. Kim about their treatment by Cano Health. They both explained what happened with "undressing" in front of a male x ray tech, Uday having no equipment to conduct PFTs for patients with breathing issues, and just the entire medical negligence of Cano Health. Dr. Kim thanked both ladies for their honesty and informed them that he would take their concerns seriously and inform the proper authorities. Dr. Kim told PLAINTIFF and her mother that he did not want to send any of his patient's to this medical facility after hearing their horror stories. PLAINTIFF and her mother

Case 2:23-cv-00601-MMD-EJY Document 153 Filed 05/10/23 Page 16 of 25

noticed a LAS VEGAS METROPOLITAN POLICE DEPARTMENT SUV parked outside the medical facility during the mother's appointment. They made a comment to Dr. Kim and noticed that the LAS VEGAS METROPOLITAN POLICE DEPARTMENT SUV did not leave until right before the appointment was over. Again, this proves the constant stalking, following, surveilling, monitoring etc. by law enforcement illegally.

During the month of November and December PLAINTIFF heard from the Hilton Grand Vacations scheduling department. They informed MS. WARREN that Axis psychiatry would be scheduling her an appointment. MS. WARREN heard from Axis and they scheduled her for an appointment on 12/26/22. Later in December when PLAINTIFF called Axis to confirm the appointment the receptionist told PLAINTIFF that their building was closed due to the observance of Christmas on 12/26/22. When PLAINTIFF inquired as to why she was scheduled for an appointment on a day they knew they were closed PLAINTIFF received no response. Then PLAINTIFF was informed that Axis would not have an appointment open for several months.

On 12/18/22 PLAINTIFF had a follow up appointment with Mr. Connors. PLAINTIFF informed Mr. Connors that Axis psychiatry scheduled her on a day they were closed and she wanted another referral. At the 12/18/22 appointment PLAINTIFF's blood pressure was extremely high as she had been chased around the Hilton Grand Vacationsparking lot by strangers and had several LAS VEGAS METROPOLITAN POLICE DEPARTMENT squad cars tailing her from her new home to the appointment. PLAINTIFF was scared and her blood pressure exhibited this. Mr. Connors had PLAINTIFF's blood pressure checked several times and it was elevated the entire time. Having law enforcement involving themselves in every aspect of PLAINTIFF's life was affecting her health.

Case 2:23-cv-01065-GMN-DJA Document 153 Filed 05/12/23 Page 17 of 25

PLAINTIFF waited to hear from Cano Health's scheduling department to schedule another psych appointment. PLAINTIFF ended up calling Hilton Grand Vacations as she did not hear from the scheduling department as expected. PLAINTIFF was informed that she would have to call around Las Vegas for a psych doctor as their scheduling department would not help her. PLAINTIFF informed the scheduling department that it is their job to find a doctor for the PLAINTIFF. PLAINTIFF was told that "normally" their department does call around and find doctors for patients but in PLAINTIFF's case they would not help her.

Because law enforcement went to PLAINFIFF's job at Hilton Grand Vacations (HILTON GRAND VACATIONS) and slandered her there, she was on an ongoing ADA medical leave of absence since 11/15/22. She was trying to get Short Term Disability from Lincoln Financial Group (LFG). While trying to get all the medical paperwork for LFG to make a decision, MS. WARREN was run around by Mr. Connors office and LFG. A decision on PLAINTIFF'S case was intentionally delayed from both sides. After all the stress of PLAINTIFF'S job, her mother's health, trying to get mental help, no income from any source, law enforcement constantly bothering her, and no one helping the PLAINTIFF, all this stress was taking a toll on her health.

One of the reasons LFG denied PLAINTIFF's short term disability was because their nurse stated that PLAINTIFF was not seen from a licensed doctor or psychiatric doctor to correctly diagnose the PLAINTIFF, no evaluation was performed before giving PLAINTIFF Escitalopram and no follow up was performed by Hilton Grand Vacations Ito see if the medication was correct and helped the PLAINTIFF. Mr. Connors did not have the medical license to prescribe the PLAINTIFF any psych medication, especially with a medication like Escitalopram.

During December and January 2023 PLAINTIFF never saw Mr. Connors again until January 31, 2023. PLAINTIFF was scheduled for a Zoom appointment. During this appointment, Mr. Connors was clearly upset, and his facial expressions and treatment of PLAINTIFF exhibited this disdain. Mr. Connors stated on a recorded Zoom call that PLAINTIFF needs a doctor and Cano Health doesn't have a doctor therefore Cano Health can not see or treat the PLAINTIFF anymore.

When PLAINTIFF went out on her ADA leave from Hilton Grand Vacations she was asked to provide her former employer with a Team Member Accident Report. In this report PLAINTIFF explained that along with the stress and discrimination she faced at work, Michael Silva and Laura Martinez's harassment and constant false police calls while she worked from home led to her having to go out sick on the continuous ADA leave. On 11/25/22 PLAINITFF went to Hilton Grand Vacation's worker's comp doctor at the Polaris Concentra medical facility. In PLAINTIFF'S Injury care Patient Information form MS. WARREN explained, "I have preexisting medical conditions which are exacerbated by stress. Because LVMPD and Sparks PD are stalking me and retaliating against me for suing them because of a false arrest in 2020, they have used my neighbors, coworkers, supervisors, landlords and strangers to continue to harass me." The doctor recommended that PLAINTIFF be treated with counseling to help her. Hilton Grand Vacations denied PLAINTIFF'S claims so she is without treatment to this day.

## II.

## JURISDICTION AND VENUE

1. "A court of this state may exercise jurisdiction over a party to a civil action on any basis not inconsistent with the Constitution of this state or the Constitution of the United States." NRS 14.065.

2. Jurisdiction in this Court is proper because this is a complaint seeking monetary relief in excess of $10,000, the PLAINTIFF is a resident citizen of Nevada, and the DEFENDANT LAURA MARTINEZ lives in Las Vegas, Nevada.

Case 2:23-cv-01065-GMN-NJK Document 15-3 Filed 05/10/23 Page 19 of 25

3. Venue is proper in the Eighth Judicial District Court of Clark County because:

a. Under NRS 13.020, "Actions for the following causes must be tried in the county where the cause, or some part thereof, arose, subject to the power of the court to change the place of trial." All of the events giving rise to this claim have occurred within Clark County;

b. The PLAINTIFF currently resides in Las Vegas, Nevada, where the events or omissions giving rise to the claims of this case occurred.

**III.**

**PARTIES**

4. At all times relevant to this action, PLAINTIFF was a resident of the State of Nevada, County of Clark.

5. DEFENDANT LAURA MARTINEZ is a private business situated in Clark County, Nevada.

**IV.**

**GENERAL ALLEGATIONS COMMON TO ALL CLAIMS**

6. PLAINTIFF is a forty-five year old African-American woman.

7. PLAINTIFF suffers from pre-existing alopecia, depression, and anxiety; as a result of her ordeal at the hands of LAURA MARTINEZ, SPARKS POLICE DEPARTMENT and LAS VEGAS METROPOLITAN POLICE DEPARTMENT, she now also suffers from hidradenitis suppurativa, PTSD, and paranoia.

8. PLAINTIFF has been a resident of the state of Nevada throughout the entirety of this ordeal.

9. In July 2021, PLAINTIFF and her elderly mother moved to Las Vegas from Reno due to her fear of retribution by SPARKS POLICE DEPARTMENT.

10. Since her move, PLAINTIFF has been subject to ongoing surveillance and interference in Las Vegas by LAS VEGAS METROPOLITAN POLICE DEPARTMENT, detailed infra.

11. PLAINTIFF has had additional problems happen to her as a result of interference by, on information and belief, the LAS VEGAS METROPOLITAN POLICE DEPARTMENT; these include but are not limited to:

a. Possible involvement in PLAINTIFF'S booking photo being released to her new employer in Las Vegas;

b. Known interference with PLAINTIFF'S and her mother's property as it was being transported by U-Haul from Northern to Southern Nevada, who admitted to PLAINTIFF on the telephone their employees' collusion with both SPARKS POLICE DEPARTMENT and the LAS VEGAS METROPOLITAN POLICE DEPARTMENT when transporting and temporarily losing the property;

c. Unwarranted surveillance at PLAINTIFF'S new Airbnb upon first moving to Las Vegas;

d. Being followed by both uniformed and plain clothes LAS VEGAS METROPOLITAN POLICE DEPARTMENT officers when PLAINTIFF leaves her apartment building by car, Uber, Lyft, Taxi or rental car;

e. Being told by her internet service provider T-Mobile that the POLICE paid for her internet connection;

f. Being harassed at home, including by having LAS VEGAS METROPOLITAN POLICE DEPARTMENT bang on her door, allegedly at the behest of a neighbor, and wait around her apartment at night;

g. Being accused by the property managers at her building of violating community standards using videos skimmed from PLAINTIFF'S own surveillance cameras operating on PLAINTIFF'S own WiFi connection (the WiFi that T-Mobile has admitted the POLICE compensate).

h. On information and belief, Law enforcement contacted LAURA MARTINEZ.

**—STATE CLAIMS—**

**V.**

**FIRST CLAIM FOR RELIEF**
***Unlawful Injury or Loss Suffered by a Vulnerable Person, NRS § 41.1395***

12. PLAINTIFF incorporates by reference all other allegations in this Complaint, as though fully set forth herein.
13. PLAINTIFF is a vulnerable person as defined by NRS § 41.1395 4(e)(1-2) in that she has a physical health impairment—alopecia—and psychological health impairments—depression and anxiety—that limit one or more of her major life activities, and she has medical records of these impairments.
14. Because of her ordeal, PLAINTIFF now also suffers from a very painful skin condition called hidradenitis suppurativa, and from new psychological problems including PTSD and paranoia.
15. DEFENDANT LAURA MARTINEZ was unjustified when they inflicted injury, pain, and anguish on PLAINTIFF with their negligence and failure to provide fair and appropriate treatment to her.
16. DEFENDANT has additionally exploited the medical vulnerability of a vulnerable Nevadan, in contravention of state law.
17. DEFENDANT LAURA MARTINEZ working in tandem with law enforcement agencies are severely exacerbating PLAINTIFF'S pre-existing disabilities, in contravention of state law.
18. Accordingly, PLAINTIFF is entitled to recover all available damages, including—but not limited to—lost wages, pain and suffering, emotional distress and punitive damages, if available, as allowed by law, in an amount to be determined at trial.
19. In this particular Claim for Relief, PLAINTIFF is entitled to recover two times her damages, as allowed under NRS § 41.1395(1), in an amount to be determined at trial.

**VI.**

**SECOND CLAIM FOR RELIEF**

***Intentional Infliction of Emotional Distress***

20. PLAINTIFF incorporates by reference all other allegations in this Complaint, as though fully set forth herein.

21. DEFENDANT LAURA MARTINEZ acted to intentionally to ignore PLAINITFF'S rights, the laws and the lease. Laura allowed her mother, guests, boyfriend and children to ignore PLAINTIFF'S rights to safe living conditions, quiet enjoyment of her home and not be called racial epithets in English and Spanish.

22. DEFENDANT LAURA MARTINEZ continued to act intentionally to have law enforcement get involved in PLAINTIFF'S lease when PLAINTIFF passed a background check and had no criminal history. When LAURA MARTINEZ lied and told BDJ Realty that PLAINTIFF was stalking her when PLAINTIFF had already proven that LAURA let her children vandalize PLAINTIFF'S property, LAURA'S boyfriend was trying to block PLAINTIFF as she was trying to pass to get home and PLAINTIFF proved that the video LAURA was using was illegally obtained and doctored. LAURA MARTINTZ slandered, defamed PLAINTIFF'S character and gave libelous statements against PLAINTIFF. LAURA MARTINEZ did establish a connection between law enforcement in Northern Nevada and Southern Nevada. Plaintiff was acquitted of any and all 'stalking' charges two months before moving across the way from LAURA MARTINEZ. The only way anyone in Southern Nevada would know about PLAINTIFF being arrested for 'stalking' would be because someone from Northern Nevada notified Southern Nevada of this arrest. PLAINTIFF passed a background check with BDJ Realty before moving in and no criminal record came up in the check. Therefore, there is no other way Southern Nevada would know about an arrest or the words 'stalking' associated with the PLAINTIFF.

23. After months of showing evidence of Laura Martinez and/or her boyfriend harassing, stalking, following, falsely calling LVMPD on PLAINTIFF and letting her three children vandalize plaintiff's porch/yard unsupervised, BDJ REALTY provided PLAINTIFF's former attorney a fake videotape skimmed from PLAINTIFF'S own wifi server to try to accuse PLAINTIFF of "stalking" Laura Martinez. When PLAINTIFF asked Robert Melcic to provide the date and time of the "faked video" so PLAINTIFF can pull the footage up on her camera, nothing more was said.

24. MS. WARREN still has not been able to get a regular doctor in the Las Vegas area since negligently being thrown out by Mr. Connors and Cano Health.

25. Now, PLAINTIFF faces ongoing harassment and surveillance by LAS VEGAS METROPOLITAN POLICE DEPARTMENT and HENDERSON POLICE DEPARTMENTS even though she has committed no crime in either Clark or Washoe Counties. In order to help LAS VEGAS METROPOLITAN POLICE DEPARTMENT in their ongoing litigation, LAURA MARTINEZ negligently involved herself in PLAINTIFF'S police misconduct cases.

26. As a result of the actions of the DEFENDANT, the PLAINTIFF has suffered severe emotional distress and physical harm.

27. The intentional behavior of DEFENDANT is the direct and proximate cause of PLAINTIFF'S deteriorated health and ongoing mental anguish.

28. Accordingly, PLAINTIFF is entitled to recover all available damages, including—but not limited to— lost wages, pain and suffering, emotional distress and punitive damages, if available, as allowed by law, in an amount to be determined at trial.

## VII.

## FOURTH CLAIM FOR RELIEF

***Civil Conspiracy***

29. PLAINTIFF incorporates by reference all other allegations in this Complaint, as though fully set forth herein.

30. In Nevada, "[a]n actionable civil conspiracy is a combination of two or more persons who, by some concerted action, intend to accomplish some unlawful objective for the purpose of harming another which results in damage." Collins v. Union Fed. Savings Loan, 99 Nev. 284, 303 (Nev. 1983).

31. PLAINTIFF has been harassed by LAS VEGAS METROPOLITAN POLICE DEPARTMENT and HENDERSON POLICE DEPARTMENT since moving to Southern Nevada.

32. PLAINTIFF has never been convicted of a crime in Las Vegas or Clark County, so it is a mystery why LAS VEGAS METROPOLITAN POLICE DEPARTMENT or HENDERSON POLICE DEPARTMENT would harass her—but for their knowledge that she is disliked by SPARKS POLICE DEPARTMENT and law enforcement in general.

33. It would be unlawful for LAS VEGAS METROPOLITAN POLICE DEPARTMENT and HENDERSON POLICE DEPARTMENT to do the following without a warrant and without probable cause (this list is not exhaustive):

a. Surveil Ms. WARREN at her Airbnb right when she moved to Las Vegas;

b. Place Ms. WARREN under investigation right when she moved to Las Vegas;

c. Participate in frustrating Ms. WARREN's access to her property as it was being transported south by U-Haul;

d. Release Ms. WARREN'S booking photo from Washoe County to her new, Las Vegas employer long after she had been released from jail;

e. Tail Ms. WARREN in her car whenever she is driving in Las Vegas, using a rental car or taking a Lyft or Uber;

f. On information and belief, conspire with the property managers at Ms. WARREN's apartment building to entrap Ms. WARREN in perceived community standard violations using videos "skimmed" from her own surveillance cameras operating on PLAINTIFF'S own WiFi

g. Intercept Ms. WARREN'S telecommunications, including her telephone and internet connection, as by paying for the connection out of a "police account."

h. Stop or interfere with PLAINTIFF and/or PLAINTIFF'S mother from obtaining medical help in either Northern or Southern Nevada. Medical help includes dental, medical, psychiatric, physical rehabilitation, psychology and any other "medical" help they may need.

i. Conduct false wellness checks based on hearsay and erroneous information from unknown sources.

