Electronically Filed
5/22/2023 12:51 AM
Steven D. Grierson
CLERK OF THE COURT

Allanna Warren
9620 S. Las Vegas Blvd., Suite E461
Las Vegas, NV 89123
D1A2N3N4@PROTON.ME

CASE NO: A-23-871041-C
Department 24

DISTRICT COURT

CLARK COUNTY, NEVADA

| | |
|---|---|
| ALLANNA WARREN,<br>Plaintiff,<br>vs.<br>HILTON ET. AL.,<br>Defendant | Case No.:<br>Dept. No.:<br><br>COMPLAINT JURY TRIAL DEMANDED |

Plaintiff, ALLANNA WARREN, hereby submits her COMPLAINT JURY TRIAL DEMANDED. Plaintiff complains against Hilton as follows.

## I.

## STATEMENT OF THE CASE

This case is linked and related to two police misconduct cases currently in litigation. The first case is against the City of Sparks et. al. and The county of Washoe Jail et. al in the Second Judicial District case number CV2201525. The second case is against Las Vegas Metropolitan Police Departments (LAS VEGAS METROPOLITAN POLICE DEPARTMENT) in the US District Court District of Nevada with case number 2:23-cv-00065-GMN-DJA and in the US Court of Appeals for the Ninth Circuit with a case number of 23-15253. After an unlawful detainment on June 14, 2020 and an unlawful arrest on June 20, 2020 by Sparks Police officers Ginger Miller, Ryan Patterson and Daniel Jones, PLAINTIFF and her elderly mother were harassed, followed, stalked, illegally surveilled, had their communications devices illegally

monitored and would go into any business, school, store, retail business, apartment, doctor's offices, townhome, employers (Anthem Blue Cross and Blue Shield (BCBS), AppleOne and Hilton Grand Vacations), box store like Walmart, 99 Cent Only Stores or Dollar Tree, private home or any place PLAINTIFF and her mother visited even once and slander, libel and character assassinate them both. Law enforcement would illegally stalk and follow MS. WARREN to continue the harassment, slander, libel and character assassination to landlords, neighbors, employees, co-workers, supervisors, doctor's office staff, doctors, physician assistants etc. in Southern Nevada as well. Ms. WARREN had no criminal record at the time of her arrest and should have been released on her own recognizance. Regardless of this, Ms. WARREN languished in WASHOE COUNTY JAIL for a week, from June 20, 2020 to June 26, 2020. During this *entire* time, she was placed in solitary confinement for no reason. By "solitary confinement," PLAINTIFF means that she was in a small, separate place in the basement of the WASHOE COUNTY JAIL, completely alone, and that this place only had room for one person. Ms. WARREN languished in this small space for six solid days. She was given no reason for her segregation from the main jail population. The charges against Ms. WARREN were entirely dropped on September 15, 2021.

Washoe County had a motive for disliking Ms. WARREN. From August 5, 2019 to September 24, 2019, WARREN had actually worked for Washoe County in their Alternative Sentencing Department. In that capacity, she worked in a makeshift crime lab near to the county courthouse. There, she was expected to analyze evidence chemically despite having no formal scientific training. Ms. WARREN'S hiring for the lab was rushed and did not meet typical employment protocols. In the lab, which was not properly licensed, Ms. WARREN regularly worked with caustic chemicals but was given no personal protective equipment (PPE) to perform

her work. The lab had no eye wash station, no labels for chemicals, and no hazardous waste disposal. Without hazardous waste disposal, corrosive chemicals were being left in the trash where they could leach into the water system outside. On September 23, 2019, Ms. WARREN went to the hospital with contact dermatitis acquired as a direct result of her unsafe employment. The next day, she complained to the Occupational Safety and Health Administration (OSHA) about the conditions in the lab and gave her supervisor a doctor's note.

Ms. WARREN was fired by Washoe County at around 6 PM on Tuesday, September 24, 2019. When Nevada OSHA investigated Washoe County, County was fined upwards of $4,000 for facilities violations as a direct result of Ms. WARREN's complaint regarding unsafe working conditions. Prior to working for the Alternative Sentencing Department of Washoe County, Ms. WARREN worked as an administrative assistant at China Spring Youth Camp in Douglas County. In this capacity, Ms. WARREN observed that the camp was doctoring their accounting files and was prescribing psychotropic medication to children under 18 in exchange for Medicaid subsidies. Rather than go along with these financial malfeasance schemes as her supervisor expected her to, Ms. WARREN reported what she saw to the state and was subsequently fired. Ms. WARREN had worked at the camp for eleven months and one week and was fired right before her probationary period was over.

A Northern Nevada judge, named Pete Sfrazza, had a son, Giovanni Sfrazza, who was incarcerated at the camp. This judge was best friends with another judge, Judge Tod Young, who oversaw the camp. When Ms. WARREN was hired by Washoe County, Pete Sfrazza was overseeing the Alternative Sentencing Department. The same judge whose son had once been incarcerated at China Spring at the time when Ms. WARREN brought her concerns about the juvenile facility to state regulators. In June of 2021, China Spring Youth Camp temporarily

closed the half of its camp dedicated to the care of boys due to, among other problems, “financial instability.”

The police misconduct problems for Ms. WARREN did not stop in Washoe County or Northern Nevada. In November 2021, during a training course for her new job, working for AppleOne Temporary Agency and placed at Anthem BCBS in Las Vegas, a co-worker named Glenn Taylor teased Ms. WARREN by showing her a copy of her booking photo that had been taken when she was arrested. Ms. WARREN suffers from alopecia. When she was booked by the police in Sparks on June 20, 2020, OFFICER MILLER removed Ms. WARREN’S hat before her booking photo was taken, so Ms. WARREN appears bald in the photo. Somehow, Ms. WARREN’s co-workers, Glenn Taylor, Gennifer Ross, Tyranisha Watson, Rachel Post and others, got their hands on this photo, and stated that he had actually gotten the photo from their training instructor, Shelia Williams of Anthem Blue Cross and Blue Shield. Thereupon, Ms. WARREN’s classmates in the training program teased her with photos of bald people and Shelia Williams harassed her also. The booking photo cannot be found online. Ms. WARREN called the Washoe County Sherriff’s Office, who stated to her that such a photo is only a public record when an individual is incarcerated, but that after incarceration is over, the photo is removed from their website. The Washoe County Sherriff’s office additionally stated that the only way the picture could be released at this point would be either at Ms. WARREN’s own request for it, or, in response to a request from someone inside SPARKS POLICE DEPARTMENT. Therefore, on information and belief, SPARKS POLICE DEPARTMENT impermissibly released Ms. WARREN’S booking photo online or to her then current employer in Las Vegas in an effort to harass, embarrass, stalk, and belittle her. After PLAINTIFF complained about the arrest photo to her employer, she was placed on administrative leave and ultimately fired by Apple One

Temporary agency. It is also possible that LAS VEGAS METROPOLITAN POLICE DEPARTMENT additionally had a hand in the booking photo getting released to Ms. WARREN'S new employer in Las Vegas.

