Electronically Filed
5/5/2022 2:19 PM
Steven D. Grierson
CLERK OF THE COURT

**COMP**

ROBERT S. MELCIC
Nevada Bar No. 14923
3315 E. Russell Rd.
Ste. A4-271
Las Vegas, NV 89120
Phone: (702) 526-4235
Clerk: (725) 577-8013
Email: robertmelcic@gmail.com
*Attorney for Plaintiff Allanna Warren*

CASE NO: A-22-852179-C
Department 29

**DISTRICT COURT**

**CLARK COUNTY, NEVADA**

| | |
|---|---|
| ALLANNA WARREN,<br><br>Plaintiff,<br><br>vs.<br><br>SPARKS POLICE DEPARTMENT, a government entity; DOE GOVERNMENT ENTITIES 1-10; and DOE INDIVIDUALS 2 through 50 in their individual and official capacities.<br><br>Defendants. | Case No.:<br><br>Dept. No.:<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

COMES NOW Plaintiff, ALLANNA WARREN, by and through her counsel, Robert S. Melcic of The Law Office of Robert S. Melcic, and complains against SPARKS POLICE DEPARTMENT, DOE GOVERNMENT ENTITIES 1-10, and DOE INDIVIDUALS 2 through 50 in their individual and official capacities, as follows.

## I.

## STATEMENT OF THE CASE

This case arises from the unlawful use of force and unlawful arrest on two dates: June 14, 2020 and June 20, 2020. On May 7, 2020, Ms. WARREN

(hereinafter, “Ms. WARREN” or “PLAINTIFF”) was walking along a path on public land known as a “fire trail.” A man named Steven Saults and his wife were present on the trail. The couple were walking their two, large dogs who were off their leashes and running loose. The dogs came near to Ms. WARREN, who asked the Saults to leash them. Mr. Saults, Caucasian, began to scream racial epithets at Ms. WARREN, who is African-American, including by calling her “a fat nigger bitch.”

Afraid for her safety, Ms. WARREN pulled out her smartphone and began recording Mr. Saults yelling at her. Saults battered Ms. WARREN when he grabbed her arm and tried to slap her phone out of her hand. Thereupon, Ms. WARREN sprayed Mr. Saults with pepper spray in an attempt to get him to stop attacking her physically. For reasons either having to do with the power on her phone or with the phone’s ability to data transfer, these videos that Ms. WARREN took are presently without audio, but Plaintiff is working to recover her evidence.

Ms. WARREN was successfully able to get the Saults cited by Washoe County Regional Animal Services for not leashing and not vaccinating their dogs. She also attempted to file a police report against Mr. Saults on May 7, 2020 and received a police report back on June 3, 2020. There is also body cam footage extant of the SPARKS POLICE going to the Saults’ house to inquire about the incident. There, the white police are extremely deferential to Mr. Saults’ version of events and at no point cite him for battery or a hate crime. Ms. WARREN again encountered the Saults and their unleashed dogs on the same fire trail on May 29, 2020.

Following the May incidents with the dogs, on Sunday, June 14, 2020, two SPARKS POLICE officers named Patterson and Jones detained Ms. WARREN while she was walking in her neighborhood. The officers pulled their SUV up to block her from walking. Officers Patterson and Jones screamed at Ms. WARREN

to sit down on the asphalt in weather that was then approximately 80 degrees with scattered cloud cover.[1] The officers also wanted Ms. WARREN to sit directly in front of their SUV, where she was exposed to exhaust fumes emanating from underneath the police SUV. Ms. WARREN sat on the hot asphalt for over 20 minutes, when she tried to arise, Officer Patterson chest bumped her to sit back down.

Officers Patterson and Jones opined that Ms. WARREN was mentally unstable. They did not explain their reason for detaining her. Because Ms. WARREN was walking casually around her neighborhood, she did not have ID on her at the time. The police harassed her for not having ID. All of this is captured on video taken by Ms. WARREN.

Officers Patterson and Jones intimated that they planned to arrest Ms. WARREN for not having ID and for not declaring to them what she was doing. Officer Jones then stated, “That guy a couple weeks ago with these dogs. We told him if he ever sees you in this neighborhood, he needs to call us.”

So, the officers were essentially saying that Ms. WARREN was trespassing by walking in her own neighborhood. Officers Patterson and Jones indicated that they “did not care” about whatever police report Ms. WARREN had filed about the Saults. On June 14th, SPARKS POLICE eventually allowed Ms. WARREN to leave.

But then, on Saturday, June 20, 2020, Ms. WARREN was officially arrested by SPARKS POLICE DEPARTMENT for first degree misdemeanor stalking of the Saults.

Ms. WARREN had had no interaction with the Saults apart from the two incidents in May: The first, on May 7, when Mr. Saults battered Ms. WARREN

---

[1] For the approximate weather in Sparks, Nevada, on this day, please see: https://www.timeanddate.com/weather/@5512862/historic?month=6&year=2020.

and screamed racial epithets at her and she videotaped and pepper-sprayed him for her own safety; and the second, on May 29, when Ms. WARREN again encountered the Saults and their unleashed dogs on the fire trail, after which point, Ms. WARREN reported the Saults to Washoe County Regional Animal Services and the Saults were cited.

The arresting officers, a woman named Ginger Miller and an unknown male officer referred to herein as “DOE 1,” paraded Ms. WARREN around her entire apartment complex, The Villas at d’Andrea Apartments in Sparks, before taking her in. By this point, the police had already gone to various neighbors in the apartment complex to inquire and warn about Ms. WARREN.

Ginger Miller twisted Ms. WARREN’s arm and would not let her record the incident. When Ms. WARREN asked why she was being arrested, Officer Miller stated, “for taking pictures and that guy with the dogs is afraid of you.” Officer Miller smashed food that Ms. WARREN had purchased for her mother. SPARKS POLICE would not release footage from Officer Miller’s body cam. Officer Miller’s partner officer, DOE 1, cut off the sound and video to his body cam footage.

Ms. WARREN had no criminal record at the time of her arrest and should have been released on her own recognizance. Regardless of this, Ms. WARREN languished in jail for a week, from June 20, 2020 to June 26, 2020. During this *entire* time, she was placed in solitary confinement for no reason.

By “solitary confinement,” PLAINTIFF means that she was in a small, separate place within the jail, completely alone, and that this place only had room for one person. Ms. WARREN languished in this small space for six solid days. She was given no reason for her segregation from the main jail population.

When Ms. WARREN was released from jail, her car—which was legally parked on a side street near to her apartment building prior to her arrest—

mysteriously had a tow sticker placed upon it for no reason. The date on the tow sticker was June 23, 2020 and the responding officer was badge number 432.

The charges against Ms. Warren were entirely dropped on September 15, 2021 because SPARKS POLICE made a deal with Ms. Warren's defense attorney, Richard Davies, that if she waited a year to go to court, the charges against her would be dropped. Ms. WARREN did not realize at the time and was not informed by her criminal defense attorney that this delay of a year cut into her statute of limitations for timely filing a civil matter against the police.

Ms. WARREN and her elderly mother had to move from the Villas at d'Andrea apartment complex in Sparks to another area of Reno because of ongoing harassment at the old apartment complex. The move cost Ms. WARREN significant moving expenses. Eventually, Ms. WARREN and her mother had to leave Reno altogether due to ongoing harassment at the new apartment building. The WARRENS moved to Las Vegas to escape being harassed by SPARKS POLICE DEPARTMENT.

But the problems for Ms. WARREN did not stop in Washoe County. In November 2021, during a training course for her new job in Las Vegas, a co-worker teased Ms. WARREN by showing her a copy of her booking photo that had been taken by the SPARKS POLICE DEPARTMENT when she was arrested.

Ms. WARREN suffers from alopecia. When she was booked by the police in Sparks on June 20, 2020, Officer Miller removed Ms. Warren's hat before her booking photo was taken, so Ms. WARREN appears bald in the photo. Somehow, Ms. WARREN's co-worker got his hand on this photo, and stated that he had actually gotten the photo from their training instructor. Thereupon, Ms. WARREN's classmates in the training program teased her with photos of bald people and the instructor harassed her also.

The booking photo cannot be found online. Ms. WARREN called the

Washoe County Sherriff's Office, who stated to her that such a photo is only a public record when an individual is incarcerated, but that after incarceration is over, the photo is removed from their website. The Sherriff's office additionally stated that the only way the picture could be released at this point would be either at Ms. WARREN's own request for it, or in response to a request from someone inside SPARKS POLICE DEPARTMENT.

