Electronically Filed
5/19/2023 1:31 AM
Steven D. Grierson
CLERK OF THE COURT

Allanna Warren
9620 S. Las Vegas Blvd., Suite E461
Las Vegas, NV 89123
D1A2N3N4@PROTON.ME

CASE NO: A-23-870956-C
Department 9

DISTRICT COURT

CLARK COUNTY, NEVADA

| | |
|---|---|
| ALLANNA WARREN,<br>Plaintiff,<br>vs.<br>MICHAEL SILVA,<br>Defendant | Case No.:<br>Dept. No.:<br>COMPLAINT JURY TRIAL DEMANDED |

Plaintiff, ALLANNA WARREN, hereby submits her COMPLAINT JURY TRIAL DEMANDED. Plaintiff complains against Michael Silva as follows.

## I.

## STATEMENT OF THE CASE

This case is linked and related to two police misconduct cases currently in litigation. The first case is against the City of Sparks et. al. and The county of Washoe Jail et. al in the Second Judicial District case number CV2201525. The second case is against Las Vegas Metropolitan Police Departments (LAS VEGAS METROPOLITAN POLICE DEPARTMENT) in the US District Court with case number 2:23-cv-00065-GMN-DJA. After an unlawful detainment on June 14, 2020 and an unlawful arrest on June 20, 2020 by Sparks Police officers Ginger Miller, Ryan Patterson and Daniel Jones, PLAINTIFF and her elderly mother were harassed, followed, stalked, illegally surveilled, had their communications devices illegally monitored and would go into any business, school, store, retail business, apartment, doctor's offices, townhome,

employers (Anthem Blue Cross and Blue Shield (BCBS), AppleOne and HILTON GRAND VACATIONS), box store like Walmart, 99 Cent Only Stores or Dollar Tree, private home or any place PLAINTIFF and her mother visited even once and slander, libel and character assassinate them both. Law enforcement would illegally stalk and follow MS. WARREN to continue the harassment, slander, libel and character assassination to landlords, neighbors, employees, co-workers, supervisors, doctor's office staff, doctors, physician assistants etc. in Southern Nevada as well. Ms. WARREN had no criminal record at the time of her arrest and should have been released on her own recognizance. Regardless of this, Ms. WARREN languished in WASHOE COUNTY JAIL for a week, from June 20, 2020 to June 26, 2020. During this *entire* time, she was placed in solitary confinement for no reason. By "solitary confinement," PLAINTIFF means that she was in a small, separate place in the basement of the WASHOE COUNTY JAIL, completely alone, and that this place only had room for one person. Ms. WARREN languished in this small space for six solid days. She was given no reason for her segregation from the main jail population. The charges against Ms. WARREN were entirely dropped on September 15, 2021.

Washoe County had a motive for disliking Ms. WARREN. From August 5, 2019 to September 24, 2019, WARREN had actually worked for Washoe County in their Alternative Sentencing Department. In that capacity, she worked in a makeshift crime lab near to the county courthouse. There, she was expected to analyze evidence chemically despite having no formal scientific training. Ms. WARREN'S hiring for the lab was rushed and did not meet typical employment protocols. In the lab, which was not properly licensed, Ms. WARREN regularly worked with caustic chemicals but was given no personal protective equipment (PPE) to perform her work. The lab had no eye wash station, no labels for chemicals, and no hazardous waste

disposal. Without hazardous waste disposal, corrosive chemicals were being left in the trash where they could leach into the water system outside. On September 23, 2019, Ms. WARREN went to the hospital with contact dermatitis acquired as a direct result of her unsafe employment. The next day, she complained to the Occupational Safety and Health Administration (OSHA) about the conditions in the lab and gave her supervisor a doctor's note.

Ms. WARREN was fired by Washoe County at around 6 PM on Tuesday, September 24, 2019. When Nevada OSHA investigated Washoe County, County was fined upwards of $4,000 for facilities violations as a direct result of Ms. WARREN's complaint regarding unsafe working conditions. Prior to working for the Alternative Sentencing Department of Washoe County, Ms. WARREN worked as an administrative assistant at China Spring Youth Camp in Douglas County. In this capacity, Ms. WARREN observed that the camp was doctoring their accounting files and was prescribing psychotropic medication to children under 18 in exchange for Medicaid subsidies. Rather than go along with these financial malfeasance schemes as her supervisor expected her to, Ms. WARREN reported what she saw to the state and was subsequently fired. Ms. WARREN had worked at the camp for eleven months and one week and was fired right before her probationary period was over.

A Northern Nevada judge, named Pete Sfrazza, had a son, Giovanni Sfrazza, who was incarcerated at the camp. This judge was best friends with another judge, Judge Tod Young, who oversaw the camp. When Ms. WARREN was hired by Washoe County, Pete Sfrazza was overseeing the Alternative Sentencing Department. The same judge whose son had once been incarcerated at China Spring at the time when Ms. WARREN brought her concerns about the juvenile facility to state regulators. In June of 2021, China Spring Youth Camp temporarily

closed the half of its camp dedicated to the care of boys due to, among other problems, “financial instability.”

