Electronically Filed
5/6/2023 11:33 PM
Steven D. Grierson
CLERK OF THE COURT

Allanna Warren
9620 S. Las Vegas Blvd., Suite E461
Las Vegas, NV 89123
D1A2N3N4@PROTON.ME

CASE NO: A-23-870268-C
Department 5

DISTRICT COURT

CLARK COUNTY, NEVADA

| | |
|---|---|
| ALLANNA WARREN,<br>Plaintiff,<br>vs.<br>BDJ REALTY ET. AL.,<br>Defendant | Case No.:<br>Dept. No.:<br>COMPLAINT JURY TRIAL DEMANDED |

Plaintiff, ALLANNA WARREN, hereby submits her COMPLAINT JURY TRIAL DEMANDED. Plaintiff complains against BDJ Realty as follows.

## I.

## STATEMENT OF THE CASE

This case is linked and related to two police misconduct cases currently in litigation. The first case is against the City of Sparks et. al. and The county of Washoe Jail et. al in the Second Judicial District case number CV2201525. The second case is against Las Vegas Metropolitan Police Departments (LAS VEGAS METROPOLITAN POLICE DEPARTMENT) in the US District Court with case number 2:23-cv-00065-GMN-DJA. After an unlawful detainment on June 14, 2020 and an unlawful arrest on June 20, 2020 by Sparks Police officers Ginger Miller, Ryan Patterson and Daniel Jones, PLAINTIFF and her elderly mother were harassed, followed, stalked, illegally surveilled, had their communications devices illegally monitored and would go into any business, school, store, retail business, apartment, doctor's offices, townhome,

employers (Anthem Blue Cross and Blue Shield (BCBS), AppleOne and HILTON GRAND VACATIONS), box store like Walmart, 99 Cent Only Stores or Dollar Tree, private home or any place PLAINTIFF and her mother visited even once and slander, libel and character assassinate them both. Law enforcement would illegally stalk and follow MS. WARREN to continue the harassment, slander, libel and character assassination to landlords, neighbors, employees, co-workers, supervisors, doctor's office staff, doctors, physician assistants etc. in Southern Nevada as well. Ms. WARREN had no criminal record at the time of her arrest and should have been released on her own recognizance. Regardless of this, Ms. WARREN languished in WASHOE COUNTY JAIL for a week, from June 20, 2020 to June 26, 2020. During this *entire* time, she was placed in solitary confinement for no reason. By "solitary confinement," PLAINTIFF means that she was in a small, separate place in the basement of the WASHOE COUNTY JAIL, completely alone, and that this place only had room for one person. Ms. WARREN languished in this small space for six solid days. She was given no reason for her segregation from the main jail population. The charges against Ms. WARREN were entirely dropped on September 15, 2021.

Washoe County had a motive for disliking Ms. WARREN. From August 5, 2019 to September 24, 2019, WARREN had actually worked for Washoe County in their Alternative Sentencing Department. In that capacity, she worked in a makeshift crime lab near to the county courthouse. There, she was expected to analyze evidence chemically despite having no formal scientific training. Ms. WARREN'S hiring for the lab was rushed and did not meet typical employment protocols. In the lab, which was not properly licensed, Ms. WARREN regularly worked with caustic chemicals but was given no personal protective equipment (PPE) to perform her work. The lab had no eye wash station, no labels for chemicals, and no hazardous waste

disposal. Without hazardous waste disposal, corrosive chemicals were being left in the trash where they could leach into the water system outside. On September 23, 2019, Ms. WARREN went to the hospital with contact dermatitis acquired as a direct result of her unsafe employment. The next day, she complained to the Occupational Safety and Health Administration (OSHA) about the conditions in the lab and gave her supervisor a doctor's note.

Ms. WARREN was fired by Washoe County at around 6 PM on Tuesday, September 24, 2019. When Nevada OSHA investigated Washoe County, County was fined upwards of $4,000 for facilities violations as a direct result of Ms. WARREN's complaint regarding unsafe working conditions. Prior to working for the Alternative Sentencing Department of Washoe County, Ms. WARREN worked as an administrative assistant at China Spring Youth Camp in Douglas County. In this capacity, Ms. WARREN observed that the camp was doctoring their accounting files and was prescribing psychotropic medication to children under 18 in exchange for Medicaid subsidies. Rather than go along with these financial malfeasance schemes as her supervisor expected her to, Ms. WARREN reported what she saw to the state and was subsequently fired. Ms. WARREN had worked at the camp for eleven months and one week and was fired right before her probationary period was over.

A Northern Nevada judge, named Pete Sfrazza, had a son, Giovanni Sfrazza, who was incarcerated at the camp. This judge was best friends with another judge, Judge Tod Young, who oversaw the camp. When Ms. WARREN was hired by Washoe County, Pete Sfrazza was overseeing the Alternative Sentencing Department. The same judge whose son had once been incarcerated at China Spring at the time when Ms. WARREN brought her concerns about the juvenile facility to state regulators. In June of 2021, China Spring Youth Camp temporarily

closed the half of its camp dedicated to the care of boys due to, among other problems, “financial instability.”

The police misconduct problems for Ms. WARREN did not stop in Washoe County or Northern Nevada. In November 2021, during a training course for her new job, working for AppleOne Temporary Agency and placed at Anthem BCBS in Las Vegas, a co-worker named Glenn Taylor teased Ms. WARREN by showing her a copy of her booking photo that had been taken when she was arrested. Ms. WARREN suffers from alopecia. When she was booked by the police in Sparks on June 20, 2020, OFFICER MILLER removed Ms. WARREN’S hat before her booking photo was taken, so Ms. WARREN appears bald in the photo. Somehow, Ms. WARREN’s co-workers, Glenn Taylor, Gennifer Ross, Tyranisha Watson, Rachel Post and others, got their hands on this photo, and stated that he had actually gotten the photo from their training instructor, Shelia Williams of Anthem Blue Cross and Blue Shield. Thereupon, Ms. WARREN’s classmates in the training program teased her with photos of bald people and Shelia Williams harassed her also. The booking photo cannot be found online. Ms. WARREN called the Washoe County Sherriff’s Office, who stated to her that such a photo is only a public record when an individual is incarcerated, but that after incarceration is over, the photo is removed from their website. The Washoe County Sherriff’s office additionally stated that the only way the picture could be released at this point would be either at Ms. WARREN’s own request for it, or, in response to a request from someone inside SPARKS POLICE DEPARTMENT. Therefore, on information and belief, SPARKS POLICE DEPARTMENT impermissibly released Ms. WARREN’S booking photo online or to her then current employer in Las Vegas in an effort to harass, embarrass, stalk, and belittle her. After PLAINTIFF complained about the arrest photo to her employer, she was placed on administrative leave and ultimately fired by Apple One

Temporary agency. It is also possible that LAS VEGAS METROPOLITAN POLICE DEPARTMENT additionally had a hand in the booking photo getting released to Ms. WARREN'S new employer in Las Vegas.

