Electronically Filed
4/19/2023 2:21 AM
Steven D. Grierson
CLERK OF THE COURT

Allanna Warren
7380 S. Eastern Ave., Suite 124127
Las Vegas, NV 89123
D1A2N3N4@PROTON.ME

CASE NO: A-23-869209-C
Department 9

DISTRICT COURT

CLARK COUNTY, NEVADA

| | |
|---|---|
| ALLANNA WARREN,<br>Plaintiff,<br>vs.<br>CANO HEALTH ET. AL.,<br>Defendant | Case No.:<br>Dept. No.:<br>COMPLAINT JURY TRIAL DEMANDED |

Plaintiff, ALLANNA WARREN, hereby submits her COMPLAINT JURY TRIAL DEMANDED. Plaintiff complains against Cano Health as follows.

**I.**

**STATEMENT OF THE CASE**

This case is linked and related to two police misconduct cases currently in litigation. The first case is against the City of Sparks et. al. and The county of Washoe Jail et. al in the Second Judicial District case number CV2201525. The second case is against Las Vegas Metropolitan Police Departments (LVMPD) in the US District Court with case number 2:23-cv-00065-GMN-DJA. After an unlawful detainment on June 14, 2020 and an unlawful arrest on June 20, 2020 by Sparks Police officers Ginger Miller, Ryan Patterson and Daniel Jones, PLAINTIFF and her elderly mother were harassed, followed, stalked, illegally surveilled, had their communications devices illegally monitored and would go into any business, school, store, retail business, apartment, doctor's offices, townhome, box store like Walmart, 99 Cent Only Stores or Dollar

Tree, private home or any place PLAINTIFF and her mother visited even once and slander, libel and character assassinate them both. Law enforcement would illegally stalk and follow MS. WARREN to continue the harassment, slander, libel and character assassination to landlords, neighbors, employees, co-workers, supervisors, doctor's office staff, doctors, physician assistants etc. in Southern Nevada as well.

The police misconduct problems for Ms. WARREN did not stop in Washoe County or Northern Nevada. In November 2021, during a training course for her new job in Las Vegas, a co-worker teased Ms. WARREN by showing her a copy of her booking photo that had been taken when she was arrested. Ms. WARREN suffers from alopecia. When she was booked by the police in Sparks on June 20, 2020, OFFICER MILLER removed Ms. WARREN'S hat before her booking photo was taken, so Ms. WARREN appears bald in the photo. Somehow, Ms. WARREN's co-worker, Glenn Taylor, got his hand on this photo, and stated that he had actually gotten the photo from their training instructor, Shelia Williams of Anthem Blue Cross and Blue Shield. Thereupon, Ms. WARREN's classmates in the training program teased her with photos of bald people and the instructor harassed her also. The booking photo cannot be found online. Ms. WARREN called the Washoe County Sherriff's Office, who stated to her that such a photo is only a public record when an individual is incarcerated, but that after incarceration is over, the photo is removed from their website. The Washoe County Sherriff's office additionally stated that the only way the picture could be released at this point would be either at Ms. WARREN's own request for it, or, in response to a request from someone inside SPARKS POLICE DEPARTMENT. Therefore, on information and belief, SPARKS POLICE DEPARTMENT impermissibly released Ms. WARREN'S booking photo online or to her then current employer in Las Vegas in an effort to harass, embarrass, stalk, and belittle her. After PLAINTIFF