34. If LAS VEGAS METROPOLITAN POLICE DEPARTMENT or HENDERSON POLICE DEPARTMENT has a cognizable warrant or probable cause against Ms. WARREN for an alleged violation of the law in Clark County, PLAINTIFF asks to see that document.

35. Barring this, her treatment by LAS VEGAS METROPOLITAN POLICE DEPARTMENT and HENDERSON POLICE DEPARTMENT is harassment meant to frighten, embarass and belittle her.

36. To the extent that LAS VEGAS METROPOLITAN POLICE DEPARTMENT and HENDERSON POLICE DEPARTMENT illegally undertakes such treatment of Ms. WARREN at the behest of or for the benefit of SPARKS POLICE DEPARTMENT in Washoe County, the three police departments are engaged in a civil conspiracy with one another against Ms. WARREN.
37. The "primary purpose" of such partnership is not protection of the community, but rather, "to cause injury" to Ms. WARREN, who is alone but for taking care of her elderly mother. Ungaro v. Desert Palace, Inc., 732 F. Supp. 1522, 1533 n.3 (D. Nev. 1989).
38. And such civil conspiracy, based in intentional tort, is illegal in this state.
39. Accordingly, PLAINTIFF is entitled to recover all available damages, including—but not limited to— lost wages, pain and suffering, emotional distress and punitive damages, if available, as allowed by law, in an amount to be determined at trial.

## —REMEDIES COMMON TO ALL CLAIMS—

## XII.

## *Declaratory Relief*

50. PLAINTIFF incorporates by reference all other allegations in this Complaint, as though fully set forth herein.
51. Pursuant to NRS 30.030, NRS 30.100, NRS 651.090(2)(a), and the Court's inherent equitable powers, PLAINTIFF seeks, and is entitled to have, declaratory relief awarded in her favor, to declare her rights and obligations of the DEFENDANT sued herein, where such declaratory relief is necessary and proper to the termination of the disputes raised herein, including as specifically prayed for below.
52. This includes declaratory relief whereby the Court issues a declaration that DEFENDANT unlawfully discriminated against, harassed, and retaliated against PLAINTIFF and otherwise violated PLAINTIFF'S rights under the law, and any other declaration the Court finds necessary and proper.

## XIII.

## PRAYER FOR RELIEF

WHEREFORE, PLAINTIFF prays for judgment against the DEFENDANT as follows:
1. For general damages in an amount in excess of $250,000.00;
2. For special damages in an amount in excess of $250,000.00;
3. For past and future compensatory damages, and other expenses incurred by reason of DEFENDANTS' intentional misconduct, acts, omissions, carelessness, recklessness, negligence, gross negligence, deliberate indifference, and other culpable conduct, described herein, in an amount in excess of $250,000.00;
4. For punitive and exemplary damages as allowed by law;
5. For costs of the suit incurred herein;

Case 2:23-cv-01065-GMN-NJ Document 153 Filed 05/12/23 Page 46 of 109

6. PLAINTIFF'S medical expenses as a result of DEFENDANT'S actions and conduct.

Dated this 10th day of May, 2023.

Allanna Warren

Pro Se Name Allanna Warren

CERTIFICATE OF SERVICE

I hereby certify that I sent the foregoing COMPLAINT JURY TRIAL DEMANDED for electronic filing to the Eight Judicial District Court on the 10th day of May, 2023. I caused the foregoing COMPLAINT JURY TRIAL DEMANDED to be served as follows:

[ ] BY U.S. MAIL: By placing a true and correct copy of the same to be deposited for mailing in the U.S. Mail in Las Vegas, Nevada, enclosed in a sealed envelope upon which First-Class postage was fully prepaid to the following address:

[ ] BY PERSONAL SERVICE: By hand delivery of the document(s) listed above to the person(s) at the following address:

[ X ] BY ELECTRONIC FILING: By EFS service pursuant to Rule 5(b)(2)(E) of the NRCP and Rule 9 of the NEFCR.

[ ] BY ELECTRONIC MAIL: By e-mail, consented to in writing, pursuant to Rule 5(b)(2)(F) of the NRCP at the following e-mail address:

Allanna Warren
PLAINTIFF

Electronically Filed
5/6/2023 11:33 PM
Steven D. Grierson
CLERK OF THE COURT

Allanna Warren
9620 S. Las Vegas Blvd., Suite E461
Las Vegas, NV 89123
D1A2N3N4@PROTON.ME

CASE NO: A-23-870268-C
Department 5

DISTRICT COURT

CLARK COUNTY, NEVADA

| | |
|---|---|
| ALLANNA WARREN,<br>Plaintiff,<br>vs.<br>BDJ REALTY ET. AL.,<br>Defendant | Case No.:<br>Dept. No.:<br>COMPLAINT JURY TRIAL DEMANDED |

Plaintiff, ALLANNA WARREN, hereby submits her COMPLAINT JURY TRIAL DEMANDED. Plaintiff complains against BDJ Realty as follows.

## I.

## STATEMENT OF THE CASE

This case is linked and related to two police misconduct cases currently in litigation. The first case is against the City of Sparks et. al. and The county of Washoe Jail et. al in the Second Judicial District case number CV2201525. The second case is against Las Vegas Metropolitan Police Departments (LAS VEGAS METROPOLITAN POLICE DEPARTMENT) in the US District Court with case number 2:23-cv-00065-GMN-DJA. After an unlawful detainment on June 14, 2020 and an unlawful arrest on June 20, 2020 by Sparks Police officers Ginger Miller, Ryan Patterson and Daniel Jones, PLAINTIFF and her elderly mother were harassed, followed, stalked, illegally surveilled, had their communications devices illegally monitored and would go into any business, school, store, retail business, apartment, doctor's offices, townhome,

employers (Anthem Blue Cross and Blue Shield (BCBS), AppleOne and HILTON GRAND VACATIONS), box store like Walmart, 99 Cent Only Stores or Dollar Tree, private home or any place PLAINTIFF and her mother visited even once and slander, libel and character assassinate them both. Law enforcement would illegally stalk and follow MS. WARREN to continue the harassment, slander, libel and character assassination to landlords, neighbors, employees, co-workers, supervisors, doctor's office staff, doctors, physician assistants etc. in Southern Nevada as well. Ms. WARREN had no criminal record at the time of her arrest and should have been released on her own recognizance. Regardless of this, Ms. WARREN languished in WASHOE COUNTY JAIL for a week, from June 20, 2020 to June 26, 2020. During this *entire* time, she was placed in solitary confinement for no reason. By "solitary confinement," PLAINTIFF means that she was in a small, separate place in the basement of the WASHOE COUNTY JAIL, completely alone, and that this place only had room for one person. Ms. WARREN languished in this small space for six solid days. She was given no reason for her segregation from the main jail population. The charges against Ms. WARREN were entirely dropped on September 15, 2021.

Washoe County had a motive for disliking Ms. WARREN. From August 5, 2019 to September 24, 2019, WARREN had actually worked for Washoe County in their Alternative Sentencing Department. In that capacity, she worked in a makeshift crime lab near to the county courthouse. There, she was expected to analyze evidence chemically despite having no formal scientific training. Ms. WARREN'S hiring for the lab was rushed and did not meet typical employment protocols. In the lab, which was not properly licensed, Ms. WARREN regularly worked with caustic chemicals but was given no personal protective equipment (PPE) to perform her work. The lab had no eye wash station, no labels for chemicals, and no hazardous waste

disposal. Without hazardous waste disposal, corrosive chemicals were being left in the trash where they could leach into the water system outside. On September 23, 2019, Ms. WARREN went to the hospital with contact dermatitis acquired as a direct result of her unsafe employment. The next day, she complained to the Occupational Safety and Health Administration (OSHA) about the conditions in the lab and gave her supervisor a doctor's note.

Ms. WARREN was fired by Washoe County at around 6 PM on Tuesday, September 24, 2019. When Nevada OSHA investigated Washoe County, County was fined upwards of $4,000 for facilities violations as a direct result of Ms. WARREN's complaint regarding unsafe working conditions. Prior to working for the Alternative Sentencing Department of Washoe County, Ms. WARREN worked as an administrative assistant at China Spring Youth Camp in Douglas County. In this capacity, Ms. WARREN observed that the camp was doctoring their accounting files and was prescribing psychotropic medication to children under 18 in exchange for Medicaid subsidies. Rather than go along with these financial malfeasance schemes as her supervisor expected her to, Ms. WARREN reported what she saw to the state and was subsequently fired. Ms. WARREN had worked at the camp for eleven months and one week and was fired right before her probationary period was over.

A Northern Nevada judge, named Pete Sfrazza, had a son, Giovanni Sfrazza, who was incarcerated at the camp. This judge was best friends with another judge, Judge Tod Young, who oversaw the camp. When Ms. WARREN was hired by Washoe County, Pete Sfrazza was overseeing the Alternative Sentencing Department. The same judge whose son had once been incarcerated at China Spring at the time when Ms. WARREN brought her concerns about the juvenile facility to state regulators. In June of 2021, China Spring Youth Camp temporarily

closed the half of its camp dedicated to the care of boys due to, among other problems, "financial instability."

The police misconduct problems for Ms. WARREN did not stop in Washoe County or Northern Nevada. In November 2021, during a training course for her new job, working for AppleOne Temporary Agency and placed at Anthem BCBS in Las Vegas, a co-worker named Glenn Taylor teased Ms. WARREN by showing her a copy of her booking photo that had been taken when she was arrested. Ms. WARREN suffers from alopecia. When she was booked by the police in Sparks on June 20, 2020, OFFICER MILLER removed Ms. WARREN'S hat before her booking photo was taken, so Ms. WARREN appears bald in the photo. Somehow, Ms. WARREN's co-workers, Glenn Taylor, Gennifer Ross, Tyranisha Watson, Rachel Post and others, got their hands on this photo, and stated that he had actually gotten the photo from their training instructor, Shelia Williams of Anthem Blue Cross and Blue Shield. Thereupon, Ms. WARREN's classmates in the training program teased her with photos of bald people and Shelia Williams harassed her also. The booking photo cannot be found online. Ms. WARREN called the Washoe County Sherriff's Office, who stated to her that such a photo is only a public record when an individual is incarcerated, but that after incarceration is over, the photo is removed from their website. The Washoe County Sherriff's office additionally stated that the only way the picture could be released at this point would be either at Ms. WARREN's own request for it, or, in response to a request from someone inside SPARKS POLICE DEPARTMENT. Therefore, on information and belief, SPARKS POLICE DEPARTMENT impermissibly released Ms. WARREN'S booking photo online or to her then current employer in Las Vegas in an effort to harass, embarrass, stalk, and belittle her. After PLAINTIFF complained about the arrest photo to her employer, she was placed on administrative leave and ultimately fired by Apple One

Temporary agency. It is also possible that LAS VEGAS METROPOLITAN POLICE DEPARTMENT additionally had a hand in the booking photo getting released to Ms. WARREN'S new employer in Las Vegas.

Ms. WARREN has been the victim of a wide variety of suspicious behavior at the hands of LAS VEGAS METROPOLITAN POLICE DEPARTMENT since having moved from Reno to Las Vegas in July 2021. Ms. WARREN regularly finds herself followed by both uniformed and plain clothes LAS VEGAS METROPOLITAN POLICE DEPARTMENT officers when she leaves her apartment building by car, taxi, Uber, Lyft or rental car. She cannot take videos of this behavior when she is alone in her car for fear of being pulled over for using a cell phone while driving. Ms. WARREN'S mother is elderly and disabled and also cannot take videos of this behavior on the rare occasions when she is in the car alongside her daughter. Prior to her ordeal, Ms. WARREN suffered from anxiety, depression, and alopecia. Now, subsequent to her ordeal at the hands of SPARKS POLICE DEPARTMENT and LAS VEGAS METROPOLITAN POLICE DEPARTMENT, PLAINTIFF additionally suffers from PTSD and paranoia. Following her confinement, and likely due to stress and the filthy conditions inside the WASHOE COUNTY JAIL, Ms. WARREN developed hidradenitis suppurativa, a painful skin condition that causes small, painful lumps to form under her skin. Following her jailing, MS. WARREN developed these sores and pustules all over her body, for she sought the help of a dermatologist.

After fleeing Northern Nevada to try to escape the relentless retribution from law enforcement there, PLAINTIFF and her mother moved to Las Vegas Nevada in July 2021. On November 1, 2021 PLAINTIFF contacted BDJ Realty and spoke with Bo Jones. After speaking to Bo Jones on the phone, Ms. Jones advised MS. WARREN to speak to Laura Van Hine, Bo's assistant. From this point forward MS. WARREN only spoke and dealt with Ms. Van Hine

concerning renting from BDJ Realty. In following conversations, MS. WARREN informed Laura Van Hine that PLAINTIFF had a cat that would be moving into the unit located at 5821 Smoke Ranch Road, Unit C Las Vegas NV 89108. Ms. Van Hine told the PLAINTIFF that having the cat was fine with her and BDJ Realty and Laura thanked MS. WARREN for being honest. On November 3, 2021 PLAINTIFF and her mother applied for the unit and was approved on November 5, 2021. PLAINTIFF and her mother passed the rental background check with flying colors, including the over 700 credit score requirement. The year lease started on November 7, 2021 and ended November 30, 2022. There were issues almost immediately upon moving into the unit. PLAINTIFF was not given a key that worked in the door. PLAINTIFF informed Ms. Van Hine of this issue. Ms. Van Hine's daughter brought over a key that did not work either. It must be noted that PLAINTIFF nor PLAINTIFF's mother has ever met, seen nor spoke to in person anyone from BDJ Realty until the date of this complaint. On November 21, 2021 PLAINTIFF informed Laura Van Hine that the neighbors in Unit B were playing extremely loud music after the quiet hours of 10pm. Despite Laura stating that, "The HOA has been notified of the noise complaint," this loud noise continued throughout the lease term. On November 26, 2021 PLAINTIFF wrote the HOA about the tenants living in 5817 Smoke Ranch Unit B who were lurking around PLAINTIFF'S door and steps. PLAINTIFF attached video evidence to the email and stated, " I [PLAINTIFF] will have visitors and don't want them having to go through a strange man loitering around my door." This email dated 11/26/2021 was the first time PLAINTIFF mentioned the harassment from Laura Martinez who lives at 5821 Smoke Ranch Unit D Las Vegas NV 89108. In this email to the HOA PLAINTIFF states, "I also have footage of the kids from 5821 Unit D in front of my home. I don't have kids and believe their parents should keep watch of them. I have not been in this neighborhood long but seeing the