Ms. WARREN has been the victim of a wide variety of suspicious behavior at the hands of LAS VEGAS METROPOLITAN POLICE DEPARTMENT since having moved from Reno to Las Vegas in July 2021. Ms. WARREN regularly finds herself followed by both uniformed and plain clothes LAS VEGAS METROPOLITAN POLICE DEPARTMENT officers when she leaves her apartment building by car, taxi, Uber, Lyft or rental car. She cannot take videos of this behavior when she is alone in her car for fear of being pulled over for using a cell phone while driving. Ms. WARREN'S mother is elderly and disabled and also cannot take videos of this behavior on the rare occasions when she is in the car alongside her daughter. Prior to her ordeal, Ms. WARREN suffered from anxiety, depression, and alopecia. Now, subsequent to her ordeal at the hands of SPARKS POLICE DEPARTMENT and LAS VEGAS METROPOLITAN POLICE DEPARTMENT, PLAINTIFF additionally suffers from PTSD and paranoia. Following her confinement, and likely due to stress and the filthy conditions inside the WASHOE COUNTY JAIL, Ms. WARREN developed hidradenitis suppurativa, a painful skin condition that causes small, painful lumps to form under her skin. Following her jailing, MS. WARREN developed these sores and pustules all over her body, for she sought the help of a dermatologist.

After being followed, stalked and having PLAINTIFF'S booking photo illegally released at Anthem BCBS and AppleOne, law enforcement stalked MS. WARREN to Hilton Grand Vacations. PLAINTIFF had a phone interview on March 8, 2022 with Hilton Grand Vacations recruiter Felicia Francois. Ms. Francois hired MS. WARREN on the spot and asked that PLAINTIFF complete a background check, which MS. WARREN accomplished promptly. On

information and belief, law enforcement knew when and where PLAINTIFF had just been hired because they were monitoring all of PLAINITFF'S communication in violation of her 4th Amendment rights. On March 9, 2022 Ms. Francois informed MS. WARREN that she would be starting training on March 14, 2022. On March 14, 2022, MS. WARREN was informed that she passed her background check and was set to go. During the first week of training, MS. WARREN noticed that several trainees from her class would be following her during breaks and lunches. Three male trainees would consistently stalk, follow and watch MS. WARREN. One was an Asian man, Allanna Warren only remembers his name was Hinson and went by Henny, a white man whose first name was Ryan and a Hispanic man named Frank Bort. During the first week of training, MS. WARREN also observed two white male motorcycle LAS VEGAS METROPOLITAN POLICE DEPARTMENT officers park next to her during three lunch hours as she ate at her car. After eating her lunch, MS. WARREN, observed the same two white male LAS VEGAS METROPOLITAN POLICE DEPARTMENT officers inside the Hilton Grand Vacations building speaking to several people. One person MS. WARREN recognized speaking to the LAS VEGAS METROPOLITAN POLICE DEPARTMENT officers was a man who went by Mr. G. MS. WARREN does not remember his full name but everyone called him Mr. G. As previously indicated PLAINITFF did not have a criminal record and had just completed a background check and passed it. During the second week of training, MS. WARREN remembers seeing two supervisors stalking, following and watching her, just like her fellow trainees did the week before. At first PLAINTIFF did not know either supervisor's name but during training both supervisors came to introduce themselves to the training class. One supervisor's name was Paul Maroe and the other was Demontre Thomas. Michael Flores, a co-worker of the PLAINTIFFS who moved from Orlando to start the call center in Las Vegas, came to speak to

the training class as well. Michael explained to PLAINTIFFF'S class that he made over $100,000 annually and he recommended that the new trainees take advantage of the Hilton Go benefits as it helps him to sale more packages. During training, PLAINITFF's class was told that after three months they would be able to work from home if they wanted. The trainees would be required to inform their supervisor's of their desire to work from home.

After training was over PLAINTIFF worked under a supervisor named Krys Wainwright who oversaw team 9. PLAINTIFF'S schedule was Sunday to Thursday from 3:00 pm to 10:30 pm. After the training class PLAINTIFF started working her regular schedule, and noticed that the stalking, following, watching started happening more frequently and included supervisors/employees from the customer service area, the security company (particularly a Hispanic male named Jose) and employees from other departments (particularly Rene from IT). On 5/17/22 Paul Maroe had spent his day following, stalking, watching and walking near the PLAINTIFF sniffing around and smelling her. This criminal and bizarre behavior from a supervisor made the PLAINITFF so upset that she was triggered. PLAINITFF asked to be sent home which Krys Wainwright approved. PLAINTIFF was under so much stress and anxiety because her former attorney Robert Melcic had just filed a police misconduct case, her neighbors (particularly Laura Martinez and Michael Silva) were harassing her , calling her racial epithets and falsely calling LAS VEGAS METROPOLITAN POLICE DEPARTMENT on her and PLAINTIFF's landlord (Bo Jones and Laura Van Hine) were threatening MS. WARREN with eviction every two weeks right after taking her rent for being a "nescience," When PLAINITFF returned to work on 5/18/22 Krys spoke to the PLAINTIFF in an office. Krys asked MS. WARREN what happened the day before. PLAINTIFF informed Krys about Paul Maroe's creepy behavior, the stress PLAINTIFF was under because of the police, the fact that MS.

WARREN felt as if she can never have peace because she was under constant surveillance, stalking, following, monitoring from Law enforcement. PLAINTIFF told Krys that law enforcement had been to her housing, jobs and everywhere she or her mother went. PLAINTIFF told Krys that she lacks sleep and stress/anxiety exacerbate her preexisting medical conditions. PLAINTIFF told Krys that she is an innocent person but law enforcement was treating her like a criminal. Allanna Warren was crying and upset as she poured her heart out to Krys. In a 5/19/22 email titled "Documentation Email" PLAINITFF wrote all of this to her former Attorney, Robert Melcic, and went on to say, " I wanted to document this in case we need this in the civil case/ police misconduct case when it comes to my mental/physical health… this [law enforcement harassment] is taking it's toll on me and affecting my job. I am hoping we can get them to pay for some mental help for me as I definitely need it!"

PLAINITFF would be followed, stalked and monitored before leaving her house to go to work, while she drove to work, while she was at work and while she drove home from work. PLAINTIFF requested that at her three months of working for Hilton Grand Vacations that she be allowed to work from home for her safety from the supervisors, employees and her neighbors. Krys told the PLAINTFF that she could work from home when her three months was up. However, when June 12, 2022 rolled around the PLAINITFF hit a road block. Krys told PLAINTIFF to come IT and get her take home equipment. When Allanna Warren followed Krys' instructions, IT told her they did not have any paperwork and would not give her anything. PLAINTIFF informed Kry and manager Nick Lupu. PLAINITFF had to jump through hoops in order to get the equipment to work from home, although in training it was explained that Hilton Grand Vacations encouraged employees to work from home and Krys knew PLAINTIFF wanted

to work from home for her safety. Finally, Nick Lupu was able to secure Allanna Warren with the equipment to work from home.