Therefore, on information and belief, SPARKS POLICE impermissibly released Ms. Warren's booking photo online or to her then-current employer in Las Vegas in an effort to harass, embarrass, stalk, and belittle her. After PLAINTIFF complained about the arrest photo to her employer, she was placed on administrative leave and ultimately fired.

Prior to her ordeal, MS. WARREN suffered from anxiety, depression, and alopecia. Now, subsequent to her ordeal at the hands of SPARKS POLICE, she additionally suffers from PTSD and paranoia. Following her confinement, and likely due to stress and the filthy conditions inside the Washoe County jail, Ms. WARREN developed hidradenitis suppurativa, a painful skin condition that causes small, painful lumps to form under her skin. Following her jailing, MS. WARREN developed these sores and pustules all over her body, for which she sought the help of a dermatologist.

## II.

## JURISDICTION AND VENUE

1. "A court of this state may exercise jurisdiction over a party to a civil action on any basis not inconsistent with the Constitution of this state or the Constitution of the United States." NRS 14.065.
2. Jurisdiction in this Court is proper because this is a complaint seeking monetary relief in excess of $10,000, the PLAINTIFF is a resident citizen of Nevada, and

the DEFENDANT SPARKS POLICE DEPARTMENT is a governmental entity paid for by the County of Washoe, Nevada and the City of Sparks, County of Washoe, Nevada.

3. Venue is proper in this Court because:
    a. The events or omissions giving rise to this claim, while they initially occurred in Washoe County, have now followed PLAINTIFF to Las Vegas, Nevada.
    b. PLAINTIFF and her elderly mother have relocated to Las Vegas out of a concern for their safety and civil rights were they to stay in the Reno area;
    c. Given all the factors in this situation, including how defense counsel in Reno mishandled her case, PLAINTIFF does not believe that she can obtain a fair hearing in the Reno courts;
    d. The PLAINTIFF currently resides in Las Vegas, Nevada, where a substantial part of the events or omissions giving rise to the claims of this case occurred.

## III.
## PARTIES

4. At all times relevant to this action, PLAINTIFF was a resident of the State of Nevada, County of Washoe, and then, County of Clark.
5. On information and belief, DEFENDANT SPARKS POLICE DEPARTMENT is a governmental agency situated in Washoe County, Nevada.
6. On information and belief, the true names, capacities, and specific involvement of the Defendants sued herein as DOE GOVERNMENT ENTITITES 1 through 10 and DOE INDIVIDUALS 2 through 50 are unknown to PLAINTIFF, who sues these Defendants by such fictitious names; PLAINTIFF alleges that each of the Defendants sued herein as DOEs performed acts and are responsible in

some manner for the events and injuries alleged herein.

## IV.
## GENERAL ALLEGATIONS COMMON TO ALL CLAIMS

7. PLAINTIFF is a forty-four year old African-American woman.
8. PLAINTIFF suffers from pre-existing alopecia, depression, and anxiety; as a result of her ordeal at the hands of SPARKS POLICE, she now also suffers from hidradenitis suppurativa, PTSD, and paranoia.
9. PLAINTIFF has been a resident of the state of Nevada throughout the entirety of this ordeal.
10. PLAINTIFF moved to Las Vegas from Reno due to her fear of retribution by DEFENDANT SPARKS POLICE DEPARTMENT.
11. On Thursday, May 7, 2020, PLAINTIFF was walking on public land known as a "fire trail" in an area near to her apartment building.
12. PLAINTIFF then noticed two dogs running loose on the land, not wearing leashes, and accompanied by a Caucasian couple now known to be Steven and Alana Saults.
13. The dogs were coming closer to PLAINTIFF, who asked for them to be leashed.
14. Steven Saults screamed racial epithets at PLAINTIFF including by calling her "a fat nigger bitch."
15. PLAINTIFF began recording Mr. Saults and his dogs; these recordings are presently without audio for the reasons stated *supra*.
16. Upon realizing that he was being recorded, Mr. Saults battered the PLAINTIFF by grabbing PLAINTIFF's arm and attempting to slap PLAINTIFF's phone out of her hand.
17. PLAINTIFF pepper-sprayed Steven Saults to get him to stop attacking her

physically.

18. Following this incident, PLAINTIFF tried to file reports about it; first, she filed a report on May 7, 2020 with Nevada State Representative Skip Daly; then she filed a report with Sparks Mayor Ron Smith on May 8, 2020.

19. PLAINTIFF also shared e-mails back and forth with other Northern Nevada Representatives such as Jill Dickman.

20. On May 9, 2020, PLAINTIFF received a response from Mayor Smith that he had forwarded her concerns to his police chief.

21. On June 3, 2020, PLAINTIFF finally received a written police report back with a case number from Sparks Police; the report number is 20-3870 and the reporting officer was "C. Fleiner," badge number 242.

22. Almost everything on this police report is typed except for the date on the first page, which was whited out and written in as "5/7/20."

23. Bodycam footage subsequently obtained shows that, subsequent to the incident on the fire trail, SPARKS POLICE DEPARTMENT went to the Saults' home to investigate where they were highly deferential to Mr. Saults, viewed him as the victim, and did nothing to cite him for the battery of PLAINTIFF or for a hate crime against PLAINTIFF.

24. On May 29, 2020, PLAINTIFF was again on the fire trail and again encountered the Saults on the trail with their dogs unleased; PLAINTIFF took pictures of this and reported the Saults to Regional Animal Services for Washoe County; PLAINTIFF stated her concerns to Animal Services that she was being stalked by the Saults.

25. On May 30, 2020 the Saults were cited by Washoe County Regional Animal Services for not leashing and not vaccinating their dogs.

26. On Sunday, June 14, 2020, PLAINTIFF was walking in her neighborhood; this was a casual walk, so PLAINTIFF was not carrying a purse with ID in it.

27. Two police officers known to PLAINTIFF as Patterson and Jones pulled up in their SUV and blocked PLAINTIFF from continuing forward on her intended path of travel.
28. Officers Patterson and Jones yelled at PLAINTIFF to sit down on the asphalt in front of their SUV where PLAINTIFF directly exposed to exhaust fumes emanating from beneath the police SUV.
29. PLAINTIFF sat on hot asphalt in hot weather for over 20 minutes; she attempted to rise but Officer Patterson chest-bumped PLAINTIFF to make PLAINTIFF sit back down.
30. It was very uncomfortable for PLAINTIFF to sit on the hot asphalt that day; she was wearing shorts and the temperature was approximately 80 degrees with scattered cloud cover[2] so the asphalt was very hot against her thin shorts and bare legs.
31. Officers Patterson and Jones would not tell PLAINTIFF why she was being detained.
32. Officers Patterson and Jones harassed PLAINTIFF for not having ID with her even though carrying ID is only required when someone is driving and it is common for women walking around their neighborhoods casually not to carry a purse or wallet.
33. Officers Patterson and Jones threatened to arrest PLAINTIFF for not having ID and not declaring what she was doing.
34. Officers Patterson and Jones opined that PLAINTIFF was "mentally unstable" because she had used pepper spray to defend herself from a battery and hate crime by Steven Saults and his two large, unleashed, and unvaccinated dogs.
35. Officer Jones said, "That guy a couple weeks ago with these dogs. We told him

---

[2] For the approximate weather in Sparks, Nevada, on this day, see https://www.timeanddate.com/weather/@5512862/historic?month=6&year=2020.

if he ever sees you in this neighborhood, he needs to call us."

36. "This neighborhood" was also PLAINTIFF's neighborhood, so SPARKS POLICE was stating that PLAINTIFF was trespassing by being in her own neighborhood.
37. On information and belief, SPARKS POLICE perceived PLAINTIFF as someone who did not belong in her own neighborhood because she is African-American.
38. PLAINTIFF mentioned the police report that she had received on June 3, 2020.
39. The Officers stated that they did not care about PLAINTIFF's police report.
40. After a protracted detention of PLAINTIFF on the asphalt in front of SPARKS POLICE's car that lasted approximately 30 minutes, Officers Patterson and Jones let PLAINTIFF go without any citation.
41. To date, SPARKS POLICE refuses to release Officers' Patterson and Jones' bodycam and dash cam footage during Ms. WARREN's detention on June 14, 2020; Ms. WARREN's criminal defense attorney could not even obtain this footage during discovery in her criminal matter.
42. On information and belief, SPARKS POLICE is withholding this information because Officer Patterson is currently under investigation for other police misconduct incidents involving him in Sparks.
43. Nothing more occurred between PLAINTIFF and SPARKS POLICE between Sunday, June 14, 2020 and Friday, June 19, 2020.
44. Then, on Saturday, June 20, 2020, PLAINTIFF was arrested by SPARKS POLICE for first degree misdemeanor stalking of Steven Saults, the man with the unleashed dogs.
45. Upon returning home on the afternoon of June 20, 2020, PLAINTIFF saw her neighbors in their front yards and a maintenance man outside her apartment building, the Villas at d'Andrea Apartments in Sparks.