The police misconduct problems for Ms. WARREN did not stop in Washoe County or Northern Nevada. In November 2021, during a training course for her new job, working for AppleOne Temporary Agency and placed at Anthem BCBS in Las Vegas, a co-worker named Glenn Taylor teased Ms. WARREN by showing her a copy of her booking photo that had been taken when she was arrested. Ms. WARREN suffers from alopecia. When she was booked by the police in Sparks on June 20, 2020, OFFICER MILLER removed Ms. WARREN’S hat before her booking photo was taken, so Ms. WARREN appears bald in the photo. Somehow, Ms. WARREN’s co-workers, Glenn Taylor, Gennifer Ross, Tyranisha Watson, Rachel Post and others, got their hands on this photo, and stated that he had actually gotten the photo from their training instructor, Shelia Williams of Anthem Blue Cross and Blue Shield. Thereupon, Ms. WARREN’s classmates in the training program teased her with photos of bald people and Shelia Williams harassed her also. The booking photo cannot be found online. Ms. WARREN called the Washoe County Sherriff’s Office, who stated to her that such a photo is only a public record when an individual is incarcerated, but that after incarceration is over, the photo is removed from their website. The Washoe County Sherriff’s office additionally stated that the only way the picture could be released at this point would be either at Ms. WARREN’s own request for it, or, in response to a request from someone inside SPARKS POLICE DEPARTMENT. Therefore, on information and belief, SPARKS POLICE DEPARTMENT impermissibly released Ms. WARREN’S booking photo online or to her then current employer in Las Vegas in an effort to harass, embarrass, stalk, and belittle her. After PLAINTIFF complained about the arrest photo to her employer, she was placed on administrative leave and ultimately fired by Apple One

Temporary agency. It is also possible that LAS VEGAS METROPOLITAN POLICE DEPARTMENT additionally had a hand in the booking photo getting released to Ms. WARREN'S new employer in Las Vegas.

Ms. WARREN has been the victim of a wide variety of suspicious behavior at the hands of LAS VEGAS METROPOLITAN POLICE DEPARTMENT since having moved from Reno to Las Vegas in July 2021. Ms. WARREN regularly finds herself followed by both uniformed and plain clothes LAS VEGAS METROPOLITAN POLICE DEPARTMENT officers when she leaves her apartment building by car, taxi, Uber, Lyft or rental car. She cannot take videos of this behavior when she is alone in her car for fear of being pulled over for using a cell phone while driving. Ms. WARREN'S mother is elderly and disabled and also cannot take videos of this behavior on the rare occasions when she is in the car alongside her daughter. Prior to her ordeal, Ms. WARREN suffered from anxiety, depression, and alopecia. Now, subsequent to her ordeal at the hands of SPARKS POLICE DEPARTMENT and LAS VEGAS METROPOLITAN POLICE DEPARTMENT, PLAINTIFF additionally suffers from PTSD and paranoia. Following her confinement, and likely due to stress and the filthy conditions inside the WASHOE COUNTY JAIL, Ms. WARREN developed hidradenitis suppurativa, a painful skin condition that causes small, painful lumps to form under her skin. Following her jailing, MS. WARREN developed these sores and pustules all over her body, for she sought the help of a dermatologist.

After fleeing Northern Nevada to try to escape the relentless retribution from law enforcement there, PLAINTIFF and her mother moved to Las Vegas Nevada in July 2021. MS. WARREN'S family's first lease in Las Vegas was with BDJ Realty. They moved into an apartment located at 5821 Smoke Ranch Road, Unit C Las Vegas NV 89108. The 12 month lease started on November 7, 2021 and ended November 30, 2022. As stated above, MS.

WARREN had been acquitted of all the false “stalking’ charges brought against her from Sparks PD and MS. WARREN had no criminal record. MS. WARREN and her mother had to undergo a rental background check, which both passed with flying colors. This rental background check included a criminal check and credit check. There were issues almost immediately upon moving into the unit. PLAINTIFF first encountered Michael Silva when she went to throw away her trash at the complex dumpster located outside his residence located at 5817 Smoke Ranch Road, Unit C, Las Vegas, NV 89108. As PLAINTIFF threw away her trash she saw Mr. Silva staring and glaring at her. She never spoke to Mr. Silva nor had ever seen him before in her life. The next encounter PLAINTIFF had with Mr. Silva was when he let his large black pit bull off its leash. He allowed the dog to run around the complex without his supervision, which is a crime and violates the leash law for Las Vegas. One day as MS. WARREN was outside her house with her cat, she saw Mr. Silva letting his unleashed dog run up to the wire fence and growl at her and her cat. It alarmed the PLAINTIFF, who called the animal control. Mr. Silva must have been told that MS. WARREN called animal control to report his habit of letting his dog off the leash and harass her while she enjoyed her home. Because the next encounter PLAINTIFF had with Mr. Silva ended in a false call to the Las Vegas Metropolitan Police Department (LVMPD). On Fevurary 7, 2022 MS. WARREN was throwing away her trash and Mr. Silva must have been stalking and watching her as every time she happen to throw away her trash he would appear. Mr. Silva started shouting that PLAINTIFF was insane. PLAINTIFF knew Mr. Silva was speaking to her as no one else was around. As PLAINTIFF was heading back to her house after throwing her trash away, she saw Mr. Silva head inside his home. When MS. WARREN was in front of her home and let her cat out, as usual, she sees Mr. Silva with the large black dog again. MS. WARREN had ear pods in her ears to avoid any further harassment from Mr. Silva.