Ms. WARREN has been the victim of a wide variety of suspicious behavior at the hands of LAS VEGAS METROPOLITAN POLICE DEPARTMENT since having moved from Reno to Las Vegas in July 2021. Ms. WARREN regularly finds herself followed by both uniformed and plain clothes LAS VEGAS METROPOLITAN POLICE DEPARTMENT officers when she leaves her apartment building by car, taxi, Uber, Lyft or rental car. She cannot take videos of this behavior when she is alone in her car for fear of being pulled over for using a cell phone while driving. Ms. WARREN'S mother is elderly and disabled and also cannot take videos of this behavior on the rare occasions when she is in the car alongside her daughter. Prior to her ordeal, Ms. WARREN suffered from anxiety, depression, and alopecia. Now, subsequent to her ordeal at the hands of SPARKS POLICE DEPARTMENT and LAS VEGAS METROPOLITAN POLICE DEPARTMENT, PLAINTIFF additionally suffers from PTSD and paranoia. Following her confinement, and likely due to stress and the filthy conditions inside the WASHOE COUNTY JAIL, Ms. WARREN developed hidradenitis suppurativa, a painful skin condition that causes small, painful lumps to form under her skin. Following her jailing, MS. WARREN developed these sores and pustules all over her body, for she sought the help of a dermatologist.

After fleeing Northern Nevada to try to escape the relentless retribution from law enforcement there, PLAINTIFF and her mother moved to Las Vegas Nevada in July 2021. On November 1, 2021 PLAINTIFF contacted BDJ Realty and spoke with Bo Jones. After speaking to Bo Jones on the phone, Ms. Jones advised MS. WARREN to speak to Laura Van Hine, Bo's assistant. From this point forward MS. WARREN only spoke and dealt with Ms. Van Hine

concerning renting from BDJ Realty. In following conversations, MS. WARREN informed Laura Van Hine that PLAINTIFF had a cat that would be moving into the unit located at 5821 Smoke Ranch Road, Unit C Las Vegas NV 89108. Ms. Van Hine told the PLAINTIFF that having the cat was fine with her and BDJ Realty and Laura thanked MS. WARREN for being honest. On November 3, 2021 PLAINTIFF and her mother applied for the unit and was approved on November 5, 2021. PLAINTIFF and her mother passed the rental background check with flying colors, including the over 700 credit score requirement. The year lease started on November 7, 2021 and ended November 30, 2022. There were issues almost immediately upon moving into the unit. PLAINTIFF was not given a key that worked in the door. PLAINTIFF informed Ms. Van Hine of this issue. Ms. Van Hine's daughter brought over a key that did not work either. It must be noted that PLAINTIFF nor PLAINTIFF's mother has ever met, seen nor spoke to in person anyone from BDJ Realty until the date of this complaint. On November 21, 2021 PLAINTIFF informed Laura Van Hine that the neighbors in Unit B were playing extremely loud music after the quiet hours of 10pm. Despite Laura stating that, "The HOA has been notified of the noise complaint," this loud noise continued throughout the lease term. On November 26, 2021 PLAINTIFF wrote the HOA about the tenants living in 5817 Smoke Ranch Unit B who were lurking around PLAINTIFF'S door and steps. PLAINTIFF attached video evidence to the email and stated, " I [PLAINTIFF] will have visitors and don't want them having to go through a strange man loitering around my door." This email dated 11/26/2021 was the first time PLAINTIFF mentioned the harassment from Laura Martinez who lives at 5821 Smoke Ranch Unit D Las Vegas NV 89108. In this email to the HOA PLAINTIFF states, "I also have footage of the kids from 5821 Unit D in front of my home. I don't have kids and believe their parents should keep watch of them. I have not been in this neighborhood long but seeing the

strange man loitering around my door should alarm any parent, especially parents of young girls under 10 years old." Right away Laura Martinez allowed her three children to play unsupervised all up and around PLAINTIFF'S front porch and yard. The response from the HOA was "We cannot take any kind of action needed for the property from a tenant." There was no concern expressed by the HOA. On December 12, 2021 Plaintiff informed BDJ Realty that Laura Martinez harassed her. In this email PLAINTIFF stated, "this evening i was harassed from the people from number D. She tried to stand in front of me to ask me about some items. She went to the neighbors across the way. I did not say anything to her and ignored her. She yelled at me for no reason. I am new to this neighborhood and am not sure what kind of neighbors I have but so far it has been a little scary. Please address this. She had her video tape and saw me basically ignore her as she yelled at me. The lady from the next building came over and they both talked loud. The lady from D had her children on my side as well again unsupervised. I have video attached to back up what I am reporting. I don't' want any trouble! Please help. I also have attached a copy of the animal control who was called out here for her mom's dogs off leash." Laura Martinez had two dogs unleashed and allowed both to urinate and defecate right in front of PLAINTIFF'S house. Animal Control came to the residence and Laure got a ticket. The pattern of dogs being off leash is a continuation of what Steven and Alana Saults did in Sparks Nevada in 2020. This pattern is proof of Sparks law enforcement involving themselves in PLAINTIFF's affairs in Las Vegas. PLAINTIFF was clearly upset and scared because she emphasized to BDJ Realty and the HOA that, "I [PLAINTIFF] don't' want any trouble! Please help." Bo Jones's response to PLAINTIFF'S concerns was ," You are living in a privately owned townhome/condo community and space is tight." The disparate treatment between PLAINTIFF and Laura Martinez was becoming apparent right away. PLAINTIFF responded, " What ever that tenant

was yelling and harassing me about I have no idea. But her children were unsupervised and playing on my side of the property. You clearly saw it was not in the common area. I want to make sure I am keeping a written documentation for future reference. I appreciate you and the HOA taking my complaints seriously and addressing them ASAP! I appreciate it Bo. That's why I made sure to include the leash law they violated with the City of Las Vegas!" BDJ Realty did not care about the PLAINTIFF or that Laura Martinez broke the law by allowing her two dogs to be off leash and urinate and defecate in PLAINTIFF'S front yard. PLAINTIFF became aware that the owner's of Laura Martinez's unit and the owners of PLAINTIFF'S unit were the same. Therefore, the PLAINTIFF was benign racially discriminated against by BDJ Realty. In January 2022 PLAINTIFF had video tape proof that workers from Chip N Dales landscaping were vandalizing and creating property damage intentionally at PLAINTIFF's house. PLAINTIFF informed the HOA and BDJ Realty. On 1/31/22 PLAINTIFF was informed by Michelle Howard, Projects Manager for Kallfelz Team Association Mgt. LLC, that their company is no longer the HOA for Ashford Park. This was the first time PLAINTIFF was informed of this information, which is in violation of PLAINTIFF'S lease. PLAINTIFF was to be informed of any changes to the HOA or the HOA rules according to the lease signed on 11/7/21.