complained about the arrest photo to her employer, she was placed on administrative leave and ultimately fired by Apple One Temporary agency. It is also possible that LAS VEGAS METROPOLITAN POLICE DEPARTMENT additionally had a hand in the booking photo getting released to Ms. WARREN'S new employer in Las Vegas. Ms. WARREN has been the victim of a wide variety of suspicious behavior at the hands of LAS VEGAS METROPOLITAN POLICE DEPARTMENT since having moved from Reno to Las Vegas in July 2021. , Ms. WARREN regularly finds herself followed by both uniformed and plain clothes LAS VEGAS METROPOLITAN POLICE DEPARTMENT officers when she leaves her apartment building by car, taxi, Uber, Lyft or rental car. She cannot take videos of this behavior when she is alone in her car for fear of being pulled over for using a cell phone while driving. Ms. WARREN'S mother is elderly and disabled and also cannot take videos of this behavior on the rare occasions when she is in the car alongside her daughter. Prior to her ordeal, Ms. WARREN suffered from anxiety, depression, and alopecia. Now, subsequent to her ordeal at the hands of SPARKS POLICE DEPARTMENT and LAS VEGAS METROPOLITAN POLICE DEPARTMENT, PLAINTIFF additionally suffers from PTSD and paranoia. Following her confinement, and likely due to stress and the filthy conditions inside the WASHOE COUNTY JAIL, Ms. WARREN developed hidradenitis suppurativa, a painful skin condition that causes small, painful lumps to form under her skin. Following her jailing, MS. WARREN developed these sores and pustules all over her body, for she sought the help of a dermatologist.

Since PLAINTIFF moved to Las Vegas she has had issues trying to find suitable medical treatment because of the constant police involvement in MS. WARREN's civil matters. PLAINTIFF's first appointment with Cano Health located at 5701 W Charleston Blvd, Unit 100, Las Vegas, NV 89146 was on November 18, 2022. At this appointment MS. WARREN saw

Physician's assistant Jesse Connors. In this appointment PLAINTIFF explained that law enforcement chased her and her mother out of Northern Nevada and that LVMPD has picked up the harassment where Northern Nevada Law enforcement left off. PLAINTIFF explained that she has a history of depression, anxiety, asthma and other ailments that stress exacerbated. PLAINTFF asked Mr. Connors to obtain copies of her medical records from her medical facility in Reno Nevada. It was revealed later that Mr. Connors never sought to obtain copies of PLAINTIFF's medical records from her previous medical facility in Reno as she asked on 11/18/22. MS. WARREN asked Mr. Connors for a referral for mental health as law enforcement's constant interference was affecting her negatively. Mr. Connors said that he would obtain medical records from PLAINITFF'S previous medical facility and would get her a mental health referral. Mr. Connors suggested that PLAINTIFF get an EKG, get a chest x ray and he would set up an appointment for a Pulmonary Function Test (PFT). Without an evaluation or ever treating PLAINTIFF, Mr. Connors prescribed MS. WARREN 10mg tablets of Escitalopram with two refills. Escitalopram is part of a Bi-Polar treatment. However, PLAINTIFF had not been diagnosed with bi-polar disorder by anyone. A major warning for this medication is that one should seek medical attention right away if you have symptoms of serotonin syndrome, such as: agitation, hallucinations, fever, sweating, shivering, fast heart rate, muscle stiffness, twitching, loss of coordination, nausea, vomiting, or diarrhea. MS. WARREN had never been on this medication and was not informed of any side effects of the medication before taking it per Mr. Connors instructions.

Mr. Connors told PLAINTIFF that the scheduling department would be contacting her shortly after her 11/18/22 visit. Immediately after the appointment with Mr. Connors, his medical assistant, Juliana Ramirez, took MS. WARREN to get her EKG test. While in the room

Juliana instructed PLAINTIFF to undress above the waist, including removing her bra and shirt. PLAINTIFF complied with the instructions. The EKG was performed by Ms. Ramirez. After the testing, Juliana instructed PLAINTIFF to keep her bra off but put on her shirt because she was going to get her chest Xray. PLAINTIFF complied with these instructions as well. Juliana led MS. WARREN to a chair outside a small room. A Hispanic male came out of the small room and asked PLAINTIFF her name. MS WARREN told the male her name and he led her inside the room. After the chest x ray, the male instructed PLAINTIFF to "get dressed" in the same room. The male could see the PLAINTIFF clearly and she inquired about the visibility of dressing in front of the male. The male told MS. WARREN that everyone gets dressed in the room with him in the room. Outside the small room, PLAINTIFF saw a bathroom right next to the room and wondered why the male would not have instructed her to change inside the bathroom right next door.