strange man loitering around my door should alarm any parent, especially parents of young girls under 10 years old." Right away Laura Martinez allowed her three children to play unsupervised all up and around PLAINTIFF'S front porch and yard. The response from the HOA was "We cannot take any kind of action needed for the property from a tenant." There was no concern expressed by the HOA. On December 12, 2021 Plaintiff informed BDJ Realty that Laura Martinez harassed her. In this email PLAINTIFF stated, "this evening i was harassed from the people from number D. She tried to stand in front of me to ask me about some items. She went to the neighbors across the way. I did not say anything to her and ignored her. She yelled at me for no reason. I am new to this neighborhood and am not sure what kind of neighbors I have but so far it has been a little scary. Please address this. She had her video tape and saw me basically ignore her as she yelled at me. The lady from the next building came over and they both talked loud. The lady from D had her children on my side as well again unsupervised. I have video attached to back up what I am reporting. I don't' want any trouble! Please help. I also have attached a copy of the animal control who was called out here for her mom's dogs off leash." Laura Martinez had two dogs unleashed and allowed both to urinate and defecate right in front of PLAINTIFF'S house. Animal Control came to the residence and Laure got a ticket. The pattern of dogs being off leash is a continuation of what Steven and Alana Saults did in Sparks Nevada in 2020. This pattern is proof of Sparks law enforcement involving themselves in PLAINTIFF's affairs in Las Vegas. PLAINTIFF was clearly upset and scared because she emphasized to BDJ Realty and the HOA that, "I [PLAINTIFF] don't' want any trouble! Please help." Bo Jones's response to PLAINTIFF'S concerns was ," You are living in a privately owned townhome/condo community and space is tight." The disparate treatment between PLAINTIFF and Laura Martinez was becoming apparent right away. PLAINTIFF responded, " What ever that tenant

was yelling and harassing me about I have no idea. But her children were unsupervised and playing on my side of the property. You clearly saw it was not in the common area. I want to make sure I am keeping a written documentation for future reference. I appreciate you and the HOA taking my complaints seriously and addressing them ASAP! I appreciate it Bo. That's why I made sure to include the leash law they violated with the City of Las Vegas!" BDJ Realty did not care about the PLAINTIFF or that Laura Martinez broke the law by allowing her two dogs to be off leash and urinate and defecate in PLAINTIFF'S front yard. PLAINTIFF became aware that the owner's of Laura Martinez's unit and the owners of PLAINTIFF'S unit were the same. Therefore, the PLAINTIFF was benign racially discriminated against by BDJ Realty. In January 2022 PLAINTIFF had video tape proof that workers from Chip N Dales landscaping were vandalizing and creating property damage intentionally at PLAINTIFF's house. PLAINTIFF informed the HOA and BDJ Realty. On 1/31/22 PLAINTIFF was informed by Michelle Howard, Projects Manager for Kallfelz Team Association Mgt. LLC, that their company is no longer the HOA for Ashford Park. This was the first time PLAINTIFF was informed of this information, which is in violation of PLAINTIFF'S lease. PLAINTIFF was to be informed of any changes to the HOA or the HOA rules according to the lease signed on 11/7/21.

Another of PLAINTIFF'S neighbors, named Michael Silva, spent his time harassing PLAINTIFF along with Laura Martinez. On information and belief this neighbor harassment was at the behest of the LAS VEGAS METROPOLITAN POLICE DEPARTMENT (LVMPD). On February 7 and 8, 2022 Michael Silva called the LVMPD to PLAINTIFF'S house on false calls.

Michael Silva is guilty of violating H.R.6003 – 115th Congress Anti-Swatting Act of 2018, which states "bill amends the Communications Act of 1934 to provide for enhanced penalties for the transmission of misleading or inaccurate caller identification information with the intent to trigger an emergency response by: (1) a law enforcement agency of the United States, a state, or a political subdivision of a state…" and NRS 207.161 TO 207.167 – EMERGENCY COMMUNICATIONS INTERFERENCE. Michael should be held accountable for making two false 911 swatting call on February 7, 2022 and February 8, 2022.

In the video evidence PLAINTIFF has, the LVMPD officer's pound, loudly knock, use their batons on PLAINTIFF'S windows and yell at the top of their lungs for the PLAINTIFF. MS. WARREN had committed no crime on either day and she had no idea why the LVMPD were at her door. After contacting the Las Vegas records office, PLAINTIFF found out that Michael Silva called both times stating that he was harassed by hearing the PLAINTIFF whistle, laugh and sing near her home and he did not like that. LVMPD acted like the PLAINTIFF killed someone on a false call from a racist neighbor because she laughed, sang and whistled near her home. On 2/8/22 Bo Jones emailed PLAINTIFF'S mother stating, "Dear Nancy, I need to speak to you ASAP about Allanna." PLAINTIFF emailed Bo to discuss why Bo was contacting PLAINTIFF'S mother about the PLAINTFF who is a grown woman. Bo wanted to discuss the LVMPD coming to PLAINTIFF'S house two days in a row. PLAINTIFF then emailed Ms. Jones and asked how she knew about LVMPD coming to PLAINTIFF's house two days in a row. Instead of answering specifically, Bo Jones starts with hearsay. She writes, "We have received reports from several of your neighbors that you are not acting normal." Bo Jones even says that the neighbors were complaining about PLAINTIFF whistling & giggling'. PLAINITFF asked Ms. Jones where in the Las Vegas Penal code does it say whistling and singing or giggling is against the law. Is whistling, giggling or singing a felony or misdemeanor? Once again, the

desperate treatment is evident. Instead of Bo Jones addressing PLAINTIFF's complaints, she starts with hearsay, inuendo and feelings from unknown neighbors. This is the same pattern that happened with Steven and Alana Saults before the false arrest in 2020 to which Sparks PD and Washoe county jail are being sued for right now. PLAINTIFF asked Ms. Jones what neighbors were complaining and why PLAINTIFF was just informing of any complaints? On information and belief, the LVMPD prompted Bo Jones to send this email. Bo Jones continued to lodge false allegations at PLAINTIFF, however PLAINTIFF had never heard the allegations before. When PLAINTIFF asked for specifics she was ignored. Then Bo Jones brings up the PLAINTIFF'S cat. PLAINTIFF informed Bo Jones that Laura Van Hine knew about the cat before PLAINTIFF moved in and she approved the cat. Bo Jones lies and says Laura doesn't recall the conversation and PLAINTIFF owes an extra deposit for the cat. PLAINTIFF, wanting to stay at the residence, complied and gave BDJ Realty an additional $250.00. Bo Jones had a very hateful, visceral tone in her emails to PLAINTIFF, to which PLAINTIFF asked what the meaning was. PLAINTIFF was ignored by Bo Jones.

On April 15, 2022 PLAINTIFF got her former attorney, Robert Melcic, involved in the Landlord/tenant matter. PLAINTIFF sent Robert Melcic's girlfriend and law Clerk Gigi Genereaux an email on 4/18/22 stating, "Would you please get the name if the large Mexican woman in unit d. She and her boyfriend are stalking me. For the past week they have had people watch, follow and stalk me on my way to and from work. Tonight, and its on video, her, her boyfriend (who is about 700 pounds) and a friend who drove a white 4 door car, were waiting for me as I came home after work at almost midnight. Someone told them i was driving up because on camera they came outside at the same time. They were talking loud and laughing speaking Spanish. I would greatly appreciate it. Now she is attempting to try to intimate us."

Laura Martinez and Michael Silva were pawns in law enforcement's quest to get some sort of evidence against PLAINTIFF.

BDJ Realty had faulty appliances installed inside PLAINTIFF'S unit. On 4/19/22 PLAINTIFF'S refrigerator stopped working. PLAINTIFF informed BDJ Realty on the same date in a maintenance request. The refrigerator had to be worked on twice during PLAINTIFF'S tenancy. Once it was "fixed" by a maintenance worker who said that Bo Jones will never really fix the problems but merely 'tape' over the problem. This statement was true because after the initial "fixing' of the fridge, it went completely out before the lease was over. PLAINTIFF had to acquire her own refrigerator and fridge at her own expense. BDJ Realty also turned PLAINTIFF'S water off without warning. PLAINTIFF had to call the emergency line of the Clark County Code Enforcement to report the water being shut off illegally. During this time PLAINTIFF had a full time job she was trying to keep at Hilton Grand Vacations. With all the harassment, stalking, maintenance issues, false police calls and discrimination from BDJ Realty and neighbors, PLAINTIFF had to take extra time off work to solve all these issues. Krys Wainwright, PLAINTIFF'S supervisor at Hilton Grand Vacations, would have to either let PLAINTIFF come to work late or leave early to take care of "home business." PLAINTIFF has an elderly mother who would get frightened about the constant harassment. Because of the constant stalking, everyone knew when PLAINTIFF left home for work. So, the harassment would start as soon as PLAINTIFF was out of sight of the residence at 5821 Smoke Ranch Road.

At the same time of the unit falling apart, Bo Jones started posting evictions notices, every two weeks, on PLAINTIFF door. The notices were not about nonpayment of rent but for being a nuisance. It must be noted that despite what BDJ Realty put PLAINTIFF though, PLAINTIFF paid her rent every month on time if not early and met the contract. The pattern

was that two weeks after BDJ accepted the rent, then an eviction notice was posted. Finally on, May 5, 2022 Gigi wrote BDJ Realty discussing the eviction notices and the creative accounting BDJ realty used to accuse PLAINTIFF of owing 'legal notice fees." It also came to light, via Robert Melcic, that Bo Jones, BDJ Realty nor the HOA have a valid business license in the state of Nevada. After dealing with Bo Jones for the short time that they had, the Law Firm of Robert Melcic concluded that, "We do not at all dispute that Bo Jones is a liar and a bad person. She has shown us multiple times in phone calls that she is both stupid and inconsistent. But it is often the dumbest people who are the most dangerous." Every time BDJ Realty posted an eviction notice, PLAINTIFF and her former attorney noticed that BDJ Realty never really filed anything in court and each notice wasn't conformed. This is harassment per PLAINTIFF's former attorney because Bo Jones' method is malicious and intentional. The next phase of the harassment was the HOA violations. On 5/15/22 BDJ Realty informed PLAINTIFF that she was in violation for a BBQ grill being outside her residence. This BBQ grill had been sitting outside PLAINTIFF's residence since December 2021 after UHAUL returned PLAINTIFF's belongings after being illegally confiscated by LVMPD. So, PLAINTIFF knew the HOA violation was further retaliation, discrimination and harassment. The similarities of the fraudulent violations are the same from Reno. At PLAINTIFF'S Reno apartment, her BBQ grill was being attempted to be used as a lease violation at Aspen Ridge apartments. These patterns can't be ignored as they link police involvement from Northern Nevada to law enforcement in Southern Nevada. PLAINTIFF received numerous HOA violations and always provided picture evidence of other resident's violating the exact thing and nothing was said or done to them. PLAINTIFF submitted a Nevada Equal Rights Commission (NERC) complaint against BDJ Realty in October 2022. PLAINTFF had charges drawn up and served upon Bo Jones and BDJ Realty. At first

NERC informed PLAINTIFF that Bo Jones wanted to settle the charges brought against her, then PLAINTIFF was informed that NERC can cannot pursue their investigation because PLAINTIFF is suing BDJ Realty.

PLAINTIFF and her mother moved out of the unit on 11/30/2022. PLAINTIFF cleaned the entire unit and took pictures and video of the unit after cleaning the unit. PLAINTIFF left the keys on the kitchen counter of the unit before leaving. As PLAINTIFF moved out of the unit Laura Martinez's mother came out of Unit D and called the PLAINTIFF a Mayete which is Spanish for Nigger. On 11/27/22 MS. WARREN requested the return of her entire security deposits from BDJ Realty. To this date PLAINTIFF has not received any security deposits back from BDJ Realty.

PLAINTIFF has preexisting conditions that stress and anxiety exacerbate. After the harassment, mental anguish and racial discrimination BDJ Realty subjected PLAINTIFF to she had to see a doctor. Since PLAINTIFF moved to Las Vegas she has had issues trying to find suitable medical treatment because of the constant police involvement in MS. WARREN's civil matters. PLAINTIFF's first appointment with Hilton Grand Vacations located at 5701 W Charleston Blvd, Unit 100, Las Vegas, NV 89146 was on November 18, 2022. At this appointment MS. WARREN saw Physician's assistant Jesse Connors. In this appointment PLAINTIFF explained that law enforcement chased her and her mother out of Northern Nevada and that LAS VEGAS METROPOLITAN POLICE DEPARTMENT has picked up the harassment where Northern Nevada Law enforcement left off. PLAINTIFF explained that she has a history of depression, anxiety, asthma and other ailments that stress exacerbated. PLAINTFF asked Mr. Connors to obtain copies of her medical records from her medical facility in Reno Nevada. It was revealed later that Mr. Connors never sought to obtain copies of

PLAINTIFF's medical records from her previous medical facility in Reno as she asked on 11/18/22. MS. WARREN asked Mr. Connors for a referral for mental health as law enforcement's constant interference was affecting her negatively. Mr. Connors said that he would obtain medical records from PLAINITFF'S previous medical facility and would get her a mental health referral. Mr. Connors suggested that PLAINTIFF get an EKG, get a chest x ray and he would set up an appointment for a Pulmonary Function Test (PFT). Without an evaluation or ever treating PLAINTIFF, Mr. Connors prescribed MS. WARREN 10mg tablets of Escitalopram with two refills. Escitalopram is part of a Bi-Polar treatment. However, PLAINTIFF had not been diagnosed with bi-polar disorder by anyone. A major warning for this medication is that one should seek medical attention right away if you have symptoms of serotonin syndrome, such as: agitation, hallucinations, fever, sweating, shivering, fast heart rate, muscle stiffness, twitching, loss of coordination, nausea, vomiting, or diarrhea. MS. WARREN had never been on this medication and was not informed of any side effects of the medication before taking it per Mr. Connors instructions. MS. WARREN was not on any mental medication before encountering the treatment from BDJ Realty, Laura Martinez, Michael Sliva, Hilton Grand Vacations, Dollar Tree, Cano Health, T-mobile, Southwest Airlines, Hilton, Apple One, Anthem Blue Cross and Blue Shiels, VIP Auto Services nor Walmart.

Mr. Connors told PLAINTIFF that the scheduling department would be contacting her shortly after her 11/18/22 visit. Immediately after the appointment with Mr. Connors, his medical assistant, Juliana Ramirez, took MS. WARREN to get her EKG test. While in the room Juliana instructed PLAINTIFF to undress above the waist, including removing her bra and shirt. PLAINTIFF complied with the instructions. The EKG was performed by Ms. Ramirez. After the testing, Juliana instructed PLAINTIFF to keep her bra off but put on her shirt because she

was going to get her chest Xray. PLAINTIFF complied with these instructions as well. Juliana led MS. WARREN to a chair outside a small room. A Hispanic male came out of the small room and asked PLAINTIFF her name. MS WARREN told the male her name and he led her inside the room. After the chest x ray, the male instructed PLAINTIFF to "get dressed" in the same room. The male could see the PLAINTIFF clearly and she inquired about the visibility of dressing in front of the male. The male told MS. WARREN that everyone gets dressed in the room with him in the room. Outside the small room, PLAINTIFF saw a bathroom right next to the room and wondered why the male would not have instructed her to change inside the bathroom right next door.

MS. WARREN's mother is over 70 years old so having a medical provider in close proximity is paramount to her health. PLAINTIFF, despite her apprehensions, recommended Hilton Grand Vacationsto her mother. On 11/29/2022 PLAINTIFF's mother went to an appointment with Mr. Connors at the Hilton Grand Vacationslocated at 5701 W Charleston Blvd, Unit 100, Las Vegas, NV 89146. Mr. Connors told PLAINTIFF's mother that he would be getting her medical records from her medical facility in Carson City just like he told the PLAINTIFF. PLAINTIFF's mother is not sure if Mr. Connors actually sought to obtain those records. Mr. Connors also advised MS. WARREN's mother to get a PFT, get a chest x ray and be seen by a Ear Nose and Throat (ENT) specialist. Immediately after the appointment, PLAINTIFF went to the waiting room and PLAINTIFF's mother went to get her chest x ray. Upon exiting Hilton Grand Vacations PLAINTIFF's mother told her that she experienced the same "undressing" incident that PLAINTIFF had with the male who conducts the x rays. PLAINTIFF could see her mother was uncomfortable and this bothered her immensely.