While PLAINTIFF worked from home, her neighbors heightened their harassment while she tried to work. PLAINTIFF has video and other evidence that neighbors continued to call LAS VEGAS METROPOLITAN POLICE DEPARTMENT on the PLAINTIFF during her work hours, allowed their children to vandalize PLAINTIFF'S property while she worked, had loud music playing to engage in psychological warfare while PLAINTIFF worked and landlord turned PLAINITFF'S water off without warning.

PLAINTIFF has had to endure Hilton Grand Vacations not paying her earned SPIFFS or bonuses, being asked to come back to work from the office although MS. WARREN had safety concerns, discriminate against when trying to work other places at Hilton Grand Vacations, having PLAINITFF'S booking photo passed around and being made fun of again and enduring harassment from co-workers/supervisor through the Teams chat. On 8/7/23 PLAINTIFF filed an EEOC complaint against Hilton Grand Vacations. PLAINTIFF informed Human Resources and management of this fact in writing. Since this date PLAINITFF has been retaliated against in violation of the Title VII of the Civil Rights Act of 1964 (Title VII). For example, on 11/8/22 PLAINITFF sent an email titled "Please fix this" where she showed HR and management proof of a threat lodged against PLAINITFF in the Teams chat from supervisor Demontre Thomas. Mr. Thomas put a meme up stating, "snitches get stitches." This was right after PLAINTIFF put up a comment in the Teams chat about work. This threat was a retaliatory act because PLAINTIFF filed an EEOC case and was verbal about the LAS VEGAS METROPOLITAN POLICE DEPARTMENT's involvement at her job like they did with

Anthem/Apple One. HR nor management got back to PLAINTIFF about this threat or her safety concerns. Many of PLAINITFF'S concerns were ignored.

PLAINITFF tried to get away and go on vacation while working at Hilton Grand Vacations. Unfortunately, even on vacation PLAINTIFF was harassed. On information and belief, someone from HILTON would inform law enforcement of the dates she put in for vacation, how long she would be away and what destination she was heading. One perk of working for Hilton Grand Vacations is getting deeply discounted hotel stays. So, Hilton Grand Vacations had access to PLAINTIFF'S itinerary due to using the "Hilton Go" website to book her hotels. PLAINTIFF'S first encounter was at a Home2Suites located at 705 N. Sam Houston Pkwy East, Houston, TX 77060. PLAINTIFF stayed from July 23/2022 to July 24, 2022. After this horrific stay at Home2Suites PLAINTIFF wrote the following email titled, "Terrible treatment for a team member" to the Hilton CEO Chris Nassetta, which explains that this trip was PLAINTIFF's first time in the Houston area and she did not know her way around the city but as a Hilton Grand Vacations employee she wanted to stay at the Houston Home2Suites. When PLAINTIFF arrived, she saw a Houston constable in the entrance of the hotel as she arrived. Then when PLAINTIFF checked in, she signed up for the free shuttle to the airport the next morning. At no time was MS. WARREN asked what airport she was flying out of. This should be a standard question, especially when there are multiple airports in the Houston area. PLAINTIFF had no idea how many airports there were or that she should have specified which airport she was traveling to . Next, PLAINTIFF was placed in room 306. In that room MS. WARREN heard thunderous stomping and jumping above her head. MS. WARREN immediately called the front desk to inquire about changing rooms. She spoke with desk attendant Ashley. Ashley was not apologetic at all and instructed PLAINTIFF to come down to

the front desk to get a new key. PLAINTIFF immediately headed to the front desk to retrieve the keys, however, when MS. WARREN go to the lobby there was a sign stating that there was no one at the desk and to come back later. PLAINTIFF was appalled because desk attendant Ashley just informed PLAINTIFF to come downstairs to retrieve a new key for a new room. Ashley knew PLAINTIFF was an employee as the reservations stated that PLAINTIFF was an "EGUEST" or employee guest but still chose to racially discriminate against her. PLAINTIFF was moved to room 316. PLAINTIFF signed up for a 6:00 am shuttle to the airport and came downstairs at about 5:50 am to be on time. At no time did anyone ask MS WARREN about what airport she was going to. As MS. WARREN waited on the shuttle, she notices another Houston police officer entering and exiting the front of the hotel and staring at her as he passed her. Finally, the shuttle arrived, and PLAINTIFF observed the shuttle driver go inside and speak to the front desk agent before the shuttle departed at about 6:15 am. The male shuttle driver comes out, looks at MS. WARREN directly and says "we're ready to go" or something to that effect. The shuttle arrived at International Airport of Houston (IAH), however, PLAINTIFF was supposed to be at Houston Hobby to fly out. PLAINTIFF had an 8 am scheduled flight departure time. PLAINTIFF also had a ride set up for when she arrived back in Vegas, so making connections was important. MS. WARREN had no idea she was at the wrong airport until she tried to check her baggage. The kiosk didn't have MS. WARREN'S reservation. MS. WARREN went to the desk agent to inquire about her flight. The desk agent looked at PLAINTIFF'S ticket and said that she was at the wrong airport. MS. WARREN'S anxiety was growing and she started to panic ash she was afraid she would miss her flight. Another desk agent asked PLAINTIFF how she got to the airport. PLAINTIFF informed the desk agent that the hotel shuttle dropped her off without asking what airport she was flying out of. The desk

agent said the mix up was the hotel's mistake, to which PLAINTIFF agreed. Because of Hilton's mistake PLAINTIFF had to pay significantly more for another ticket. When PLAINTIFF arrived home she received a phone call from Omar who said he worked for the Home2Suites in Houston. Omar was very rude to the PLAINTIF and blamed the PLAINTIFF for not knowing what airport she was at. PLAINTIFF informed Mr. Nassetta in order to inform him of the treatment of a team member and also to try to be compensated for the extra money she was out because of the hotel's mistake. Instead of getting a reasonable response from Mr. Nassetta PLAINTIFF was called into a meeting at Hilton Grand Vacations. In this meeting PLAINTIFF'S Hilton Go benefits were taken from her because the company felt Ms. Warren acted as a spy on her trip to Houston.

PLAINTIFF booked another trip with her mother to Denver, Colorado from October 20, 2022 to October 23, 2022 and stayed at the Hilton Garden Inn Denver South located at 9290 S. Meridian Blvd, Englewood, CO 80112. This stay was ore horrific because PLAINTIFF had her mother with her and was embarrassed, humiliated, and suffered extensive emotional distress. While staying at the hotel PLAINTIFF sent another email to Mr. Nassetta titled "Terrible treatment for a team member." In this email PLAINTIFF writes,