46. Two police officers, Ginger Miller and DOE 1, an unidentified white male officer, approached PLAINTIFF.
47. PLAINTIFF pulled her camera out to record but Officer Miller twisted her arm and stated that PLAINTIFF was under arrest.
48. Officers Miller and DOE 1 did not state that PLAINTIFF was being arrested for stalking; instead, they stated that she was arrested "for taking pictures and that guy with the dogs is afraid of you."
49. PLAINTIFF subsequently learned that the police had knocked on the doors of the surrounding apartments and had told PLAINTIFF's neighbors that they were looking for her.
50. In audio evidence subsequently obtained, the maintenance man for the Villas at d'Andrea Apartments states that he believes the police have "probable cause" to arrest PLAINTIFF and identifies Officer Miller by name.
51. On information and belief, this means that the maintenance man to PLAINTIFF's apartment building had been coached regarding preparing for PLAINTIFF's arrest and PLAINTIFF had also been defamed to the maintenance man by SPARKS POLICE.
52. Officers Miller and DOE 1 smashed food that PLAINTIFF had purchased for her mother; PLAINTIFF's pepper spray was also confiscated and the shorts she was wearing were eventually lost by the police while PLAINTIFF languished in jail.
53. When PLAINTIFF was photographed for her arrest photo, Officer Miller pulled off PLAINTIFF's hat revealing her bald head because PLAINTIFF suffers from alopecia.
54. Officer Miller, who is not a detective, also contacted PLAINTIFF's mother over the phone and asked PLAINTIFF's mother for private medical information regarding PLAINTIFF.

55. To date, SPARKS POLICE refuses to release Officer Miller's bodycam footage and there are points where Officer DOE 1 cuts off the sound and video to his bodycam footage on June 20, 2020, the day of PLAINTIFF's arrest.
56. At some point amid this ordeal, Steven Saults claimed to the police that PLAINTIFF had thrown watermelon rinds in the Saults' backyard.
57. PLAINTIFF is highly allergic to all parts of a watermelon: the rinds, seeds, pulp, and juice.
58. The association of African-Americans with watermelon consumption is a longstanding racial stereotype in the United States.
59. PLAINTIFF, who had herself been battered and had faced hateful racial epithets from Steven Saults, languished in the Washoe County Jail for a week, from June 20 to June 26, 2020.
60. PLAINTIFF was kept in jail even though, with no criminal record and no prior arrests, she should have been released on her own recognizance.
61. During the *entire* course of PLAINTIFF's confinement, PLAINTIFF was placed in solitary confinement within Washoe County Jail for no known reason.
62. After being released from jail, PLAINTIFF discovered that her car, which was legally parked on a side street near her apartment building, had a tow sticker on it for no reason; the tow notice affixed to the car was dated June 23, 2020 and signed by an Officer "432"; PLAINTIFF removed the sticker and drove her car closer to her apartment.
63. PLAINTIFF hired a criminal defense attorney, Richard Davies, who, in September 2020, cut a deal with the city attorney that all charges would be dropped if PLAINTIFF agreed to wait a year before returning to court.
64. Thus, on Wednesday, September 15, 2021, all criminal charges against PLAINTIFF were dropped.
65. Unbeknownst to PLAINTIFF at the time, this year-long delay cut into the time

PLAINTIFF had to file this civil matter against SPARKS POLICE.

66. Following her false arrest, PLAINTIFF and her elderly mother were harassed by neighbors at the Villas at d'Andrea Apartments so badly that they had to move across Reno to a new apartment at significant cost to them.

67. Reno is so small that the new apartment eventually also found out about the arrest; on information and belief, this was because of ongoing defamation of PLAINTIFF by SPARKS POLICE.

68. PLAINTIFF and her mother then had to relocate to Las Vegas to escape ongoing harassment by neighbors and the threat to their civil rights and safety by SPARKS POLICE DEPARTMENT.

69. In November 2021, PLAINTIFF was training at a new job she had secured in Las Vegas when one of her co-workers teased her by showing her a copy of her arrest photo in which she appears bald.

70. The classmate indicated that he had obtained the photo from the course instructor.

71. PLAINTIFF asked her employer where the photo was obtained as it cannot be found online.

72. PLAINTIFF called the Washoe County Sherriff's Office for more information.

73. The Sherriff's office stated to PLAINTIFF that arrest photos are only public records while someone is incarcerated but that, after incarceration ends, the photos are removed from the Sherriff's website.

74. The Sherriff's office indicated that there were only two ways for the arrest photo to be obtained after it was taken down from their website: First, the previously-incarcerated person could request it. Second, SPARKS POLICE could request it.

75. Thus, on information and belief, DOE officers working for SPARKS POLICE DEPARTMENT placed this booking photo online and/or gave a copy to

PLAINTIFF's new employer in Las Vegas an effort to continue to harass PLAINTIFF from another county.

76. After PLAINTIFF complained about the arrest photo to her employer, she was placed on administrative leave and ultimately fired.

77. Plaintiff suffered from alopecia, depression, and anxiety prior to this ordeal; subsequent to this ordeal, she has new health problems, including, hidradenitis suppurativa, a painful skin condition acquired after PLAINTIF languished in the filthy conditions inside Washoe County jail in solitary confinement for six days, PTSD, and paranoia.

## V.

## FIRST CLAIM FOR RELIEF

### *Assault*

**(Asserted against All Defendants)**

78. PLAINTIFF incorporates by reference all other allegations in this *Complaint*, as though fully set forth herein.

79. DEFENDANT SPARKS POLICE DEPARTMENT intended to put PLAINTIFF in imminent apprehension of bodily harm when they forced her to sit on the hot asphalt in front of their SUV on a hot summer day in Sparks, Nevada, on June 14, 2020.

80. When PLAINTIFF was chest bumped as she attempted to arise from the hot asphalt, PLAINTIFF imminently apprehended that she could become the victim of grave physical danger.

81. DEFENDANT SPARKS POLICE DEPARTMENT intended to put PLAINTIFF in imminent apprehension of bodily harm when they arrested her without cause on June 20, 2020.

82. When PLAINTIFF was falsely arrested, she imminently apprehended that she

could become the victim of grave physical danger.

83. DEFENDANT SPARKS POLICE DEPARTMENT intended to put PLAINTIFF in imminent apprehension of bodily harm when they forced her to remain in solitary confinement for the entire six days that she was jailed.

84. While within solitary confinement, PLAINTIFF imminently apprehended that she could become the victim of grave physical danger.

85. PLAINTIFF has suffered psychological trauma as a result of the violent and threatening behavior of officers working for DEFENDANT SPARKS POLICE DEPARTMENT.

86. Accordingly, PLAINTIFF is entitled to recover both actual and punitive damages, as allowed by law, in an amount to be determined at trial.

87. As a further result of the culpable conduct of the DEFENDANTS, as alleged in this cause of action, PLAINTIFF has had to retain the services of attorneys in this matter, for which she seeks costs and reasonable attorneys' fees.

## VI.
## SECOND CLAIM FOR RELIEF
### ***Battery***

**(Asserted against All Defendants)**

88. PLAINTIFF incorporates by reference all other allegations in this *Complaint*, as though fully set forth herein.

89. DEFENDANT SPARKS POLICE DEPARTMENT knew with substantial certainty that injury would result to PLAINTIFF when they forced her to sit on hot asphalt in front of their SUV on June 14, 2020.

90. The unwanted, violent, physical behavior of DEFENDANT SPARKS POLICE DEPARTMENT in chest-bumping PLAINTIFF on June 14, 2020 and in falsely arresting her on June 20, 2020 constituted harmful and offensive contacts with

the PLAINTIFF's person that were not warranted at law; it was not illegal for PLAINTIFF to walk in her neighborhood without identification and PLAINTIFF had not committed a crime when she defended herself against a battery and hate crime by Mr. Saults on May 7, 2020.