However, MS. WARREN started laughing at a podcast she was listening to. Then a thin woman joined Mr. Silva with the unleashed dog. The next thing MS. WARREN knew she could hear Mr. Silva screaming “call the cops she’s harassing me with her laughing.” PLAINTIFF could hear this clearly over having her EarPods in her ears. Mr. Silva screamed that loudly. PLAINTIFF went inside her home. Soon after entering her home, she sees two male LVMPD officers knocking at her door. MS. WARREN was on the phone with her former attorney Robert S. Melcic at the time. She had no idea what the police were doing at her door. One officer leaves MS. WARREN’S house to knock on her neighbor’s door. The neighbor was Laura Martinez. They tell Laura Martinez that they got a complaint about a black female walking by. Laura Martinez states that “this lady giggles and whistles.” The officer says, “yup that’s her.” PLAINTIFF was puzzled that the officers knew PLAINTIFF whistled and giggled. This officer said he was there for a complaint about a black female walking by not whistling or giggling. One officers comes back to PLAINTIFF’s door to continue knocking. They knocked over PLAINTIFF belongints in the front of her home and continue to walk over her belongings. Both officers did this and looked down and saw that they vandalized PLAINTIFF’S property but did not care. They spend some time gossiping with Laura Martinez about PLAINTIFF and finally left the premises. The next day, February 8, 2022, Michael Silva called the police on me for a false call again. On this day MS. WARREN did not throw her trash away and had no idea Mr. Silva was stalking and watching her again from an unknown location as PLAINTIFF did not see him. PLAINTIFF outside tending to her garden and listening to music on her EarPods. She sang along with the music and whistled as well. Shortly after going inside her home, she sees two more male LVMPD officers at her door. This time they seemed agitated because they knocked hard on her door with a baton, one came and knocked hard on her front window, both officers

were yelling Las Vegas police open the door, then one continues to pound on PLAINTIFF'S front glass door continually with his baton. This officer stands in PLAINTIFF'S yard with his right hand on his gun. The officer keeps knocking on the front glass door with his baton. PLAINTIFF thought this office was going to break the door with the force he was slamming the baton against the glass front door with. The officers finally leave the premises. PLAINTIFF called the records department of the LVMPD and discovered that Mr. Silva was making the swatting calls on PLAINTIFF on both days. Mr. Silva actually said that the PLAINTIFF harassed him because she whistled, laughed and sang. PLAINTIFF reported this swatting by Mr. Silva to Mr. Melcic who advised her that if another LVMPD showed up again, he would press charges against Mr. Silva for making false police calls. MS. WARREN informed her landlord, Bo Jones, who inquired about the police showing up two days in a row at PLAINTIFF's apartment.

> Michael Silva is guilty of violating H.R.6003 — 115th Congress Anti-Swatting Act of 2018, which states **"**bill amends the Communications Act of 1934 to provide for enhanced penalties for the transmission of misleading or inaccurate caller identification information with the intent to trigger an emergency response by: (1) a law enforcement agency of the United States, a state, or a political subdivision of a state…" and NRS 207.161 TO 207.167 – EMERGENCY COMMUNICATIONS INTERFERENCE. Michael should be held accountable for making two

The harassment did not stop with Mr. Silva, as he stalked her, when he saw PLAINTIFF going to throw away her garage he would come out of his home and scream and yell that she was insane, crazy and nuts. Just as Laura Martinez was notified by Northern Nevada law enforcement

about PLAINTIFF's false arrest for stalking, Michael Silva was informed of the false narrative law enforcement has, that PLAINTIFF is mentally 'unstable". This narrative started with PLAINTIFF'S false arrest in Sparks in 2020 and continues on until today. It is not a joke that PLAINTIFF suffers from preexisting conditions which stress and anxiety worsen. So, when Mr. Silva called LVMPD to PLAINTIFF's house because she laughed, giggled, sang and whistled it made her conditions worse and severely exacerbated them as a result. LVMPD harassed the PLAINTIFF and exacerbated her medical conditions based on Michael Silva's 911 calls about PLAINTIFF laughing, singing and whistling. PLAINITFF has since checked the Las Vegas Penal code, and whistling, singing or giggling are not against the law. Whistling, giggling and singing are neither a felony nor a misdemeanor?