Another of PLAINTIFF'S neighbors, named Michael Silva, spent his time harassing PLAINTIFF along with Laura Martinez. On information and belief this neighbor harassment was at the behest of the LAS VEGAS METROPOLITAN POLICE DEPARTMENT (LVMPD). On February 7 and 8, 2022 Michael Silva called the LVMPD to PLAINTIFF'S house on false calls.

Michael Silva is guilty of violating H.R.6003 — 115th Congress Anti-Swatting Act of 2018, which states "bill amends the Communications Act of 1934 to provide for enhanced penalties for the transmission of misleading or inaccurate caller identification information with the intent to trigger an emergency response by: (1) a law enforcement agency of the United States, a state, or a political subdivision of a state…" and NRS 207.161 TO 207.167 – EMERGENCY COMMUNICATIONS INTERFERENCE. Michael should be held accountable for making two false 911 swatting call on February 7, 2022 and February 8, 2022.

In the video evidence PLAINTIFF has, the LVMPD officer's pound, loudly knock, use their batons on PLAINTIFF'S windows and yell at the top of their lungs for the PLAINTIFF. MS. WARREN had committed no crime on either day and she had no idea why the LVMPD were at her door. After contacting the Las Vegas records office, PLAINTIFF found out that Michael Silva called both times stating that he was harassed by hearing the PLAINTIFF whistle, laugh and sing near her home and he did not like that. LVMPD acted like the PLAINTIFF killed someone on a false call from a racist neighbor because she laughed, sang and whistled near her home. On 2/8/22 Bo Jones emailed PLAINTIFF'S mother stating, "Dear Nancy, I need to speak to you ASAP about Allanna." PLAINTIFF emailed Bo to discuss why Bo was contacting PLAINTIFF'S mother about the PLAINTFF who is a grown woman. Bo wanted to discuss the LVMPD coming to PLAINTIFF'S house two days in a row. PLAINTIFF then emailed Ms. Jones and asked how she knew about LVMPD coming to PLAINTIFF's house two days in a row. Instead of answering specifically, Bo Jones starts with hearsay. She writes, "We have received reports from several of your neighbors that you are not acting normal." Bo Jones even says that the neighbors were complaining about PLAINTIFF whistling & giggling'. PLAINITFF asked Ms. Jones where in the Las Vegas Penal code does it say whistling and singing or giggling is against the law. Is whistling, giggling or singing a felony or misdemeanor? Once again, the

desperate treatment is evident. Instead of Bo Jones addressing PLAINTIFF's complaints, she starts with hearsay, inuendo and feelings from unknown neighbors. This is the same pattern that happened with Steven and Alana Saults before the false arrest in 2020 to which Sparks PD and Washoe county jail are being sued for right now. PLAINTIFF asked Ms. Jones what neighbors were complaining and why PLAINTIFF was just informing of any complaints? On information and belief, the LVMPD prompted Bo Jones to send this email. Bo Jones continued to lodge false allegations at PLAINTIFF, however PLAINTIFF had never heard the allegations before. When PLAINTIFF asked for specifics she was ignored. Then Bo Jones brings up the PLAINTIFF'S cat. PLAINTIFF informed Bo Jones that Laura Van Hine knew about the cat before PLAINTIFF moved in and she approved the cat. Bo Jones lies and says Laura doesn't recall the conversation and PLAINTIFF owes an extra deposit for the cat. PLAINTIFF, wanting to stay at the residence, complied and gave BDJ Realty an additional $250.00. Bo Jones had a very hateful, visceral tone in her emails to PLAINTIFF, to which PLAINTIFF asked what the meaning was. PLAINTIFF was ignored by Bo Jones.

On April 15, 2022 PLAINTIFF got her former attorney, Robert Melcic, involved in the Landlord/tenant matter. PLAINTIFF sent Robert Melcic's girlfriend and law Clerk Gigi Genereaux an email on 4/18/22 stating, "Would you please get the name if the large Mexican woman in unit d. She and her boyfriend are stalking me. For the past week they have had people watch, follow and stalk me on my way to and from work. Tonight, and its on video, her, her boyfriend (who is about 700 pounds) and a friend who drove a white 4 door car, were waiting for me as I came home after work at almost midnight. Someone told them i was driving up because on camera they came outside at the same time. They were talking loud and laughing speaking Spanish. I would greatly appreciate it. Now she is attempting to try to intimate us."

Laura Martinez and Michael Silva were pawns in law enforcement's quest to get some sort of evidence against PLAINTIFF.

BDJ Realty had faulty appliances installed inside PLAINTIFF'S unit. On 4/19/22 PLAINTIFF'S refrigerator stopped working. PLAINTIFF informed BDJ Realty on the same date in a maintenance request. The refrigerator had to be worked on twice during PLAINTIFF'S tenancy. Once it was "fixed" by a maintenance worker who said that Bo Jones will never really fix the problems but merely 'tape' over the problem. This statement was true because after the initial "fixing' of the fridge, it went completely out before the lease was over. PLAINTIFF had to acquire her own refrigerator and fridge at her own expense. BDJ Realty also turned PLAINTIFF'S water off without warning. PLAINTIFF had to call the emergency line of the Clark County Code Enforcement to report the water being shut off illegally. During this time PLAINTIFF had a full time job she was trying to keep at Hilton Grand Vacations. With all the harassment, stalking, maintenance issues, false police calls and discrimination from BDJ Realty and neighbors, PLAINTIFF had to take extra time off work to solve all these issues. Krys Wainwright, PLAINTIFF'S supervisor at Hilton Grand Vacations, would have to either let PLAINTIFF come to work late or leave early to take care of "home business." PLAINTIFF has an elderly mother who would get frightened about the constant harassment. Because of the constant stalking, everyone knew when PLAINTIFF left home for work. So, the harassment would start as soon as PLAINTIFF was out of sight of the residence at 5821 Smoke Ranch Road.