MS. WARREN's mother is over 70 years old so having a medical provider in close proximity is paramount to her health. PLAINTIFF, despite her apprehensions, recommended Cano Health to her mother. On 11/29/2022 PLAINTIFF's mother went to an appointment with Mr. Connors at the Cano Health located at 5701 W Charleston Blvd, Unit 100, Las Vegas, NV 89146. Mr. Connors told PLAINTIFF's mother that he would be getting her medical records from her medical facility in Carson City just like he told the PLAINTIFF. PLAINTIFF's mother is not sure if Mr. Connors actually sought to obtain those records. Mr. Connors also advised MS. WARREN's mother to get a PFT, get a chest x ray and be seen by a Ear Nose and Throat (ENT) specialist. Immediately after the appointment, PLAINTIFF went to the waiting room and PLAINTIFF's mother went to get her chest x ray. Upon exiting Cano Health PLAINTIFF's mother told her that she experienced the same "undressing" incident that PLAINTIFF had with

the male who conducts the x rays. PLAINTIFF could see her mother was uncomfortable and this bothered her immensely.

It has to be noted that before the 11/29/22 appointment at Cano Health, which was scheduled at 10:30 am, PLAINTIFF and her mother were stalked and followed by LVMPD officers. They were pulled over by a black male officer who was the driver of the police SUV and had a white female officer in the passenger seat. PLAINTIFF knows they were being stalked and followed because PLAINTIFF and her mother had just moved into a new place, less than a week before being pulled over by LVMPD, and no one had their new address. There would have been no way LVMPD had their new address, without illegally stalking, following and monitoring the PLAINTIFF and her mother as their new place is in another city/jurisdiction and far away from their previous home where LVMPD were falsely called multiple times by PLAINTIFF'S neighbors. In the previously mentioned police misconduct cases involving LVMPD, neighbors Laura Martinez and Michael Silva are named, with video evidence, as being the culprits who were prompted by LVMPD to call them so PLAINTIFF could be falsely arrested again or evicted.

PLAINTIFF's mother, had her PFT scheduled for 12/8/22. While in the waiting room the PFT specialist, his name is Uday, approached MS. WARREN's mother and told her that he does not have the mouth pieces, which are mandatory to conduct the test, and he has no idea when he would get them and that she needs to reschedule her PFT somewhere else as he was going out of town on a vacation for two months. There was no forewarning or a courtesy call to inform PLAINTIFF'S mother of this issue.

PLAINTIFF's mother had her Ear Nose and Throat (ENT) appointment on 12/12/22 with Dr. Kim of the UNLV medical center located at 5320 S. Rainbow, Suite 250 Las Vegas, NV.

While in her appointment PLAINTIFF and her mother complained to Dr. Kim about their treatment by Cano Health. They both explained what happened with "undressing" in front of a male x ray tech, Uday having no equipment to conduct PFTs for patients with breathing issues, and just the entire medical negligence of Cano Health. Dr. Kim thanked both ladies for their honesty and informed them that he would take their concerns seriously and inform the proper authorities. Dr. Kim told PLAINTIFF and her mother that he did not want to send any of his patient's to this medical facility after hearing their horror stories. PLAINTIFF and her mother noticed a LVMPD SUV parked outside the medical facility during the mother's appointment. They made a comment to Dr. Kim and noticed that the LVMPD SUV did not leave until right before the appointment was over. Again, this proves the constant stalking, following, surveilling, monitoring etc. by law enforcement illegally.