Case 2:23-cv-00065-GMN-DJA Document 152 Filed 05/22/23 Page 63 of 109

It has to be noted that before the 11/29/22 appointment at Cano Health, which was scheduled at 10:30 am, PLAINTIFF and her mother were stalked and followed by LAS VEGAS METROPOLITAN POLICE DEPARTMENT officers. They were pulled over by a black male officer who was the driver of the police SUV and had a white female officer in the passenger seat. PLAINTIFF knows they were being stalked and followed because PLAINTIFF and her mother had just moved into a new place, less than a week before being pulled over by LAS VEGAS METROPOLITAN POLICE DEPARTMENT, and no one had their new address. There would have been no way LAS VEGAS METROPOLITAN POLICE DEPARTMENT had their new address, without illegally stalking, following and monitoring the PLAINTIFF and her mother as their new place is in another city/jurisdiction and far away from their previous home where LAS VEGAS METROPOLITAN POLICE DEPARTMENT were falsely called multiple times by PLAINTIFF'S neighbors. In the previously mentioned police misconduct cases involving LAS VEGAS METROPOLITAN POLICE DEPARTMENT, neighbors Laura Martinez and Michael Silva are named, with video evidence, as being the culprits who were prompted by LAS VEGAS METROPOLITAN POLICE DEPARTMENT to call them so PLAINTIFF could be falsely arrested again or evicted.

PLAINTIFF's mother, had her PFT scheduled for 12/8/22. While in the waiting room the PFT specialist, his name is Uday, approached MS. WARREN's mother and told her that he does not have the mouth pieces, which are mandatory to conduct the test, and he has no idea when he would get them and that she needs to reschedule her PFT somewhere else as he was going out of town on a vacation for two months. There was no forewarning or a courtesy call to inform PLAINTIFF'S mother of this issue.

Case 2:23-cv-00106-GMN-DJA Document 53 Filed 05/02/23 Page 64 of 109

PLAINTIFF's mother had her Ear Nose and Throat (ENT) appointment on 12/12/22 with Dr. Kim of the UNLV medical center located at 5320 S. Rainbow, Suite 250 Las Vegas, NV. While in her appointment PLAINTIFF and her mother complained to Dr. Kim about their treatment by Cano Health. They both explained what happened with "undressing" in front of a male x ray tech, Uday having no equipment to conduct PFTs for patients with breathing issues, and just the entire medical negligence of Cano Health. Dr. Kim thanked both ladies for their honesty and informed them that he would take their concerns seriously and inform the proper authorities. Dr. Kim told PLAINTIFF and her mother that he did not want to send any of his patient's to this medical facility after hearing their horror stories. PLAINTIFF and her mother noticed a LAS VEGAS METROPOLITAN POLICE DEPARTMENT SUV parked outside the medical facility during the mother's appointment. They made a comment to Dr. Kim and noticed that the LAS VEGAS METROPOLITAN POLICE DEPARTMENT SUV did not leave until right before the appointment was over. Again, this proves the constant stalking, following, surveilling, monitoring etc. by law enforcement illegally.

During the month of November and December PLAINTIFF heard from the Hilton Grand Vacations scheduling department. They informed MS. WARREN that Axis psychiatry would be scheduling her an appointment. MS. WARREN heard from Axis and they scheduled her for an appointment on 12/26/22. Later in December when PLAINTIFF called Axis to confirm the appointment the receptionist told PLAINTIFF that their building was closed due to the observance of Christmas on 12/26/22. When PLAINTIFF inquired as to why she was scheduled for an appointment on a day they knew they were closed PLAINTIFF received no response. Then PLAINTIFF was informed that Axis would not have an appointment open for several months.

On 12/18/22 PLAINTIFF had a follow up appointment with Mr. Connors. PLAINTIFF informed Mr. Connors that Axis psychiatry scheduled her on a day they were closed and she wanted another referral. At the 12/18/22 appointment PLAINTIFF's blood pressure was extremely high as she had been chased around the Hilton Grand Vacationsparking lot by strangers and had several LAS VEGAS METROPOLITAN POLICE DEPARTMENT squad cars tailing her from her new home to the appointment. PLAINTIFF was scared and her blood pressure exhibited this. Mr. Connors had PLAINTIFF's blood pressure checked several times and it was elevated the entire time. Having law enforcement involving themselves in every aspect of PLAINTIFF's life was affecting her health.

PLAINTIFF waited to hear from Cano Health's scheduling department to schedule another psych appointment. PLAINTIFF ended up calling Hilton Grand Vacationsas she did not hear from the scheduling department as expected. PLAINTIFF was informed that she would have to call around Las Vegas for a psych doctor as their scheduling department would not help her. PLAINTIFF informed the scheduling department that it is their job to find a doctor for the PLAINTIFF. PLAINTIFF was told that "normally" their department does call around and find doctors for patients but in PLAINTIFF's case they would not help her.

Because law enforcement went to PLAINFIFF's job at Hilton Grand Vacations (HILTON GRAND VACATIONS) and slandered her there, she was on an ongoing ADA medical leave of absence since 11/15/22. She was trying to get Short Term Disability from Lincoln Financial Group (LFG). While trying to get all the medical paperwork for LFG to make a decision, MS. WARREN was run around by Mr. Connors office and LFG. A decision on PLAINTIFF'S case was intentionally delayed from both sides. After all the stress of PLAINTIFF'S job, her mother's health, trying to get mental help, no income from any source,

law enforcement constantly bothering her, and no one helping the PLAINTIFF, all this stress was taking a toll on her health.

One of the reasons LFG denied PLAINTIFF's short term disability was because their nurse stated that PLAINTIFF was not seen from a licensed doctor or psychiatric doctor to correctly diagnose the PLAINTIFF, no evaluation was performed before giving PLAINTIFF Escitalopram and no follow up was performed by Hilton Grand Vacations Ito see if the medication was correct and helped the PLAINTIFF. Mr. Connors did not have the medical license to prescribe the PLAINTIFF any psych medication, especially with a medication like Escitalopram.

During December and January 2023 PLAINTIFF never saw Mr. Connors again until January 31, 2023. PLAINTIFF was scheduled for a Zoom appointment. During this appointment, Mr. Connors was clearly upset, and his facial expressions and treatment of PLAINTIFF exhibited this disdain. Mr. Connors stated on a recorded Zoom call that PLAINTIFF needs a doctor and Cano Health doesn't have a doctor therefore Cano Health can not see or treat the PLAINTIFF anymore.

**II.**

**JURISDICTION AND VENUE**

1. "A court of this state may exercise jurisdiction over a party to a civil action on any basis not inconsistent with the Constitution of this state or the Constitution of the United States." NRS 14.065.

2. Jurisdiction in this Court is proper because this is a complaint seeking monetary relief in excess of $10,000, the PLAINTIFF is a resident citizen of Nevada, and the DEFENDANTS BDJ Realty are a private for profit company operating in Las Vegas, Nevada.

3. Venue is proper in the Eighth Judicial District Court of Clark County because:

a. Under NRS 13.020, "Actions for the following causes must be tried in the county where the cause, or some part thereof, arose, subject to the power of the court to change the place of trial." All of the events giving rise to this claim have occurred within Clark County;

b. The PLAINTIFF currently resides in Las Vegas, Nevada, where the events or omissions giving rise to the claims of this case occurred.

Case 2:23-cv-00965-GMN-DJA Document 5-1 Filed 05/22/23 Page 20 of 28

## III.

## PARTIES

4. At all times relevant to this action, PLAINTIFF was a resident of the State of Nevada, County of Clark.
5. DEFENDANT BDJ REALTY is a private business situated in Clark County, Nevada.

## IV.

## GENERAL ALLEGATIONS COMMON TO ALL CLAIMS

6. PLAINTIFF is a forty-five year old African-American woman.
7. PLAINTIFF suffers from pre-existing alopecia, depression, and anxiety; as a result of her ordeal at the hands of BDJ REALTY, SPARKS POLICE DEPARTMENT and LAS VEGAS METROPOLITAN POLICE DEPARTMENT, she now also suffers from hidradenitis suppurativa, PTSD, and paranoia.
8. PLAINTIFF has been a resident of the state of Nevada throughout the entirety of this ordeal.
9. In July 2021, PLAINTIFF and her elderly mother moved to Las Vegas from Reno due to her fear of retribution by SPARKS POLICE DEPARTMENT.
10. Since her move, PLAINTIFF has been subject to ongoing surveillance and interference in Las Vegas by LAS VEGAS METROPOLITAN POLICE DEPARTMENT, detailed infra.
11. PLAINTIFF has had additional problems happen to her as a result of interference by, on information and belief, the LAS VEGAS METROPOLITAN POLICE DEPARTMENT; these include but are not limited to:

a. Possible involvement in PLAINTIFF'S booking photo being released to her new employer in Las Vegas;

b. Known interference with PLAINTIFF'S and her mother's property as it was being transported by U-Haul from Northern to Southern Nevada, who admitted to PLAINTIFF on the telephone their employees' collusion with both SPARKS POLICE DEPARTMENT and the LAS VEGAS METROPOLITAN POLICE DEPARTMENT when transporting and temporarily losing the property;

c. Unwarranted surveillance at PLAINTIFF'S new Airbnb upon first moving to Las Vegas;

d. Being followed by both uniformed and plain clothes LAS VEGAS METROPOLITAN POLICE DEPARTMENT officers when PLAINTIFF leaves her apartment building by car, Uber, Lyft, Taxi or rental car;

e. Being told by her internet service provider T-Mobile that the POLICE paid for her internet connection;

f. Being harassed at home, including by having LAS VEGAS METROPOLITAN POLICE DEPARTMENT bang on her door, allegedly at the behest of a neighbor, and wait around her apartment at night;

g. Being accused by the property managers at her building of violating community standards using videos skimmed from PLAINTIFF'S own surveillance cameras operating on

Case 2:23-cv-00610-GMN-DJA Document 32 Filed 05/02/23 Page 21 of 28

PLAINTIFF'S own WiFi connection (the WiFi that T-Mobile has admitted the POLICE compensate).

h. On information and belief, Law enforcement contacted Bo Jones, Laura Van Hine and BDJ REALTY.

**—STATE CLAIMS—**

**V.**

**FIRST CLAIM FOR RELIEF**

***Unlawful Injury or Loss Suffered by a Vulnerable Person, NRS § 41.1395***

12. PLAINTIFF incorporates by reference all other allegations in this Complaint, as though fully set forth herein.

13. PLAINTIFF is a vulnerable person as defined by NRS § 41.1395 4(e)(1-2) in that she has a physical health impairment—alopecia—and psychological health impairments—depression and anxiety—that limit one or more of her major life activities, and she has medical records of these impairments.

14. Because of her ordeal, PLAINTIFF now also suffers from a very painful skin condition called hidradenitis suppurativa, and from new psychological problems including PTSD and paranoia.

15. DEFENDANT BDJ REALTY was unjustified when they inflicted injury, pain, and anguish on PLAINTIFF with their negligence and failure to provide fair and appropriate treatment to her as an employee.

16. DEFENDANT has additionally exploited the medical vulnerability of a vulnerable Nevadan, in contravention of state law.

17. DEFENDANT BDJ REALTY working in tandem with law enforcement agencies are severely exacerbating PLAINTIFF'S pre-existing disabilities, in contravention of state law.

18. Accordingly, PLAINTIFF is entitled to recover all available damages, including—but not limited to—lost wages, pain and suffering, emotional distress and punitive damages, if available, as allowed by law, in an amount to be determined at trial.

19. In this particular Claim for Relief, PLAINTIFF is entitled to recover two times her damages, as allowed under NRS § 41.1395(1), in an amount to be determined at trial.

**VI.**

**SECOND CLAIM FOR RELIEF**

***Negligence and Gross Negligence***

20. PLAINTIFF incorporates by reference all other allegations in this Complaint, as though fully set forth herein.

21. DEFENDANT BDJ REALTY owes a legal duty and responsibility to PLAINTIFF.

22. DEFENDANT BDJ REALTY owed a duty of care to PLAINTIFF. Landlords are responsible for providing a safe, clean and healthy living environment for their tenants. Landlords have a responsibility to follow local building codes and state laws that lay out standards for the construction, maintenance and living standards of rental units.
23. DEFENDANT BDJ REALTY had a responsibility not to discriminate against PLAINTIFF in violation of the Americans with Disabilities Act (ADA) Amendments Act of 2008 and The Fair Housing Act, 42 U.S.C. 3601 et seq., prohibits discrimination by direct providers of housing, such as landlords and real estate companies as well as other entities, such as municipalities, banks or other lending institutions and homeowners insurance companies whose discriminatory practices make housing unavailable to persons because of race or color, religion, sex, national origin, familial status, or disability. BDJ REALTY is in violation of all of the listed responsibilities.
24. DEFENDANT'S breach of said duty and responsibilities to PLAINTIFF constituted Negligence, Negligent Hiring and Entrustment.
25. DEFENDANT breached its duty by failing to exercise the degree of care that was owed to PLAINTIFF.
26. When engaging in their culpable conduct described herein, the DEFENDANT was not only negligent, but they were grossly negligent in that they failed to exercise even the slightest amount of care, with a conscious disregard of the rights or safety of the PLAINTIFF.
27. When engaging in their culpable conduct described herein, the DEFENDANT was grossly negligent because they acted with willful, wanton, and/or reckless disregard for the safety of PLAINTIFF.
28. DEFENDANTS exhibited a conscious disregard for PLAINTIFF'S patience's' bill of rights, constitutional rights and safety when they knew the probable harmful consequences of their wrongful acts. Not providing PLAINTIFF proper care had harmful consequences including physical and mental injury to her, which DEFENDANTS recklessly, willfully, and/or deliberately failed to act to avoid.
29. Accordingly, PLAINTIFF is entitled to recover all available damages, including—but not limited to— lost wages, pain and suffering, emotional distress and punitive damages, if available, as allowed by law, in an amount to be determined at trial.

**VII.**

**THIRD CLAIM FOR RELIEF**

***Intentional Infliction of Emotional Distress***

30. PLAINTIFF incorporates by reference all other allegations in this Complaint, as though fully set forth herein.
31. DEFENDANT BDJ REALTY acted to intentionally to ignore PLAINITFF'S request for safety against Michael Silva, Laura Martinez, neighbors, neighbor's guests, vendors, maintenance workers, landscapers and strangers on the grounds.
32. DEFENDANT BDJ REALTY continued to act intentionally to have law enforcement get involved in PLAINTIFF'S lease when PLAINTIFF passed a background check and had no criminal history. When neighbors, who remained anonymous, complained against PLAINTIFF

BDJ REALTY acted on hearsay without any evidence. However, when PLAINTIFF complained and included evidence, BDJ REALTY ignored PLAINITFF and never acted on her behalf.

33. After months of showing evidence of Laura Martinez and/or her boyfriend harassing, stalking, following, falsely calling LVMPD on PLAINTIFF and letting her three children vandalize plaintiff's porch/yard unsupervised, BDJ REALTY provided PLAINTIFF's former attorney a fake videotape skimmed from PLAINTIFF'S own wifi server to try to accuse PLAINTIFF of "stalking" Laura Martinez. When PLAINTIFF asked Gigi to provide the date and time of the "faked video" so PLAINTIFF can pull the footage up on her camera, nothing more was said

34. MS. WARREN still has not been able to get a regular doctor in the Las Vegas area since negligently being thrown out by Mr. Connors and Cano Health.