We just went downstairs to eat our breakfast. We encountered Candice Espinosa who works at the restaurant in the lobby. When we approached the breakfast area Candice speaks loudly to us and acted like we are retarded. Well I know how a continental breakfast works and didn't need any explanation. I explained that we are Gold members and get a $20 room perk. She ignores me and goes to the register, prints out a receipt, throws it in a black holder and yells at me to fill it out. I explained again that we get the breakfast comped. Instead of explaining the process she says you have said that three times, fill out the receipt. My mother had a video recording the entire situation. My mother says that I have to report this treatment to upper management because it was unwarranted and unnecessary. Candice never apologized to me. I asked Candice what her manager's name was. She just starts heading to the back saying nothing to me. Then she yells that his name was James. Candice proceeds to get James from the back. While I was obtaining the names involved and trying to get my breakfast my mom was speaking to Samantha, front desk attendant. Samantha tells my mother that she is scared of Candice. Samantha also reported that Candice mistreated her as well. I currently have a Hilton Grand Vacation EEOC law suit and rest assured the issues I have faced as an employee at the hands of every Hilton property I go to will be addressed. This is absolutely absurd that I can continually report mistreatment when I pay my hard earned money I thank the most high that I had several witnesses and a tape running at this time. The only person that got loud or acted crazy and inappropriate was Candice Epinosa. Candice tried to intimidate me by staring at me like she could slit my throat. In addition, Candice was speaking to another guest. Candice told the white female guest that I was crazy. What medical license does Candice have? What medical school did she graduate from? Where does she get the nerve to lie and call a fellow employee crazy? This is slanderous, defamatory, libelous and abusive! The fact that she is Hispanic and I am an African American sure does play into the national conversation about the racism American blacks face at the hands of Hispanic people. What a travesty this is that a name like Hilton is condoning this behavior!

PLAINTIFF received no response to the email. MS. WARREN wrote another email upon her leaving the hotel as she and her mother were treated rudely when she tried to correct a billing

mistake on her bill. The desk attendant interrupted MS. WARREN and told her he was going to cut her off. This desk attendant did not want to hear MS. WARREN's issue with her bill, although it was a significate discrepancy. Instead of arguing with the attendant, which was what the male desk attendant wanted, MS. WARREN and her mother had a flight to catch. The bill was never adjusted correctly and Mr. Nassetta ignored PLAINTIFF'S email.

After all of what PLAINITFF endured while working at Hilton Grand Vacations and staying at Hilton Hotels, she went out on a continuous ADA leave November 15, 2022. After the stress and anxiety she was under and fear she would be fired in retaliation for her complaining, PLAINTIFF had to leave work early on 11/14/22 and has been out since. While working on 11/14/22 PLAINITFF was heard apologizing to her customers because she felt sick and not herself, she threw up while at work and was not eating. All of these are symptoms of depression, anxiety and stress. On 11/15/22 PLAINTIFF informed management and HR in writing that she needed paperwork for Worker's comp and Broadspire had her on an ADA leave. It took a while for HR to get back to PLAINTIFF after her initial worker's request. While waiting to get the Hilton Grand Vacations worker's comp doctor PLAINITFF went to her own doctor on 11/18/23, Mr. Jesse Connors at Cano Health. PLAINTIFF did not go to the Hilton Grand Vacations worker's doctor until 11/25/22 because it took Hilton Grand Vacations this long to get Allanna Warren the paperwork. The Hilton Grand Vacations worker's comp doctor recommended counseling to treat her stress and anxiety. Unfortunately, PLAINITFF'S worker's comp was denied and she was refused the treatment that the Hilton Grand Vacations' doctor recommended for her to get better. PLAINTIFF'S doctor put her on strong depression/bi polar medication. Since PLAINTIFF moved to Las Vegas she has had issues trying to find suitable medical treatment because of the constant police involvement in MS. WARREN's civil matters.

PLAINTIFF's first appointment with Cano Health located at 5701 W Charleston Blvd, Unit 100, Las Vegas, NV 89146 was on November 18, 2022. At this appointment MS. WARREN saw Physician's assistant Jesse Connors. In this appointment PLAINTIFF explained that law enforcement chased her and her mother out of Northern Nevada and that LAS VEGAS METROPOLITAN POLICE DEPARTMENT has picked up the harassment where Northern Nevada Law enforcement left off. PLAINTIFF explained that she has a history of depression, anxiety, asthma and other ailments that stress exacerbated. PLAINTFF asked Mr. Connors to obtain copies of her medical records from her medical facility in Reno Nevada. It was revealed later that Mr. Connors never sought to obtain copies of PLAINTIFF's medical records from her previous medical facility in Reno as she asked on 11/18/22. MS. WARREN asked Mr. Connors for a referral for mental health as law enforcement's constant interference was affecting her negatively. Mr. Connors said that he would obtain medical records from PLAINITFF'S previous medical facility and would get her a mental health referral. Mr. Connors suggested that PLAINTIFF get an EKG, get a chest x ray and he would set up an appointment for a Pulmonary Function Test (PFT). Without an evaluation or ever treating PLAINTIFF, Mr. Connors prescribed MS. WARREN 10mg tablets of Escitalopram with two refills. Escitalopram is part of a Bi-Polar treatment. However, PLAINTIFF had not been diagnosed with bi-polar disorder by anyone. A major warning for this medication is that one should seek medical attention right away if you have symptoms of serotonin syndrome, such as: agitation, hallucinations, fever, sweating, shivering, fast heart rate, muscle stiffness, twitching, loss of coordination, nausea, vomiting, or diarrhea. MS. WARREN had never been on this medication and was not informed of any side effects of the medication before taking it per Mr. Connors instructions.

Mr. Connors told PLAINTIFF that the scheduling department would be contacting her shortly after her 11/18/22 visit. Immediately after the appointment with Mr. Connors, his medical assistant, Juliana Ramirez, took MS. WARREN to get her EKG test. While in the room Juliana instructed PLAINTIFF to undress above the waist, including removing her bra and shirt. PLAINTIFF complied with the instructions. The EKG was performed by Ms. Ramirez. After the testing, Juliana instructed PLAINTIFF to keep her bra off but put on her shirt because she was going to get her chest Xray. PLAINTIFF complied with these instructions as well. Juliana led MS. WARREN to a chair outside a small room. A Hispanic male came out of the small room and asked PLAINTIFF her name. MS WARREN told the male her name and he led her inside the room. After the chest x ray, the male instructed PLAINTIFF to "get dressed" in the same room. The male could see the PLAINTIFF clearly and she inquired about the visibility of dressing in front of the male. The male told MS. WARREN that everyone gets dressed in the room with him in the room. Outside the small room, PLAINTIFF saw a bathroom right next to the room and wondered why the male would not have instructed her to change inside the bathroom right next door.

MS. WARREN's mother is over 70 years old so having a medical provider in close proximity is paramount to her health. PLAINTIFF, despite her apprehensions, recommended Cano Health to her mother. On 11/29/2022 PLAINTIFF's mother went to an appointment with Mr. Connors at the Cano Health located at 5701 W Charleston Blvd, Unit 100, Las Vegas, NV 89146. Mr. Connors told PLAINTIFF's mother that he would be getting her medical records from her medical facility in Carson City just like he told the PLAINTIFF. PLAINTIFF's mother is not sure if Mr. Connors actually sought to obtain those records. Mr. Connors also advised MS. WARREN's mother to get a PFT, get a chest x ray and be seen by a Ear Nose and Throat (ENT)

specialist. Immediately after the appointment, PLAINTIFF went to the waiting room and PLAINTIFF's mother went to get her chest x ray. Upon exiting Cano Health PLAINTIFF's mother told her that she experienced the same "undressing" incident that PLAINTIFF had with the male who conducts the x rays. PLAINTIFF could see her mother was uncomfortable and this bothered her immensely.