91. PLAINTIFF was directly physically impaired by the harmful and offensive contact of DEFENDANT SPARKS POLICE DEPARTMENT against her person on both Sunday, June 14, 2020 and Saturday, June 20, 2020.

92. PLAINTIFF was both physically and psychologically injured as a result of DEFENDANTS' battery of her.

93. Accordingly, PLAINTIFF is entitled to recover both actual and punitive damages, as allowed by law, in an amount to be determined at trial.

94. As a further result of the culpable conduct of the DEFENDANTS, as alleged in this cause of action, PLAINTIFF has had to retain the services of attorneys in this matter, for which she seeks costs and reasonable attorneys' fees.

## VII.
## THIRD CLAIM FOR RELIEF
### *False Imprisonment / Unlawful Arrest*

**(Asserted against All Defendants)**

95. PLAINTIFF incorporates by reference all other allegations in this *Complaint*, as though fully set forth herein.

96. On June 14, 2020, DEFENDANT SPARKS POLICE DEPARTMENT intended to confine and restrain PLAINTIFF to an area from which she could not escape when they chest-bumped her physically and compelled her to remain seated on the hot asphalt in front of their SUV that was also spewing exhaust fumes into PLAINTIFF's face without arresting her.

97. DEFENDANT SPARKS POLICE DEPARTMENT did actually confine

PLAINTIFF to an area from which she could not escape when they chest-bumped her physically and compelled her to remain seated on the hot asphalt in front of their SUV that was also spewing exhaust into PLAINTIFF's face without arresting her.

98. Once PLAINTIFF was so confined, there was no reasonable means for her to escape.

99. PLAINTIFF was conscious of her confinement; she was not able to leave the area where she was confined to, including the immediate area in front of the police SUV for, on information and belief, about half an hour.

100. Part of this confinement occurred because the police deemed PLAINTIFF to be "mentally unstable" without any evidence that PLAINTIFF presented a mental health threat to herself or others apart from the fact that she had successfully defended herself against Steven Saults, a man who had battered PLAINTIFF and had been screaming racial epithets at her.

101. Then, on June 20, 2022, PLAINTIFF was falsely arrested by Officers Miller and DOE 1 when she was arrested for something that was not a crime: "taking pictures of that guy with the dogs" and because "he is afraid of you."

102. PLAINTIFF was falsely arrested because she was charged for stalking when she had not actually stalked anyone; in fact, she had been followed and battered by the dog owner and was subsequently stalked by SPARKS POLICE who: a.) monitored PLAINTIFF while she was walking in her neighborhood and b.) defamed PLAINTIFF to her neighbors and apartment maintenance man.

103. PLAINTIFF was falsely arrested because the charges against her for stalking were ultimately dropped a year later.

104. PLAINTIFF was falsely arrested because SPARKS POLICE lacked probable cause to arrest PLAINTIFF for stalking on June 20, 2020; racial bias against African-Americans is not probable cause.

105. PLAINTIFF was falsely arrested because SPARKS POLICE lacked reasonable suspicion to arrest PLAINTIFF for stalking on June 20, 2020; racial bias against African-Americans is not reasonable suspicion.

106. Following PLAINTIFF's false arrest, she languished in jail for a week, during which entire time, she was placed in solitary confinement without explanation.

107. PLAINTIFF was hurt by both periods of confinement by SPARKS POLICE DEPARTMENT in an amount to be determined at trial; in each instance, she was removed from her intended course of travel by walking in her neighborhood where she had the lawful right to be, and she was removed from her home and family and placed in jail.

108. As a result of DEFENDANT SPARKS POLICE DEPARTMENT's unlawful false imprisonment of PLAINTIFF, PLAINTIFF was afraid for her physical safety throughout both periods of her confinement.

109. PLAINTIFF has suffered emotionally as a result of these two periods of confinement and she has suffered physically in that she developed hidradenitis suppurativa, a painful skin condition, following her jailing.

110. Accordingly, PLAINTIFF is entitled to recover actual and punitive damages, as allowed by law, in an amount to be determined at trial.

111. As a further result of the culpable conduct of the DEFENDANTS, as alleged in this cause of action, PLAINTIFF has had to retain the services of attorneys in this matter, for which she seeks costs and reasonable attorneys' fees.

//

//

//

//

//

## VIII.

## FOURTH CLAIM FOR RELIEF

## *Malicious Prosecution*, NRS § 199.310

**(Asserted against All Defendants)**

112. PLAINTIFF incorporates by reference all other allegations in this *Complaint*, as though fully set forth herein.

113. Malicious prosecution occurs in Nevada when "a person who maliciously and without probable cause therefor, causes or attempts to cause another person to be arrested or proceeded against for any crime of which that person is innocent." NRS § 199.310.

114. PLAINTIFF was not guilty of a crime when she successfully defended herself against a battery and a hate crime on May 7, 2020.

115. PLAINTIFF was not guilty of a crime when she was not carrying identification with her on June 14, 2020.

116. PLAINTIFF was not guilty of any crime, including stalking, when she was falsely arrested on June 20, 2020.

117. PLAINTIFF was not guilty of a crime for walking in her neighborhood or walking along the fire path near her neighborhood, where, in each case, she had the legal right to be.

118. DEFENDANT SPARKS POLICE DEPARTMENT did not have probable cause to detain or arrest PLAINTIFF on June 14, 2020.

119. DEFENDANT SPARKS POLICE DEPARTMENT did not have probable cause to detain or arrest PLAINTIFF on June 20, 2020.

120. Probable cause is "that line [which] draws a meaningful distinction between an officer's mere inkling and the presence of facts within the officer's personal knowledge which would convince a reasonable man that the person seized has committed, is committing, or is about to commit a particular crime." *Terry v.*

*Ohio*, 392 U.S. 1, 38 (1968); in Nevada, "probable cause is a standard of reasonableness which must be interpreted in a common-sense and realistic manner." *Azbill v. State*, 84 Nev. 345, 358 (Nev. 1968).

121. A police officer's racial bias against an African-American woman who has successfully defended herself against a battery and a hate crime by a white man is not probable cause.

122. DEFENDANT SPARKS POLICE DEPARTMENT did not have reasonable suspicion to detain or arrest PLAINTIFF on June 14, 2020.

123. DEFENDANT SPARKS POLICE DEPARTMENT did not have reasonable suspicion to detain or arrest PLAINTIFF on June 20, 2020.

124. The U.S. Supreme Court "has recognized that an officer's reasonable suspicion that a person may be involved in criminal activity permits the officer to stop the person for a brief time and take additional steps to investigate further." *Hiibel v. Sixth Jud. Dist. Ct. of Nev., Humboldt Cty*, 542 U.S. 177, 178 (2004).

125. In walking around her neighborhood on June 14, 2020, and in walking from her car to her apartment on June 20, 2020, PLAINTIFF had done nothing to indicate that she was involved in any criminal activity.

126. A police officer's racial bias against an African-American woman who has successfully defended herself against a battery and a hate crime by a white man is not reasonable suspicion.

127. DEFENDANT SPARKS POLICE DEPARTMENT was at least negligent in carrying out this detention, and, later, false arrest, as no officer from the DEPARTMENT had reasonable suspicion nor probable cause for arresting PLAINTIFF.

128. DEFENDANT SPARKS POLICE DEPARTMENT's attempt to detain PLAINTIFF on June 14, 2020 was not sufficient to establish reasonable

suspicion or probable cause for their later arrest of PLAINITFF on June 20th.

129. In fact, on June 14, 2020, and again on June 20, 2020, PLAINTIFF was falsely detained, imprisoned, and arrested in retaliation for her good faith attempt to defend herself against a battery and a hate crime by a white man.

130. PLAINTIFF was innocent of every crime, and yet, she was unlawfully detained, falsely imprisoned, falsely arrested, and prosecuted by DEFENDANT SPARKS POLICE DEPARTMENT in contravention of Nevada law.

131. Accordingly, PLAINTIFF is entitled to recover actual and punitive damages, as allowed by law, in an amount to be determined at trial.

132. As a further result of the culpable conduct of the DEFENDANTS, as alleged in this cause of action, PLAINTIFF has had to retain the services of attorneys in this matter, for which she seeks costs and reasonable attorneys' fees.

## IX.

## FIFTH CLAIM FOR RELIEF

***Detention beyond the place or the immediate vicinity of the place where the detention was first effected,* NRS § 171.123**

**(Asserted against All Defendants)**

133. PLAINTIFF incorporates by reference all other allegations in this *Complaint*, as though fully set forth herein.

134. In Nevada, a peace officer may detain an individual if that person has committed, is committing or is about to commit a crime. NRS § 171.123; *Terry v. Ohio*, 392 U.S. 1, 38 (1968).