PLAINTIFF has preexisting conditions that stress and anxiety exacerbate. After the harassment, mental anguish and racism Michael Silva subjected PLAINTIFF to she had to see a doctor. Since PLAINTIFF moved to Las Vegas she has had issues trying to find suitable medical treatment because of the constant police involvement in MS. WARREN's civil matters. PLAINTIFF's first appointment with Hilton Grand Vacations located at 5701 W Charleston Blvd, Unit 100, Las Vegas, NV 89146 was on November 18, 2022. At this appointment MS. WARREN saw Physician's assistant Jesse Connors. In this appointment PLAINTIFF explained that law enforcement chased her and her mother out of Northern Nevada and that LAS VEGAS METROPOLITAN POLICE DEPARTMENT has picked up the harassment where Northern Nevada Law enforcement left off. PLAINTIFF explained that she has a history of depression, anxiety, asthma and other ailments that stress exacerbated. PLAINTFF asked Mr. Connors to obtain copies of her medical records from her medical facility in Reno Nevada. It was revealed later that Mr. Connors never sought to obtain copies of PLAINTIFF's medical records from her previous medical facility in Reno as she asked on 11/18/22. MS. WARREN asked Mr. Connors

for a referral for mental health as law enforcement's constant interference was affecting her negatively. Mr. Connors said that he would obtain medical records from PLAINITFF'S previous medical facility and would get her a mental health referral. Mr. Connors suggested that PLAINTIFF get an EKG, get a chest x ray and he would set up an appointment for a Pulmonary Function Test (PFT). Without an evaluation or ever treating PLAINTIFF, Mr. Connors prescribed MS. WARREN 10mg tablets of Escitalopram with two refills. Escitalopram is part of a Bi-Polar treatment. However, PLAINTIFF had not been diagnosed with bi-polar disorder by anyone. A major warning for this medication is that one should seek medical attention right away if you have symptoms of serotonin syndrome, such as: agitation, hallucinations, fever, sweating, shivering, fast heart rate, muscle stiffness, twitching, loss of coordination, nausea, vomiting, or diarrhea. MS. WARREN had never been on this medication and was not informed of any side effects of the medication before taking it per Mr. Connors instructions. MS. WARREN was not on any mental medication before encountering the treatment from BDJ Realty, Laura Martinez, Michael Silva, Hilton Grand Vacations, Dollar Tree, Cano Health, T-mobile, Southwest Airlines, Hilton, Apple One, Anthem Blue Cross and Blue Shiels, VIP Auto Services nor Walmart.

Mr. Connors told PLAINTIFF that the scheduling department would be contacting her shortly after her 11/18/22 visit. Immediately after the appointment with Mr. Connors, his medical assistant, Juliana Ramirez, took MS. WARREN to get her EKG test. While in the room Juliana instructed PLAINTIFF to undress above the waist, including removing her bra and shirt. PLAINTIFF complied with the instructions. The EKG was performed by Ms. Ramirez. After the testing, Juliana instructed PLAINTIFF to keep her bra off but put on her shirt because she was going to get her chest Xray. PLAINTIFF complied with these instructions as well. Juliana

led MS. WARREN to a chair outside a small room. A Hispanic male came out of the small room and asked PLAINTIFF her name. MS WARREN told the male her name and he led her inside the room. After the chest x ray, the male instructed PLAINTIFF to "get dressed" in the same room. The male could see the PLAINTIFF clearly and she inquired about the visibility of dressing in front of the male. The male told MS. WARREN that everyone gets dressed in the room with him in the room. Outside the small room, PLAINTIFF saw a bathroom right next to the room and wondered why the male would not have instructed her to change inside the bathroom right next door.

MS. WARREN's mother is over 70 years old so having a medical provider in close proximity is paramount to her health. PLAINTIFF, despite her apprehensions, recommended Hilton Grand Vacations to her mother. On 11/29/2022 PLAINTIFF's mother went to an appointment with Mr. Connors at the Hilton Grand Vacations located at 5701 W Charleston Blvd, Unit 100, Las Vegas, NV 89146. Mr. Connors told PLAINTIFF's mother that he would be getting her medical records from her medical facility in Carson City just like he told the PLAINTIFF. PLAINTIFF's mother is not sure if Mr. Connors actually sought to obtain those records. Mr. Connors also advised MS. WARREN's mother to get a PFT, get a chest x ray and be seen by a Ear Nose and Throat (ENT) specialist. Immediately after the appointment, PLAINTIFF went to the waiting room and PLAINTIFF's mother went to get her chest x ray. Upon exiting Hilton Grand Vacations PLAINTIFF's mother told her that she experienced the same "undressing" incident that PLAINTIFF had with the male who conducts the x rays. PLAINTIFF could see her mother was uncomfortable and this bothered her immensely.

It has to be noted that before the 11/29/22 appointment at Cano Health, which was scheduled at 10:30 am, PLAINTIFF and her mother were stalked and followed by LAS VEGAS

METROPOLITAN POLICE DEPARTMENT officers. They were pulled over by a black male officer who was the driver of the police SUV and had a white female officer in the passenger seat. PLAINTIFF knows they were being stalked and followed because PLAINTIFF and her mother had just moved into a new place, less than a week before being pulled over by LAS VEGAS METROPOLITAN POLICE DEPARTMENT, and no one had their new address. There would have been no way LAS VEGAS METROPOLITAN POLICE DEPARTMENT had their new address, without illegally stalking, following and monitoring the PLAINTIFF and her mother as their new place is in another city/jurisdiction and far away from their previous home where LAS VEGAS METROPOLITAN POLICE DEPARTMENT were falsely called multiple times by PLAINTIFF'S neighbors. In the previously mentioned police misconduct cases involving LAS VEGAS METROPOLITAN POLICE DEPARTMENT, neighbors Laura Martinez and Michael Silva are named, with video evidence, as being the culprits who were prompted by LAS VEGAS METROPOLITAN POLICE DEPARTMENT to call them so PLAINTIFF could be falsely arrested again or evicted.