At the same time of the unit falling apart, Bo Jones started posting evictions notices, every two weeks, on PLAINTIFF door. The notices were not about nonpayment of rent but for being a nuisance. It must be noted that despite what BDJ Realty put PLAINTIFF though, PLAINTIFF paid her rent every month on time if not early and met the contract. The pattern

was that two weeks after BDJ accepted the rent, then an eviction notice was posted. Finally on, May 5, 2022 Gigi wrote BDJ Realty discussing the eviction notices and the creative accounting BDJ realty used to accuse PLAINTIFF of owing ‘legal notice fees.” It also came to light, via Robert Melcic, that Bo Jones, BDJ Realty nor the HOA have a valid business license in the state of Nevada. After dealing with Bo Jones for the short time that they had, the Law Firm of Robert Melcic concluded that, “We do not at all dispute that Bo Jones is a liar and a bad person. She has shown us multiple times in phone calls that she is both stupid and inconsistent. But it is often the dumbest people who are the most dangerous.” Every time BDJ Realty posted an eviction notice, PLAINTIFF and her former attorney noticed that BDJ Realty never really filed anything in court and each notice wasn’t conformed. This is harassment per PLAINTIFF’s former attorney because Bo Jones’ method is malicious and intentional. The next phase of the harassment was the HOA violations. On 5/15/22 BDJ Realty informed PLAINTIFF that she was in violation for a BBQ grill being outside her residence. This BBQ grill had been sitting outside PLAINTIFF’s residence since December 2021 after UHAUL returned PLAINTIFF’s belongings after being illegally confiscated by LVMPD. So, PLAINTIFF knew the HOA violation was further retaliation, discrimination and harassment. The similarities of the fraudulent violations are the same from Reno. At PLAINTIFF’S Reno apartment, her BBQ grill was being attempted to be used as a lease violation at Aspen Ridge apartments. These patterns can’t be ignored as they link police involvement from Northern Nevada to law enforcement in Southern Nevada. PLAINTIFF received numerous HOA violations and always provided picture evidence of other resident’s violating the exact thing and nothing was said or done to them. PLAINTIFF submitted a Nevada Equal Rights Commission (NERC) complaint against BDJ Realty in October 2022. PLAINTFF had charges drawn up and served upon Bo Jones and BDJ Realty. At first

NERC informed PLAINTIFF that Bo Jones wanted to settle the charges brought against her, then PLAINTIFF was informed that NERC can cannot pursue their investigation because PLAINTIFF is suing BDJ Realty.

PLAINTIFF and her mother moved out of the unit on 11/30/2022. PLAINTIFF cleaned the entire unit and took pictures and video of the unit after cleaning the unit. PLAINTIFF left the keys on the kitchen counter of the unit before leaving. As PLAINTIFF moved out of the unit Laura Martinez's mother came out of Unit D and called the PLAINTIFF a Mayete which is Spanish for Nigger. On 11/27/22 MS. WARREN requested the return of her entire security deposits from BDJ Realty. To this date PLAINTIFF has not received any security deposits back from BDJ Realty.

PLAINTIFF has preexisting conditions that stress and anxiety exacerbate. After the harassment, mental anguish and racial discrimination BDJ Realty subjected PLAINTIFF to she had to see a doctor. Since PLAINTIFF moved to Las Vegas she has had issues trying to find suitable medical treatment because of the constant police involvement in MS. WARREN's civil matters. PLAINTIFF's first appointment with Hilton Grand Vacations located at 5701 W Charleston Blvd, Unit 100, Las Vegas, NV 89146 was on November 18, 2022. At this appointment MS. WARREN saw Physician's assistant Jesse Connors. In this appointment PLAINTIFF explained that law enforcement chased her and her mother out of Northern Nevada and that LAS VEGAS METROPOLITAN POLICE DEPARTMENT has picked up the harassment where Northern Nevada Law enforcement left off. PLAINTIFF explained that she has a history of depression, anxiety, asthma and other ailments that stress exacerbated. PLAINTFF asked Mr. Connors to obtain copies of her medical records from her medical facility in Reno Nevada. It was revealed later that Mr. Connors never sought to obtain copies of

PLAINTIFF's medical records from her previous medical facility in Reno as she asked on 11/18/22. MS. WARREN asked Mr. Connors for a referral for mental health as law enforcement's constant interference was affecting her negatively. Mr. Connors said that he would obtain medical records from PLAINITFF'S previous medical facility and would get her a mental health referral. Mr. Connors suggested that PLAINTIFF get an EKG, get a chest x ray and he would set up an appointment for a Pulmonary Function Test (PFT). Without an evaluation or ever treating PLAINTIFF, Mr. Connors prescribed MS. WARREN 10mg tablets of Escitalopram with two refills. Escitalopram is part of a Bi-Polar treatment. However, PLAINTIFF had not been diagnosed with bi-polar disorder by anyone. A major warning for this medication is that one should seek medical attention right away if you have symptoms of serotonin syndrome, such as: agitation, hallucinations, fever, sweating, shivering, fast heart rate, muscle stiffness, twitching, loss of coordination, nausea, vomiting, or diarrhea. MS. WARREN had never been on this medication and was not informed of any side effects of the medication before taking it per Mr. Connors instructions. MS. WARREN was not on any mental medication before encountering the treatment from BDJ Realty, Laura Martinez, Michael Sliva, Hilton Grand Vacations, Dollar Tree, Cano Health, T-mobile, Southwest Airlines, Hilton, Apple One, Anthem Blue Cross and Blue Shiels, VIP Auto Services nor Walmart.

Mr. Connors told PLAINTIFF that the scheduling department would be contacting her shortly after her 11/18/22 visit. Immediately after the appointment with Mr. Connors, his medical assistant, Juliana Ramirez, took MS. WARREN to get her EKG test. While in the room Juliana instructed PLAINTIFF to undress above the waist, including removing her bra and shirt. PLAINTIFF complied with the instructions. The EKG was performed by Ms. Ramirez. After the testing, Juliana instructed PLAINTIFF to keep her bra off but put on her shirt because she

was going to get her chest Xray. PLAINTIFF complied with these instructions as well. Juliana led MS. WARREN to a chair outside a small room. A Hispanic male came out of the small room and asked PLAINTIFF her name. MS WARREN told the male her name and he led her inside the room. After the chest x ray, the male instructed PLAINTIFF to "get dressed" in the same room. The male could see the PLAINTIFF clearly and she inquired about the visibility of dressing in front of the male. The male told MS. WARREN that everyone gets dressed in the room with him in the room. Outside the small room, PLAINTIFF saw a bathroom right next to the room and wondered why the male would not have instructed her to change inside the bathroom right next door.