During the month of November and December PLAINTIFF heard from the Cano Health scheduling department. They informed MS. WARREN that Axis psychiatry would be scheduling her an appointment. MS. WARREN heard from Axis and they scheduled her for an appointment on 12/26/22. Later in December when PLAINTIFF called Axis to confirm the appointment the receptionist told PLAINTIFF that their building was closed due to the observance of Christmas on 12/26/22. When PLAINTIFF inquired as to why she was scheduled for an appointment on a day they knew they were closed PLAINTIFF received no response. Then PLAINTIFF was informed that Axis would not have an appointment open for several months.

On 12/18/22 PLAINTIFF had a follow up appointment with Mr. Connors. PLAINTIFF informed Mr. Connors that Axis psychiatry scheduled her on a day they were closed and she wanted another referral. At the 12/18/22 appointment PLAINTIFF's blood pressure was

extremely high as she had been chased around the Cano Health parking lot by strangers and had several LVMPD squad cars tailing her from her new home to the appointment. PLAINTIFF was scared and her blood pressure exhibited this. Mr. Connors had PLAINTIFF's blood pressure checked several times and it was elevated the entire time. Having law enforcement involving themselves in every aspect of PLAINTIFF's life was affecting her health.

PLAINTIFF waited to hear from Cano Health's scheduling department to schedule another psych appointment. PLAINTIFF ended up calling Cano Health as she did not hear from the scheduling department as expected. PLAINTIFF was informed that she would have to call around Las Vegas for a psych doctor as their scheduling department would not help her. PLAINTIFF informed the scheduling department that it is their job to find a doctor for the PLAINTIFF. PLAINTIFF was told that "normally" their department does call around and find doctors for patients but in PLAINTIFF's case they would not help her.

Because law enforcement went to PLAINFIFF's job at Hilton Grand Vacations (HGV) and slandered her there, she was on an ongoing ADA medical leave of absence since 11/15/22. She was trying to get Short Term Disability from Lincoln Financial Group (LFG). While trying to get all the medical paperwork for LFG to make a decision, MS. WARREN was run around by Mr. Connors office and LFG. A decision on PLAINTIFF'S case was intentionally delayed from both sides. After all the stress of PLAINTIFF'S job, her mother's health, trying to get mental help, no income from any source, law enforcement constantly bothering her, and no one helping the PLAINTIFF, all this stress was taking a toll on her health.

One of the reasons LFG denied PLAINTIFF's short term disability was because their nurse stated that PLAINTIFF was not seen from a licensed doctor or psychiatric doctor to correctly diagnose the PLAINTIFF, no evaluation was performed before giving PLAINTIFF

Escitalopram and no follow up was performed by Cano Health to see if the medication was correct and helped the PLAINTIFF. Mr. Connors did not have the medical license to prescribe the PLAINTIFF any psych medication, especially with a medication like Escitalopram.

During December and January 2023 PLAINTIFF never saw Mr. Connors again until January 31, 2023. PLAINTIFF was scheduled for a Zoom appointment. During this appointment, Mr. Connors was clearly upset, and his facial expressions and treatment of PLAINTIFF exhibited this disdain. Mr. Connors stated on a recorded Zoom call that PLAINTIFF needs a doctor and Cano Health doesn't have a doctor therefore Cano Health can not see or treat the PLAINTIFF anymore.

## II.

## JURISDICTION AND VENUE

1. "A court of this state may exercise jurisdiction over a party to a civil action on any basis not inconsistent with the Constitution of this state or the Constitution of the United States." NRS 14.065.

2. Jurisdiction in this Court is proper because this is a complaint seeking monetary relief in excess of $10,000, the PLAINTIFF is a resident citizen of Nevada, and the DEFENDANTS CANO HEALTH are a private for profit company operating in Las Vegas, Nevada.

3. Venue is proper in the Eighth Judicial District Court of Clark County because:

a. Under NRS 13.020, "Actions for the following causes must be tried in the county where the cause, or some part thereof, arose, subject to the power of the court to change the place of trial." All of the events giving rise to this claim have occurred within Clark County;

b. The PLAINTIFF currently resides in Las Vegas, Nevada, where the events or omissions giving rise to the claims of this case occurred.