35. Now, PLAINTIFF faces ongoing harassment and surveillance by LAS VEGAS METROPOLITAN POLICE DEPARTMENT even though she has committed no crime in either Clark or Washoe Counties. In order to help LAS VEGAS METROPOLITAN POLICE DEPARTMENT in their ongoing litigation, BDJ REALTY negligently involved themselves in PLAINTIFF'S police misconduct cases.

36. As a result of the actions of the DEFENDANT, the PLAINTIFF has suffered severe emotional distress and physical harm.

37. The intentional behavior of DEFENDANT is the direct and proximate cause of PLAINTIFF'S deteriorated health and ongoing mental anguish.

38. Accordingly, PLAINTIFF is entitled to recover all available damages, including—but not limited to— lost wages, pain and suffering, emotional distress and punitive damages, if available, as allowed by law, in an amount to be determined at trial.

## VIII.

## FOURTH CLAIM FOR RELIEF

### *Civil Conspiracy*

39. PLAINTIFF incorporates by reference all other allegations in this Complaint, as though fully set forth herein.

40. In Nevada, "[a]n actionable civil conspiracy is a combination of two or more persons who, by some concerted action, intend to accomplish some unlawful objective for the purpose of harming another which results in damage." Collins v. Union Fed. Savings Loan, 99 Nev. 284, 303 (Nev. 1983).

41. PLAINTIFF has been harassed by LAS VEGAS METROPOLITAN POLICE DEPARTMENT since moving to Las Vegas.

42. PLAINTIFF has never been convicted of a crime in Las Vegas, so it is a mystery why LAS VEGAS METROPOLITAN POLICE DEPARTMENT would harass her—but for their knowledge that she is disliked by SPARKS POLICE DEPARTMENT.

43. It would be unlawful for LAS VEGAS METROPOLITAN POLICE DEPARTMENT to do the following without a warrant and without probable cause (this list is not exhaustive):

a. Surveil Ms. WARREN at her Airbnb right when she moved to Las Vegas;

b. Place Ms. WARREN under investigation right when she moved to Las Vegas;

c. Participate in frustrating Ms. WARREN's access to her property as it was being transported south by U-Haul;

d. Release Ms. WARREN'S booking photo from Washoe County to her new, Las Vegas employer long after she had been released from jail;

e. Tail Ms. WARREN in her car whenever she is driving in Las Vegas, using a rental car or taking a Lyft or Uber;

f. On information and belief, conspire with the property managers at Ms. WARREN's apartment building to entrap Ms. WARREN in perceived community standard violations using videos "skimmed" from her own surveillance cameras operating on PLAINTIFF'S own WiFi

g. Intercept Ms. WARREN'S telecommunications, including her telephone and internet connection, as by paying for the connection out of a "police account."

h. Stop or interfere with PLAINTIFF and/or PLAINTIFF'S mother from obtaining medical help in either Northern or Southern Nevada. Medical help includes dental, medical, psychiatric, physical rehabilitation, psychology and any other "medical" help they may need.

44. If LAS VEGAS METROPOLITAN POLICE DEPARTMENT has a cognizable warrant or probable cause against Ms. WARREN for an alleged violation of the law in Clark County, PLAINTIFF asks to see that document.

45. Barring this, her treatment by LAS VEGAS METROPOLITAN POLICE DEPARTMENT is harassment meant to frighten and belittle her.

46. To the extent that LAS VEGAS METROPOLITAN POLICE DEPARTMENT illegally undertakes such treatment of Ms. WARREN at the behest of or for the benefit of SPARKS POLICE DEPARTMENT in Washoe County, the two police departments are engaged in a civil conspiracy with one another against Ms. WARREN.

47. The "primary purpose" of such partnership is not protection of the community, but rather, "to cause injury" to Ms. WARREN, who is alone but for taking care of her elderly mother. Ungaro v. Desert Palace, Inc., 732 F. Supp. 1522, 1533 n.3 (D. Nev. 1989).

48. And such civil conspiracy, based in intentional tort, is illegal in this state.

49. Accordingly, PLAINTIFF is entitled to recover all available damages, including—but not limited to— lost wages, pain and suffering, emotional distress and punitive damages, if available, as allowed by law, in an amount to be determined at trial.

***—FEDERAL CLAIMS—***

**IX.**

## FIFTH CLAIM FOR RELIEF

***Unlawful Discrimination, Harassment, and Retaliation Based on Disability***
**Americans with Disabilities Act and Amendments Act, 42 U.S.C. § 12131 *et seq*. and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794**

50. PLAINTIFF incorporates by reference all other allegations in this *Complaint*, as though fully set forth herein.

51. Under the ADA's anti-discrimination provision, codified at 42 U.S.C. § 12132, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in

Case 2:23-cv-00165-MMD-NJK Document 15-2 Filed 05/02/23 Page 25 of 28

or be denied the benefits of services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."

52. PLAINTIFF is a qualified individual with a disability as codified at 42 U.S.C. § 12132 because she meets the "essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity."

53. Not only does PLAINTIFF suffer from the physical disability of alopecia, she suffers from mental health conditions that have been exacerbated as the direct and proximate result of her treatment by DEFENDANTS BDJ REALTY.

54. DEFENDANT BDJ REALTY, through their officers, directors, managers, supervisors, agents, and/or employees discriminated against PLAINTIFF on the basis of her disabilities by not providing a safe environment where PLAINTIFF was told she needs a psychiatrist by Laura Martinez or that she is "insane" by Michael Silva. PLAINTIF is owed a duty by the landlord to provide a safe environment to live which is free of racial epithets, making fun of PLAINTIFF'S mental conditions and/or making fun of her physical ailments.

55. As a result of this intentional discrimination by DEFENDANT BDJ REALTY, in violation of Title II, PLAINTIFF was excluded from equal access to programs and services meant to ameliorate her disability.

56. PLAINTIFF continues to be profiled by LAS VEGAS METROPOLITAN POLICE DEPARTMENT in that she is surveilled, followed, harassed, and has had her telecommunications intercepted, as pled elsewhere in this pleading. All of these actions by HILTON GRAND VACATIONS prey upon PLAINTIFF as a disabled American, a member of a protected class, at the same time that these actions also exacerbate and make worse PLAINTIFF'S disabilities.

59. PLAINTIFF seeks a permanent injunction requiring BDJ REALTY to comply with the ADA in the future by ensuring that qualified individuals are not discriminated against on the basis of their disabilities.

60. PLAINTIFF seeks a declaration that DEFENDANTS BDJ REALTY violated her rights under the ADA.

61. As a direct and proximate result of DEFENDANTS' intentional discrimination against her, PLAINTIFF sustained damages entitling her to equitable relief, as allowed by law, according to proof at trial.

62. Accordingly, PLAINTIFF is entitled to recover all available damages, including—but not limited to—punitive damages, if available, as allowed by law, in an amount to be determined at trial.

## —REMEDIES COMMON TO ALL CLAIMS—

## XII.

### *Declaratory Relief*

50. PLAINTIFF incorporates by reference all other allegations in this Complaint, as though fully set forth herein.

51. Pursuant to NRS 30.030, NRS 30.100, NRS 651.090(2)(a), and the Court's inherent equitable powers, PLAINTIFF seeks, and is entitled to have, declaratory relief awarded in her favor, to declare her rights and obligations of the DEFENDANT sued herein, where such declaratory relief is necessary and proper to the termination of the disputes raised herein, including as specifically prayed for below.
52. This includes declaratory relief whereby the Court issues a declaration that DEFENDANT unlawfully discriminated against, harassed, and retaliated against PLAINTIFF and otherwise violated PLAINTIFF'S rights under the law, and any other declaration the Court finds necessary and proper.

## XIII.

## PRAYER FOR RELIEF

WHEREFORE, PLAINTIFF prays for judgment against the DEFENDANT as follows:
1. For general damages in an amount in excess of $250,000.00;
2. For special damages in an amount in excess of $250,000.00;
3. For past and future compensatory damages, and other expenses incurred by reason of DEFENDANTS' intentional misconduct, acts, omissions, carelessness, recklessness, negligence, gross negligence, deliberate indifference, and other culpable conduct, described herein, in an amount in excess of $250,000.00;
4. For punitive and exemplary damages as allowed by law;
5. For costs of the suit incurred herein;
6. For three times the entire security deposit of $1650 totaling $4950.
7. For declaratory relief, in the form of declarations that:
(A) PLAINTIFF'S current medical damages are the direct and proximate result of the conduct of the DEFENDANT.

Dated this 6th day of May, 2023.

*Allanna Warren*
Pro Se Name Allanna Warren

CERTIFICATE OF SERVICE

I hereby certify that I sent the foregoing COMPLAINT JURY TRIAL DEMANDED for electronic filing to the Eight Judicial District Court on the 6th day of May, 2023. I caused the foregoing COMPLAINT JURY TRIAL DEMANDED to be served as follows:

[ ] BY U.S. MAIL: By placing a true and correct copy of the same to be deposited for mailing in the U.S. Mail in Las Vegas, Nevada, enclosed in a sealed envelope upon which First-Class postage was fully prepaid to the following address:

[ ] BY PERSONAL SERVICE: By hand delivery of the document(s) listed above to the person(s) at the following address:

[ X ] BY ELECTRONIC FILING: By EFS service pursuant to Rule 5(b)(2)(E) of the NRCP and Rule 9 of the NEFCR.

[ ] BY ELECTRONIC MAIL: By e-mail, consented to in writing, pursuant to Rule 5(b)(2)(F) of the NRCP at the following e-mail address:

*Allanna Warren*

Case 3:23-cv-00601-GN-DJA Document 153 Filed 05/27/23 Page 28 of 28

PLAINTIFF

Electronically Filed
5/2/2023 12:13 AM
Steven D. Grierson
CLERK OF THE COURT

Allanna Warren
9620 S. Las Vegas Blvd., Suite E461
Las Vegas, NV 89123
D1A2N3N4@PROTON.ME

CASE NO: A-23-869959-C
Department 14

DISTRICT COURT

CLARK COUNTY, NEVADA

| | |
|---|---|
| ALLANNA WARREN,<br>Plaintiff,<br>vs.<br>HILTON GRAND VACATIONS ET. AL.,<br>Defendant | Case No.:<br>Dept. No.:<br>Dj3-cv-00065-GMN-DJA<br>COMPLAINT JURY TRIAL DEMANDED |

Plaintiff, ALLANNA WARREN, hereby submits her COMPLAINT JURY TRIAL DEMANDED. Plaintiff complains against Hilton Grand Vacations (HILTON GRAND VACATIONS) as follows.

## I.

## STATEMENT OF THE CASE

This case is linked and related to two police misconduct cases currently in litigation. The first case is against the City of Sparks et. al. and The county of Washoe Jail et. al in the Second Judicial District case number CV2201525. The second case is against Las Vegas Metropolitan Police Departments (LAS VEGAS METROPOLITAN POLICE DEPARTMENT) in the US District Court with case number 2:23-cv-00065-GMN-DJA. After an unlawful detainment on June 14, 2020 and an unlawful arrest on June 20, 2020 by Sparks Police officers Ginger Miller, Ryan Patterson and Daniel Jones, PLAINTIFF and her elderly mother were harassed, followed, stalked, illegally surveilled, had their communications devices illegally monitored and would go

Case 3:23-cv-00065-HG-EJY Document 15-1 Filed 05/22/23 Page 2 of 34

into any business, school, store, retail business, apartment, doctor's offices, townhome, employers (Anthem Blue Cross and Blue Shield (BCBS), AppleOne and HILTON GRAND VACATIONS), box store like Walmart, 99 Cent Only Stores or Dollar Tree, private home or any place PLAINTIFF and her mother visited even once and slander, libel and character assassinate them both. Law enforcement would illegally stalk and follow MS. WARREN to continue the harassment, slander, libel and character assassination to landlords, neighbors, employees, co-workers, supervisors, doctor's office staff, doctors, physician assistants etc. in Southern Nevada as well. Ms. WARREN had no criminal record at the time of her arrest and should have been released on her own recognizance. Regardless of this, Ms. WARREN languished in WASHOE COUNTY JAIL for a week, from June 20, 2020 to June 26, 2020. During this *entire* time, she was placed in solitary confinement for no reason. By "solitary confinement," PLAINTIFF means that she was in a small, separate place in the basement of the WASHOE COUNTY JAIL, completely alone, and that this place only had room for one person. Ms. WARREN languished in this small space for six solid days. She was given no reason for her segregation from the main jail population. The charges against Ms. WARREN were entirely dropped on September 15, 2021.

Washoe County had a motive for disliking Ms. WARREN. From August 5, 2019 to September 24, 2019, WARREN had actually worked for Washoe County in their Alternative Sentencing Department. In that capacity, she worked in a makeshift crime lab near to the county courthouse. There, she was expected to analyze evidence chemically despite having no formal scientific training. Ms. WARREN'S hiring for the lab was rushed and did not meet typical employment protocols. In the lab, which was not properly licensed, Ms. WARREN regularly worked with caustic chemicals but was given no personal protective equipment (PPE) to perform

her work. The lab had no eye wash station, no labels for chemicals, and no hazardous waste disposal. Without hazardous waste disposal, corrosive chemicals were being left in the trash where they could leach into the water system outside. On September 23, 2019, Ms. WARREN went to the hospital with contact dermatitis acquired as a direct result of her unsafe employment. The next day, she complained to the Occupational Safety and Health Administration (OSHA) about the conditions in the lab and gave her supervisor a doctor's note.

Ms. WARREN was fired by Washoe County at around 6 PM on Tuesday, September 24, 2019. When Nevada OSHA investigated Washoe County, County was fined upwards of $4,000 for facilities violations as a direct result of Ms. WARREN's complaint regarding unsafe working conditions. Prior to working for the Alternative Sentencing Department of Washoe County, Ms. WARREN worked as an administrative assistant at China Spring Youth Camp in Douglas County. In this capacity, Ms. WARREN observed that the camp was doctoring their accounting files and was prescribing psychotropic medication to children under 18 in exchange for Medicaid subsidies. Rather than go along with these financial malfeasance schemes as her supervisor expected her to, Ms. WARREN reported what she saw to the state and was subsequently fired. Ms. WARREN had worked at the camp for eleven months and one week and was fired right before her probationary period was over.

A Northern Nevada judge, named Pete Sfrazza, had a son, Giovanni Sfrazza, who was incarcerated at the camp. This judge was best friends with another judge, Judge Tod Young, who oversaw the camp. When Ms. WARREN was hired by Washoe County, Pete Sfrazza was overseeing the Alternative Sentencing Department. The same judge whose son had once been incarcerated at China Spring at the time when Ms. WARREN brought her concerns about the juvenile facility to state regulators. In June of 2021, China Spring Youth Camp temporarily

closed the half of its camp dedicated to the care of boys due to, among other problems, "financial instability."