It has to be noted that before the 11/29/22 appointment at Cano Health, which was scheduled at 10:30 am, PLAINTIFF and her mother were stalked and followed by LAS VEGAS METROPOLITAN POLICE DEPARTMENT officers. They were pulled over by a black male officer who was the driver of the police SUV and had a white female officer in the passenger seat. PLAINTIFF knows they were being stalked and followed because PLAINTIFF and her mother had just moved into a new place, less than a week before being pulled over by LAS VEGAS METROPOLITAN POLICE DEPARTMENT, and no one had their new address. There would have been no way LAS VEGAS METROPOLITAN POLICE DEPARTMENT had their new address, without illegally stalking, following and monitoring the PLAINTIFF and her mother as their new place is in another city/jurisdiction and far away from their previous home where LAS VEGAS METROPOLITAN POLICE DEPARTMENT were falsely called multiple times by PLAINTIFF'S neighbors. In the previously mentioned police misconduct cases involving LAS VEGAS METROPOLITAN POLICE DEPARTMENT, neighbors Laura Martinez and Michael Silva are named, with video evidence, as being the culprits who were prompted by LAS VEGAS METROPOLITAN POLICE DEPARTMENT to call them so PLAINTIFF could be falsely arrested again or evicted.

PLAINTIFF's mother, had her PFT scheduled for 12/8/22. While in the waiting room the PFT specialist, his name is Uday, approached MS. WARREN's mother and told her that he does

not have the mouth pieces, which are mandatory to conduct the test, and he has no idea when he would get them and that she needs to reschedule her PFT somewhere else as he was going out of town on a vacation for two months. There was no forewarning or a courtesy call to inform PLAINTIFF'S mother of this issue.

PLAINTIFF's mother had her Ear Nose and Throat (ENT) appointment on 12/12/22 with Dr. Kim of the UNLV medical center located at 5320 S. Rainbow, Suite 250 Las Vegas, NV. While in her appointment PLAINTIFF and her mother complained to Dr. Kim about their treatment by Cano Health. They both explained what happened with "undressing" in front of a male x ray tech, Uday having no equipment to conduct PFTs for patients with breathing issues, and just the entire medical negligence of Cano Health. Dr. Kim thanked both ladies for their honesty and informed them that he would take their concerns seriously and inform the proper authorities. Dr. Kim told PLAINTIFF and her mother that he did not want to send any of his patient's to this medical facility after hearing their horror stories. PLAINTIFF and her mother noticed a LAS VEGAS METROPOLITAN POLICE DEPARTMENT SUV parked outside the medical facility during the mother's appointment. They made a comment to Dr. Kim and noticed that the LAS VEGAS METROPOLITAN POLICE DEPARTMENT SUV did not leave until right before the appointment was over. Again, this proves the constant stalking, following, surveilling, monitoring etc. by law enforcement illegally.

During the month of November and December PLAINTIFF heard from the Cano Health scheduling department. They informed MS. WARREN that Axis psychiatry would be scheduling her an appointment. MS. WARREN heard from Axis and they scheduled her for an appointment on 12/26/22. Later in December when PLAINTIFF called Axis to confirm the appointment the receptionist told PLAINTIFF that their building was closed due to the

observance of Christmas on 12/26/22. When PLAINTIFF inquired as to why she was scheduled for an appointment on a day they knew they were closed PLAINTIFF received no response. Then PLAINTIFF was informed that Axis would not have an appointment open for several months.

On 12/18/22 PLAINTIFF had a follow up appointment with Mr. Connors. PLAINTIFF informed Mr. Connors that Axis psychiatry scheduled her on a day they were closed and she wanted another referral. At the 12/18/22 appointment PLAINTIFF's blood pressure was extremely high as she had been chased around the Cano Health parking lot by strangers and had several LAS VEGAS METROPOLITAN POLICE DEPARTMENT squad cars tailing her from her new home to the appointment. PLAINTIFF was scared and her blood pressure exhibited this. Mr. Connors had PLAINTIFF's blood pressure checked several times and it was elevated the entire time. Having law enforcement involving themselves in every aspect of PLAINTIFF's life was affecting her health.

PLAINTIFF waited to hear from Cano Health's scheduling department to schedule another psych appointment. PLAINTIFF ended up calling Cano Health as she did not hear from the scheduling department as expected. PLAINTIFF was informed that she would have to call around Las Vegas for a psych doctor as their scheduling department would not help her. PLAINTIFF informed the scheduling department that it is their job to find a doctor for the PLAINTIFF. PLAINTIFF was told that "normally" their department does call around and find doctors for patients but in PLAINTIFF's case they would not help her.

Because law enforcement went to PLAINFIFF's job at Hilton Grand Vacations and slandered her there, she was on an ongoing ADA medical leave of absence since 11/15/22. She was trying to get Short Term Disability from Lincoln Financial Group (LFG). While trying to

get all the medical paperwork for LFG to make a decision, MS. WARREN was run around by Mr. Connors office and LFG. A decision on PLAINTIFF'S case was intentionally delayed from both sides. After all the stress of PLAINTIFF'S job, her mother's health, trying to get mental help, no income from any source, law enforcement constantly bothering her, and no one helping the PLAINTIFF, all this stress was taking a toll on her health.

One of the reasons LFG denied PLAINTIFF's short term disability was because their nurse stated that PLAINTIFF was not seen from a licensed doctor or psychiatric doctor to correctly diagnose the PLAINTIFF, no evaluation was performed before giving PLAINTIFF Escitalopram and no follow up was performed by Cano Health to see if the medication was correct and helped the PLAINTIFF. Mr. Connors did not have the medical license to prescribe the PLAINTIFF any psych medication, especially with a medication like Escitalopram.

During December and January 2023 PLAINTIFF never saw Mr. Connors again until January 31, 2023. PLAINTIFF was scheduled for a Zoom appointment. During this appointment, Mr. Connors was clearly upset, and his facial expressions and treatment of PLAINTIFF exhibited this disdain. Mr. Connors stated on a recorded Zoom call that PLAINTIFF needs a doctor and Cano Health doesn't have a doctor therefore Cano Health can not see or treat the PLAINTIFF anymore.

PLAINTIFF informed Hilton Grand Vacations HR and management of everything that happened with Cano Health and that she was having issues obtaining medical treatment with the police constantly involving themselves in her civil matters. In April 2023 PLAINTIFF filed for unemployment. Her unemployment was denied and she appealed the decisions. It has been a month since last hearing from the Nevada Unemployment about her appeal. PLAINTIFF has

tried to involve the Governor Lombardi to aid in getting Unemployment to move on her case. PLAINITFF has been ignored by the governor and unemployment.

**II.**

**JURISDICTION AND VENUE**

1. "A court of this state may exercise jurisdiction over a party to a civil action on any basis not inconsistent with the Constitution of this state or the Constitution of the United States." NRS 14.065.

2. Jurisdiction in this Court is proper because this is a complaint seeking monetary relief in excess of $10,000, the PLAINTIFF is a resident citizen of Nevada, and the DEFENDANT HILTON is a private for profit company operating in Las Vegas, Nevada.