135. On June 14, 2020, prior to her detention by DEFENDANT SPARKS POLICE DEPARTMENT, PLAINTIFF had committed no crimes.

136. Under the statute, "A person must not be detained longer than is reasonably necessary to effect the purposes of this section, and in no event longer than 60

minutes. The detention must not extend beyond the place or the immediate vicinity of the place where the detention was first effected, unless the person is arrested." NRS § 171.123(4)

137. Nonetheless, on June 14, 2020, PLAINITFF was detained for half an hour as though she was a criminal without being placed under a valid, legal arrest, in violation of Nevada state law.

138. DEFENDANT's detaining of PLAINTIFF on June 14, 2020 served no other purpose than to harass and stalk PLAINTIFF for not having identification, to behave vindictively toward her for having defended herself against a white man SPARKS POLICE saw it as their job to defend, and to humiliate her by forcing her to sit on hot asphalt in front of her neighbors.

139. DEFENDANT's detaining of PLAINTIFF on June 14, 2020 then *extended* to detention, and, ultimately, false arrest on June 20, 2020 when PLAINTIFF was now arrested for the same matter for which she had previously been detained on the 14th.

140. PLAINTIFF's false arrest on June 20, 2020 occurred more than 60 minutes after and in a new location following her detention on June 14, 2020.

141. PLAINTIFF had had no further interaction with the Saults between June 14 and June 20, 2020.

142. Thus, that DEFENDANT SPARKS POLICE waited a full *six days* to arrest PLAINTIFF after detaining her for the same matter means that NRS § 171.123 has surely been violated.

143. Accordingly, PLAINTIFF is entitled to recover actual and punitive damages, as allowed by law, in an amount to be determined at trial.

144. As a further result of the culpable conduct of the DEFENDANTS, as alleged in this cause of action, PLAINTIFF has had to retain the services of attorneys in this matter, for which she seeks costs and reasonable attorneys' fees.

## X.

## SIXTH CLAIM FOR RELIEF

***Unlawful Injury or Loss Suffered by a Vulnerable Person,***
**NRS § 41.1395**

**(Asserted against All Defendants)**

145. PLAINTIFF incorporates by reference all other allegations in this *Complaint*, as though fully set forth herein.

146. PLAINTIFF is a vulnerable person as defined by NRS § 41.1395 4(e)(1-2) in that she has a physical health impairment—alopecia—and psychological health impairments—depression and anxiety—that limit one or more of her major life activities, and she has medical records of these impairments.

147. Because of her ordeal, PLAINTIFF now also suffers from a very painful skin condition called hidradenitis suppurativa, and from new psychological problems including PTSD and paranoia.

148. DEFENDANT SPARKS POLICE DEPARTMENT were unjustified when they inflicted injury, pain, and anguish on PLAINTIFF with their unlawful use of force lacking in reasonable suspicion and probable cause, as described above.

149. PLAINTIFF's medical vulnerability was made plain to DEFENDANT when Officer Miller ripped off PLAINTIFF's hat for her booking photo.

150. To the extent that SPARKS POLICE DEPARTMENT is responsible for the later publication of that booking photo to PLAINTIFF's new employer in Las Vegas, SPARKS POLICE has additionally exploited the medical vulnerability of a vulnerable Nevadan, in contravention of state law.

151. Accordingly, PLAINTIFF is entitled to recover two times her damages, as allowed under NRS § 41.1395(1), in an amount to be determined at trial.

152. If it is established by a preponderance of the evidence that DEFENDANTS are liable because they acted with recklessness, oppression, fraud, and/or malice,

PLAINTIFF is entitled to attorney's fees and costs. NRS § 41.1395(2)

**XI.**

**SEVENTH CLAIM FOR RELIEF**

***Public Disclosure of a Private Fact***

**(Asserted against All Defendants)**

153. PLAINTIFF incorporates by reference all other allegations in this *Complaint*, as though fully set forth herein.

154. When, on information and belief, DEFENDANT SPARKS POLICE DEPARTMENT released PLAINTIFF's arrest photo to her new employer in Las Vegas sometime on or near November 2021, DEFENDANTS made public the disclosure of a fact about PLAINTIFF's private medical condition.

155. This disclosure by SPARKS POLICE DEPARTMENT would be highly offensive to a reasonable person because baldness in women is considered ugly, comical, and highly taboo in our image-conscious culture; further, because PLAINTIFF is African-American, baldness only heightens her vulnerability as a member of a protected class.

156. This disclosure by SPARKS POLICE DEPARTMENT was communicated to the general public either via the Internet and/or by placing the photograph in the hands of someone who could be counted upon to distribute it to PLAINTIFF's new work acquaintances in Las Vegas.

157. The disclosure of the private fact of PLAINTIFF's alopecia is not newsworthy and serves no legitimate public interest.

158. While PLAINTIFF's arrest photo from July 2020 may arguably have been a matter of public record at the time when she was incarcerated, it was no longer a matter of public record by November 2021 when PLAINTIFF had moved

from Reno and was living and working in Las Vegas.

159. By the Washoe County Sherriff's own admission, DEFENDANT SPARKS POLICE DEPARTMENT is at fault for making this disclosure since there were only two ways for the arrest photo to be obtained once it had been removed from the Sherriff's website: either via a request from PLAINTIFF herself, or, via a request from someone in SPARKS POLICE DEPARTMENT.

160. The actions of DEFENDANT SPARKS POLICE DEPARTMENT are both the actual and proximate cause of the harm the PLAINTIFF has suffered, harm which includes public humiliation and firing from her job.

161. PLAINTIFF has additionally suffered significant emotional distress and mental anguish as a result of this embarrassing disclosure.

162. Because of DEFENDANTS' public disclosure of a private fact about PLAINTIFF's medical condition, PLAINTIFF's reputation, finances, and mental health have suffered to a degree to be determined at trial.

163. Accordingly, PLAINTIFF is entitled to recover actual and punitive damages, as allowed by law, in an amount to be determined at trial.

164. As a further result of the culpable conduct of the DEFENDANTS, as alleged in this cause of action, PLAINTIFF has had to retain the services of attorneys in this matter, for which she seeks costs and reasonable attorneys' fees.

## XII.
## EIGTH CLAIM FOR RELIEF
### *Negligence and Gross Negligence*

**(Asserted against All Defendants)**

165. PLAINTIFF incorporates by reference all other allegations in this *Complaint*, as though fully set forth herein.

166. DEFENDANT SPARKS POLICE DEPARTMENT owed a legal duty to

PLAINTIFF and to the public to exercise the reasonable care and ordinary prudence that a reasonably prudent police department acting under authority of state law would exercise under the same circumstances, such as when performing a legal *Terry* stop and/or lawful arrest or stopping a woman walking in her neighborhood who had the legal right to be there.

167. As a government entity, DEFENDANT SPARKS POLICE DEPARTMENT owed a legal duty to the public to employ police officers who would exercise the reasonable care and ordinary prudence that a reasonably prudent police officer acting under authority of law would exercise under the same circumstances, such as when performing a traffic stop and arrest.

168. DEFENDANT SPARKS POLICE DEPARTMENT's breach of said duty to PLAINTIFF constituted Negligent Hiring and Entrustment, plead at greater length within this *Complaint*, *infra*.

169. All DEFENDANTS breached their duty by failing to exercise the degree of care that was owed to PLAINTIFF, including, but not limited to, by:

a. Stalking the PLAINTIFF in anger in her neighborhood without reasonable suspicion or probable cause;
b. Attempting to batter and detain the PLAINTIFF without reasonable suspicion or probable cause;
c. Failing to explain to PLAINTIFF the legal reason for which they had detained her on July 14, 2020;
d. Using Excessive Force;
e. Making a false arrest on June 20, 2020 without a warrant, without reasonable suspicion, and without probable cause;
f. Confining PLAINTIFF in solitary confinement for the six days that she was in jail;
g. Defaming PLAINTIFF to her neighbors, apartment staff, and co-

workers in Las Vegas;

h. Threatening to tow PLAINTIFF's legally-parked car for no legal reason.

170. When engaging in their culpable conduct described herein, all of the DEFENDANTS were not only negligent, but they were grossly negligent in that they failed to exercise even the slightest amount of care, with a conscious disregard of the rights or safety of the PLAINTIFF.