PLAINTIFF's mother, had her PFT scheduled for 12/8/22. While in the waiting room the PFT specialist, his name is Uday, approached MS. WARREN's mother and told her that he does not have the mouth pieces, which are mandatory to conduct the test, and he has no idea when he would get them and that she needs to reschedule her PFT somewhere else as he was going out of town on a vacation for two months. There was no forewarning or a courtesy call to inform PLAINTIFF'S mother of this issue.

PLAINTIFF's mother had her Ear Nose and Throat (ENT) appointment on 12/12/22 with Dr. Kim of the UNLV medical center located at 5320 S. Rainbow, Suite 250 Las Vegas, NV. While in her appointment PLAINTIFF and her mother complained to Dr. Kim about their

treatment by Cano Health. They both explained what happened with “undressing” in front of a male x ray tech, Uday having no equipment to conduct PFTs for patients with breathing issues, and just the entire medical negligence of Cano Health. Dr. Kim thanked both ladies for their honesty and informed them that he would take their concerns seriously and inform the proper authorities. Dr. Kim told PLAINTIFF and her mother that he did not want to send any of his patient’s to this medical facility after hearing their horror stories. PLAINTIFF and her mother noticed a LAS VEGAS METROPOLITAN POLICE DEPARTMENT SUV parked outside the medical facility during the mother’s appointment. They made a comment to Dr. Kim and noticed that the LAS VEGAS METROPOLITAN POLICE DEPARTMENT SUV did not leave until right before the appointment was over. Again, this proves the constant stalking, following, surveilling, monitoring etc. by law enforcement illegally.

During the month of November and December PLAINTIFF heard from the Cano Health’s scheduling department. They informed MS. WARREN that Axis psychiatry would be scheduling her an appointment. MS. WARREN heard from Axis and they scheduled her for an appointment on 12/26/22. Later in December when PLAINTIFF called Axis to confirm the appointment the receptionist told PLAINTIFF that their building was closed due to the observance of Christmas on 12/26/22. When PLAINTIFF inquired as to why she was scheduled for an appointment on a day they knew they were closed PLAINTIFF received no response. Then PLAINTIFF was informed that Axis would not have an appointment open for several months.

On 12/18/22 PLAINTIFF had a follow up appointment with Mr. Connors. PLAINTIFF informed Mr. Connors that Axis psychiatry scheduled her on a day they were closed and she wanted another referral. At the 12/18/22 appointment PLAINTIFF’s blood pressure was

extremely high as she had been chased around Cano Health parking lot by strangers and had several LAS VEGAS METROPOLITAN POLICE DEPARTMENT squad cars tailing her from her new home to the appointment. PLAINTIFF was scared and her blood pressure exhibited this. Mr. Connors had PLAINTIFF's blood pressure checked several times and it was elevated the entire time. Having law enforcement involving themselves in every aspect of PLAINTIFF's life was affecting her health.

PLAINTIFF waited to hear from Cano Health's scheduling department to schedule another psych appointment. PLAINTIFF ended up calling Hilton Grand Vacations as she did not hear from the scheduling department as expected. PLAINTIFF was informed that she would have to call around Las Vegas for a psych doctor as their scheduling department would not help her. PLAINTIFF informed the scheduling department that it is their job to find a doctor for the PLAINTIFF. PLAINTIFF was told that "normally" their department does call around and find doctors for patients but in PLAINTIFF's case they would not help her.

Because law enforcement went to PLAINFIFF's job at Hilton Grand Vacations (HGV) and slandered her there, she was on an ongoing ADA medical leave of absence since 11/15/22. She was trying to get Short Term Disability from Lincoln Financial Group (LFG). While trying to get all the medical paperwork for LFG to make a decision, MS. WARREN was run around by Mr. Connors office and LFG. A decision on PLAINTIFF'S case was intentionally delayed from both sides. After all the stress of PLAINTIFF'S job, her mother's health, trying to get mental help, no income from any source, law enforcement constantly bothering her, and no one helping the PLAINTIFF, all this stress was taking a toll on her health.

One of the reasons LFG denied PLAINTIFF's short term disability was because their nurse stated that PLAINTIFF was not seen from a licensed doctor or psychiatric doctor to

correctly diagnose the PLAINTIFF, no evaluation was performed before giving PLAINTIFF Escitalopram and no follow up was performed by Hilton Grand Vacations Ito see if the medication was correct and helped the PLAINTIFF. Mr. Connors did not have the medical license to prescribe the PLAINTIFF any psych medication, especially with a medication like Escitalopram.