MS. WARREN's mother is over 70 years old so having a medical provider in close proximity is paramount to her health. PLAINTIFF, despite her apprehensions, recommended Hilton Grand Vacationsto her mother. On 11/29/2022 PLAINTIFF's mother went to an appointment with Mr. Connors at the Hilton Grand Vacationslocated at 5701 W Charleston Blvd, Unit 100, Las Vegas, NV 89146. Mr. Connors told PLAINTIFF's mother that he would be getting her medical records from her medical facility in Carson City just like he told the PLAINTIFF. PLAINTIFF's mother is not sure if Mr. Connors actually sought to obtain those records. Mr. Connors also advised MS. WARREN's mother to get a PFT, get a chest x ray and be seen by a Ear Nose and Throat (ENT) specialist. Immediately after the appointment, PLAINTIFF went to the waiting room and PLAINTIFF's mother went to get her chest x ray. Upon exiting Hilton Grand Vacations PLAINTIFF's mother told her that she experienced the same "undressing" incident that PLAINTIFF had with the male who conducts the x rays. PLAINTIFF could see her mother was uncomfortable and this bothered her immensely.

It has to be noted that before the 11/29/22 appointment at Cano Health, which was scheduled at 10:30 am, PLAINTIFF and her mother were stalked and followed by LAS VEGAS METROPOLITAN POLICE DEPARTMENT officers. They were pulled over by a black male officer who was the driver of the police SUV and had a white female officer in the passenger seat. PLAINTIFF knows they were being stalked and followed because PLAINTIFF and her mother had just moved into a new place, less than a week before being pulled over by LAS VEGAS METROPOLITAN POLICE DEPARTMENT, and no one had their new address. There would have been no way LAS VEGAS METROPOLITAN POLICE DEPARTMENT had their new address, without illegally stalking, following and monitoring the PLAINTIFF and her mother as their new place is in another city/jurisdiction and far away from their previous home where LAS VEGAS METROPOLITAN POLICE DEPARTMENT were falsely called multiple times by PLAINTIFF’S neighbors. In the previously mentioned police misconduct cases involving LAS VEGAS METROPOLITAN POLICE DEPARTMENT, neighbors Laura Martinez and Michael Silva are named, with video evidence, as being the culprits who were prompted by LAS VEGAS METROPOLITAN POLICE DEPARTMENT to call them so PLAINTIFF could be falsely arrested again or evicted.

PLAINTIFF’s mother, had her PFT scheduled for 12/8/22. While in the waiting room the PFT specialist, his name is Uday, approached MS. WARREN’s mother and told her that he does not have the mouth pieces, which are mandatory to conduct the test, and he has no idea when he would get them and that she needs to reschedule her PFT somewhere else as he was going out of town on a vacation for two months. There was no forewarning or a courtesy call to inform PLAINTIFF’S mother of this issue.

PLAINTIFF's mother had her Ear Nose and Throat (ENT) appointment on 12/12/22 with Dr. Kim of the UNLV medical center located at 5320 S. Rainbow, Suite 250 Las Vegas, NV. While in her appointment PLAINTIFF and her mother complained to Dr. Kim about their treatment by Cano Health. They both explained what happened with "undressing" in front of a male x ray tech, Uday having no equipment to conduct PFTs for patients with breathing issues, and just the entire medical negligence of Cano Health. Dr. Kim thanked both ladies for their honesty and informed them that he would take their concerns seriously and inform the proper authorities. Dr. Kim told PLAINTIFF and her mother that he did not want to send any of his patient's to this medical facility after hearing their horror stories. PLAINTIFF and her mother noticed a LAS VEGAS METROPOLITAN POLICE DEPARTMENT SUV parked outside the medical facility during the mother's appointment. They made a comment to Dr. Kim and noticed that the LAS VEGAS METROPOLITAN POLICE DEPARTMENT SUV did not leave until right before the appointment was over. Again, this proves the constant stalking, following, surveilling, monitoring etc. by law enforcement illegally.

During the month of November and December PLAINTIFF heard from the Hilton Grand Vacations scheduling department. They informed MS. WARREN that Axis psychiatry would be scheduling her an appointment. MS. WARREN heard from Axis and they scheduled her for an appointment on 12/26/22. Later in December when PLAINTIFF called Axis to confirm the appointment the receptionist told PLAINTIFF that their building was closed due to the observance of Christmas on 12/26/22. When PLAINTIFF inquired as to why she was scheduled for an appointment on a day they knew they were closed PLAINTIFF received no response. Then PLAINTIFF was informed that Axis would not have an appointment open for several months.

On 12/18/22 PLAINTIFF had a follow up appointment with Mr. Connors. PLAINTIFF informed Mr. Connors that Axis psychiatry scheduled her on a day they were closed and she wanted another referral. At the 12/18/22 appointment PLAINTIFF's blood pressure was extremely high as she had been chased around the Hilton Grand Vacationsparking lot by strangers and had several LAS VEGAS METROPOLITAN POLICE DEPARTMENT squad cars tailing her from her new home to the appointment. PLAINTIFF was scared and her blood pressure exhibited this. Mr. Connors had PLAINTIFF's blood pressure checked several times and it was elevated the entire time. Having law enforcement involving themselves in every aspect of PLAINTIFF's life was affecting her health.

PLAINTIFF waited to hear from Cano Health's scheduling department to schedule another psych appointment. PLAINTIFF ended up calling Hilton Grand Vacationsas she did not hear from the scheduling department as expected. PLAINTIFF was informed that she would have to call around Las Vegas for a psych doctor as their scheduling department would not help her. PLAINTIFF informed the scheduling department that it is their job to find a doctor for the PLAINTIFF. PLAINTIFF was told that "normally" their department does call around and find doctors for patients but in PLAINTIFF's case they would not help her.

Because law enforcement went to PLAINFIFF's job at Hilton Grand Vacations (HILTON GRAND VACATIONS) and slandered her there, she was on an ongoing ADA medical leave of absence since 11/15/22. She was trying to get Short Term Disability from Lincoln Financial Group (LFG). While trying to get all the medical paperwork for LFG to make a decision, MS. WARREN was run around by Mr. Connors office and LFG. A decision on PLAINTIFF'S case was intentionally delayed from both sides. After all the stress of PLAINTIFF'S job, her mother's health, trying to get mental help, no income from any source,

law enforcement constantly bothering her, and no one helping the PLAINTIFF, all this stress was taking a toll on her health.