## III.

## PARTIES

4. At all times relevant to this action, PLAINTIFF was a resident of the State of Nevada, County of Clark.

5. DEFENDANT CANO HEALTH is a private business situated in Clark County, Nevada.

## IV.

## GENERAL ALLEGATIONS COMMON TO ALL CLAIMS

6. PLAINTIFF is a forty-five year old African-American woman.

7. PLAINTIFF suffers from pre-existing alopecia, depression, and anxiety; as a result of her ordeal at the hands of SPARKS POLICE DEPARTMENT and LAS VEGAS METROPOLITAN POLICE DEPARTMENT, she now also suffers from hidradenitis suppurativa, PTSD, and paranoia.

8. PLAINTIFF has been a resident of the state of Nevada throughout the entirety of this ordeal.

9. In July 2021, PLAINTIFF and her elderly mother moved to Las Vegas from Reno due to her fear of retribution by SPARKS POLICE DEPARTMENT.

10. Since her move, PLAINTIFF has been subject to ongoing surveillance and interference in Las Vegas by LAS VEGAS METROPOLITAN POLICE DEPARTMENT, detailed infra.

11. PLAINTIFF has had additional problems happen to her as a result of interference by, on information and belief, the LAS VEGAS METROPOLITAN POLICE DEPARTMENT; these include but are not limited to:

a. Possible involvement in PLAINTIFF'S booking photo being released to her new employer in Las Vegas;

b. Known interference with PLAINTIFF'S and her mother's property as it was being transported by U-Haul from Northern to Southern Nevada, who admitted to PLAINTIFF on the telephone their employees' collusion with both SPARKS POLICE DEPARTMENT and the LAS VEGAS METROPOLITAN POLICE DEPARTMENT when transporting and temporarily losing the property;

c. Unwarranted surveillance at PLAINTIFF'S new Airbnb upon first moving to Las Vegas;

d. Being followed by both uniformed and plain clothes LAS VEGAS METROPOLITAN POLICE DEPARTMENT officers when PLAINTIFF leaves her apartment building by car, Uber, Lyft, Taxi or rental car;

e. Being told by her internet service provider T-Mobile that the POLICE paid for her internet connection;

f. Being harassed at home, including by having LAS VEGAS METROPOLITAN POLICE DEPARTMENT bang on her door, allegedly at the behest of a neighbor, and wait around her apartment at night;

g. Being accused by the property managers at her building of violating community standards using videos skimmed from PLAINTIFF'S own surveillance cameras operating on PLAINTIFF'S own WiFi connection (the WiFi that T-Mobile has admitted the POLICE compensate).

h. On information and belief, Law enforcement contacted Cano Health to not help PLAINTIFF and/or PLAINTIFF's mother as law enforcement felt and still feel that medical paperwork will be used as evidence in the ongoing litigation.

i. On information and belief, PLAINTIFF was ran around by employees at Cano Health so she could not obtain proper psychiatric referrals from Cano Health or receive any Short Term Disability from LFG.

j. Cano Health was negligent throughout PLAINTIFF's experience with their medical facility.

j. Mr. Connors does not and did not have the proper license to diagnose a mental health issue, prescribe psychiatric medication or conduct a proper evaluation pertaining to psychiatric patients.

**—STATE CLAIMS—**

**V.**

**FIRST CLAIM FOR RELIEF**
***Unlawful Injury or Loss Suffered by a Vulnerable Person, NRS § 41.1395***

12. PLAINTIFF incorporates by reference all other allegations in this Complaint, as though fully set forth herein.

13. PLAINTIFF is a vulnerable person as defined by NRS § 41.1395 4(e)(1-2) in that she has a physical health impairment—alopecia—and psychological health impairments—depression and anxiety—that limit one or more of her major life activities, and she has medical records of these impairments.