The police misconduct problems for Ms. WARREN did not stop in Washoe County or Northern Nevada. In November 2021, during a training course for her new job, working for AppleOne Temporary Agency and placed at Anthem BCBS in Las Vegas, a co-worker named Glenn Taylor teased Ms. WARREN by showing her a copy of her booking photo that had been taken when she was arrested. Ms. WARREN suffers from alopecia. When she was booked by the police in Sparks on June 20, 2020, OFFICER MILLER removed Ms. WARREN'S hat before her booking photo was taken, so Ms. WARREN appears bald in the photo. Somehow, Ms. WARREN's co-workers, Glenn Taylor, Gennifer Ross, Tyranisha Watson, Rachel Post and others, got their hands on this photo, and stated that he had actually gotten the photo from their training instructor, Shelia Williams of Anthem Blue Cross and Blue Shield. Thereupon, Ms. WARREN's classmates in the training program teased her with photos of bald people and Shelia Williams harassed her also. The booking photo cannot be found online. Ms. WARREN called the Washoe County Sherriff's Office, who stated to her that such a photo is only a public record when an individual is incarcerated, but that after incarceration is over, the photo is removed from their website. The Washoe County Sherriff's office additionally stated that the only way the picture could be released at this point would be either at Ms. WARREN's own request for it, or, in response to a request from someone inside SPARKS POLICE DEPARTMENT. Therefore, on information and belief, SPARKS POLICE DEPARTMENT impermissibly released Ms. WARREN'S booking photo online or to her then current employer in Las Vegas in an effort to harass, embarrass, stalk, and belittle her. After PLAINTIFF complained about the arrest photo to her employer, she was placed on administrative leave and ultimately fired by Apple One

Temporary agency. It is also possible that LAS VEGAS METROPOLITAN POLICE DEPARTMENT additionally had a hand in the booking photo getting released to Ms. WARREN'S new employer in Las Vegas.

Ms. WARREN has been the victim of a wide variety of suspicious behavior at the hands of LAS VEGAS METROPOLITAN POLICE DEPARTMENT since having moved from Reno to Las Vegas in July 2021. Ms. WARREN regularly finds herself followed by both uniformed and plain clothes LAS VEGAS METROPOLITAN POLICE DEPARTMENT officers when she leaves her apartment building by car, taxi, Uber, Lyft or rental car. She cannot take videos of this behavior when she is alone in her car for fear of being pulled over for using a cell phone while driving. Ms. WARREN'S mother is elderly and disabled and also cannot take videos of this behavior on the rare occasions when she is in the car alongside her daughter. Prior to her ordeal, Ms. WARREN suffered from anxiety, depression, and alopecia. Now, subsequent to her ordeal at the hands of SPARKS POLICE DEPARTMENT and LAS VEGAS METROPOLITAN POLICE DEPARTMENT, PLAINTIFF additionally suffers from PTSD and paranoia. Following her confinement, and likely due to stress and the filthy conditions inside the WASHOE COUNTY JAIL, Ms. WARREN developed hidradenitis suppurativa, a painful skin condition that causes small, painful lumps to form under her skin. Following her jailing, MS. WARREN developed these sores and pustules all over her body, for she sought the help of a dermatologist.

After being followed, stalked and having PLAINTIFF'S booking photo illegally released at Anthem BCBS and AppleOne, law enforcement stalked MS. WARREN to HILTON GRAND VACATIONS. PLAINTIFF had a phone interview on March 8, 2022 with Hilton Grand Vacations recruiter Felicia Francois. Ms. Francois hired MS. WARREN on the spot and asked that PLAINTIFF complete a background check, which MS. WARREN accomplished promptly.

On information and belief, law enforcement knew when and where PLAINTIFF had just been hired because they were monitoring all of PLAINITFF'S communication in violation of her 4th Amendment rights. On March 9, 2022 Ms. Francois informed MS. WARREN that she would be starting training on March 14, 2022. On March 14, 2022, MS. WARREN was informed that she passed her background check and was set to go. During the first week of training, MS. WARREN noticed that several trainees from her class would be following her during breaks and lunches. Three male trainees would consistently stalk, follow and watch MS. WARREN. One was an Asian man, Allanna Warren only remembers his name was Hinson and went by Henny, a white man whose first name was Ryan and a Hispanic man named Frank Bort. During the first week of training, MS. WARREN also observed two white male motorcycle LAS VEGAS METROPOLITAN POLICE DEPARTMENT officers park next to her during three lunch hours as she ate at her car. After eating her lunch, MS. WARREN, observed the same two white male LAS VEGAS METROPOLITAN POLICE DEPARTMENT officers inside the HILTON GRAND VACATIONS building speaking to several people. One person MS. WARREN recognized speaking to the LAS VEGAS METROPOLITAN POLICE DEPARTMENT officers was a man who went by Mr. G. MS. WARREN does not remember his full name but everyone called him Mr. G. As previously indicated PLAINITFF did not have a criminal record and had just completed a background check and passed it. During the second week of training, MS. WARREN remembers seeing two supervisors stalking, following and watching her, just like her fellow trainees did the week before. At first PLAINTIFF did not know either supervisor's name but during training both supervisors came to introduce themselves to the training class. One supervisor's name was Paul Maroe and the other was Demontre Thomas. Michael Flores, a co-worker of the PLAINTIFFS who moved from Orlando to start the call center in Las Vegas, came

to speak to the training class as well. Michael explained to PLAINTIFFF'S class that he made over $100,000 annually and he recommended that the new trainees take advantage of the Hilton Go benefits as it helps him to sale more packages. During training, PLAINITFF's class was told that after three months they would be able to work from home if they wanted. The trainees would be required to inform their supervisor's of their desire to work from home.

After training was over PLAINTIFF worked under a supervisor named Krys Wainwright who oversaw team 9. PLAINTIFF'S schedule was Sunday to Thursday from 3:00 pm to 10:30 pm. After the training class PLAINTIFF started working her regular schedule, and noticed that the stalking, following, watching started happening more frequently and included supervisors/employees from the customer service area, the security company (particularly a Hispanic male named Jose) and employees from other departments (particularly Rene from IT). On 5/17/22 Paul Maroe had spent his day following, stalking, watching and walking near the PLAINTIFF sniffing around and smelling her. This criminal and bizarre behavior from a supervisor made the PLAINITFF so upset that she was triggered. PLAINITFF asked to be sent home which Krys Wainwright approved. PLAINTIFF was under so much stress and anxiety because her former attorney Robert Melcic had just filed a police misconduct case, her neighbors (particularly Laura Martinez and Michael Silva) were harassing her , calling her racial epithets and falsely calling LAS VEGAS METROPOLITAN POLICE DEPARTMENT on her and PLAINTIFF's landlord (Bo Jones and Laura Van Hine) were threatening MS. WARREN with eviction every two weeks right after taking her rent for being a "nescience," When PLAINITFF returned to work on 5/18/22 Krys spoke to the PLAINTIFF in an office. Krys asked MS. WARREN what happened the day before. PLAINTIFF informed Krys about Paul Maroe's creepy behavior, the stress PLAINTIFF was under because of the police, the fact that MS.

WARREN felt as if she can never have peace because she was under constant surveillance, stalking, following, monitoring from Law enforcement. PLAINTIFF told Krys that law enforcement had been to her housing, jobs and everywhere she or her mother went. PLAINTIFF told Krys that she lacks sleep and stress/anxiety exacerbate her preexisting medical conditions. PLAINTIFF told Krys that she is an innocent person but law enforcement was treating her like a criminal. Allanna Warren was crying and upset as she poured her heart out to Krys. In a 5/19/22 email titled "Documentation Email" PLAINITFF wrote all of this to her former Attorney, Robert Melcic, and went on to say, " I wanted to document this in case we need this in the civil case/ police misconduct case when it comes to my mental/physical health… this [law enforcement harassment] is taking it's toll on me and affecting my job. I am hoping we can get them to pay for some mental help for me as I definitely need it!"

PLAINITFF would be followed, stalked and monitored before leaving her house to go to work, while she drove to work, while she was at work and while she drove home from work. PLAINTIFF requested that at her three months of working for HILTON GRAND VACATIONS that she be allowed to work from home for her safety from the supervisors, employees and her neighbors. Krys told the PLAINTFF that she could work from home when her three months was up. However, when June 12, 2022 rolled around the PLAINITFF hit a road block. Krys told PLAINTIFF to come IT and get her take home equipment. When Allanna Warren followed Krys' instructions, IT told her they did not have any paperwork and would not give her anything. PLAINTIFF informed Kry and manager Nick Lupu. PLAINITFF had to jump through hoops in order to get the equipment to work from home, although in training it was explained that HILTON GRAND VACATIONS encouraged employees to work from home and Krys knew

PLAINTIFF wanted to work from home for her safety. Finally, Nick Lupu was able to secure Allanna Warren with the equipment to work from home.

While PLAINTIFF worked from home, her neighbors heightened their harassment while she tried to work. PLAINTIFF has video and other evidence that neighbors continued to call LAS VEGAS METROPOLITAN POLICE DEPARTMENT on the PLAINTIFF during her work hours, allowed their children to vandalize PLAINTIFF'S property while she worked, had loud music playing to engage in psychological warfare while PLAINTIFF worked and landlord turned PLAINITFF'S water off without warning.

PLAINTIFF has had to endure HILTON GRAND VACATIONS not paying her earned SPIFFS or bonuses, being asked to come back to work from the office although MS. WARREN had safety concerns, discriminate against when trying to work other places at HILTON GRAND VACATIONS, having PLAINITFF'S booking photo passed around and being made fun of again and enduring harassment from co-workers/supervisor through the Teams chat. On 8/7/23 PLAINTIFF filed an EEOC complaint against HILTON GRAND VACATIONS. PLAINTIFF informed Human Resources and management of this fact in writing. Since this date PLAINITFF has been retaliated against in violation of the Title VII of the Civil Rights Act of 1964 (Title VII). For example, on 11/8/22 PLAINITFF sent an email titled "Please fix this" where she showed HR and management proof of a threat lodged against PLAINITFF in the Teams chat from supervisor Demontre Thomas. Mr. Thomas put a meme up stating, "snitches get stitches." This was right after PLAINTIFF put up a comment in the Teams chat about work. This threat was a retaliatory act because PLAINTIFF filed an EEOC case and was verbal about the LAS VEGAS METROPOLITAN POLICE DEPARTMENT's involvement at her job like they did

with Anthem/Apple One. HR nor management got back to PLAINTIFF about this threat or her safety concerns. Many of PLAINITFF'S concerns were ignored.

PLAINITFF tried to get away and go on vacation while working at HILTON GRAND VACATIONS. Unfortunately, even on vacation PLAINTIFF was harassed. On information and belief, someone from HILTON GRAND VACATIONS would inform law enforcement of the dates she put in for vacation, how long she would be away and what destination she was heading. One perk of working for HILTON GRAND VACATIONS is getting deeply discounted hotel stays. So, HILTON GRAND VACATIONS had access to PLAINTIFF'S itinerary due to using the "Hilton Go" website to book her hotels. In 2022 PLAINTIFF went on five vacations in different states and law enforcement showed up at the hotels in each of the different states and cities where PLAINTIFF vacationed. PLAINITFF has witnesses who saw either squad cars or uniformed officers parked outside the hotels or inside the hotel lobbies as PLAINTIFF checked in or left the hotel. PLAINTIFF informed her former attorney of the blue line of the police following her in other states and cities. So PLAINTIFF was not able to escape even while on vacation.

After all of what PLAINITFF endured while working at HILTON GRAND VACATIONS, she went out on a continuous ADA leave. After the stress and anxiety she was under and fear she would be fired in retaliation for her complaining PLAINTIFF had to leave work early on 11/14/22 and has been out since. While working on 11/14/22 PLAINITFF was heard apologizing to her customers because she felt sick and not herself, she threw up while at work and was not eating. All of these are symptoms of depression, anxiety and stress. It has to be noted that on 11/13/22 PLAINITFF emailed HR and management that she needed ADA accommodations but this request was ignored and accommodation were not given to

PLAINTIFF. On 11/15/22 PLAINTIFF informed management and HR in writing that she needed paperwork for Worker's comp and Broadspire had her on an ADA leave. It took a while for HR to get back to PLAINTIFF after her initial worker's request. While waiting to get the HILTON GRAND VACATIONS worker's comp doctor PLAINITFF went to her own doctor on 11/18/23, Mr. Jesse Connors at Cano Health. PLAINTIFF did not go to the HILTON GRAND VACATIONS worker's doctor until 11/25/22 because it took HILTON GRAND VACATIONS this long to get Allanna Warren the paperwork. The HILTON GRAND VACATIONS worker's comp doctor recommended counseling to treat her stress and anxiety. Unfortunately, PLAINITFF'S worker's comp was denied and she was refused the treatment that the HILTON GRAND VACATIONS's doctor recommended for her to get better. PLAINTIFF'S doctor put her on strong depression/bi polar medication. Since PLAINTIFF moved to Las Vegas she has had issues trying to find suitable medical treatment because of the constant police involvement in MS. WARREN's civil matters. PLAINTIFF's first appointment with Hilton Grand Vacationslocated at 5701 W Charleston Blvd, Unit 100, Las Vegas, NV 89146 was on November 18, 2022. At this appointment MS. WARREN saw Physician's assistant Jesse Connors. In this appointment PLAINTIFF explained that law enforcement chased her and her mother out of Northern Nevada and that LAS VEGAS METROPOLITAN POLICE DEPARTMENT has picked up the harassment where Northern Nevada Law enforcement left off. PLAINTIFF explained that she has a history of depression, anxiety, asthma and other ailments that stress exacerbated. PLAINTFF asked Mr. Connors to obtain copies of her medical records from her medical facility in Reno Nevada. It was revealed later that Mr. Connors never sought to obtain copies of PLAINTIFF's medical records from her previous medical facility in Reno as she asked on 11/18/22. MS. WARREN asked Mr. Connors for a referral for mental

health as law enforcement's constant interference was affecting her negatively. Mr. Connors said that he would obtain medical records from PLAINITFF'S previous medical facility and would get her a mental health referral. Mr. Connors suggested that PLAINTIFF get an EKG, get a chest x ray and he would set up an appointment for a Pulmonary Function Test (PFT). Without an evaluation or ever treating PLAINTIFF, Mr. Connors prescribed MS. WARREN 10mg tablets of Escitalopram with two refills. Escitalopram is part of a Bi-Polar treatment. However, PLAINTIFF had not been diagnosed with bi-polar disorder by anyone. A major warning for this medication is that one should seek medical attention right away if you have symptoms of serotonin syndrome, such as: agitation, hallucinations, fever, sweating, shivering, fast heart rate, muscle stiffness, twitching, loss of coordination, nausea, vomiting, or diarrhea. MS. WARREN had never been on this medication and was not informed of any side effects of the medication before taking it per Mr. Connors instructions.

Mr. Connors told PLAINTIFF that the scheduling department would be contacting her shortly after her 11/18/22 visit. Immediately after the appointment with Mr. Connors, his medical assistant, Juliana Ramirez, took MS. WARREN to get her EKG test. While in the room Juliana instructed PLAINTIFF to undress above the waist, including removing her bra and shirt. PLAINTIFF complied with the instructions. The EKG was performed by Ms. Ramirez. After the testing, Juliana instructed PLAINTIFF to keep her bra off but put on her shirt because she was going to get her chest Xray. PLAINTIFF complied with these instructions as well. Juliana led MS. WARREN to a chair outside a small room. A Hispanic male came out of the small room and asked PLAINTIFF her name. MS WARREN told the male her name and he led her inside the room. After the chest x ray, the male instructed PLAINTIFF to "get dressed" in the same room. The male could see the PLAINTIFF clearly and she inquired about the visibility of

dressing in front of the male. The male told MS. WARREN that everyone gets dressed in the room with him in the room. Outside the small room, PLAINTIFF saw a bathroom right next to the room and wondered why the male would not have instructed her to change inside the bathroom right next door.