3. Venue is proper in the Eighth Judicial District Court of Clark County because:

a. Under NRS 13.020, "Actions for the following causes must be tried in the county where the cause, or some part thereof, arose, subject to the power of the court to change the place of trial." All of the events giving rise to this claim have occurred within Clark County;

b. The PLAINTIFF currently resides in Las Vegas, Nevada, where the events or omissions giving rise to the claims of this case occurred.

**III.**

**PARTIES**

4. At all times relevant to this action, PLAINTIFF was a resident of the State of Nevada, County of Clark.

5. DEFENDANT HILTON is a private business situated in Clark County, Nevada.

**IV.**

**GENERAL ALLEGATIONS COMMON TO ALL CLAIMS**

6. PLAINTIFF is a forty-five year old African-American woman.

7. PLAINTIFF suffers from pre-existing alopecia, depression, and anxiety; as a result of her ordeal at the hands of SPARKS POLICE DEPARTMENT and LAS VEGAS METROPOLITAN POLICE DEPARTMENT, she now also suffers from hidradenitis suppurativa, PTSD, and paranoia.

8. PLAINTIFF has been a resident of the state of Nevada throughout the entirety of this ordeal.

9. In July 2021, PLAINTIFF and her elderly mother moved to Las Vegas from Reno due to her fear of retribution by SPARKS POLICE DEPARTMENT.

10. Since her move, PLAINTIFF has been subject to ongoing surveillance and interference in Las Vegas by LAS VEGAS METROPOLITAN POLICE DEPARTMENT, detailed infra.

11. PLAINTIFF has had additional problems happen to her as a result of interference by, on information and belief, the LAS VEGAS METROPOLITAN POLICE DEPARTMENT; these include but are not limited to:

a. Possible involvement in PLAINTIFF'S booking photo being released to her new employer in Las Vegas;

b. Known interference with PLAINTIFF'S and her mother's property as it was being transported by U-Haul from Northern to Southern Nevada, who admitted to PLAINTIFF on the telephone their employees' collusion with both SPARKS POLICE DEPARTMENT and the LAS VEGAS METROPOLITAN POLICE DEPARTMENT when transporting and temporarily losing the property;

c. Unwarranted surveillance at PLAINTIFF'S new Airbnb upon first moving to Las Vegas;

d. Being followed by both uniformed and plain clothes LAS VEGAS METROPOLITAN POLICE DEPARTMENT officers when PLAINTIFF leaves her apartment building by car, Uber, Lyft, Taxi or rental car;

e. Being told by her internet service provider T-Mobile that the POLICE paid for her internet connection;

f. Being harassed at home, including by having LAS VEGAS METROPOLITAN POLICE DEPARTMENT bang on her door, allegedly at the behest of a neighbor, and wait around her apartment at night;

g. Being accused by the property managers at her building of violating community standards using videos skimmed from PLAINTIFF'S own surveillance cameras operating on PLAINTIFF'S own WiFi connection (the WiFi that T-Mobile has admitted the POLICE compensate).

h. Hilton was negligent throughout PLAINTIFF's experience staying at their hotels.

**—STATE CLAIMS—**

**V.**

**FIRST CLAIM FOR RELIEF**
***Unlawful Injury or Loss Suffered by a Vulnerable Person, NRS § 41.1395***

12. PLAINTIFF incorporates by reference all other allegations in this Complaint, as though fully set forth herein.

13. PLAINTIFF is a vulnerable person as defined by NRS § 41.1395 4(e)(1-2) in that she has a physical health impairment—alopecia—and psychological health impairments—depression and anxiety—that limit one or more of her major life activities, and she has medical records of these impairments.

14. Because of her ordeal, PLAINTIFF now also suffers from a very painful skin condition called hidradenitis suppurativa, and from new psychological problems including PTSD and paranoia.

15. DEFENDANT HILTON GRND was unjustified when they inflicted injury, pain, and anguish on PLAINTIFF with their negligence and failure to provide fair and appropriate treatment to her as an employee.

16. DEFENDANT has additionally exploited the medical vulnerability of a vulnerable Nevadan, in contravention of state law.

17. DEFENDANT HILTON working in tandem with law enforcement agencies are severely exacerbating PLAINTIFF'S pre-existing disabilities, in contravention of state law.

18. Accordingly, PLAINTIFF is entitled to recover all available damages, including—but not limited to—lost wages, pain and suffering, emotional distress and punitive damages, if available, as allowed by law, in an amount to be determined at trial.

19. In this particular Claim for Relief, PLAINTIFF is entitled to recover two times her damages, as allowed under NRS § 41.1395(1), in an amount to be determined at trial.

## VI.

## SECOND CLAIM FOR RELIEF

***Negligence and Gross Negligence***

20. PLAINTIFF incorporates by reference all other allegations in this Complaint, as though fully set forth herein.

21. DEFENDANT HILTON owes a professional duty and hotel liability to PLAINTIFF.

22. DEFENDANT HILTON owed a duty of care to PLAINTIFF. Special concerns affect the "hospitality industry" because its establishments hold their property open to the public at large. For hotels (collectively referred to as "innkeepers" under many state laws), duties owed to the public at large are based on the historic consideration that when weary travelers reached wayside inns as night approached, they were not to be arbitrarily turned away into the dark (the roads were filled with robbers) or otherwise subjected to the arbitrary mercy of the innkeeper with regard to prices or adequacy of quarters.

23. DEFENDANT HILTON had a responsibility not to discriminate against PLAINTIFF in violation of Title 42 of the U. S. Code, Chapter 21, Subchapter II (Public Accommodations) makes prohibited **discrimination** under the **Civil Rights** Act of 1964 applicable to "any inn, hotel, motel, or other establishment which provides lodging to transient guests." And under a phase-in provision, hotels must meet the requirements of the Americans With Disabilities Act (ADA); any new or renovated hotel facility must comply with the Act's mandates for public access and/or removal of physical barriers. Hilton is in violation of all of the listed responsibilities and duties.

24. DEFENDANT'S breach of said duty to PLAINTIFF constituted Negligence, Negligent Hiring and Entrustment.

25. DEFENDANT breached its duty by failing to exercise the degree of care that was owed to PLAINTIFF.

26. When engaging in their culpable conduct described herein, the DEFENDANT was not only negligent, but they were grossly negligent in that they failed to exercise even the slightest amount of care, with a conscious disregard of the rights or safety of the PLAINTIFF.

27. When engaging in their culpable conduct described herein, the DEFENDANT was grossly negligent because they acted with willful, wanton, and/or reckless disregard for the safety of PLAINTIFF.

28. DEFENDANTS exhibited a conscious disregard for PLAINTIFF'S bill of rights, constitutional rights and safety when they were on notice starting July 2022 PLAINTIFF notified Hilton CEO that his hotels were discriminating against PLAINTIFFF and law enforcement was involved. Hilton, and its direct connection to Hilton Grand Vacations, knew the probable harmful consequences of their wrongful acts. Hilton Grand Vacations, as PLAINTIFF'S employer knew about her medical conditions as MS.WARREN notified HR and management in writing. Not providing PLAINTIFF proper care had harmful consequences including physical and mental injury to her, which DEFENDANTS recklessly, willfully, and/or deliberately failed to act to avoid.