171. When engaging in their culpable conduct described herein, all of the DEFENDANTS were grossly negligent because they acted with willful, wanton, and/or reckless disregard for the safety of PLAINTIFF.

172. DEFENDANTS exhibited a conscious disregard for PLAINTIFF's rights and safety when they knew the probable harmful consequences of their wrongful acts of falsely detaining, and, ultimately, falsely arresting the PLAINTIFF which probable harmful consequences included physical and mental injury to her, which DEFENDANTS recklessly, willfully, and/or deliberately failed to act to avoid.

173. Accordingly, PLAINTIFF is entitled to recover punitive and exemplary damages, as allowed by law, in an amount to be determined at trial.

174. As a further result of the culpable conduct of the Defendants, as alleged in this cause of action, PLAINTIFF has had to retain the services of attorneys in this matter, for which she seeks costs and reasonable attorneys' fees.

//

//

//

//

//

//

## XIII.
## NINTH CLAIM FOR RELIEF

### *Defamation*

### (Asserted against All Defendants)

175. PLAINTIFF incorporates by reference all other allegations in this *Complaint*, as though fully set forth herein.

176. When DEFENDANT SPARKS POLICE DEPARTMENT made PLAINTIFF sit on the asphalt in front of their SUV on June 14, 2020 without probable cause or reasonable suspicion to arrest her, DEFENDANTS published a false and defamatory statement concerning PLAINTIFF's reputation to her neighbors at the Villas at d'Andrea Apartments in Sparks.

177. When DEFENDANT SPARKS POLICE DEPARTMENT knocked on the doors of PLAINTIFF's neighbors seeking information regarding PLAINTIFF on June 20, 2020, DEFENDANTS published a false and defamatory statement concerning PLAINTIFF's reputation to her neighbors.

178. When DEFENDANT SPARKS POLICE DEPARTMENT contacted the maintenance man for her apartment building seeking information regarding PLAINTIFF, DEFENDANTS published a false and defamatory statement concerning PLAINTIFF's reputation to her neighbors and to her apartment's maintenance staff.

179. Every time that PLAINTIFF tried to return to her neighborhood following this incident, she was afraid for her safety and felt shame at how she had been publicly humiliated in front of her neighbors and her apartment's maintenance staff.

180. When, on information and belief, DEFENDANT SPARKS POLICE DEPARTMENT published PLAINTIFF's arrest photo online and/or to her new

employer in Las Vegas sometime on or near November 2021, DEFENDANTS published a false and defamatory statement concerning PLAINTIFF's reputation to her employer.

181. This false and defamatory publication by DEFENDANT SPARKS POLICE DEPARTMENT also disclosed an embarrassing fact about PLAINTIFF's private medical condition to the public: the fact that PLAINTIFF suffers from alopecia.

182. After her arrest photo that also discloses her medical condition was released to her Las Vegas employer and PLAINTIFF made inquiries about this; because of the photo and her inquiries, PLAINTIFF was ultimately fired from her new job in Las Vegas.

183. Because of DEFENDANTS' false and defamatory statements about PLAINTIFF, PLAINTIFF's reputation, work history, finances, physical, and mental health have suffered to a degree to be determined at trial.

184. Accordingly, PLAINTIFF is entitled to recover actual and punitive damages, as allowed by law, in an amount to be determined at trial.

185. As a further result of the culpable conduct of the DEFENDANTS, as alleged in this cause of action, PLAINTIFF has had to retain the services of attorneys in this matter, for which she seeks costs and reasonable attorneys' fees.

## XIV.
## TENTH CLAIM FOR RELIEF
## ***Public Records Violations*, NRS 239 *et seq.***

**(Asserted against All Defendants)**

186. PLAINTIFF incorporates by reference all other allegations in this *Complaint*, as though fully set forth herein.

187. To date, SPARKS POLICE DEPARTMENT has committed many violations involving the public records at issue in PLAINTIFF's case; the following list is not exhaustive:

188. First, SPARKS POLICE falsified the date of their police report in order to obscure what had happened to PLAINTIFF on May 7, 2020; on that report, almost everything is typed except the date, which has been whited out and written in.

189. Second, following PLAINTIFF's unlawful detention by Officers Patterson and Jones on June 14, 2020, SPARKS POLICE refused to release body or dash cam video for either officer; Ms. WARREN's criminal defense attorney Richard Davies could not even obtain this in discovery; the failure to disclose is particularly concerning because, on information and belief, Officer Patterson has several police misconduct cases currently pending against him in Sparks.

190. Third, following PLAINTIFF's false arrest, SPARKS POLICE would not release footage from Officer Miller's body cam to PLAINTIFF; this is particularly concerning because Officer Miller, who is not a detective, subsequently attempted to retrieve private medical information about PLAINTIFF from PLAINTIFF's mother.

191. Fourth, Officer Miller's partner officer, DOE 1, cut off the sound and video to his body cam footage during PLAINTIFF's arrest, rendering it useless.

192. Fifth, SPARKS POLICE violated PLAINTIFF's confidentiality and impermissibly disclosed public records pertaining to her when they contacted her apartment's maintenance man and gave him ideas about their alleged "probable cause" to arrest PLAINTIFF; but for SPARKS POLICE's disclosure, the apartment maintenance man would have no cause to know about Ms. WARREN's dispute with the dog owner, Steven Saults.

193. Sixth, on information and belief, SPARKS POLICE made publicly available

and/or somehow released PLAINTIFF's arrest photo to her new employer in Las Vegas in an effort to harass, intimidate, stalk, and belittle her.

194. This booking photo cannot be found online.

195. Ms. Warren called the Washoe County Sherriff's Office, who stated to her that such a photo is only a public record when an individual is incarcerated, but that after incarceration is over, the photo is removed from their website.

196. The Washoe County Sherriff's office additionally stated that the only way the picture could be released at this point would be either at Ms. WARREN's own request for it, or at the request of SPARKS POLICE.

197. The intentional behavior of DEFENDANTS to falsify records that they should have preserved in their original form, to reveal records that they should not have revealed, to fail to safeguard records that should have been safeguarded, and to fail to disclose records that should have been disclosed upon PLAINTIFF's request is the direct and proximate cause of PLAINTIFF's harm and suffering in this claim for relief.

198. Accordingly, PLAINTIFF is entitled to recover actual and punitive damages, as allowed by law, in an amount to be determined at trial, all the remedies available under NRS 239, and any other relief the Court deems appropriate.

199. As a further result of the culpable conduct of the DEFENDANTS, as alleged in this cause of action, PLAINTIFF has had to retain the services of attorneys in this matter, for which she seeks costs and reasonable attorneys' fees.

## XV.

## ELEVENTH CLAIM FOR RELIEF

***Trespass to Chattels***

**(Asserted against All Defendants)**

200. PLAINTIFF incorporates by reference all other allegations in this *Complaint*,

as though fully set forth herein.

201. On the day she was arrested, June 20, 2020, PLAINTIFF was carrying with her goods that she had just purchased, including food for her mother.

202. After PLAINTIFF was taken into police custody, the food was returned to her mother smashed and damaged.

203. The intentional behavior of DEFENDANTS damaged property that belonged to PLAINTIFF.

204. The intentional behavior of DEFENDANTS is the actual and proximate cause of the damage to PLAINTIFF's property that was intended for her mother.

205. Accordingly, PLAINTIFF is entitled to recover actual and punitive damages, as allowed by law, in an amount to be determined at trial.

206. As a further result of the culpable conduct of the DEFENDANTS, as alleged in this cause of action, PLAINTIFF has had to retain the services of attorneys in this matter, for which she seeks costs and reasonable attorneys' fees.

## XVI.
## TWELFTH CLAIM FOR RELIEF
### *Conversion*
### (Asserted against All Defendants)

207. PLAINTIFF incorporates by reference all other allegations in this *Complaint*, as though fully set forth herein.

208. On the day she was arrested, June 20, 2020, PLAINTIFF was carrying with her a black backpack that contained pepper spray and she was wearing shorts.

209. After PLAINTIFF was taken into police custody, the pepper spray was confiscated by the police and PLAINTIFF's shorts were never returned to her.

210. The intentional behavior of DEFENDANTS permanently converted property that belonged to PLAINTIFF to their own use.

211. Upon PLAINTIFF's release from jail, she had to wear someone else's pants because her shorts were just gone, the jail said.

212. The intentional behavior of DEFENDANTS is the actual and proximate cause of the damage to PLAINTIFF's property.

213. Accordingly, PLAINTIFF is entitled to recover actual and punitive damages, as allowed by law, in an amount to be determined at trial.