During December and January 2023 PLAINTIFF never saw Mr. Connors again until January 31, 2023. PLAINTIFF was scheduled for a Zoom appointment. During this appointment, Mr. Connors was clearly upset, and his facial expressions and treatment of PLAINTIFF exhibited this disdain. Mr. Connors stated on a recorded Zoom call that PLAINTIFF needs a doctor and Cano Health doesn't have a doctor therefore Cano Health can not see or treat the PLAINTIFF anymore.

When PLAINTIFF went out on her ADA leave from Hilton Grand Vacations she was asked to provide her former employer with a Team Member Accident Report. In this report PLAINTIFF explained that along with the stress and discrimination she faced at work, Michael Silva and Laura Martinez's harassment and constant false police calls while she worked from home led to her having to go out sick on the continuous ADA leave. On 11/25/22 PLAINITFF went to Hilton Grand Vacation's worker's comp doctor at the Polaris Concentra medical facility. In PLAINTIFF'S Injury care Patient Information form MS. WARREN explained, "I have preexisting medical conditions which are exacerbated by stress. Because LVMPD and Sparks PD are stalking me and retaliating against me for suing them because of a false arrest in 2020, they have used my neighbors, coworkers, supervisors, landlords and strangers to continue to harass me." The doctor recommended that PLAINTIFF be treated with counseling to help her. Hilton Grand Vacations denied PLAINTIFF'S claims so she is without treatment to this day.

## II.

## JURISDICTION AND VENUE

1. "A court of this state may exercise jurisdiction over a party to a civil action on any basis not inconsistent with the Constitution of this state or the Constitution of the United States." NRS 14.065.
2. Jurisdiction in this Court is proper because this is a complaint seeking monetary relief in excess of $10,000, the PLAINTIFF is a resident citizen of Nevada, and the DEFENDANT MICHAEL SILVA lives in Las Vegas, Nevada.
3. Venue is proper in the Eighth Judicial District Court of Clark County because:

a. Under NRS 13.020, "Actions for the following causes must be tried in the county where the cause, or some part thereof, arose, subject to the power of the court to change the place of trial." All of the events giving rise to this claim have occurred within Clark County;

b. The PLAINTIFF currently resides in Las Vegas, Nevada, where the events or omissions giving rise to the claims of this case occurred.

## III.

## PARTIES

4. At all times relevant to this action, PLAINTIFF was a resident of the State of Nevada, County of Clark.
5. DEFENDANT MICHAEL SILVA lives in Clark County, Nevada.

## IV.

## GENERAL ALLEGATIONS COMMON TO ALL CLAIMS

6. PLAINTIFF is a forty-five year old African-American woman.
7. PLAINTIFF suffers from pre-existing alopecia, depression, and anxiety; as a result of her ordeal at the hands of LAURA MARTINEZ, SPARKS POLICE DEPARTMENT and LAS VEGAS METROPOLITAN POLICE DEPARTMENT, she now also suffers from hidradenitis suppurativa, PTSD, and paranoia.
8. PLAINTIFF has been a resident of the state of Nevada throughout the entirety of this ordeal.
9. In July 2021, PLAINTIFF and her elderly mother moved to Las Vegas from Reno due to her fear of retribution by SPARKS POLICE DEPARTMENT.
10. Since her move, PLAINTIFF has been subject to ongoing surveillance and interference in Las Vegas by LAS VEGAS METROPOLITAN POLICE DEPARTMENT, detailed infra.
11. PLAINTIFF has had additional problems happen to her as a result of interference by, on information and belief, the LAS VEGAS METROPOLITAN POLICE DEPARTMENT; these include but are not limited to:

a. Possible involvement in PLAINTIFF'S booking photo being released to her new employer in Las Vegas;

b. Known interference with PLAINTIFF'S and her mother's property as it was being transported by U-Haul from Northern to Southern Nevada, who admitted to PLAINTIFF on the telephone their employees' collusion with both SPARKS POLICE DEPARTMENT and the LAS VEGAS METROPOLITAN POLICE DEPARTMENT when transporting and temporarily losing the property;

c. Unwarranted surveillance at PLAINTIFF'S new Airbnb upon first moving to Las Vegas;

d. Being followed by both uniformed and plain clothes LAS VEGAS METROPOLITAN POLICE DEPARTMENT officers when PLAINTIFF leaves her apartment building by car, Uber, Lyft, Taxi or rental car;

e. Being told by her internet service provider T-Mobile that the POLICE paid for her internet connection;

f. Being harassed at home, including by having LAS VEGAS METROPOLITAN POLICE DEPARTMENT bang on her door, allegedly at the behest of a neighbor, and wait around her apartment at night;

g. Being accused by the property managers at her building of violating community standards using videos skimmed from PLAINTIFF'S own surveillance cameras operating on PLAINTIFF'S own WiFi connection (the WiFi that T-Mobile has admitted the POLICE compensate).

h. On information and belief, Law enforcement contacted MICHAEL SILVA.