One of the reasons LFG denied PLAINTIFF's short term disability was because their nurse stated that PLAINTIFF was not seen from a licensed doctor or psychiatric doctor to correctly diagnose the PLAINTIFF, no evaluation was performed before giving PLAINTIFF Escitalopram and no follow up was performed by Hilton Grand Vacations Ito see if the medication was correct and helped the PLAINTIFF. Mr. Connors did not have the medical license to prescribe the PLAINTIFF any psych medication, especially with a medication like Escitalopram.

During December and January 2023 PLAINTIFF never saw Mr. Connors again until January 31, 2023. PLAINTIFF was scheduled for a Zoom appointment. During this appointment, Mr. Connors was clearly upset, and his facial expressions and treatment of PLAINTIFF exhibited this disdain. Mr. Connors stated on a recorded Zoom call that PLAINTIFF needs a doctor and Cano Health doesn't have a doctor therefore Cano Health can not see or treat the PLAINTIFF anymore.

## II.

## JURISDICTION AND VENUE

1. "A court of this state may exercise jurisdiction over a party to a civil action on any basis not inconsistent with the Constitution of this state or the Constitution of the United States." NRS 14.065.
2. Jurisdiction in this Court is proper because this is a complaint seeking monetary relief in excess of $10,000, the PLAINTIFF is a resident citizen of Nevada, and the DEFENDANTS BDJ Realty are a private for profit company operating in Las Vegas, Nevada.
3. Venue is proper in the Eighth Judicial District Court of Clark County because:

a. Under NRS 13.020, "Actions for the following causes must be tried in the county where the cause, or some part thereof, arose, subject to the power of the court to change the place of trial." All of the events giving rise to this claim have occurred within Clark County;

b. The PLAINTIFF currently resides in Las Vegas, Nevada, where the events or omissions giving rise to the claims of this case occurred.

## III.

## PARTIES

4. At all times relevant to this action, PLAINTIFF was a resident of the State of Nevada, County of Clark.

5. DEFENDANT BDJ REALTY is a private business situated in Clark County, Nevada.

## IV.

## GENERAL ALLEGATIONS COMMON TO ALL CLAIMS

6. PLAINTIFF is a forty-five year old African-American woman.

7. PLAINTIFF suffers from pre-existing alopecia, depression, and anxiety; as a result of her ordeal at the hands of BDJ REALTY, SPARKS POLICE DEPARTMENT and LAS VEGAS METROPOLITAN POLICE DEPARTMENT, she now also suffers from hidradenitis suppurativa, PTSD, and paranoia.

8. PLAINTIFF has been a resident of the state of Nevada throughout the entirety of this ordeal.

9. In July 2021, PLAINTIFF and her elderly mother moved to Las Vegas from Reno due to her fear of retribution by SPARKS POLICE DEPARTMENT.

10. Since her move, PLAINTIFF has been subject to ongoing surveillance and interference in Las Vegas by LAS VEGAS METROPOLITAN POLICE DEPARTMENT, detailed infra.

11. PLAINTIFF has had additional problems happen to her as a result of interference by, on information and belief, the LAS VEGAS METROPOLITAN POLICE DEPARTMENT; these include but are not limited to:

a. Possible involvement in PLAINTIFF'S booking photo being released to her new employer in Las Vegas;

b. Known interference with PLAINTIFF'S and her mother's property as it was being transported by U-Haul from Northern to Southern Nevada, who admitted to PLAINTIFF on the telephone their employees' collusion with both SPARKS POLICE DEPARTMENT and the LAS VEGAS METROPOLITAN POLICE DEPARTMENT when transporting and temporarily losing the property;

c. Unwarranted surveillance at PLAINTIFF'S new Airbnb upon first moving to Las Vegas;

d. Being followed by both uniformed and plain clothes LAS VEGAS METROPOLITAN POLICE DEPARTMENT officers when PLAINTIFF leaves her apartment building by car, Uber, Lyft, Taxi or rental car;

e. Being told by her internet service provider T-Mobile that the POLICE paid for her internet connection;

f. Being harassed at home, including by having LAS VEGAS METROPOLITAN POLICE DEPARTMENT bang on her door, allegedly at the behest of a neighbor, and wait around her apartment at night;

g. Being accused by the property managers at her building of violating community standards using videos skimmed from PLAINTIFF'S own surveillance cameras operating on

PLAINTIFF'S own WiFi connection (the WiFi that T-Mobile has admitted the POLICE compensate).

h. On information and belief, Law enforcement contacted Bo Jones, Laura Van Hine and BDJ REALTY.

**—STATE CLAIMS—**

**V.**

**FIRST CLAIM FOR RELIEF**
***Unlawful Injury or Loss Suffered by a Vulnerable Person, NRS § 41.1395***

12. PLAINTIFF incorporates by reference all other allegations in this Complaint, as though fully set forth herein.
13. PLAINTIFF is a vulnerable person as defined by NRS § 41.1395 4(e)(1-2) in that she has a physical health impairment—alopecia—and psychological health impairments—depression and anxiety—that limit one or more of her major life activities, and she has medical records of these impairments.
14. Because of her ordeal, PLAINTIFF now also suffers from a very painful skin condition called hidradenitis suppurativa, and from new psychological problems including PTSD and paranoia.
15. DEFENDANT BDJ REALTY was unjustified when they inflicted injury, pain, and anguish on PLAINTIFF with their negligence and failure to provide fair and appropriate treatment to her as an employee.
16. DEFENDANT has additionally exploited the medical vulnerability of a vulnerable Nevadan, in contravention of state law.
17. DEFENDANT BDJ REALTY working in tandem with law enforcement agencies are severely exacerbating PLAINTIFF'S pre-existing disabilities, in contravention of state law.
18. Accordingly, PLAINTIFF is entitled to recover all available damages, including—but not limited to—lost wages, pain and suffering, emotional distress and punitive damages, if available, as allowed by law, in an amount to be determined at trial.
19. In this particular Claim for Relief, PLAINTIFF is entitled to recover two times her damages, as allowed under NRS § 41.1395(1), in an amount to be determined at trial.

**VI.**

**SECOND CLAIM FOR RELIEF**

***Negligence and Gross Negligence***

20. PLAINTIFF incorporates by reference all other allegations in this Complaint, as though fully set forth herein.
21. DEFENDANT BDJ REALTY owes a legal duty and responsibility to PLAINTIFF.