14. Because of her ordeal, PLAINTIFF now also suffers from a very painful skin condition called hidradenitis suppurativa, and from new psychological problems including PTSD and paranoia.

15. DEFENDANT CANO HEALTH was unjustified when they inflicted injury, pain, and anguish on PLAINTIFF with their negligence and failure to provide appropriate treatment.

16. DEFENDANT has additionally exploited the medical vulnerability of a vulnerable Nevadan, in contravention of state law.

17. DEFENDANT CANO HEALTH working in tandem with law enforcement agencies are severely exacerbating PLAINTIFF'S pre-existing disabilities, in contravention of state law.

18. Accordingly, PLAINTIFF is entitled to recover all available damages, including—but not limited to—lost wages, pain and suffering, emotional distress and punitive damages, if available, as allowed by law, in an amount to be determined at trial.

19. In this particular Claim for Relief, PLAINTIFF is entitled to recover two times her damages, as allowed under NRS § 41.1395(1), in an amount to be determined at trial.

**VI.**

**SIXTH CLAIM FOR RELIEF**

***Negligence and Gross Negligence***

20. PLAINTIFF incorporates by reference all other allegations in this Complaint, as though fully set forth herein.

21. DEFENDANT CANO HEALTH owes a professional duty to a patient and to PLAINTIFF.

22. DEFENDANT CANO HEALTH owed a duty of care to PLAINTIFF but provided care below what a similarly trained professional would have offered.

23. DEFENDANT CANO HEALTH had several care providers who failed to provide the appropriate treatment to PLAINTIFF. PLAINTIFF was not properly evaluated before psychiatric medication was prescribed by Mr. Connors, PLAINTIFF was not reevaluated to see if she suffered side effects from this medication, PLAINTIFF was not properly monitored while on this medications and PLAINTIFF was retaliated against after she reported the medical

negligence and discarded from Cano Health as a patient. PLAINTIFF was also negligently treated by Axis psychiatry who scheduled her for an appointment when they knew their office would be closed in observance of a holiday.

24. DEFENDANT'S breach of said duty to PLAINTIFF constituted Negligence, Negligent Hiring and Entrustment.

25. DEFENDANT breached its duty by failing to exercise the degree of care that was owed to PLAINTIFF.

26. When engaging in their culpable conduct described herein, the DEFENDANT was not only negligent, but they were grossly negligent in that they failed to exercise even the slightest amount of care, with a conscious disregard of the rights or safety of the PLAINTIFF.

27. When engaging in their culpable conduct described herein, the DEFENDANT was grossly negligent because they acted with willful, wanton, and/or reckless disregard for the safety of PLAINTIFF.

28. DEFENDANTS exhibited a conscious disregard for PLAINTIFF'S patience's' bill of rights, constitutional rights and safety when they knew the probable harmful consequences of their wrongful acts. Not providing PLAINTIFF proper care had harmful consequences including physical and mental injury to her, which DEFENDANTS recklessly, willfully, and/or deliberately failed to act to avoid.

29. Accordingly, PLAINTIFF is entitled to recover all available damages, including—but not limited to— lost wages, pain and suffering, emotional distress and punitive damages, if available, as allowed by law, in an amount to be determined at trial.

**VII.**

## SEVENTH CLAIM FOR RELIEF

***Intentional Infliction of Emotional Distress***

30. PLAINTIFF incorporates by reference all other allegations in this Complaint, as though fully set forth herein.

31. DEFENDANT CANO HEALTH acted to intentionally not seek to obtain PLAINTIFF'S medical records from her medical facility in Reno, which is proper protocol when a new patient comes to receive medical treatment in a clinic. These records help to establish continuity of care and a positive relationship with the patient. It would also facilitate a positive relationship with the previous medical facility in case of future questions or correspondence in order to help patient's care moving forward.