MS. WARREN's mother is over 70 years old so having a medical provider in close proximity is paramount to her health. PLAINTIFF, despite her apprehensions, recommended Hilton Grand Vacationsto her mother. On 11/29/2022 PLAINTIFF's mother went to an appointment with Mr. Connors at the Hilton Grand Vacationslocated at 5701 W Charleston Blvd, Unit 100, Las Vegas, NV 89146. Mr. Connors told PLAINTIFF's mother that he would be getting her medical records from her medical facility in Carson City just like he told the PLAINTIFF. PLAINTIFF's mother is not sure if Mr. Connors actually sought to obtain those records. Mr. Connors also advised MS. WARREN's mother to get a PFT, get a chest x ray and be seen by a Ear Nose and Throat (ENT) specialist. Immediately after the appointment, PLAINTIFF went to the waiting room and PLAINTIFF's mother went to get her chest x ray. Upon exiting Hilton Grand VacationsPLAINTIFF's mother told her that she experienced the same "undressing" incident that PLAINTIFF had with the male who conducts the x rays. PLAINTIFF could see her mother was uncomfortable and this bothered her immensely.

It has to be noted that before the 11/29/22 appointment at Cano Health, which was scheduled at 10:30 am, PLAINTIFF and her mother were stalked and followed by LAS VEGAS METROPOLITAN POLICE DEPARTMENT officers. They were pulled over by a black male officer who was the driver of the police SUV and had a white female officer in the passenger seat. PLAINTIFF knows they were being stalked and followed because PLAINTIFF and her mother had just moved into a new place, less than a week before being pulled over by LAS

VEGAS METROPOLITAN POLICE DEPARTMENT, and no one had their new address. There would have been no way LAS VEGAS METROPOLITAN POLICE DEPARTMENT had their new address, without illegally stalking, following and monitoring the PLAINTIFF and her mother as their new place is in another city/jurisdiction and far away from their previous home where LAS VEGAS METROPOLITAN POLICE DEPARTMENT were falsely called multiple times by PLAINTIFF'S neighbors. In the previously mentioned police misconduct cases involving LAS VEGAS METROPOLITAN POLICE DEPARTMENT, neighbors Laura Martinez and Michael Silva are named, with video evidence, as being the culprits who were prompted by LAS VEGAS METROPOLITAN POLICE DEPARTMENT to call them so PLAINTIFF could be falsely arrested again or evicted.

PLAINTIFF's mother, had her PFT scheduled for 12/8/22. While in the waiting room the PFT specialist, his name is Uday, approached MS. WARREN's mother and told her that he does not have the mouth pieces, which are mandatory to conduct the test, and he has no idea when he would get them and that she needs to reschedule her PFT somewhere else as he was going out of town on a vacation for two months. There was no forewarning or a courtesy call to inform PLAINTIFF'S mother of this issue.

PLAINTIFF's mother had her Ear Nose and Throat (ENT) appointment on 12/12/22 with Dr. Kim of the UNLV medical center located at 5320 S. Rainbow, Suite 250 Las Vegas, NV. While in her appointment PLAINTIFF and her mother complained to Dr. Kim about their treatment by Cano Health. They both explained what happened with "undressing" in front of a male x ray tech, Uday having no equipment to conduct PFTs for patients with breathing issues, and just the entire medical negligence of Cano Health. Dr. Kim thanked both ladies for their honesty and informed them that he would take their concerns seriously and inform the proper

Case 2:23-cv-00601-GMN-DJA Document 53 Filed 05/02/23 Page 15 of 34

authorities. Dr. Kim told PLAINTIFF and her mother that he did not want to send any of his patient's to this medical facility after hearing their horror stories. PLAINTIFF and her mother noticed a LAS VEGAS METROPOLITAN POLICE DEPARTMENT SUV parked outside the medical facility during the mother's appointment. They made a comment to Dr. Kim and noticed that the LAS VEGAS METROPOLITAN POLICE DEPARTMENT SUV did not leave until right before the appointment was over. Again, this proves the constant stalking, following, surveilling, monitoring etc. by law enforcement illegally.

During the month of November and December PLAINTIFF heard from the Hilton Grand Vacationsscheduling department. They informed MS. WARREN that Axis psychiatry would be scheduling her an appointment. MS. WARREN heard from Axis and they scheduled her for an appointment on 12/26/22. Later in December when PLAINTIFF called Axis to confirm the appointment the receptionist told PLAINTIFF that their building was closed due to the observance of Christmas on 12/26/22. When PLAINTIFF inquired as to why she was scheduled for an appointment on a day they knew they were closed PLAINTIFF received no response. Then PLAINTIFF was informed that Axis would not have an appointment open for several months.

On 12/18/22 PLAINTIFF had a follow up appointment with Mr. Connors. PLAINTIFF informed Mr. Connors that Axis psychiatry scheduled her on a day they were closed and she wanted another referral. At the 12/18/22 appointment PLAINTIFF's blood pressure was extremely high as she had been chased around the Hilton Grand Vacationsparking lot by strangers and had several LAS VEGAS METROPOLITAN POLICE DEPARTMENT squad cars tailing her from her new home to the appointment. PLAINTIFF was scared and her blood pressure exhibited this. Mr. Connors had PLAINTIFF's blood pressure checked several times

and it was elevated the entire time. Having law enforcement involving themselves in every aspect of PLAINTIFF's life was affecting her health.

PLAINTIFF waited to hear from Cano Health's scheduling department to schedule another psych appointment. PLAINTIFF ended up calling Hilton Grand Vacationsas she did not hear from the scheduling department as expected. PLAINTIFF was informed that she would have to call around Las Vegas for a psych doctor as their scheduling department would not help her. PLAINTIFF informed the scheduling department that it is their job to find a doctor for the PLAINTIFF. PLAINTIFF was told that "normally" their department does call around and find doctors for patients but in PLAINTIFF's case they would not help her.

Because law enforcement went to PLAINFIFF's job at Hilton Grand Vacations (HILTON GRAND VACATIONS) and slandered her there, she was on an ongoing ADA medical leave of absence since 11/15/22. She was trying to get Short Term Disability from Lincoln Financial Group (LFG). While trying to get all the medical paperwork for LFG to make a decision, MS. WARREN was run around by Mr. Connors office and LFG. A decision on PLAINTIFF'S case was intentionally delayed from both sides. After all the stress of PLAINTIFF'S job, her mother's health, trying to get mental help, no income from any source, law enforcement constantly bothering her, and no one helping the PLAINTIFF, all this stress was taking a toll on her health.

One of the reasons LFG denied PLAINTIFF's short term disability was because their nurse stated that PLAINTIFF was not seen from a licensed doctor or psychiatric doctor to correctly diagnose the PLAINTIFF, no evaluation was performed before giving PLAINTIFF Escitalopram and no follow up was performed by Hilton Grand Vacationsto see if the medication

Case 2:23-cv-00601-GMN-DJA Document 15-3 Filed 05/02/23 Page 17 of 34

was correct and helped the PLAINTIFF. Mr. Connors did not have the medical license to prescribe the PLAINTIFF any psych medication, especially with a medication like Escitalopram.

During December and January 2023 PLAINTIFF never saw Mr. Connors again until January 31, 2023. PLAINTIFF was scheduled for a Zoom appointment. During this appointment, Mr. Connors was clearly upset, and his facial expressions and treatment of PLAINTIFF exhibited this disdain. Mr. Connors stated on a recorded Zoom call that PLAINTIFF needs a doctor and Hilton Grand Vacationsdoesn't have a doctor therefore Hilton Grand Vacationscan not see or treat the PLAINTIFF anymore.

PLAINTIFF informed HILTON GRAND VACATIONS HR and management of everything that happened with Hilton Grand Vacationsand that she was having issues obtaining medical treatment with the police constantly involving themselves in her civil matters. In April 2023 PLAINTIFF filed for unemployment. Her unemployment was denied and she appealed the decisions. It has been a month since last hearing from the Nevada Unemployment about her appeal. PLAINTIFF has tried to involve the Governor Lombardi to aid in getting Unemployment to move on her case. PLAINITFF has been ignored by the governor and unemployment. PLAINITFF has no income and keeps being ignored by every entity in Nevada. PLAINTIFF is also concerned that HILTON GRAND VACATIONS will try to fire her in retaliation before her EEOC meeting scheduled for May 5, 2023. If PLAINTIFF is fired she plans to file an amended complaint to include this retaliatory action if done illegally by HILTON GRAND VACATIONS.

**II.**

**JURISDICTION AND VENUE**

1. “A court of this state may exercise jurisdiction over a party to a civil action on any basis not inconsistent with the Constitution of this state or the Constitution of the United States.” NRS 14.065.

2. Jurisdiction in this Court is proper because this is a complaint seeking monetary relief in excess of $10,000, the PLAINTIFF is a resident citizen of Nevada, and the DEFENDANTS HILTON GRAND VACATIONS are a private for profit company operating in Las Vegas, Nevada.

3. Venue is proper in the Eighth Judicial District Court of Clark County because:

a. Under NRS 13.020, “Actions for the following causes must be tried in the county where the cause, or some part thereof, arose, subject to the power of the court to change the place of trial.” All of the events giving rise to this claim have occurred within Clark County;

b. The PLAINTIFF currently resides in Las Vegas, Nevada, where the events or omissions giving rise to the claims of this case occurred.

**III.**

**PARTIES**

4. At all times relevant to this action, PLAINTIFF was a resident of the State of Nevada, County of Clark.

5. DEFENDANT HILTON GRAND VACATIONS is a private business situated in Clark County, Nevada.

**IV.**

**GENERAL ALLEGATIONS COMMON TO ALL CLAIMS**

6. PLAINTIFF is a forty-five year old African-American woman.

7. PLAINTIFF suffers from pre-existing alopecia, depression, and anxiety; as a result of her ordeal at the hands of SPARKS POLICE DEPARTMENT and LAS VEGAS METROPOLITAN POLICE DEPARTMENT, she now also suffers from hidradenitis suppurativa, PTSD, and paranoia.

8. PLAINTIFF has been a resident of the state of Nevada throughout the entirety of this ordeal.

9. In July 2021, PLAINTIFF and her elderly mother moved to Las Vegas from Reno due to her fear of retribution by SPARKS POLICE DEPARTMENT.

10. Since her move, PLAINTIFF has been subject to ongoing surveillance and interference in Las Vegas by LAS VEGAS METROPOLITAN POLICE DEPARTMENT, detailed infra.

11. PLAINTIFF has had additional problems happen to her as a result of interference by, on information and belief, the LAS VEGAS METROPOLITAN POLICE DEPARTMENT; these include but are not limited to:

a. Possible involvement in PLAINTIFF'S booking photo being released to her new employer in Las Vegas;

b. Known interference with PLAINTIFF'S and her mother's property as it was being transported by U-Haul from Northern to Southern Nevada, who admitted to PLAINTIFF on the telephone their employees' collusion with both SPARKS POLICE DEPARTMENT and the LAS VEGAS METROPOLITAN POLICE DEPARTMENT when transporting and temporarily losing the property;

c. Unwarranted surveillance at PLAINTIFF'S new Airbnb upon first moving to Las Vegas;

d. Being followed by both uniformed and plain clothes LAS VEGAS METROPOLITAN POLICE DEPARTMENT officers when PLAINTIFF leaves her apartment building by car, Uber, Lyft, Taxi or rental car;

e. Being told by her internet service provider T-Mobile that the POLICE paid for her internet connection;

f. Being harassed at home, including by having LAS VEGAS METROPOLITAN POLICE DEPARTMENT bang on her door, allegedly at the behest of a neighbor, and wait around her apartment at night;

g. Being accused by the property managers at her building of violating community standards using videos skimmed from PLAINTIFF'S own surveillance cameras operating on PLAINTIFF'S own WiFi connection (the WiFi that T-Mobile has admitted the POLICE compensate).

h. On information and belief, Law enforcement contacted Hilton Grand Vacations. In a February 23, 2023 hearing with Worker's comp, HGVs attorney admitted that law enforcement had been up to the building to discuss the PLAINTIFF.

i. On information and belief, PLAINTIFF was ran around by employees at Hilton Grand Vacations so it took more time than it needed to for PLAINTIFF to obtain the worker's comp paperwork.

j. Hilton Grand Vacations was negligent throughout PLAINTIFF's experience being an employee.

**—STATE CLAIMS—**

**V.**

**FIRST CLAIM FOR RELIEF**

***Unlawful Injury or Loss Suffered by a Vulnerable Person, NRS § 41.1395***

12. PLAINTIFF incorporates by reference all other allegations in this Complaint, as though fully set forth herein.

13. PLAINTIFF is a vulnerable person as defined by NRS § 41.1395 4(e)(1-2) in that she has a physical health impairment—alopecia—and psychological health impairments—depression and anxiety—that limit one or more of her major life activities, and she has medical records of these impairments.

14. Because of her ordeal, PLAINTIFF now also suffers from a very painful skin condition called hidradenitis suppurativa, and from new psychological problems including PTSD and paranoia.

15. DEFENDANT HILTON GRAND VACATIONS was unjustified when they inflicted injury, pain, and anguish on PLAINTIFF with their negligence and failure to provide fair and appropriate treatment to her as an employee.

16. DEFENDANT has additionally exploited the medical vulnerability of a vulnerable Nevadan, in contravention of state law.

17. DEFENDANT HILTON GRAND VACATIONS working in tandem with law enforcement agencies are severely exacerbating PLAINTIFF'S pre-existing disabilities, in contravention of state law.

18. Accordingly, PLAINTIFF is entitled to recover all available damages, including—but not limited to—lost wages, pain and suffering, emotional distress and punitive damages, if available, as allowed by law, in an amount to be determined at trial.

19. In this particular Claim for Relief, PLAINTIFF is entitled to recover two times her damages, as allowed under NRS § 41.1395(1), in an amount to be determined at trial.

## VI.

## SECOND CLAIM FOR RELIEF

***Negligence and Gross Negligence***

20. PLAINTIFF incorporates by reference all other allegations in this Complaint, as though fully set forth herein.

21. DEFENDANT HILTON GRAND VACATIONS owes a professional duty to PLAINTIFF.

22. DEFENDANT HILTON GRAND VACATIONS owed a duty of care to PLAINTIFF. Employers have a wide variety of generally accepted ethical duties towards employees.[1] ( This chapter includes content drawn from the OpenStax textbook Business Ethics, under a Creative Commons Attribution 4.0 International License (CC BY 4.0). Download for free at https://openstax.org/details/books/business-ethics. ↵)

23. DEFENDANT HILTON GRAND VACATIONS had a responsibility not to discriminate against PLAINTIFF in violation of the Americans with Disabilities Act (ADA) Amendments Act of 2008, the Civil Rights Act of 1964 created the Equal Employment Opportunity Commission (EEOC), to pay the PLAINTIFF for work done based on the agreed wage or salary, and to make sure that they provide a safe and conducive working environment for the employee to work in. Hilton Grand Vacations are in violation of all of the listed responsibilities.

24. DEFENDANT'S breach of said duty to PLAINTIFF constituted Negligence, Negligent Hiring and Entrustment.

25. DEFENDANT breached its duty by failing to exercise the degree of care that was owed to PLAINTIFF.

26. When engaging in their culpable conduct described herein, the DEFENDANT was not only negligent, but they were grossly negligent in that they failed to exercise even the slightest amount of care, with a conscious disregard of the rights or safety of the PLAINTIFF.

27. When engaging in their culpable conduct described herein, the DEFENDANT was grossly negligent because they acted with willful, wanton, and/or reckless disregard for the safety of PLAINTIFF.

28. DEFENDANTS exhibited a conscious disregard for PLAINTIFF'S patience's' bill of rights, constitutional rights and safety when they knew the probable harmful consequences of their wrongful acts. Not providing PLAINTIFF proper care had harmful consequences including physical and mental injury to her, which DEFENDANTS recklessly, willfully, and/or deliberately failed to act to avoid.

29. Accordingly, PLAINTIFF is entitled to recover all available damages, including—but not limited to— lost wages, pain and suffering, emotional distress and punitive damages, if available, as allowed by law, in an amount to be determined at trial.