29. Accordingly, PLAINTIFF is entitled to recover all available damages, including—but not limited to— lost wages, pain and suffering, emotional distress and punitive damages, if available, as allowed by law, in an amount to be determined at trial.

## VII.

## THIRD CLAIM FOR RELIEF

### *Intentional Infliction of Emotional Distress*

30. PLAINTIFF incorporates by reference all other allegations in this Complaint, as though fully set forth herein.

31. DEFENDANT HILTON acted to intentionally to ignore PLAINITFF'S request for respectful, nondiscriminatory treatment when she visited Hilton hotels. PLAINTIFF informed

HR and management in August and September about stress exacerbating her medical conditions so Hilton was on notice for PLAINTIFF'S October trip. There was a direct connection between Hilton and Hilton Grand Vacations evidently shown with PLAINTIFF'S July Trip as an example. Within a week of returning to Las Vegas from Houston PLAINTIFF was called into a meeting at Hilton Grand Vacations, where her Hilton Go benefits were stripped from her. Michael Flores also told PLAINTIFF, in her training class, that Hilton Grand Vacations will know everything that goes on at any Hilton hotel an employee stays at.

32. DEFENDANT HILTON continued to act intentionally to have law enforcement at every hotel PLAINTIFF and her family stayed at while employed at Hilton Grand Vacations. On information and belief, only Hilton or Hilton Grand Vacations had access to PLAINTIFF'S itinerary to give to law enforcement as she did not divulge any of her travel information to anyone.

33. After being embarrassed, discriminated against, racially profiled, called crazy in public by a Hispanic Hilton Garden Inn employee, ignored by Hilton upper management PLAINTIFF was put on a new anti-depression drug with multiple debilitating side effects. Plaintiff was not on these drug before her dealings with Hilton.

34. MS. WARREN still has not been able to get a regular doctor in the Las Vegas area since negligently being thrown out by Mr. Connors and Cano Health.

35. Now, PLAINTIFF faces ongoing harassment and surveillance by LAS VEGAS METROPOLITAN POLICE DEPARTMENT even though she has committed no crime in either Clark or Washoe Counties. In order to help LAS VEGAS METROPOLITAN POLICE DEPARTMENT in their ongoing litigation, Hilton and negligently involved themselves in PLAINTIFF'S police misconduct cases.

36. As a result of the actions of the DEFENDANT, the PLAINTIFF has suffered severe emotional distress and physical harm.

37. The intentional behavior of DEFENDANT is the direct and proximate cause of PLAINTIFF'S deteriorated health and ongoing mental anguish.

38. Accordingly, PLAINTIFF is entitled to recover all available damages, including—but not limited to— lost wages, pain and suffering, emotional distress and punitive damages, if available, as allowed by law, in an amount to be determined at trial.

**VIII.**

**FOURTH CLAIM FOR RELIEF**

***Civil Conspiracy***

39. PLAINTIFF incorporates by reference all other allegations in this Complaint, as though fully set forth herein.

40. In Nevada, "[a]n actionable civil conspiracy is a combination of two or more persons who, by some concerted action, intend to accomplish some unlawful objective for the purpose of harming another which results in damage." Collins v. Union Fed. Savings Loan, 99 Nev. 284, 303 (Nev. 1983).

41. PLAINTIFF has been harassed by LAS VEGAS METROPOLITAN POLICE DEPARTMENT since moving to Las Vegas.

42. PLAINTIFF has never been convicted of a crime in Las Vegas, so it is a mystery why LAS VEGAS METROPOLITAN POLICE DEPARTMENT would harass her—but for their knowledge that she is disliked by SPARKS POLICE DEPARTMENT.

43. It would be unlawful for LAS VEGAS METROPOLITAN POLICE DEPARTMENT to do the following without a warrant and without probable cause (this list is not exhaustive):

a. Surveil Ms. WARREN at her Airbnb right when she moved to Las Vegas;

b. Place Ms. WARREN under investigation right when she moved to Las Vegas;

c. Participate in frustrating Ms. WARREN's access to her property as it was being transported south by U-Haul;

d. Release Ms. WARREN'S booking photo from Washoe County to her new, Las Vegas employer long after she had been released from jail;

e. Tail Ms. WARREN in her car whenever she is driving in Las Vegas, using a rental car or taking a Lyft or Uber;

f. On information and belief, conspire with the property managers at Ms. WARREN's apartment building to entrap Ms. WARREN in perceived community standard violations using videos "skimmed" from her own surveillance cameras operating on PLAINTIFF'S own WiFi

g. Intercept Ms. WARREN'S telecommunications, including her telephone and internet connection, as by paying for the connection out of a "police account."

h. Stop or interfere with PLAINTIFF and/or PLAINTIFF'S mother from obtaining medical help in either Northern or Southern Nevada. Medical help includes dental, medical, psychiatric, physical rehabilitation, psychology and any other "medical" help they may need.

44. If LAS VEGAS METROPOLITAN POLICE DEPARTMENT has a cognizable warrant or probable cause against Ms. WARREN for an alleged violation of the law in Clark County, PLAINTIFF asks to see that document.

45. Barring this, her treatment by LAS VEGAS METROPOLITAN POLICE DEPARTMENT is harassment meant to frighten and belittle her.

46. To the extent that LAS VEGAS METROPOLITAN POLICE DEPARTMENT illegally undertakes such treatment of Ms. WARREN at the behest of or for the benefit of SPARKS

POLICE DEPARTMENT in Washoe County, the two police departments are engaged in a civil conspiracy with one another against Ms. WARREN.

47. The "primary purpose" of such partnership is not protection of the community, but rather, "to cause injury" to Ms. WARREN, who is alone but for taking care of her elderly mother. Ungaro v. Desert Palace, Inc., 732 F. Supp. 1522, 1533 n.3 (D. Nev. 1989).

48. And such civil conspiracy, based in intentional tort, is illegal in this state.

49. Accordingly, PLAINTIFF is entitled to recover all available damages, including—but not limited to— lost wages, pain and suffering, emotional distress and punitive damages, if available, as allowed by law, in an amount to be determined at trial.

## —*FEDERAL CLAIMS*—
## IX.

## FIFTH CLAIM FOR RELIEF

***Unlawful Discrimination, Harassment, and Retaliation Based on Disability***
**Americans with Disabilities Act and Amendments Act, 42 U.S.C. § 12131 *et seq*. and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794**

50. PLAINTIFF incorporates by reference all other allegations in this *Complaint*, as though fully set forth herein.

51. Under the ADA's anti-discrimination provision, codified at 42 U.S.C. § 12132, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."

52. PLAINTIFF is a qualified individual with a disability as codified at 42 U.S.C. § 12132 because she meets the "essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity."

53. Not only does PLAINTIFF suffer from the physical disability of alopecia, she suffers from mental health conditions that have been exacerbated as the direct and proximate result of her treatment by DEFENDANTS HILTON.