214. As a further result of the culpable conduct of the DEFENDANTS, as alleged in this cause of action, PLAINTIFF has had to retain the services of attorneys in this matter, for which she seeks costs and reasonable attorneys' fees.

## XVII.
## THIRTEENTH CLAIM FOR RELIEF
### *Intentional Infliction of Emotional Distress*

**(Asserted against All Defendants)**

215. PLAINTIFF incorporates by reference all other allegations in this *Complaint*, as though fully set forth herein.

216. DEFENDANT SPARKS POLICE DEPARTMENT acted intentionally to stalk, terrorize, and falsely arrest a Nevada citizen without reasonable suspicion or probable cause.

217. The actions of DEFENDANTS were extreme and outrageous: they detained PLAINTIFF in a place where she had the lawful right to be without reasonable suspicion or probable cause; then, seven days later, they decided to arrest PLAINTIFF for the same reason they had previously detained her but without reasonable suspicion or probable cause sufficient to establish the alleged reason for her arrest: stalking; actually, PLAINTIFF had successfully defended herself against battery and hate crime by Steven Saults, a white man with unleashed dogs who had called PLAINTIFF "a fat nigger bitch."

218. During her entire week in jail for a crime that she did not commit, PLAINTIFF was left to languish in solitary confinement for no known reason; PLAINTIFF would have been able to avoid this if she had not been falsely arrested in the first place.

219. As a result of the actions of DEFENDANT SPARKS POLICE DEPARTMENT, the PLAINTIFF has suffered severe emotional distress and physical harm.

220. The intentional behavior of DEFENDANTS is the direct and proximate cause of PLAINTIFF's deteriorated health and ongoing mental anguish.

221. Accordingly, PLAINTIFF is entitled to recover actual and punitive damages, as allowed by law, in an amount to be determined at trial.

222. As a further result of the culpable conduct of the DEFENDANTS, as alleged in this cause of action, PLAINTIFF has had to retain the services of attorneys in this matter, for which she seeks costs and reasonable attorneys' fees.

## —*THEORIES OF LIABILITY APPLICABLE TO ALL CLAIMS*—

## XVIII.

### ***Respondeat Superior Liability***[3]

### ***Vicarious Liability of Employers for Conduct by Their Employees, Occurring in the Course and Scope of Employment***

---

[3] *Respondeat superior* is not properly a cause of action or a claim for relief, but rather, a method of assigning liability to an employer for the conduct of its employees. See *Fernandez v. Penske Truck Leasing Co., L.P.* 2021 WL 1832571, 1 (D. Nev. 2012) (citing *Cruz v. Durbin*, 2011 WL 1792765 (D. Nev. 2011)). Accordingly, this section is not labeled as a claim for relief, but it seeks to assign liability to Defendants SPARKS POLICE DEPARTMENT and DOE GOVERNMENT ENTITIES 1-10, vicariously, for the acts of their employees, including Officers Miller, Patterson, Jones, DOE 1, and DOE INDIVIDUALS 2-50.

**(Asserted against Defendants SPARKS POLICE DEPARTMENT and DOE GOVERNMENT ENTITIES 1-10)**

223. PLAINTIFF incorporates by reference all other allegations in this *Complaint*, as though fully set forth herein.

224. At all relevant times herein, Officers Miller, Patterson, Jones, and DOE 1, and DOE INDIVIDUALS 2-50, and each of them, were under the control of their respective employers, including DEFENDANT SPARKS POLICE DEPARTMENT and DOE GOVERNMENTAL ENTITIES 1-10.

225. At all relevant times herein, the acts of Officers Miller, Patterson, Jones, DOE 1, and DOE INDIVIDUALS 2-50, and each of them, complained of herein, caused injury and harm to PLAINTIFF and created culpability for violating the law, as alleged herein.

226. At all relevant times herein, the culpable and injurious acts of Officers Miller, Patterson, Jones, DOE 1, and DOE INDIVIDUALS 2-50, and each of them, occurred when they were under the control of their respective employers, DEFENDANTS SPARKS POLICE DEPARTMENT and DOE GOVERNMENT ENTITIES 1-10, and such acts by these employees occurred within the course and scope of their employment.

227. Based on the foregoing, PLAINTIFF is entitled to invoke the doctrine of *respondeat superior* to impose vicarious liability on DEFENDANTS SPARKS POLICE DEPARTMENT and DOE GOVERNMENT ENTITIES 1-10 as respective employers of Officers Miller, Patterson, Jones, DOE 1, and DOE INDIVIDUALS 2-50 for the culpable conduct of these employees occurring within the course and scope of their employment.

//

//

//

## XIX.

### *Negligent Hiring and Entrustment*[4]

### *Vicarious Liability of Employers for Hiring Bad Employees and Entrusting Sensitive Tasks to Employees not Able to Carry Them Out*

**(Asserted against Defendants SPARKS POLICE DEPARTMENT and DOE GOVERNMENT ENTITIES 1-10)**

228. PLAINTIFF incorporates by reference all other allegations in this *Complaint*, as though fully set forth herein.

229. DEFENDANTS SPARKS POLICE DEPARTMENT and DOE GOVERNMENT ENTITIES 1-10 had a duty to PLAINTIFF and to the public to use reasonable care in the training and supervision of their police employees to ensure that they were fit for their positions, including by training police employees to discern the difference between the true victim and the true perpetrator of a crime and impermissible profiling on the basis of race, gender, and disability.

230. DEFENDANTS SPARKS POLICE DEPARTMENT and DOE GOVERNMENT ENTITIES 1-10 had a duty to PLAINTIFF and to the public to train their police officers regarding, but not limited to:

---

[4] Negligent hiring and entrustment are not properly causes of action or claims for relief, but rather, methods of assigning liability to an employer for the conduct of its employees. To state a claim for negligent training and supervision in Nevada, the Plaintiff must show "(1) a general duty on the employer to use reasonable care in the training and/or supervision of employees to ensure that they are fit for their positions; (2) breach; (3) injury; and (4) causation." *Okeke v, Biomat USA*, *Inc.*, 927 F. Supp. 2d 1021, 1028 (D. Nev. 2013) citing *Reece v. Republic Services, Inc.,* 2011 WL 868386, *11 (D. Nev. Mar. 10, 2011). Claims for negligent training and supervision are based upon the premise that an employer should be liable when it places an employee—who it knows or should have known behaves wrongfully—in a position in which the employee can harm someone else. *Id.* citing *Daisley v. Riggs Bank, N.A.,* 372 F.Supp.2d 61, 79 (D.D.C.2005).

a. Recognizing and understanding animal control laws regarding unleashed and unvaccinated dogs;
b. Recognizing and understanding when a battery has occurred;
c. Recognizing and understanding when a hate crime has occurred;
d. Recognizing and understanding what self-defense is and when its use is merited;
e. Recognizing and understanding the difference between genuine mental instability and the instinct that all people have to defend themselves against unwarranted attacks;
f. Recognizing and understanding that an individual cannot trespass when walking peacefully inside their own neighborhood;
g. Recognizing and understanding that carrying proper identification is required when driving but not when walking;
h. Recognizing and understanding what the crime of stalking is, legally;
i. Recognizing and understanding what the crime of trespass is, legally;
j. Recognizing and understanding what constitutes reasonable suspicion sufficient to detain;
k. Recognizing and understanding what constitutes probable cause sufficient to arrest;
l. Recognizing and understanding what constitutes excessive use of force;
m. Recognizing and understanding how to de-escalate situations to prevent the need for the use of force;
n. Recognizing and understanding what constitutes impermissible bias and profiling on the basis of race;
o. Recognizing and understanding what constitutes impermissible bias and profiling on the basis of disability;

p. Recognizing and understanding what constitutes impermissible bias and profiling on the basis of gender;

q. Recognizing and understanding how to handle vulnerable Nevadans who are protected by NRS § 41.1395;

r. Recognizing and understanding when a detention becomes unlawful under NRS § 171.123;

s. Complying with the standards for search, seizure, and arrest as analyzed by the U.S. Supreme Court in cases such as *Terry v. Ohio* and *Hiibel v. Sixth Jud. Dist. Ct. of Nev., Humboldt Cty*, 542 U.S. 177, 184 (2004);

t. Complying with the Fourth and Fourteenth Amendments to the U.S. Constitution.