**—STATE CLAIMS—**

**V.**

**FIRST CLAIM FOR RELIEF**

***Unlawful Injury or Loss Suffered by a Vulnerable Person, NRS § 41.1395***

12. PLAINTIFF incorporates by reference all other allegations in this Complaint, as though fully set forth herein.

13. PLAINTIFF is a vulnerable person as defined by NRS § 41.1395 4(e)(1-2) in that she has a physical health impairment—alopecia—and psychological health impairments—depression and anxiety—that limit one or more of her major life activities, and she has medical records of these impairments.

14. Because of her ordeal, PLAINTIFF now also suffers from a very painful skin condition called hidradenitis suppurativa, and from new psychological problems including PTSD and paranoia.

15. DEFENDANT MICHAEL SILVA was unjustified when they inflicted injury, pain, and anguish on PLAINTIFF with their negligence and failure to provide fair and appropriate treatment to her.

16. DEFENDANT has additionally exploited the medical vulnerability of a vulnerable Nevadan, in contravention of state law.

17. DEFENDANT MICHAEL SILVA working in tandem with law enforcement agencies are severely exacerbating PLAINTIFF'S pre-existing disabilities, in contravention of state law.

18. Accordingly, PLAINTIFF is entitled to recover all available damages, including—but not limited to—lost wages, pain and suffering, emotional distress and punitive damages, if available, as allowed by law, in an amount to be determined at trial.
19. In this particular Claim for Relief, PLAINTIFF is entitled to recover two times her damages, as allowed under NRS § 41.1395(1), in an amount to be determined at trial.

## VI.

## SECOND CLAIM FOR RELIEF

### *Intentional Infliction of Emotional Distress*

20. PLAINTIFF incorporates by reference all other allegations in this Complaint, as though fully set forth herein.
21. DEFENDANT MICHAEL SILVA acted to intentionally to ignore PLAINITFF'S rights, the laws and the lease. Laura allowed her mother, guests, boyfriend and children to ignore PLAINTIFF'S rights to safe living conditions, quiet enjoyment of her home and not be called racial epithets in English and Spanish.
22. DEFENDANT MICHAEL SILVA continued to act intentionally to have law enforcement get involved in PLAINTIFF'S lease when PLAINTIFF passed a background check and had no criminal history. When MICHAEL SILVA lied and made false police calls on PLAINTIFF two days in a row. He made false 911 calls stating that PLAINTIFF harassed him because she was laughing, giggling, singing and whistling outside her apartment in public during business hours. MICHAEL SILVA slandered, defamed PLAINTIFF'S character and gave libelous statements against PLAINTIFF. MICHAEL SILVA did establish a connection between law enforcement in Northern Nevada and Southern Nevada.
23. After months of showing evidence that MICHAEL SILVA harassed, stalked, followed, falsely calling LVMPD on PLAINTIFF and made fun of PLAINTIFF's medical conditions, MICHAEL SILVA continued this behavior until she moved out of the complex on 11/30/22.
24. MS. WARREN still has not been able to get a regular doctor in the Las Vegas area since negligently being thrown out by Mr. Connors and Cano Health.
25. Now, PLAINTIFF faces ongoing harassment and surveillance by LAS VEGAS METROPOLITAN POLICE DEPARTMENT and HENDERSON POLICE DEPARTMENTS even though she has committed no crime in either Clark or Washoe Counties. In order to help LAS VEGAS METROPOLITAN POLICE DEPARTMENT in their ongoing litigation, MICHAEL SILVA negligently involved himself in PLAINTIFF'S police misconduct cases.
26. As a result of the actions of the DEFENDANT, the PLAINTIFF has suffered severe emotional distress and physical harm.
27. The intentional behavior of DEFENDANT is the direct and proximate cause of PLAINTIFF'S deteriorated health and ongoing mental anguish.
28. Accordingly, PLAINTIFF is entitled to recover all available damages, including—but not limited to— lost wages, pain and suffering, emotional distress and punitive damages, if available, as allowed by law, in an amount to be determined at trial.

## VII.

## FOURTH CLAIM FOR RELIEF

***Civil Conspiracy***

29. PLAINTIFF incorporates by reference all other allegations in this Complaint, as though fully set forth herein.

30. In Nevada, "[a]n actionable civil conspiracy is a combination of two or more persons who, by some concerted action, intend to accomplish some unlawful objective for the purpose of harming another which results in damage." Collins v. Union Fed. Savings Loan, 99 Nev. 284, 303 (Nev. 1983).

31. PLAINTIFF has been harassed by LAS VEGAS METROPOLITAN POLICE DEPARTMENT and HENDERSON POLICE DEPARTMENT since moving to Southern Nevada.

32. PLAINTIFF has never been convicted of a crime in Las Vegas or Clark County, so it is a mystery why LAS VEGAS METROPOLITAN POLICE DEPARTMENT or HENDERSON POLICE DEPARTMENT would harass her—but for their knowledge that she is disliked by SPARKS POLICE DEPARTMENT and law enforcement in general.