22. DEFENDANT BDJ REALTY owed a duty of care to PLAINTIFF. Landlords are responsible for providing a safe, clean and healthy living environment for their tenants. Landlords have a responsibility to follow local building codes and state laws that lay out standards for the construction, maintenance and living standards of rental units.
23. DEFENDANT BDJ REALTY had a responsibility not to discriminate against PLAINTIFF in violation of the Americans with Disabilities Act (ADA) Amendments Act of 2008 and The Fair Housing Act, 42 U.S.C. 3601 et seq., prohibits discrimination by direct providers of housing, such as landlords and real estate companies as well as other entities, such as municipalities, banks or other lending institutions and homeowners insurance companies whose discriminatory practices make housing unavailable to persons because of race or color, religion, sex, national origin, familial status, or disability. BDJ REALTY is in violation of all of the listed responsibilities.
24. DEFENDANT'S breach of said duty and responsibilities to PLAINTIFF constituted Negligence, Negligent Hiring and Entrustment.
25. DEFENDANT breached its duty by failing to exercise the degree of care that was owed to PLAINTIFF.
26. When engaging in their culpable conduct described herein, the DEFENDANT was not only negligent, but they were grossly negligent in that they failed to exercise even the slightest amount of care, with a conscious disregard of the rights or safety of the PLAINTIFF.
27. When engaging in their culpable conduct described herein, the DEFENDANT was grossly negligent because they acted with willful, wanton, and/or reckless disregard for the safety of PLAINTIFF.
28. DEFENDANTS exhibited a conscious disregard for PLAINTIFF'S patience's' bill of rights, constitutional rights and safety when they knew the probable harmful consequences of their wrongful acts. Not providing PLAINTIFF proper care had harmful consequences including physical and mental injury to her, which DEFENDANTS recklessly, willfully, and/or deliberately failed to act to avoid.
29. Accordingly, PLAINTIFF is entitled to recover all available damages, including—but not limited to— lost wages, pain and suffering, emotional distress and punitive damages, if available, as allowed by law, in an amount to be determined at trial.

## VII.

## THIRD CLAIM FOR RELIEF

***Intentional Infliction of Emotional Distress***

30. PLAINTIFF incorporates by reference all other allegations in this Complaint, as though fully set forth herein.
31. DEFENDANT BDJ REALTY acted to intentionally to ignore PLAINITFF'S request for safety against Michael Silva, Laura Martinez, neighbors, neighbor's guests, vendors, maintenance workers, landscapers and strangers on the grounds.
32. DEFENDANT BDJ REALTY continued to act intentionally to have law enforcement get involved in PLAINTIFF'S lease when PLAINTIFF passed a background check and had no criminal history. When neighbors, who remained anonymous, complained against PLAINTIFF

BDJ REALTY acted on hearsay without any evidence. However, when PLAINTIFF complained and included evidence, BDJ REALTY ignored PLAINITFF and never acted on her behalf.

33. After months of showing evidence of Laura Martinez and/or her boyfriend harassing, stalking, following, falsely calling LVMPD on PLAINTIFF and letting her three children vandalize plaintiff's porch/yard unsupervised, BDJ REALTY provided PLAINTIFF's former attorney a fake videotape skimmed from PLAINTIFF'S own wifi server to try to accuse PLAINTIFF of "stalking" Laura Martinez. When PLAINTIFF asked Gigi to provide the date and time of the "faked video" so PLAINTIFF can pull the footage up on her camera, nothing more was said

34. MS. WARREN still has not been able to get a regular doctor in the Las Vegas area since negligently being thrown out by Mr. Connors and Cano Health.

35. Now, PLAINTIFF faces ongoing harassment and surveillance by LAS VEGAS METROPOLITAN POLICE DEPARTMENT even though she has committed no crime in either Clark or Washoe Counties. In order to help LAS VEGAS METROPOLITAN POLICE DEPARTMENT in their ongoing litigation, BDJ REALTY negligently involved themselves in PLAINTIFF'S police misconduct cases.

36. As a result of the actions of the DEFENDANT, the PLAINTIFF has suffered severe emotional distress and physical harm.

37. The intentional behavior of DEFENDANT is the direct and proximate cause of PLAINTIFF'S deteriorated health and ongoing mental anguish.

38. Accordingly, PLAINTIFF is entitled to recover all available damages, including—but not limited to— lost wages, pain and suffering, emotional distress and punitive damages, if available, as allowed by law, in an amount to be determined at trial.

## VIII.

## FOURTH CLAIM FOR RELIEF

### *Civil Conspiracy*

39. PLAINTIFF incorporates by reference all other allegations in this Complaint, as though fully set forth herein.

40. In Nevada, "[a]n actionable civil conspiracy is a combination of two or more persons who, by some concerted action, intend to accomplish some unlawful objective for the purpose of harming another which results in damage." Collins v. Union Fed. Savings Loan, 99 Nev. 284, 303 (Nev. 1983).

41. PLAINTIFF has been harassed by LAS VEGAS METROPOLITAN POLICE DEPARTMENT since moving to Las Vegas.

42. PLAINTIFF has never been convicted of a crime in Las Vegas, so it is a mystery why LAS VEGAS METROPOLITAN POLICE DEPARTMENT would harass her—but for their knowledge that she is disliked by SPARKS POLICE DEPARTMENT.

43. It would be unlawful for LAS VEGAS METROPOLITAN POLICE DEPARTMENT to do the following without a warrant and without probable cause (this list is not exhaustive):

a. Surveil Ms. WARREN at her Airbnb right when she moved to Las Vegas;

b. Place Ms. WARREN under investigation right when she moved to Las Vegas;

c. Participate in frustrating Ms. WARREN's access to her property as it was being transported south by U-Haul;

d. Release Ms. WARREN'S booking photo from Washoe County to her new, Las Vegas employer long after she had been released from jail;

e. Tail Ms. WARREN in her car whenever she is driving in Las Vegas, using a rental car or taking a Lyft or Uber;

f. On information and belief, conspire with the property managers at Ms. WARREN's apartment building to entrap Ms. WARREN in perceived community standard violations using videos "skimmed" from her own surveillance cameras operating on PLAINTIFF'S own WiFi

g. Intercept Ms. WARREN'S telecommunications, including her telephone and internet connection, as by paying for the connection out of a "police account."

h. Stop or interfere with PLAINTIFF and/or PLAINTIFF'S mother from obtaining medical help in either Northern or Southern Nevada. Medical help includes dental, medical, psychiatric, physical rehabilitation, psychology and any other "medical" help they may need.