32. DEFENDANT CANO HEALTH continued to act intentionally to have PLAINTIFF run around for two months trying to get Lincoln Financial Group medical records from Cano Health and was intentionally delayed. PLAINTIFF was told that Mr. Connors was on vacation from the middle of December to the first week of January, but she had an appointment with Mr. Connor's on 12/18/22. So, MS. WARREN knew she was being lied to by Cano Health staff.

33. After months of being seen by Mr. Connors, Cano Health decided to throw PLAINTIFF out as a patient in retaliation for her complaining. Mr. Connors negligently informed MS. WARREN that she is no longer welcome to be seen at Cano Health because she needed a doctor and Cano Health doesn't have any doctors to treat her. Mr. Connors negligently dismissed PLAINTIFF via a Zoom appointment, without any prior notice.

34. MS. WARREN still has not been able to get a regular doctor in the Las Vegas area since negligently being thrown out by Mr. Connors and Cano Health.

35. Now, PLAINTIFF faces ongoing harassment and surveillance by LAS VEGAS METROPOLITAN POLICE DEPARTMENT even though she has committed no crime in either Clark or Washoe Counties. In order to help LVMPD in their ongoing litigation, Cano Health negligently involved themselves in PLAINTIFF'S police misconduct cases.

36. As a result of the actions of the DEFENDANT, the PLAINTIFF has suffered severe emotional distress and physical harm.

37. The intentional behavior of DEFENDANT is the direct and proximate cause of PLAINTIFF'S deteriorated health and ongoing mental anguish.

38. Accordingly, PLAINTIFF is entitled to recover all available damages, including—but not limited to— lost wages, pain and suffering, emotional distress and punitive damages, if available, as allowed by law, in an amount to be determined at trial.

**VIII.**

**EIGTH CLAIM FOR RELIEF**

***Civil Conspiracy***

39. PLAINTIFF incorporates by reference all other allegations in this Complaint, as though fully set forth herein.

40. In Nevada, "[a]n actionable civil conspiracy is a combination of two or more persons who, by some concerted action, intend to accomplish some unlawful objective for the purpose of harming another which results in damage." Collins v. Union Fed. Savings Loan, 99 Nev. 284, 303 (Nev. 1983).

41. PLAINTIFF has been harassed by LAS VEGAS METROPOLITAN POLICE DEPARTMENT since moving to Las Vegas.

42. PLAINTIFF has never been convicted of a crime in Las Vegas, so it is a mystery why LAS VEGAS METROPOLITAN POLICE DEPARTMENT would harass her—but for their knowledge that she is disliked by SPARKS POLICE DEPARTMENT.

43. It would be unlawful for LAS VEGAS METROPOLITAN POLICE DEPARTMENT to do the following without a warrant and without probable cause (this list is not exhaustive):

a. Surveil Ms. WARREN at her Airbnb right when she moved to Las Vegas;

b. Place Ms. WARREN under investigation right when she moved to Las Vegas;

c. Participate in frustrating Ms. WARREN's access to her property as it was being transported south by U-Haul;

d. Release Ms. WARREN'S booking photo from Washoe County to her new, Las Vegas employer long after she had been released from jail;

e. Tail Ms. WARREN in her car whenever she is driving in Las Vegas, using a rental car or taking a Lyft or Uber;

f. On information and belief, conspire with the property managers at Ms. WARREN's apartment building to entrap Ms. WARREN in perceived community standard violations using videos "skimmed" from her own surveillance cameras operating on PLAINTIFF'S own WiFi

g. Intercept Ms. WARREN'S telecommunications, including her telephone and internet connection, as by paying for the connection out of a "police account."

h. Stop or interfere with PLAINTIFF and/or PLAINTIFF'S mother from obtaining medical help in either Northern or Southern Nevada. Medical help includes dental, medical, psychiatric, physical rehabilitation, psychology and any other "medical" help they may need.