**VII.**

**THIRD CLAIM FOR RELIEF**

***Intentional Infliction of Emotional Distress***

30. PLAINTIFF incorporates by reference all other allegations in this Complaint, as though fully set forth herein.

31. DEFENDANT HILTON GRAND VACATIONS acted to intentionally to ignore PLAINITFF'S request for safety against co-workers, supervisors, staff and strangers on the

grounds. When PLAINITFF informed her supervisor of the dangers she faced and he observed the behavior of Paul Maroe, Krys was subsequently fired as a result.

32. DEFENDANT HILTON GRAND VACATIONS continued to act intentionally to have law enforcement to the building to discuss an employee who passed a background check and had no criminal history. When PLAINTIFF visited other cities and states, she reported the incidents to Hilton upper management but her Hilton Go benefits were taken away from her for complaining. On information and belief, only Hilton or Hilton Grand Vacations had access to PLAINTIFF'S itinerary to give to law enforcement as she did not divulge any of her travel information to anyone. When PLAINTIFF was on leave and she informed management of the issues she was having trying to obtain medical help because of law enforcement interference, management chose to ignore her pleas.

33. After months of trying to navigate the leave paperwork on her own, Plaintiff had to contact HR to get any help. No one from HGV contacted PLAINITFF during her leave to see if she needed help or was having any issues with anything. PLAINITFF had been out since November 2022 and hadn't heard from anyone until early 2023 after she asked for help. There had been no care for the PLAINITFF either before her leave or afterward.

34. MS. WARREN still has not been able to get a regular doctor in the Las Vegas area since negligently being thrown out by Mr. Connors and Cano Health.

35. Now, PLAINTIFF faces ongoing harassment and surveillance by LAS VEGAS METROPOLITAN POLICE DEPARTMENT even though she has committed no crime in either Clark or Washoe Counties. In order to help LAS VEGAS METROPOLITAN POLICE DEPARTMENT in their ongoing litigation, Hilton Grand Vacations negligently involved themselves in PLAINTIFF'S police misconduct cases.

Case 3:23-cv-00065-MMD-CLB Document 1-1 Filed 02/10/23 Page 25 of 34

36. As a result of the actions of the DEFENDANT, the PLAINTIFF has suffered severe emotional distress and physical harm.

37. The intentional behavior of DEFENDANT is the direct and proximate cause of PLAINTIFF'S deteriorated health and ongoing mental anguish.

38. Accordingly, PLAINTIFF is entitled to recover all available damages, including—but not limited to— lost wages, pain and suffering, emotional distress and punitive damages, if available, as allowed by law, in an amount to be determined at trial.

**VIII.**

**FOURTH CLAIM FOR RELIEF**

***Civil Conspiracy***

39. PLAINTIFF incorporates by reference all other allegations in this Complaint, as though fully set forth herein.

40. In Nevada, "[a]n actionable civil conspiracy is a combination of two or more persons who, by some concerted action, intend to accomplish some unlawful objective for the purpose of harming another which results in damage." Collins v. Union Fed. Savings Loan, 99 Nev. 284, 303 (Nev. 1983).

41. PLAINTIFF has been harassed by LAS VEGAS METROPOLITAN POLICE DEPARTMENT since moving to Las Vegas.

42. PLAINTIFF has never been convicted of a crime in Las Vegas, so it is a mystery why LAS VEGAS METROPOLITAN POLICE DEPARTMENT would harass her—but for their knowledge that she is disliked by SPARKS POLICE DEPARTMENT.

43. It would be unlawful for LAS VEGAS METROPOLITAN POLICE DEPARTMENT to do the following without a warrant and without probable cause (this list is not exhaustive):

a. Surveil Ms. WARREN at her Airbnb right when she moved to Las Vegas;

b. Place Ms. WARREN under investigation right when she moved to Las Vegas;

c. Participate in frustrating Ms. WARREN's access to her property as it was being transported south by U-Haul;

d. Release Ms. WARREN'S booking photo from Washoe County to her new, Las Vegas employer long after she had been released from jail;

e. Tail Ms. WARREN in her car whenever she is driving in Las Vegas, using a rental car or taking a Lyft or Uber;

f. On information and belief, conspire with the property managers at Ms. WARREN's apartment building to entrap Ms. WARREN in perceived community standard violations using videos "skimmed" from her own surveillance cameras operating on PLAINTIFF'S own WiFi

g. Intercept Ms. WARREN'S telecommunications, including her telephone and internet connection, as by paying for the connection out of a "police account."

h. Stop or interfere with PLAINTIFF and/or PLAINTIFF'S mother from obtaining medical help in either Northern or Southern Nevada. Medical help includes dental, medical, psychiatric, physical rehabilitation, psychology and any other "medical" help they may need.

44. If LAS VEGAS METROPOLITAN POLICE DEPARTMENT has a cognizable warrant or probable cause against Ms. WARREN for an alleged violation of the law in Clark County, PLAINTIFF asks to see that document.

45. Barring this, her treatment by LAS VEGAS METROPOLITAN POLICE DEPARTMENT is harassment meant to frighten and belittle her.

46. To the extent that LAS VEGAS METROPOLITAN POLICE DEPARTMENT illegally undertakes such treatment of Ms. WARREN at the behest of or for the benefit of SPARKS

Case 2:23-cv-00655-GMN-EJY Document 1 Filed 04/27/23 Page 27 of 34

POLICE DEPARTMENT in Washoe County, the two police departments are engaged in a civil conspiracy with one another against Ms. WARREN.

47. The "primary purpose" of such partnership is not protection of the community, but rather, "to cause injury" to Ms. WARREN, who is alone but for taking care of her elderly mother. Ungaro v. Desert Palace, Inc., 732 F. Supp. 1522, 1533 n.3 (D. Nev. 1989).

48. And such civil conspiracy, based in intentional tort, is illegal in this state.

49. Accordingly, PLAINTIFF is entitled to recover all available damages, including—but not limited to— lost wages, pain and suffering, emotional distress and punitive damages, if available, as allowed by law, in an amount to be determined at trial.

**—*FEDERAL CLAIMS*—**

**IX.**

## FIFTH CLAIM FOR RELIEF

***Unlawful Discrimination, Harassment, and Retaliation Based on Disability***
**Americans with Disabilities Act and Amendments Act, 42 U.S.C. § 12131 *et seq*. and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794**

50. PLAINTIFF incorporates by reference all other allegations in this *Complaint*, as though fully set forth herein.

51. Under the ADA's anti-discrimination provision, codified at 42 U.S.C. § 12132, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."

Case 2:23-cv-00606-GMN-DJA Document 1-1 Filed 04/20/23 Page 28 of 34

52. PLAINTIFF is a qualified individual with a disability as codified at 42 U.S.C. § 12132 because she meets the "essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity."

53. Not only does PLAINTIFF suffer from the physical disability of alopecia, she suffers from mental health conditions that have been exacerbated as the direct and proximate result of her treatment by DEFENDANTS HILTON GRAND VACAITONS.

54. DEFENDANTS HILTON GRAND VACATIONS were on notice that PLAINTIFF was a qualified individual under Title II for reasons including, but not limited to, the fact that PLAINTIFF informed HR and management that she had preexisting medical conditions via written communications.

55. DEFENDANT HILTON GRAND VACATIONS, through their officers, directors, managers, supervisors, agents, and/or employees discriminated against PLAINTIFF on the basis of her disabilities by following, stalking, staring at, laughing at, putting jokes in the Teams chat, threatening her bodily harm and threatening her job.

56. As a result of this intentional discrimination by DEFENDANT HILTON GRAND VACATIONS, in violation of Title II, PLAINTIFF was excluded from equal access to programs and services meant to ameliorate her disability.

57. As a result of this intentional discrimination by DEFENDANT HILTON GRAND VACATIONS, even when PLAINTIFF was on vacation in other states and cities employees from either Hilton or Hilton Grand Vacations gave PLAINITFF's person information to law enforcement.

58. PLAINTIFF continues to be profiled by LAS VEGAS METROPOLITAN POLICE DEPARTMENT in that she is surveilled, followed, harassed, and has had her

telecommunications intercepted, as pled elsewhere in this pleading. All of these actions by HILTON GRAND VACATIONS prey upon PLAINTIFF as a disabled American, a member of a protected class, at the same time that these actions also exacerbate and make worse PLAINTIFF'S disabilities.

59. PLAINTIFF seeks a permanent injunction requiring HILTON GRAND VACATIONS to comply with the ADA in the future by ensuring that qualified individuals are not discriminated against on the basis of their disabilities.

60. PLAINTIFF seeks a declaration that DEFENDANTS HILTON GRAND VACATIONS violated her rights under the ADA.

61. As a direct and proximate result of DEFENDANTS' intentional discrimination against her, PLAINTIFF sustained damages entitling her to equitable relief, as allowed by law, according to proof at trial.

62. Accordingly, PLAINTIFF is entitled to recover all available damages, including—but not limited to—punitive damages, if available, as allowed by law, in an amount to be determined at trial.

**X.**

**SIXTH CLAIM FOR RELIEF**

**Violation of PLAINTIFF'S Fourteenth Amendment Rights**

***—EQUAL PROTECTION—***

63. PLAINTIFF incorporates by reference all other allegations in this *Complaint*, as though fully set forth herein.

64. At all times relevant hereto, DEFENDANTS sued in this claim for relief (including by and through their agents and employees), and each of them, acting in their official and individual

capacities, and acting under color of state law, caused the deprivation of PLAINTIFF'S federal rights, including her Fourteenth Amendment right to equal protection, as further alleged herein.

65. PLAINTIFF is female, she is disabled by reasons of physical and mental health conditions, and she is also African-American.

66. PLAINTIFF therefore belongs to multiple protected classes as conceived by Constitutional law and by the Americans with Disabilities Act.

67. During the incident, PLAINTIFF was wrongfully profiled, wrongly discriminated against, made fun of and ridiculed.

68. At all times, the DEFENDANTS sued in this Cause of Action were on notice that PLAINTIFF belonged to at least one if not multiple protected classes—female, African-American, and disabled—that deserve the equal protection of the laws. 647. When the DEFENDANTS sued in this Cause of Action detained, arrested, jailed, and surveilled PLAINTIFF on behalf of the state, their actions were not rationally related to the legitimate government interest of protecting the public from harm; rather, their actions were as a result of discriminatory animus toward women, African-Americans, and the disabled.

69. It is not in the public interest for SPARKS POLICE DEPARTMENT, WASHOE COUNTY JAIL, and LAS VEGAS METROPOLITAN POLICE DEPARTMENT to target, imprison, and surveil Black women with disabilities who are violently attacked by old, white men.

70. Accordingly, PLAINTIFF is entitled to recover all available damages, including—but not limited to—punitive damages, if available, as allowed by law, in an amount to be determined at trial.

***—THEORIES OF LIABILITY APPLICABLE TO ALL CLAIMS—***

**XI.**

***Respondeat Superior Liability***

*Respondeat superior* is not properly a cause of action or a claim for relief, but rather, a method of assigning liability to an employer for the conduct of its employees. See *Fernandez v. Penske Truck Leasing Co., L.P.* 2021 WL 1832571, 1 (D. Nev. 2012) (citing *Cruz v. Durbin*, 2011 WL 1792765 (D. Nev. 2011)). Accordingly, this section is not labeled as a claim for relief, but it seeks to assign liability to DEFENDANTS HILTON GRAND VACATIONS.

***Vicarious Liability of Employers for Conduct by Their Employees, Occurring in the Course and Scope of Employment***

71. PLAINTIFF incorporates by reference all other allegations in this *Complaint*, as though fully set forth herein.

72. At all relevant times herein, Paul Maroe, Demontre Thomas, the Asian man, Allanna Warren only remembers his name was Hinson and went by Henny, a white man whose first name was Ryan and a Hispanic man named Frank Bort were under the control of their employer, HILTON GRAND VACATIONS.

73. At all relevant times herein, the acts of Paul Maroe, Demontre Thomas, the Asian man, Allanna Warren only remembers his name was Hinson and went by Henny, a white man whose first name was Ryan and a Hispanic man named Frank Bort; each of them, complained of herein, caused injury and harm to PLAINTIFF and created culpability for violating the law, as alleged herein.

74. At all relevant times herein, the culpable and injurious acts of Paul Maroe, Demontre Thomas, the Asian man, Allanna Warren only remembers his name was Hinson and went by Henny, a white man whose first name was Ryan and a Hispanic man named Frank Bort, and each of them, occurred when they were under the control of their employer, HILTON GRAND VACATIONS and such acts by these employees occurred within the course and scope of their employment.

75. Based on the foregoing, PLAINTIFF is entitled to invoke the doctrine of *respondeat superior* to impose vicarious liability on DEFENDANTS HILTON GRAND VACATIONS. .

**—REMEDIES COMMON TO ALL CLAIMS—**

**XII.**

***Declaratory Relief***

50. PLAINTIFF incorporates by reference all other allegations in this Complaint, as though fully set forth herein.

51. Pursuant to NRS 30.030, NRS 30.100, NRS 651.090(2)(a), and the Court's inherent equitable powers, PLAINTIFF seeks, and is entitled to have, declaratory relief awarded in her favor, to declare her rights and obligations of the DEFENDANT sued herein, where such declaratory relief is necessary and proper to the termination of the disputes raised herein, including as specifically prayed for below.

52. This includes declaratory relief whereby the Court issues a declaration that DEFENDANT unlawfully discriminated against, harassed, and retaliated against PLAINTIFF and otherwise violated PLAINTIFF'S rights under the law, and any other declaration the Court finds necessary and proper.

**XIII.**

**PRAYER FOR RELIEF**

WHEREFORE, PLAINTIFF prays for judgment against the DEFENDANT as follows:

1. For general damages in an amount in excess of $250,000.00;
2. For special damages in an amount in excess of $250,000.00;
3. For past and future compensatory damages, and other expenses incurred by reason of DEFENDANTS' intentional misconduct, acts, omissions, carelessness, recklessness, negligence, gross negligence, deliberate indifference, and other culpable conduct, described herein, in an amount in excess of $250,000.00;
4. For punitive and exemplary damages as allowed by law;
5. For costs of the suit incurred herein;
6. For lost wages starting 11/15/2022
7. For declaratory relief, in the form of declarations that:

(A) PLAINTIFF'S current medical damages are the direct and proximate result of the conduct of the DEFENDANT.

Dated this 1st day of May, 2023.

Allanna Warren

Pro Se Name Allanna Warren

Case 2:23-cv-00657-GMN-DJA Document 15-31 Filed 05/22/23 Page 34 of 34

CERTIFICATE OF SERVICE

I hereby certify that I sent the foregoing COMPLAINT JURY TRIAL DEMANDED for electronic filing to the Eight Judicial District Court on the 1st day of May, 2023. I caused the foregoing COMPLAINT JURY TRIAL DEMANDED to be served as follows:

[ ] BY U.S. MAIL: By placing a true and correct copy of the same to be deposited for mailing in the U.S. Mail in Las Vegas, Nevada, enclosed in a sealed envelope upon which First-Class postage was fully prepaid to the following address:

[ ] BY PERSONAL SERVICE: By hand delivery of the document(s) listed above to the person(s) at the following address:

[ X ] BY ELECTRONIC FILING: By EFS service pursuant to Rule 5(b)(2)(E) of the NRCP and Rule 9 of the NEFCR.

[ ] BY ELECTRONIC MAIL: By e-mail, consented to in writing, pursuant to Rule 5(b)(2)(F) of the NRCP at the following e-mail address:

*Allanna Warren*
PLAINTIFF