54. DEFENDANTS HILTON was on notice that PLAINTIFF was a qualified individual under Title II for reasons including, but not limited to, the fact that PLAINTIFF informed HR and management that she had preexisting medical conditions via written communications.

55. DEFENDANT HILTON, through their officers, directors, managers, supervisors, agents, and/or employees discriminated against PLAINTIFF on the basis of her disabilities by following, stalking, staring at, laughing at, having law enforcement show up at every hotel PLAINTIFF was vacationing at  and being called crazy by Candice Espinosa.

56. As a result of this intentional discrimination by DEFENDANT HILTON, in violation of Title II, PLAINTIFF was excluded from equal access to programs and services meant to ameliorate her disability.

57. As a result of this intentional discrimination by DEFENDANT HILTON, even when PLAINTIFF was on vacation in other states and cities employees from either Hilton or Hilton Grand Vacations gave PLAINITFF's personal information to law enforcement.

58. PLAINTIFF continues to be profiled by LAS VEGAS METROPOLITAN POLICE DEPARTMENT in that she is surveilled, followed, harassed, and has had her telecommunications intercepted, as pled elsewhere in this pleading. All of these actions by

HILTON prey upon PLAINTIFF as a disabled American, a member of a protected class, at the same time that these actions also exacerbate and make worse PLAINTIFF'S disabilities.

59. PLAINTIFF seeks a permanent injunction requiring HILTON to comply with the ADA in the future by ensuring that qualified individuals are not discriminated against on the basis of their disabilities.

60. PLAINTIFF seeks a declaration that DEFENDANTS HILTON violated her rights under the ADA and Title 42 of the U. S. Code, Chapter 21, Subchapter II (Public Accommodations).

61. As a direct and proximate result of DEFENDANTS' intentional discrimination against her, PLAINTIFF sustained damages entitling her to equitable relief, as allowed by law, according to proof at trial.

62. Accordingly, PLAINTIFF is entitled to recover all available damages, including—but not limited to—punitive damages, if available, as allowed by law, in an amount to be determined at trial.

***—THEORIES OF LIABILITY APPLICABLE TO ALL CLAIMS—***

**X.**
***Respondeat Superior Liability***

*Respondeat superior* is not properly a cause of action or a claim for relief, but rather, a method of assigning liability to an employer for the conduct of its employees. See *Fernandez v. Penske Truck Leasing Co., L.P.* 2021 WL 1832571, 1 (D. Nev. 2012) (citing *Cruz v. Durbin*, 2011 WL 1792765 (D. Nev. 2011)). Accordingly, this section is not labeled as a claim for relief, but it seeks to assign liability to DEFENDANTS HILTON.

***Vicarious Liability of Employers for Conduct by Their Employees, Occurring in the Course and Scope of Employment***

63. PLAINTIFF incorporates by reference all other allegations in this *Complaint*, as though fully set forth herein.

64. At all relevant times herein, Candice Spinoza, Ashley Doe, unknown front desk attendant in Colorado, Unknown shuttle driver in Houston, Jake or James manager over food at the Colorado hotel, Omar Doe manager at Houston hotel, Paige Roberts, and Jay Doe unknown worker at the

Colorado hotel Roberts, unknown employees were under the control of their employer, HILTON.

65. At all relevant times herein, the acts Candice Spinoza, Ashley Doe, unknown front desk attendant in Colorado, Unknown shuttle driver in Houston, Jake or James manager over food at the Colorado hotel, Omar Doe manager at Houston hotel, Paige Roberts, and Jay Doe unknown worker at the Colorado hotel Roberts, unknown employees; each of them, complained of herein, caused injury and harm to PLAINTIFF and created culpability for violating the law, as alleged herein.

66. At all relevant times herein, the culpable and injurious acts of Candice Spinoza, Ashley Doe, unknown front desk attendant in Colorado, Unknown shuttle driver in Houston, Jake or James manager over food at the Colorado hotel, Omar Doe manager at Houston hotel, Paige Roberts, and Jay Doe unknown worker at the Colorado hotel Roberts, unknown employees, and each of them, occurred when they were under the control of their employer, HILTON and such acts by these employees occurred within the course and scope of their employment.

67. Based on the foregoing, PLAINTIFF is entitled to invoke the doctrine of *respondeat superior* to impose vicarious liability on DEFENDANTS HILTON. .

**—REMEDIES COMMON TO ALL CLAIMS—**

**XI.**

***Declaratory Relief***

68. PLAINTIFF incorporates by reference all other allegations in this Complaint, as though fully set forth herein.

69. Pursuant to NRS 30.030, NRS 30.100, NRS 651.090(2)(a), and the Court's inherent equitable powers, PLAINTIFF seeks, and is entitled to have, declaratory relief awarded in her favor, to declare her rights and obligations of the DEFENDANT sued herein, where such declaratory relief is necessary and proper to the termination of the disputes raised herein, including as specifically prayed for below.

70. This includes declaratory relief whereby the Court issues a declaration that DEFENDANT unlawfully discriminated against, harassed, and retaliated against PLAINTIFF and otherwise

violated PLAINTIFF'S rights under the law, and any other declaration the Court finds necessary and proper.

## XIII.

## PRAYER FOR RELIEF

WHEREFORE, PLAINTIFF prays for judgment against the DEFENDANT as follows:

1. For general damages in an amount in excess of $250,000.00;

2. For special damages in an amount in excess of $250,000.00;

3. For past and future compensatory damages, and other expenses incurred by reason of DEFENDANTS' intentional misconduct, acts, omissions, carelessness, recklessness, negligence, gross negligence, deliberate indifference, and other culpable conduct, described herein, in an amount in excess of $250,000.00;

4. For punitive and exemplary damages as allowed by law;

5. For costs of the suit incurred herein;

6. For lost wag.

7. For declaratory relief, in the form of declarations that:

(A) PLAINTIFF'S current medical damages are the direct and proximate result of the conduct of the DEFENDANT.

Dated this 22st day of May, 2023.

Allanna Warren

Pro Se Name Allanna Warren

## CERTIFICATE OF SERVICE

I hereby certify that I sent the foregoing COMPLAINT JURY TRIAL DEMANDED for electronic filing to the Eight Judicial District Court on the 1st day of May, 2023. I caused the foregoing COMPLAINT JURY TRIAL DEMANDED to be served as follows:

[ ] BY U.S. MAIL: By placing a true and correct copy of the same to be deposited for mailing in the U.S. Mail in Las Vegas, Nevada, enclosed in a sealed envelope upon which First-Class postage was fully prepaid to the following address:

[ ] BY PERSONAL SERVICE: By hand delivery of the document(s) listed above to the person(s) at the following address:

[ X ] BY ELECTRONIC FILING: By EFS service pursuant to Rule 5(b)(2)(E) of the NRCP and Rule 9 of the NEFCR.

[ ] BY ELECTRONIC MAIL: By e-mail, consented to in writing, pursuant to Rule 5(b)(2)(F) of the NRCP at the following e-mail address:

Allanna Warren
PLAINTIFF