231. On information and belief, at all times relevant hereto, DEFENDANTS SPARKS POLICE DEPARTMENT and DOE GOVERNMENT ENTITIES 1-10 through its officers, managers, supervisors, agents, and/or employees, was responsible for training, supervising, and retaining employees, including training and supervision pertaining to Officers Miller, Patterson, Jones, DOE 1, DOE INDIVIDUALS 2-50, and each of them.

232. On information and belief, at all times relevant hereto, DEFENDANTS SPARKS POLICE DEPARTMENT and DOE GOVERNMENT ENTITIES 1-10 through its officers, managers, supervisors, agents, and/or employees, and each of them, owed a general duty to use reasonable care in the training, supervision, and retention of such employees, including Officers Miller, Patterson, Jones, DOE 1, DOE INDIVIDUALS 2-50, and each of them, to make sure that their employees are fit for their positions and to prevent harm to third parties, including PLAINTIFF, by the employees' tortious or wrongful conduct, of the type alleged herein.

233. On information and belief, at all times relevant hereto, DEFENDANTS SPARKS POLICE DEPARTMENT and DOE GOVERNMENT ENTITIES 1-10 through its officers, managers, supervisors, agents, and/or employees breached this duty of care when they placed and retained Officers Miller, Patterson, Jones, DOE 1, DOE INDIVIDUALS 2-50, and each of them, in their positions as police officers without properly training and supervising Officers Miller, Patterson, Jones, DOE 1, DOE INDIVIDUALS 2-50, and each of them, whom they knew or should have known would fail to properly perform their duties, and that in the position in which they were placed and retained, Officers Miller, Patterson, Jones, DOE 1, DOE INDIVIDUALS 2-50, and each of them, could harm someone innocent, including PLAINTIFF, as alleged herein.

234. On information and belief, DEFENDANTS SPARKS POLICE DEPARTMENT and DOE GOVERNMENT ENTITIES 1-10 through its officers, managers, supervisors, agents, and/or employees were negligent in the training, supervision and retention of Officers Miller, Patterson, Jones, DOE 1, DOE INDIVIDUALS 2-50, and each of them, including but not limited to training in the areas of: recognizing self-defense, recognizing trespass, racial bias, use of force, civil rights, de-escalation, and identifying the actual victims of crimes, the lack of training in which caused the harm and injuries to PLAINTIFF, as alleged herein.

235. When engaging in their culpable conduct described herein, DEFENDANTS sued in this cause of action, and each of them, acted with malice, express or implied, in that DEFENDANTS engaged in despicable conduct by virtue of the egregious nature of their failures to properly train, supervise, and retain the individuals responsible for the safety and rights of PLAINTIFF, and these DEFENDANTS had a conscious disregard of the rights or safety of PLAINTIFF and of vulnerable persons similarly situated to PLAINTIFF.

236. DEFENDANTS exhibited a conscious disregard of PLAINTIFF's rights and/or safety when they knew of the probably harmful consequences of their wrongful acts of neglecting to properly train, supervise, and retain Officers Miller, Patterson, Jones, DOE 1, DOE INDIVIDUALS 2-50, and each of them, the probable harmful consequences of which included physical and mental injury as well as the violation of PLAINTIFF's rights that DEFENDANTS recklessly, willfully, and/or deliberately failed to act to avoid.

237. DEFENDANTS breached their duty to PLAINTIFF when they allowed Officers Miller, Patterson, Jones, DOE 1, DOE INDIVIDUALS 2-50, and each of them, to take adverse action against PLAINTIFF on the basis of profiling bias that targeted PLAINTIFF because of her race, disability, and gender.

238. The hostile and capricious actions of DEFENDANTS' employees directly and proximately caused injury to PLAINTIFF.

239. DEFENDANTS SPARKS POLICE DEPARTMENT and DOE GOVERNMENT ENTITIES 1-10 should have known better than to entrust sensitive screening of individuals to police employees who were liable to treat those individuals as a public threat simply by virtue of their race, disability, and gender.

240. The incompetence of DEFENDANTS' negligently-hired and poorly-trained police employees was both the direct and proximate cause of PLAINTIFF's injuries.

241. PLAINTIFF has sustained damage including but not limited to: new psychological and physical conditions, moving fees to move both within Reno and from Reno to Las Vegas, embarrassment in front of neighbors and work colleagues, lost work, lost property, damage to her reputation, profiling her for having a disability that is protected by the ADA and Nevada state law, and capricious exclusion from an apartment complex where she had the legal right

to be.

242. Accordingly, PLAINTIFF is entitled to recover punitive and exemplary damages, as allowed by law, in an amount to be determined at trial.

243. As a further result of the culpable conduct by DEFENDANTS, as alleged in this cause of action, PLAINTIFF has had to retain the services of attorneys in this matter, for which he seeks costs and reasonable attorneys' fees.

***—REMEDIES COMMON TO ALL CLAIMS—***

**XX.**

***Declaratory Relief***

**(Asserted Against All Defendants)**

244. PLAINTIFF incorporates by reference all other allegations in this *Complaint*, as though fully set forth herein.

245. Pursuant to NRS 30.030, NRS 30.100, NRS 651.090(2)(a), and the Court's inherent equitable powers, PLAINTIFF seeks, and is entitled to have, declaratory relief awarded in his favor, to declare her rights and obligations of the Defendants sued herein, where such declaratory relief is necessary and proper to the termination of the disputes raised herein, including as specifically prayed for below.

246. This includes declaratory relief whereby the Court issues a declaration that Defendants unlawfully discriminated against, harassed, and retaliated against PLAINTIFF and otherwise violated PLAINTIFF's rights under the law, and any other declaration the Court finds necessary and proper.

**XXI.**

***Injunctive Relief***

**(Asserted against All Defendants)**

247. PLAINTIFF incorporates by reference all other allegations in this

*Complaint*, as though fully set forth herein.

248. Based on the foregoing, PLAINTIFF has suffered an irreparable injury, and the remedies available at law, such as monetary damages, are inadequate to compensate for that injury.

249. PLAINTIFF is entitled to injunctive relief, which would include expunging PLAINTIFF's criminal record and any other public records related to her in this matter, including her booking photo, and removal of any and all defamatory publications made by SPARKS POLICE DEPARTMENT about PLAINTIFF on third-party websites.

250. Considering the balance of hardships between PLAINTIFF and DEFENDANTS, a remedy in equity is warranted and the public interest will be served by issuance of such injunctive relief.

251. Pursuant to NRS 33.010 *et seq.*, NRS 651.090(2)(a), and the Court's inherent equitable powers, PLAINTIFF is entitled to have injunctive relief awarded in her favor, including by restraining the acts complained of and compelling the obligations of the DEFENDANTS sued herein to give effect to the declaratory and other relief awarded by the Court in this action.

252. Such injunctive relief is necessary and proper to the resolution of the disputes raised herein, including as specifically prayed for below, and any other declarations and equitable relief that the Court deems necessary and proper.

## XXII.
## PRAYER FOR RELIEF

WHEREFORE, PLAINTIFF prays for judgment against all DEFENDANTS, jointly and severally, as follows:

1. For general damages in an amount in excess of $100,000.00;
2. For special damages in an amount in excess of $100,000.00;

3. For past and future compensatory damages, and other expenses incurred by reason of DEFENDANTS' intentional misconduct, acts, omissions, carelessness, recklessness, negligence, gross negligence, deliberate indifference, and other culpable conduct, described herein, in an amount in excess of $100,000.00;
4. For punitive and exemplary damages;
5. For costs of the suit incurred herein;
6. For attorneys' fees, costs and prejudgment interest;
7. For declaratory relief, in the form of declarations that:
   (A) PLAINTIFF was battered by DEFENDANT SPARKS POLICE DEPARTMENT and wrongly arrested in violation of her rights under the U.S. Constitution and Nevada law.
   (B) PLAINTIFF was discriminated against by DEFENDANT SPARKS POLICE DEPARTMENT on the basis of her race, gender, and disability.

//
//
//
//
//
//
//
//
//
//
//
//

(C) PLAINTIFF'S current medical damages are the direct and proximate result of the conduct of DEFENDANTS SPARKS POLICE DEPARTMENT and DOE GOVERNMENTAL ENTITIES 1-50.

Dated this 5th Day of May, 2022.

The Law Offices of Robert S. Melcic

/s/ Robert S. Melcic
ROBERT S. MELCIC
Nevada Bar No. 14923
3315 E. Russell Rd.
Ste. A4-271
Las Vegas, NV 89120
Phone: (702) 526-4235
Clerk: (725) 577-8013
Email: robertmelcic@gmail.com
*Attorney for Plaintiff Allanna Warren*