33. It would be unlawful for LAS VEGAS METROPOLITAN POLICE DEPARTMENT and HENDERSON POLICE DEPARTMENT to do the following without a warrant and without probable cause (this list is not exhaustive):

a. Surveil Ms. WARREN at her Airbnb right when she moved to Las Vegas;

b. Place Ms. WARREN under investigation right when she moved to Las Vegas;

c. Participate in frustrating Ms. WARREN's access to her property as it was being transported south by U-Haul;

d. Release Ms. WARREN'S booking photo from Washoe County to her new, Las Vegas employer long after she had been released from jail;

e. Tail Ms. WARREN in her car whenever she is driving in Las Vegas, using a rental car or taking a Lyft or Uber;

f. On information and belief, conspire with the property managers at Ms. WARREN's apartment building to entrap Ms. WARREN in perceived community standard violations using videos "skimmed" from her own surveillance cameras operating on PLAINTIFF'S own WiFi

g. Intercept Ms. WARREN'S telecommunications, including her telephone and internet connection, as by paying for the connection out of a "police account."

h. Stop or interfere with PLAINTIFF and/or PLAINTIFF'S mother from obtaining medical help in either Northern or Southern Nevada. Medical help includes dental, medical, psychiatric, physical rehabilitation, psychology and any other "medical" help they may need.

i. Conduct false wellness checks based on hearsay and erroneous information from unknown sources.

34. If LAS VEGAS METROPOLITAN POLICE DEPARTMENT or HENDERSON POLICE DEPARTMENT has a cognizable warrant or probable cause against Ms. WARREN for an alleged violation of the law in Clark County, PLAINTIFF asks to see that document.

35. Barring this, her treatment by LAS VEGAS METROPOLITAN POLICE DEPARTMENT and HENDERSON POLICE DEPARTMENT is harassment meant to frighten, embarrass and belittle her.

36. To the extent that LAS VEGAS METROPOLITAN POLICE DEPARTMENT and HENDERSON POLICE DEPARTMENT illegally undertakes such treatment of Ms. WARREN at the behest of or for the benefit of SPARKS POLICE DEPARTMENT in Washoe County, the three police departments are engaged in a civil conspiracy with one another against Ms. WARREN.
37. The "primary purpose" of such partnership is not protection of the community, but rather, "to cause injury" to Ms. WARREN, who is alone but for taking care of her elderly mother. Ungaro v. Desert Palace, Inc., 732 F. Supp. 1522, 1533 n.3 (D. Nev. 1989).
38. And such civil conspiracy, based in intentional tort, is illegal in this state.
39. Accordingly, PLAINTIFF is entitled to recover all available damages, including—but not limited to— lost wages, pain and suffering, emotional distress and punitive damages, if available, as allowed by law, in an amount to be determined at trial.

## —REMEDIES COMMON TO ALL CLAIMS—

## XII.

### *Declaratory Relief*

50. PLAINTIFF incorporates by reference all other allegations in this Complaint, as though fully set forth herein.
51. Pursuant to NRS 30.030, NRS 30.100, NRS 651.090(2)(a), and the Court's inherent equitable powers, PLAINTIFF seeks, and is entitled to have, declaratory relief awarded in her favor, to declare her rights and obligations of the DEFENDANT sued herein, where such declaratory relief is necessary and proper to the termination of the disputes raised herein, including as specifically prayed for below.
52. This includes declaratory relief whereby the Court issues a declaration that DEFENDANT unlawfully discriminated against, harassed, and retaliated against PLAINTIFF and otherwise violated PLAINTIFF'S rights under the law, and any other declaration the Court finds necessary and proper.

## XIII.

## PRAYER FOR RELIEF

WHEREFORE, PLAINTIFF prays for judgment against the DEFENDANT as follows:
1. For general damages in an amount in excess of $250,000.00;
2. For special damages in an amount in excess of $250,000.00;
3. For past and future compensatory damages, and other expenses incurred by reason of DEFENDANTS' intentional misconduct, acts, omissions, carelessness, recklessness, negligence, gross negligence, deliberate indifference, and other culpable conduct, described herein, in an amount in excess of $250,000.00;
4. For punitive and exemplary damages as allowed by law;
5. For costs of the suit incurred herein;

6. PLAINTIFF'S medical expenses as a result of DEFENDANT'S actions and conduct.

Dated this 19th day of May, 2023.

Allanna Warren
Pro Se Name Allanna Warren

CERTIFICATE OF SERVICE

I hereby certify that I sent the foregoing COMPLAINT JURY TRIAL DEMANDED for electronic filing to the Eight Judicial District Court on the 19th day of May, 2023. I caused the foregoing COMPLAINT JURY TRIAL DEMANDED to be served as follows:

[ ] BY U.S. MAIL: By placing a true and correct copy of the same to be deposited for mailing in the U.S. Mail in Las Vegas, Nevada, enclosed in a sealed envelope upon which First-Class postage was fully prepaid to the following address:

[ ] BY PERSONAL SERVICE: By hand delivery of the document(s) listed above to the person(s) at the following address:

[ X ] BY ELECTRONIC FILING: By EFS service pursuant to Rule 5(b)(2)(E) of the NRCP and Rule 9 of the NEFCR.

[ ] BY ELECTRONIC MAIL: By e-mail, consented to in writing, pursuant to Rule 5(b)(2)(F) of the NRCP at the following e-mail address:

Allanna Warren
PLAINTIFF