44. If LAS VEGAS METROPOLITAN POLICE DEPARTMENT has a cognizable warrant or probable cause against Ms. WARREN for an alleged violation of the law in Clark County, PLAINTIFF asks to see that document.

45. Barring this, her treatment by LAS VEGAS METROPOLITAN POLICE DEPARTMENT is harassment meant to frighten and belittle her.

46. To the extent that LAS VEGAS METROPOLITAN POLICE DEPARTMENT illegally undertakes such treatment of Ms. WARREN at the behest of or for the benefit of SPARKS POLICE DEPARTMENT in Washoe County, the two police departments are engaged in a civil conspiracy with one another against Ms. WARREN.

47. The "primary purpose" of such partnership is not protection of the community, but rather, "to cause injury" to Ms. WARREN, who is alone but for taking care of her elderly mother. Ungaro v. Desert Palace, Inc., 732 F. Supp. 1522, 1533 n.3 (D. Nev. 1989).

48. And such civil conspiracy, based in intentional tort, is illegal in this state.

49. Accordingly, PLAINTIFF is entitled to recover all available damages, including—but not limited to— lost wages, pain and suffering, emotional distress and punitive damages, if available, as allowed by law, in an amount to be determined at trial.

***—FEDERAL CLAIMS—***

**IX.**

## FIFTH CLAIM FOR RELIEF

***Unlawful Discrimination, Harassment, and Retaliation Based on Disability***
**Americans with Disabilities Act and Amendments Act, 42 U.S.C. § 12131 *et seq*. and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794**

50. PLAINTIFF incorporates by reference all other allegations in this *Complaint*, as though fully set forth herein.

51. Under the ADA's anti-discrimination provision, codified at 42 U.S.C. § 12132, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in

or be denied the benefits of services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."

52. PLAINTIFF is a qualified individual with a disability as codified at 42 U.S.C. § 12132 because she meets the "essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity."

53. Not only does PLAINTIFF suffer from the physical disability of alopecia, she suffers from mental health conditions that have been exacerbated as the direct and proximate result of her treatment by DEFENDANTS BDJ REALTY.

54. DEFENDANT BDJ REALTY, through their officers, directors, managers, supervisors, agents, and/or employees discriminated against PLAINTIFF on the basis of her disabilities by not providing a safe environment where PLAINTIFF was told she needs a psychiatrist by Laura Martinez or that she is "insane" by Michael Silva. PLAINTIF is owed a duty by the landlord to provide a safe environment to live which is free of racial epithets, making fun of PLAINTIFF'S mental conditions and/or making fun of her physical ailments.

55. As a result of this intentional discrimination by DEFENDANT BDJ REALTY, in violation of Title II, PLAINTIFF was excluded from equal access to programs and services meant to ameliorate her disability.

56. PLAINTIFF continues to be profiled by LAS VEGAS METROPOLITAN POLICE DEPARTMENT in that she is surveilled, followed, harassed, and has had her telecommunications intercepted, as pled elsewhere in this pleading. All of these actions by HILTON GRAND VACATIONS prey upon PLAINTIFF as a disabled American, a member of a protected class, at the same time that these actions also exacerbate and make worse PLAINTIFF'S disabilities.

59. PLAINTIFF seeks a permanent injunction requiring BDJ REALTY to comply with the ADA in the future by ensuring that qualified individuals are not discriminated against on the basis of their disabilities.

60. PLAINTIFF seeks a declaration that DEFENDANTS BDJ REALTY violated her rights under the ADA.

61. As a direct and proximate result of DEFENDANTS' intentional discrimination against her, PLAINTIFF sustained damages entitling her to equitable relief, as allowed by law, according to proof at trial.

62. Accordingly, PLAINTIFF is entitled to recover all available damages, including—but not limited to—punitive damages, if available, as allowed by law, in an amount to be determined at trial.

## —REMEDIES COMMON TO ALL CLAIMS—

## XII.

### ***Declaratory Relief***

50. PLAINTIFF incorporates by reference all other allegations in this Complaint, as though fully set forth herein.

51. Pursuant to NRS 30.030, NRS 30.100, NRS 651.090(2)(a), and the Court's inherent equitable powers, PLAINTIFF seeks, and is entitled to have, declaratory relief awarded in her favor, to declare her rights and obligations of the DEFENDANT sued herein, where such declaratory relief is necessary and proper to the termination of the disputes raised herein, including as specifically prayed for below.

52. This includes declaratory relief whereby the Court issues a declaration that DEFENDANT unlawfully discriminated against, harassed, and retaliated against PLAINTIFF and otherwise violated PLAINTIFF'S rights under the law, and any other declaration the Court finds necessary and proper.

## XIII.

## PRAYER FOR RELIEF

WHEREFORE, PLAINTIFF prays for judgment against the DEFENDANT as follows:

1. For general damages in an amount in excess of $250,000.00;
2. For special damages in an amount in excess of $250,000.00;
3. For past and future compensatory damages, and other expenses incurred by reason of DEFENDANTS' intentional misconduct, acts, omissions, carelessness, recklessness, negligence, gross negligence, deliberate indifference, and other culpable conduct, described herein, in an amount in excess of $250,000.00;
4. For punitive and exemplary damages as allowed by law;
5. For costs of the suit incurred herein;
6. For three times the entire security deposit of $1650 totaling $4950.
7. For declaratory relief, in the form of declarations that:

(A) PLAINTIFF'S current medical damages are the direct and proximate result of the conduct of the DEFENDANT.

Dated this 6th day of May, 2023.

*Allanna Warren*

Pro Se Name Allanna Warren

CERTIFICATE OF SERVICE

I hereby certify that I sent the foregoing COMPLAINT JURY TRIAL DEMANDED for electronic filing to the Eight Judicial District Court on the 6th day of May, 2023. I caused the foregoing COMPLAINT JURY TRIAL DEMANDED to be served as follows:

[ ] BY U.S. MAIL: By placing a true and correct copy of the same to be deposited for mailing in the U.S. Mail in Las Vegas, Nevada, enclosed in a sealed envelope upon which First-Class postage was fully prepaid to the following address:

[ ] BY PERSONAL SERVICE: By hand delivery of the document(s) listed above to the person(s) at the following address:

[ X ] BY ELECTRONIC FILING: By EFS service pursuant to Rule 5(b)(2)(E) of the NRCP and Rule 9 of the NEFCR.

[ ] BY ELECTRONIC MAIL: By e-mail, consented to in writing, pursuant to Rule 5(b)(2)(F) of the NRCP at the following e-mail address:

Allanna Warren

PLAINTIFF