44. If LAS VEGAS METROPOLITAN POLICE DEPARTMENT has a cognizable warrant or probable cause against Ms. WARREN for an alleged violation of the law in Clark County, PLAINTIFF asks to see that document.

45. Barring this, her treatment by LAS VEGAS METROPOLITAN POLICE DEPARTMENT is harassment meant to frighten and belittle her.

46. To the extent that LAS VEGAS METROPOLITAN POLICE DEPARTMENT illegally undertakes such treatment of Ms. WARREN at the behest of or for the benefit of SPARKS POLICE DEPARTMENT in Washoe County, the two police departments are engaged in a civil conspiracy with one another against Ms. WARREN.

47. The "primary purpose" of such partnership is not protection of the community, but rather, "to cause injury" to Ms. WARREN, who is alone but for taking care of her elderly mother. Ungaro v. Desert Palace, Inc., 732 F. Supp. 1522, 1533 n.3 (D. Nev. 1989).

48. And such civil conspiracy, based in intentional tort, is illegal in this state.

49. Accordingly, PLAINTIFF is entitled to recover all available damages, including—but not limited to— lost wages, pain and suffering, emotional distress and punitive damages, if available, as allowed by law, in an amount to be determined at trial.

**—REMEDIES COMMON TO ALL CLAIMS—**

**IX.**

***Declaratory Relief***

50. PLAINTIFF incorporates by reference all other allegations in this Complaint, as though fully set forth herein.

51. Pursuant to NRS 30.030, NRS 30.100, NRS 651.090(2)(a), and the Court's inherent equitable powers, PLAINTIFF seeks, and is entitled to have, declaratory relief awarded in her favor, to declare her rights and obligations of the DEFENDANT sued herein, where such declaratory relief is necessary and proper to the termination of the disputes raised herein, including as specifically prayed for below.

52. This includes declaratory relief whereby the Court issues a declaration that DEFENDANT unlawfully discriminated against, harassed, and retaliated against PLAINTIFF and otherwise violated PLAINTIFF'S rights under the law, and any other declaration the Court finds necessary and proper.

## X.

## PRAYER FOR RELIEF

WHEREFORE, PLAINTIFF prays for judgment against the DEFENDANT as follows:

1. For general damages in an amount in excess of $250,000.00;
2. For special damages in an amount in excess of $250,000.00;
3. For past and future compensatory damages, and other expenses incurred by reason of DEFENDANTS' intentional misconduct, acts, omissions, carelessness, recklessness, negligence, gross negligence, deliberate indifference, and other culpable conduct, described herein, in an amount in excess of $250,000.00;
4. For punitive and exemplary damages as allowed by law;
5. For costs of the suit incurred herein;
6. For lost wages starting 11/15/2022
7. For declaratory relief, in the form of declarations that:

(A) PLAINTIFF'S current medical damages are the direct and proximate result of the conduct of the DEFENDANT.

Dated this 19th day of April, 2023.

Allanna Warren
Pro Se Name Allanna Warren

CERTIFICATE OF SERVICE

I hereby certify that I sent the foregoing COMPLAINT JURY TRIAL DEMANDED for electronic filing to the Eight Judicial District Court on the 19th day of April, 2023. I caused the foregoing COMPLAINT JURY TRIAL DEMANDED to be served as follows:

[ ] BY U.S. MAIL: By placing a true and correct copy of the same to be deposited for mailing in the U.S. Mail in Las Vegas, Nevada, enclosed in a sealed envelope upon which First-Class postage was fully prepaid to the following address:

[ ] BY PERSONAL SERVICE: By hand delivery of the document(s) listed above to the person(s) at the following address:

[ X ] BY ELECTRONIC FILING: By EFS service pursuant to Rule 5(b)(2)(E) of the NRCP and Rule 9 of the NEFCR.

[ ] BY ELECTRONIC MAIL: By e-mail, consented to in writing, pursuant to Rule 5(b)(2)(F) of the NRCP at the following e-mail address:

Allanna Warren

PLAINTIFF