Allanna Warren
9620 S. Las Vegas Blvd., Suite E461
Las Vegas, NV 89123
D1A2N3N4@PROTON.ME

DISTRICT COURT

CLARK COUNTY, NEVADA

| | |
|---|---|
| ALLANNA WARREN,<br><br>Plaintiff,<br><br>vs.<br><br>HEARTLAND HOMEOWNERS ASSOCIATION, TAYLOR ASSOCIATION MANAGEMENT,AAMC, WALKER JOHN & DEBRA TRUST, TENANT/S OF 268 BLUEFIELD DRIVE HENDERSON NV 89074, BERHAN AHMED, TENANT/S OF 270 BLUEFIELD LANE HENDERSON NV 89074, PROGRESS RESIDENTIAL BORROWER 8 L L C, THE TENANT/S OF 271 BLUEFIELD LANE HENDERSON NV 89074, Z C C FAMILY TRUST, CAMACHO ROBERTA TRS, TENANT/S OF 270 FAIRBROOK HENDERSON NV 89074, TENANTS AND OWNER OF 2604 HEARTLAND AVENUE, HENDERSON, NV 89074, ANZARY MUSA & PARVEZ M, TENANT/S OF 272 BLUEFIELD LANE HENDERSON NV 89074, ANZARY MUSA & PARVEZ M, TENANT/S OF 272 BLUEFIELD LANE HENDERSON NV 89074, YOSHIDA TAKASHI & PATRICIA A, TENANT/S OF 272 FAIRBROOK DRIVE HENDERSON NV 89074, 272 FAIRBROOK DRIVE HENDERSON NV 89074 NDO VINH H AND NGO VAN V, TENANT/S OF 279 FAIRBROOK DRIVE HENDERSON NV 89074, 279 FAIRBROOK DRIVE HENDERSON NV 89074, OWNERS/TENANTS OF 274 BLUEFIELD | Case No.:<br><br>Dept. No.:<br><br><br><br>COMPLAINT JURY DEMANDED |

LANE, HENDERSON, NV 89074, JASMINE THORNS,

Defendant

Plaintiff, ALLANNA WARREN, hereby submits her COMPLAINT JURY DEMANDED.

Plaintiff complains against all named defendants as follows.

I.

STATEMENT OF THE CASE

This case is linked and related to two police misconduct cases currently in litigation. The first case is against the City of Sparks et. al. and The county of Washoe County Jail et. al in the Second Judicial District case number CV2201525. The second case is against Las Vegas Metropolitan Police Departments (LVMPD) in the US District Court with case number 2:23-cv-00065-GMN-DJA. After an unlawful detainment on June 14, 2020 and an unlawful arrest on June 20, 2020 by Sparks Police officers Ginger Miller, Ryan Patterson and Daniel Jones, PLAINTIFF and her elderly mother were harassed, followed, stalked, illegally surveilled, had their communications devices illegally monitored and would go into any business, school, store, retail business, apartment, doctor's offices, townhome, box store, private home or any place PLAINTIFF and her mother visited even once and slander, libel and character assassinate them both. Law enforcement would illegally stalk and follow MS. WARREN to continue the harassment, slander, libel and character assassination to landlords, neighbors, employees, co-workers, supervisors, doctor's office staff, doctors, physician assistants etc in Southern Nevada as well.

The police misconduct problems for Ms. WARREN did not stop in Washoe County or Northern Nevada. In November 2021, during a training course for her new job in Las Vegas, a

co-worker teased Ms. WARREN by showing her a copy of her booking photo that had been taken when she was arrested. Ms. WARREN suffers from alopecia. When she was booked by the police in Sparks on June 20, 2020, OFFICER MILLER removed Ms. WARREN'S hat before her booking photo was taken, so Ms. WARREN appears bald in the photo. Somehow, Ms. WARREN's co-worker got his hand on this photo, and stated that he had actually gotten the photo from their training instructor. Thereupon, Ms. WARREN's classmates in the training program teased her with photos of bald people and the instructor harassed her also. The booking photo cannot be found online. Ms. WARREN called the Washoe County Sherriff's Office, who stated to her that such a photo is only a public record when an individual is incarcerated, but that after incarceration is over, the photo is removed from their website. The Washoe County Sherriff's office additionally stated that the only way the picture could be released at this point would be either at Ms. WARREN's own request for it, or, in response to a request from someone inside SPARKS POLICE DEPARTMENT. Therefore, on information and belief, SPARKS POLICE DEPARTMENT impermissibly released Ms. WARREN'S booking photo online or to her then current employer in Las Vegas in an effort to harass, embarrass, stalk, and belittle her. After PLAINTIFF complained about the arrest photo to her employer, she was placed on administrative leave and ultimately fired. It is also possible that LAS VEGAS METROPOLITAN POLICE DEPARTMENT additionally had a hand in the booking photo getting released to Ms. WARREN'S new employer in Las Vegas. Ms. WARREN has been the victim of a wide variety of suspicious behavior at the hands of LAS VEGAS METROPOLITAN POLICE DEPARTMENT since having moved from Reno to Las Vegas in July 2021. , Ms. WARREN regularly finds herself followed by both uniformed and plain clothes LAS VEGAS METROPOLITAN POLICE DEPARTMENT officers when she leaves her apartment building

by car. She cannot take videos of this behavior when she is alone in her car for fear of being pulled over for using a cell phone while driving. Ms. WARREN'S mother is elderly and disabled and also cannot take videos of this behavior on the rare occasions when she is in the car alongside her daughter. Prior to her ordeal, Ms. WARREN suffered from anxiety, depression, and alopecia. Now, subsequent to her ordeal at the hands of SPARKS POLICE DEPARTMENT and LAS VEGAS METROPOLITAN POLICE DEPARTMENT, PLAINTIFF additionally suffers from PTSD and paranoia. Following her confinement, and likely due to stress and the filthy conditions inside the WASHOE COUNTY JAIL, Ms. WARREN developed hidradenitis suppurativa, a painful skin condition that causes small, painful lumps to form under her skin. Following her jailing, MS. WARREN developed these sores and pustules all over her body, for she sought the help of a dermatologist.

PLAINTIFF moved to the city of Henderson in December 2022. PLAINTIFF will redact her home address for fear of retribution, stalking and retaliation. On April 6, 2023 one of PLAINTIFF'S neighbors let her dog defecate on PLAINTIFF'S front yard and did not pick the poop up completely. PLAINTIFF submitted an animal control complaint online at the city of Henderson online portal. The next day, April 7, 2023, PLAINTIFF emailed Henderson Mayor Michelle Romero to express her concern. (As PLAINTIFF has detailed above, the Sparks PD, Reno PD and LVMPD have stalked, illegally surveilled, accessed her internal wifi system, followed PLAINTIFF and her family, gone to every neighborhood, every job, every store that PLAINTIFF visit even once. The police have done this for years. When PLAINTIFF moved to Henderson it was no different.) PLAINTIFF did not hear from anyone at The City of Henderson until April 10, 2023. PLAINTIFF received a response from Tim Buchanan. PLAINTIFF was initially grateful and was hoping for help. PLAINTIFF provided video evidence to back up her

complaint. Mr. Buchanan's response was very puzzling, his email read," However, none of the departments at the City will be able to respond any further to your complaints (animals, kids, etc.) unless you are able to provide a Henderson address where the activities you are concerned with are occurring and at which you may be contacted. At this time, you have only provided a Las Vegas address and City Staff does not respond to alleged incidents occurring outside of the City of Henderson." PLAINTIFF had given her Las Vegas mailing address but it was not mandatory to give a Henderson address to submit a complaint to the online portal. So, Mr. Buchanan was making this statement up. Additionally, PLAINTIFF has submitted several other requests through the online portal and still uses her mailing address in Las Vegas and they are all fulfilled. This was Mr. Buchanan's way of trying to illegally obtain PLAINTIFF'S home address, hence why she is redacting it now. PLAINTIFF did ask Mr. Buchanan to keep her mailing address confidential because PLAINTIFF was , "suing several Nevada law enforcement departments keep all my contact information confidential." The next correspondence PLAINTIFF received was on April 11, 2023, from Lisa Kelso. Lisa writes, "We received your concerns from the Mayor's office here at City of Henderson. I saw that you prefer email communication, however would it be all right with you if someone from our office called and spoke to you about these concerns over the phone?" If PLAINTIFF indicated that she prefers email, why would Lisa offer a phone call? PLAINTIFF replied, "Email only. Thanks in advance." Lisa tried again to obtain PLAINTIFF's home address and writes, "Are you able to provide us your address?" Plaintiff provided additional neighbors who were violating the city ordinances along with video evidence. PLAINTIFF was targeted from the beginning due to meetings her neighbors and the HOA attended held by law enforcement. This is the same pattern that has happened to PLAINTIFF since living in Northern Nevada. PLAINTIFF emailed the

HOA to notify them of the neighbors violating the city laws and ordinances as well as community rules. Instead of helping PLAINTIFF the HOA targeted her because she and her family are the only black American family in the neighborhood. PLAINTIFF received a notification about her weeds. PLAINTIFF complied with the notification and sent an email dated March 25, 2023. However, PLAINTIFF walked around her neighborhood an noticed other homes with worse weeds than the couple she plucked out of her yard. PLAINTIFF confronted the HOA with he racial disparities. PLAINTIFF also complained that her neighbors were letting their dogs defecate on her yard, had their children trespassing on her yard, and other harassment PLAINTIFF was enduring. PLAINTIFF included video and pictures evidence. PLAINTIFF received no response to the emails. PLAINTIFF was ignored. PLAINTIFF included the City of Henderson and Mayor Romero in the email as well. As a result, PLAINTIFF filed a racial discrimination complaint with HUD. Now the Heartland is lying about some inoperable vehicle, when other non-black residents have numerous cars that have not moved and are inoperable in the community but the HOA is targeting PLAINTIFF. The HOA is concerned about weeds and inoperable cars and not a gas leak that Southwest Gas did not notify PLAINTIFF about, children trespassing, PLAINTIFF'S neighbors vandalizing her property, Mr. Walker threatening her life nor married men stalking, watching, harassing and other crimes against PLAINTIFF. The disparate treatment is obvious.

The incidents involving Henderson Police started May 6, 2023. The Henderson police were called on PLAINTIFF for walking around her neighborhood while being black. PLAINTIFF has committed no crimes and had recently moved into the neighborhood. Two police cars chased PLAINITFF to her home. PLAINTIFF is a vulnerable Nevadan with other preexisting conditions. The fear of PLAINTIFF being chased in a new predominantly White and

Hispanic neighborhood made PLAINTIFF'S anxiety hit the roof. PLAINTIFF had an asthma attack that night as a direct result of the Henderson Police. On May 8, 2023 PLAINTIFF was chased again by two Henderson Police cars to her home. The officers had their hands on their guns while knocking loudly and hard on her door. Again, PLAINTIFF had committed no crimes and was simply walking around in her neighborhood. PLAINTIFF contacted Mayor Romero via email on May 7, 2023 to inquire about how she submit a Freedom of Information Act inquiry, about these two Henderson police cars at a Henderson address from 5/6/23 around 7:11 pm?" PLAINTIFF received a response from Gina Waters who wrote, "If you could provide the address where they were located, we can submit a Contact Henderson case to the police department for that date, time, and address to see what kind of call they were responding to. If you would like to provide me with the address I can open the case for you, or you can create it within Contact Henderson under your account by choosing Police Department and Crime Statistics." This is the third attempt from the City of Henderson to obtain PLAINTIFF'S home address. In addition, PLAINTIFF'S question about obtaining Freedom of Information act information has nothing to do with her address or Police department or crime statistics. Ms. Waters kept asking for PLAINITFF'S home address. In an email on May 2023, Gina writes, "Please provide the address for which you are requesting." PLAINTIFF makes a note about the number of times someone from the city of Henderson is trying to get PLAINTIFF to give them her home address. PLAINTIFF writes, "I want all the records you have for police calls and responses for 5/6/23 from 6 pm to 10 pm. I am requesting the body cam footage and the dash cam footage as well. The Freedom of Information Act requires you as a governmental agency to provide me as a US citizen with the requested information." PLAINTIFF also includes the Freedom of Information Act law from the US government website. Ms. Waters says PLAINTIFF'S request

would take months to complete and "Providing a cross street or address would reduce the amount of time it would take to obtain." PLAINITFF gave a parameter to Ms. Waters.

On May 11, 2023 PLAINTIFF received a loud, boisterous knock on her front door. It was a large white Henderson Police Officer. Plaintiff has no idea why a Henderson Police officer would be harassing her at her home. The white male officer knocked on PLAINTIFF'S front window very hard. He knocked so hard PLAINITFF and her mother thought he would break the window. The same man harassed PLAINITFF at her home again on May 17, 2023 and May 31, 2023. PLAINTIFF had no idea what this man wanted. On May 31, 2023 the large white male officer brought a stocky white female officer with dark brown hair to the door. This female officer prowled and stalked around PLAINTIFF'S property without permission. PLAINTFF never gave The City of Henderson her home address, again, because of fear of law enforcement's history of retaliation, retribution and stalking. However, PLAINTIFF now has evidence from the City of Henderson that they were also stalking PLAINITFF. Exhibit 1 is a city of Henderson Police Department Incident report dated September 20, 2023. The first record has the Type as 439 A. PLAINTIFF has asked the Henderson PIO for an explanation of these code. Then under comment it states, "*MCIT* / ATC Allanna Warren. PLAINTIFF has asked what the meaning of the abbreviations and jargon is. PLAINTIFF redacted her home address for obvious reasons, but how does Henderson Police know PLAINTIFF'S home address? PLAINITFF never provided her address to anyone at The City of Henderson. Additional proof of stalking comes in record #2 which states ATC at residence. How did the Henderson Police know PLAINTIFF was at home? The only way is if Henderson Police were stalking PLAINTIFF or if Henderson police had PLAINTIFF'S neighbors spy and stalk

PLAINTIFF. Again, PLAINTIFF has not committed any crimes in Henderson or anywhere else on Earth. PLAINTIFF'S crimes, according to law enforcement, are telling the truth.

PLAINTIFF'S neighbors have spent their time harassing, stalking, following, trailing, tailing, watching, spying and vandalizing her home. This is done at the behest of law enforcement particularly LVMPD and The City of Henderson Police. PLAINTIF'S neighbors have directly tied themselves to law enforcement and have said this on tape. Particularly Mr. Walker located at 268 Bluefield Lane, Henderson, NV 89074 and the people located next door to Mr. Walker, 270 Bluefield Lane, Henderson NV 89074. Someone even trespassed on PLAINTIFF'S property today, January 7, 2024. The person who lives at 270 Bluefield Lane was out to watch and is clearly involved.














































0:05 / 0:12








Nest
Say something





Here are racist children shining lights into PLAINTIFF'S home on 12/21/23 from 272 Bluefield Lane Henderson NV 89074. These racist, unsupervised children's lives were at risk because Southwest Gas did not notify PLAINTIFF about a gas leak from earlier in the year.











1/14/24 Cassidy and Lilly trespassing on PLAINTIFF'S property to vandalize it. No parental supervision as normal







1/14/24 a grown man playing with an underaged girl and trespassing on PLAINTIFF'S property











Mr. Walker stalking and watching PLAINTIFF'S home as usual. 1/6/24




Two different racist Henderson PD officers harassing PLAINTIFF for no reason. These racist, racially profiling an innocent citizen, officers' lives were at risk because South



Two of PLAINTIFF'S racist neighbors (268 and 271 Bluefield lane, Henderson, NV 89074) in the street conspiring against PLAINTIFF, who are admittedly involved with LVMPD. These racist, civilly conspiring neighbors' lives were at risk because Southwest Gas did not notify PLAINTIFF about a gas leak from earlier in the year.



Two of PLAINTIFF'S racist neighbors (270 Fairbrook Drive, Henderson, NV 89074) stripping and bending over in broad daylight with children around who are admittedly involved with LVMPD. These racist, civilly conspiring neighbors' lives were at risk because Southwest Gas did not notify PLAINTIFF about a gas leak from earlier in the year.





Two of PLAINTIFF'S racist neighbors (270 and 268 Bluefield lane, Henderson, NV 89074) in the street conspiring against PLAINTIFF, who are admittedly involved with LVMPD. These racist, civilly conspiring neighbors' lives were at risk because Southwest Gas did not notify PLAINTIFF about a gas leak from earlier in the year. Neighborhood children's lives were at risk because Southwest Gas did not notify PLAINTIFF about a gas leak from earlier in the year.





One of PLAINTIFF'S racist neighbors (270 Bluefield lane, Henderson, NV 89074) in the street conspiring against PLAINTIFF and vandalizing her car, who are admittedly involved with LVMPD. This racist, civilly conspiring neighbors' lives were at risk because Southwest Gas did not notify PLAINTIFF about a gas leak from earlier in the year.







1/5/23 Mr. Walker has spread his racism across the street this time. He conspires with more racist neighbors from 271 Bluefield Lane, Henderson, NV 89074. He spent almost 20 minutes yelling, pointing, screaming and acting a complete nut trying to get attention.

PLAINTIFF has preexisting conditions that stress and anxiety exacerbate. After the harassment, mental anguish and racism PLAINTIFF's neighbors, law enforcement and The Heartland HOA subjected PLAINTIFF to , her asthma, stress, anxiety and HS symptoms were exacerbated. Since PLAINTIFF moved to Las Vegas she has had issues trying to find suitable medical treatment because of the constant police involvement in MS. WARREN's civil matters. PLAINTIFF's first appointment with Hilton Grand Vacations located at 5701 W Charleston

Blvd, Unit 100, Las Vegas, NV 89146 was on November 18, 2022. At this appointment MS. WARREN saw Physician's assistant Jesse Connors. In this appointment PLAINTIFF explained that law enforcement chased her and her mother out of Northern Nevada and that LAS VEGAS METROPOLITAN POLICE DEPARTMENT has picked up the harassment where Northern Nevada Law enforcement left off. PLAINTIFF explained that she has a history of depression, anxiety, asthma and other ailments that stress exacerbated. PLAINTFF asked Mr. Connors to obtain copies of her medical records from her medical facility in Reno Nevada. It was revealed later that Mr. Connors never sought to obtain copies of PLAINTIFF's medical records from her previous medical facility in Reno as she asked on 11/18/22. MS. WARREN asked Mr. Connors for a referral for mental health as law enforcement's constant interference was affecting her negatively. Mr. Connors said that he would obtain medical records from PLAINITFF'S previous medical facility and would get her a mental health referral. Mr. Connors suggested that PLAINTIFF get an EKG, get a chest x ray and he would set up an appointment for a Pulmonary Function Test (PFT). Without an evaluation or ever treating PLAINTIFF, Mr. Connors prescribed MS. WARREN 10mg tablets of Escitalopram with two refills. Escitalopram is part of a Bi-Polar treatment. However, PLAINTIFF had not been diagnosed with bi-polar disorder by anyone. A major warning for this medication is that one should seek medical attention right away if you have symptoms of serotonin syndrome, such as: agitation, hallucinations, fever, sweating, shivering, fast heart rate, muscle stiffness, twitching, loss of coordination, nausea, vomiting, or diarrhea. MS. WARREN had never been on this medication and was not informed of any side effects of the medication before taking it per Mr. Connors instructions. MS. WARREN was not on any mental medication before encountering the treatment from BDJ Realty, Laura Martinez, Michael Sliva, Hilton Grand Vacations, Dollar

Tree, Cano Health, T-mobile, Winco, USPS, VONS, Hunter Warfield, PENFED, Sparks PD, Henderson PD, Lincoln Financial Group, Dushan/Lisane Forrello, Shad Zaman, Calportland, Ultimate Staffing, Southwest Airlines, Hilton, Apple One, Anthem Blue Cross and Blue Shiels, VIP Auto Services nor Walmart.

Mr. Connors told PLAINTIFF that the scheduling department would be contacting her shortly after her 11/18/22 visit. Immediately after the appointment with Mr. Connors, his medical assistant, Juliana Ramirez, took MS. WARREN to get her EKG test. While in the room Juliana instructed PLAINTIFF to undress above the waist, including removing her bra and shirt. PLAINTIFF complied with the instructions. The EKG was performed by Ms. Ramirez. After the testing, Juliana instructed PLAINTIFF to keep her bra off but put on her shirt because she was going to get her chest Xray. PLAINTIFF complied with these instructions as well. Juliana led MS. WARREN to a chair outside a small room. A Hispanic male came out of the small room and asked PLAINTIFF her name. MS WARREN told the male her name and he led her inside the room. After the chest x ray, the male instructed PLAINTIFF to "get dressed" in the same room. The male could see the PLAINTIFF clearly and she inquired about the visibility of dressing in front of the male. The male told MS. WARREN that everyone gets dressed in the room with him in the room. Outside the small room, PLAINTIFF saw a bathroom right next to the room and wondered why the male would not have instructed her to change inside the bathroom right next door.

MS. WARREN's mother is over 70 years old so having a medical provider in close proximity is paramount to her health. PLAINTIFF, despite her apprehensions, recommended Hilton Grand Vacationsto her mother. On 11/29/2022 PLAINTIFF's mother went to an appointment with Mr. Connors at the Hilton Grand Vacationslocated at 5701 W Charleston Blvd,

Unit 100, Las Vegas, NV 89146. Mr. Connors told PLAINTIFF's mother that he would be getting her medical records from her medical facility in Carson City just like he told the PLAINTIFF. PLAINTIFF's mother is not sure if Mr. Connors actually sought to obtain those records. Mr. Connors also advised MS. WARREN's mother to get a PFT, get a chest x ray and be seen by a Ear Nose and Throat (ENT) specialist. Immediately after the appointment, PLAINTIFF went to the waiting room and PLAINTIFF's mother went to get her chest x ray. Upon exiting Hilton Grand Vacations PLAINTIFF's mother told her that she experienced the same "undressing" incident that PLAINTIFF had with the male who conducts the x rays. PLAINTIFF could see her mother was uncomfortable and this bothered her immensely.

It has to be noted that before the 11/29/22 appointment at Cano Health, which was scheduled at 10:30 am, PLAINTIFF and her mother were stalked and followed by LAS VEGAS METROPOLITAN POLICE DEPARTMENT officers. They were pulled over by a black male officer who was the driver of the police SUV and had a white female officer in the passenger seat. PLAINTIFF knows they were being stalked and followed because PLAINTIFF and her mother had just moved into a new place, less than a week before being pulled over by LAS VEGAS METROPOLITAN POLICE DEPARTMENT, and no one had their new address. There would have been no way LAS VEGAS METROPOLITAN POLICE DEPARTMENT had their new address, without illegally stalking, following and monitoring the PLAINTIFF and her mother as their new place is in another city/jurisdiction and far away from their previous home where LAS VEGAS METROPOLITAN POLICE DEPARTMENT were falsely called multiple times by PLAINTIFF'S neighbors. In the previously mentioned police misconduct cases involving LAS VEGAS METROPOLITAN POLICE DEPARTMENT, neighbors Laura Martinez and Michael Silva are named, with video evidence, as being the culprits who were

prompted by LAS VEGAS METROPOLITAN POLICE DEPARTMENT to call them so PLAINTIFF could be falsely arrested again or evicted.

PLAINTIFF's mother, had her PFT scheduled for 12/8/22. While in the waiting room the PFT specialist, his name is Uday, approached MS. WARREN's mother and told her that he does not have the mouth pieces, which are mandatory to conduct the test, and he has no idea when he would get them and that she needs to reschedule her PFT somewhere else as he was going out of town on a vacation for two months. There was no forewarning or a courtesy call to inform PLAINTIFF'S mother of this issue.

PLAINTIFF's mother had her Ear Nose and Throat (ENT) appointment on 12/12/22 with Dr. Kim of the UNLV medical center located at 5320 S. Rainbow, Suite 250 Las Vegas, NV. While in her appointment PLAINTIFF and her mother complained to Dr. Kim about their treatment by Cano Health. They both explained what happened with "undressing" in front of a male x ray tech, Uday having no equipment to conduct PFTs for patients with breathing issues, and just the entire medical negligence of Cano Health. Dr. Kim thanked both ladies for their honesty and informed them that he would take their concerns seriously and inform the proper authorities. Dr. Kim told PLAINTIFF and her mother that he did not want to send any of his patient's to this medical facility after hearing their horror stories. PLAINTIFF and her mother noticed a LAS VEGAS METROPOLITAN POLICE DEPARTMENT SUV parked outside the medical facility during the mother's appointment. They made a comment to Dr. Kim and noticed that the LAS VEGAS METROPOLITAN POLICE DEPARTMENT SUV did not leave until right before the appointment was over. Again, this proves the constant stalking, following, surveilling, monitoring etc. by law enforcement illegally.

During the month of November and December PLAINTIFF heard from the Hilton Grand Vacations scheduling department. They informed MS. WARREN that Axis psychiatry would be scheduling her an appointment. MS. WARREN heard from Axis and they scheduled her for an appointment on 12/26/22. Later in December when PLAINTIFF called Axis to confirm the appointment the receptionist told PLAINTIFF that their building was closed due to the observance of Christmas on 12/26/22. When PLAINTIFF inquired as to why she was scheduled for an appointment on a day they knew they were closed PLAINTIFF received no response. Then PLAINTIFF was informed that Axis would not have an appointment open for several months.

On 12/18/22 PLAINTIFF had a follow up appointment with Mr. Connors. PLAINTIFF informed Mr. Connors that Axis psychiatry scheduled her on a day they were closed and she wanted another referral. At the 12/18/22 appointment PLAINTIFF's blood pressure was extremely high as she had been chased around the Hilton Grand Vacation sparking lot by strangers and had several LAS VEGAS METROPOLITAN POLICE DEPARTMENT squad cars tailing her from her new home to the appointment. PLAINTIFF was scared and her blood pressure exhibited this. Mr. Connors had PLAINTIFF's blood pressure checked several times and it was elevated the entire time. Having law enforcement involving themselves in every aspect of PLAINTIFF's life was affecting her health.

PLAINTIFF waited to hear from Cano Health's scheduling department to schedule another psych appointment. PLAINTIFF ended up calling Hilton Grand Vacations as she did not hear from the scheduling department as expected. PLAINTIFF was informed that she would have to call around Las Vegas for a psych doctor as their scheduling department would not help her. PLAINTIFF informed the scheduling department that it is their job to find a doctor for the

PLAINTIFF. PLAINTIFF was told that "normally" their department does call around and find doctors for patients but in PLAINTIFF's case they would not help her.

Because law enforcement went to PLAINFIFF's job at Hilton Grand Vacations (HILTON GRAND VACATIONS) and slandered her there, she was on an ongoing ADA medical leave of absence since 11/15/22. She was trying to get Short Term Disability from Lincoln Financial Group (LFG). While trying to get all the medical paperwork for LFG to make a decision, MS. WARREN was run around by Mr. Connors office and LFG. A decision on PLAINTIFF'S case was intentionally delayed from both sides. After all the stress of PLAINTIFF'S job, her mother's health, trying to get mental help, no income from any source, law enforcement constantly bothering her, and no one helping the PLAINTIFF, all this stress was taking a toll on her health.

One of the reasons LFG denied PLAINTIFF's short term disability was because their nurse stated that PLAINTIFF was not seen from a licensed doctor or psychiatric doctor to correctly diagnose the PLAINTIFF, no evaluation was performed before giving PLAINTIFF Escitalopram and no follow up was performed by Hilton Grand Vacations Ito see if the medication was correct and helped the PLAINTIFF. Mr. Connors did not have the medical license to prescribe the PLAINTIFF any psych medication, especially with a medication like Escitalopram.

During December and January 2023 PLAINTIFF never saw Mr. Connors again until January 31, 2023. PLAINTIFF was scheduled for a Zoom appointment. During this appointment, Mr. Connors was clearly upset, and his facial expressions and treatment of PLAINTIFF exhibited this disdain. Mr. Connors stated on a recorded Zoom call that

PLAINTIFF needs a doctor and Cano Health doesn't have a doctor therefore Cano Health can not see or treat the PLAINTIFF anymore.

When PLAINTIFF went out on her ADA leave from Hilton Grand Vacations she was asked to provide her former employer with a Team Member Accident Report. In this report PLAINTIFF explained that along with the stress and discrimination she faced at work, Michael Silva and Laura Martinez's harassment and constant false police calls while she worked from home led to her having to go out sick on the continuous ADA leave. On 11/25/22 PLAINITFF went to Hilton Grand Vacation's worker's comp doctor at the Polaris Concentra medical facility. In PLAINTIFF'S Injury care Patient Information form MS. WARREN explained, "I have preexisting medical conditions which are exacerbated by stress. Because LVMPD and Sparks PD are stalking me and retaliating against me for suing them because of a false arrest in 2020, they have used my neighbors, coworkers, supervisors, landlords and strangers to continue to harass me." The doctor recommended that PLAINTIFF be treated with counseling to help her. Hilton Grand Vacations denied PLAINTIFF'S claims so she is without treatment to this day.

## II.

## JURISDICTION AND VENUE

1. "A court of this state may exercise jurisdiction over a party to a civil action on any basis not inconsistent with the Constitution of this state or the Constitution of the United States." NRS 14.065.

2. Jurisdiction in this Court is proper because this is a complaint seeking monetary relief in excess of $10,000, the PLAINTIFF is a resident citizen of Nevada, and the DEFENDANT lives and does business in Las Vegas, Nevada.

3. Venue is proper in the Eighth Judicial District Court of Clark County because:

a. Under NRS 13.020, "Actions for the following causes must be tried in the county where the cause, or some part thereof, arose, subject to the power of the court to change the place of trial." All of the events giving rise to this claim have occurred within Clark County;

b. The PLAINTIFF currently resides in Las Vegas, Nevada, where the events or omissions giving rise to the claims of this case occurred.

## III.

## PARTIES

4. At all times relevant to this action, PLAINTIFF was a resident of the State of Nevada, County of Clark.
5. DEFENDANTS operate private businesses, are governmental entities or reside in Clark County, Nevada.

## IV.

## GENERAL ALLEGATIONS COMMON TO ALL CLAIMS

6. PLAINTIFF is a forty-six year old African-American woman.
7. PLAINTIFF suffers from pre-existing alopecia, depression, and anxiety; as a result of her ordeal at the hands of all named DEFENDANTS, she now also suffers from hidradenitis suppurativa (HS), PTSD, and paranoia.
8. PLAINTIFF has been a resident of the state of Nevada throughout the entirety of this ordeal.
9. In July 2021, PLAINTIFF and her elderly mother moved to Las Vegas from Reno due to her fear of retribution by SPARKS POLICE DEPARTMENT.
10. Since her move, PLAINTIFF has been subject to ongoing surveillance and interference in Las Vegas by LAS VEGAS METROPOLITAN POLICE DEPARTMENT, and all named DEFENDANTS detailed infra.
11. PLAINTIFF has had additional problems happen to her as a result of interference by, on information and belief, the LAS VEGAS METROPOLITAN POLICE DEPARTMENT; these include but are not limited to:

a. Possible involvement in PLAINTIFF'S booking photo being released to her new employer in Las Vegas;

b. Known interference with PLAINTIFF'S and her mother's property as it was being transported by U-Haul from Northern to Southern Nevada, who admitted to PLAINTIFF on the telephone their employees' collusion with both SPARKS POLICE DEPARTMENT and the LAS VEGAS METROPOLITAN POLICE DEPARTMENT when transporting and temporarily losing the property;

c. Unwarranted surveillance at PLAINTIFF'S new Airbnb upon first moving to Las Vegas;

d. Being followed by both uniformed and plain clothes LAS VEGAS METROPOLITAN POLICE DEPARTMENT officers when PLAINTIFF leaves her apartment building by car, Uber, Lyft, Taxi or rental car;

e. Being told by her internet service provider T-Mobile that the POLICE paid for her internet connection;

f. Being harassed at home, including by having LAS VEGAS METROPOLITAN POLICE DEPARTMENT bang on her door, allegedly at the behest of a neighbor, and wait around her apartment at night;

g. Being accused by the property managers at her building of violating community standards using videos skimmed from PLAINTIFF'S own surveillance cameras operating on

PLAINTIFF'S own WiFi connection (the WiFi that T-Mobile has admitted the POLICE compensate).

h. On information and belief, Law enforcement contacted all named DEFENDANTS.

## —STATE CLAIMS—

## V.

## FIRST CLAIM FOR RELIEF

***Unlawful Injury or Loss Suffered by a Vulnerable Person, NRS § 41.1395***

12. PLAINTIFF incorporates by reference all other allegations in this Complaint, as though fully set forth herein.
13. PLAINTIFF is a vulnerable person as defined by NRS § 41.1395 4(e)(1-2) in that she has a physical health impairment—alopecia—and psychological health impairments—depression and anxiety—that limit one or more of her major life activities, and she has medical records of these impairments.
14. Because of her ordeal, PLAINTIFF now also suffers from a very painful skin condition called hidradenitis suppurativa, and from new psychological problems including PTSD and paranoia.
15. DEFENDANTS were unjustified when they inflicted injury, pain, and anguish on PLAINTIFF with their negligence and failure to provide fair and appropriate treatment to her.
16. DEFENDANTS have additionally exploited the medical vulnerability of a vulnerable Nevadan, in contravention of state law.
17. DEFENDANTS working in tandem with law enforcement agencies are severely exacerbating PLAINTIFF'S pre-existing disabilities, in contravention of state law.
18. Accordingly, PLAINTIFF is entitled to recover all available damages, including—but not limited to—lost wages, pain and suffering, emotional distress and punitive damages, if available, as allowed by law, in an amount to be determined at trial.
19. In this particular Claim for Relief, PLAINTIFF is entitled to recover two times her damages, as allowed under NRS § 41.1395(1), in an amount to be determined at trial.

## VI.

## SECOND CLAIM FOR RELIEF

***Intentional Infliction of Emotional Distress***

20. PLAINTIFF incorporates by reference all other allegations in this Complaint, as though fully set forth herein.
21. DEFENDANTS acted to intentionally to ignore PLAINITFF'S rights, the laws and the lease. PLAINTIFF had a deadly gas leak and was never notified by either company of this matter. They had a worker come to PLAINTIFF'S home unannounced which frightened her and her

elderly mother. After her left PLAINTIFF'S home we went to conspire with PLAINTIFF'S racist neighbor who is admittedly working with LVMDP.

22. DEFENDANTS continued to act intentionally to have law enforcement get involved in PLAINTIFF'S civil matters. Mr. Walker has slandered, defamed PLAINTIFF'S character and gave libelous statements against PLAINTIFF. Mr. Walker did establish a connection between law enforcement in Northern Nevada and Southern Nevada.

23. After months of showing evidence of Mr. Walker and the other neighbors he conspires with to harass, stalk, follow, make false calls to law enforcement on PLAINTIFF and letting their children vandalize PLAINTIFF'S home/yard unsupervised, PLAINTIFF has suffered emotional distress.

24. MS. WARREN still has not been able to get a regular doctor in the Las Vegas area since negligently being thrown out by Mr. Connors and Cano Health.

25. Now, PLAINTIFF faces ongoing harassment and surveillance by LAS VEGAS METROPOLITAN POLICE DEPARTMENT and HENDERSON POLICE DEPARTMENTS even though she has committed no crime in either Clark or Washoe Counties. In order to help LAS VEGAS METROPOLITAN POLICE DEPARTMENT in their ongoing litigation, all named DEFENDANTS negligently involved herself in PLAINTIFF'S police misconduct cases.

26. As a result of the actions of the DEFENDANTS, the PLAINTIFF has suffered severe emotional distress and physical harm.

27. The intentional behavior of DEFENDANTS is the direct and proximate cause of PLAINTIFF'S deteriorated health and ongoing mental anguish.

28. Accordingly, PLAINTIFF is entitled to recover all available damages, including—but not limited to— lost wages, pain and suffering, emotional distress and punitive damages, if available, as allowed by law, in an amount to be determined at trial.

## VII.

## FOURTH CLAIM FOR RELIEF

### *Civil Conspiracy*

29. PLAINTIFF incorporates by reference all other allegations in this Complaint, as though fully set forth herein.

30. In Nevada, "[a]n actionable civil conspiracy is a combination of two or more persons who, by some concerted action, intend to accomplish some unlawful objective for the purpose of harming another which results in damage." Collins v. Union Fed. Savings Loan, 99 Nev. 284, 303 (Nev. 1983).

31. PLAINTIFF has been harassed by LAS VEGAS METROPOLITAN POLICE DEPARTMENT and HENDERSON POLICE DEPARTMENT since moving to Southern Nevada.

32. PLAINTIFF has never been convicted of a crime in Las Vegas or Clark County, so it is a mystery why LAS VEGAS METROPOLITAN POLICE DEPARTMENT or HENDERSON POLICE DEPARTMENT would harass her—but for their knowledge that she is disliked by SPARKS POLICE DEPARTMENT and law enforcement in general.

33. It would be unlawful for LAS VEGAS METROPOLITAN POLICE DEPARTMENT and HENDERSON POLICE DEPARTMENT to do the following without a warrant and without probable cause (this list is not exhaustive):

a. Surveil Ms. WARREN at her Airbnb right when she moved to Las Vegas;

b. Place Ms. WARREN under investigation right when she moved to Las Vegas;

c. Participate in frustrating Ms. WARREN's access to her property as it was being transported south by U-Haul;

d. Release Ms. WARREN'S booking photo from Washoe County to her new, Las Vegas employer long after she had been released from jail;

e. Tail Ms. WARREN in her car whenever she is driving in Las Vegas, using a rental car or taking a Lyft or Uber;

f. On information and belief, conspire with the property managers at Ms. WARREN's apartment building to entrap Ms. WARREN in perceived community standard violations using videos "skimmed" from her own surveillance cameras operating on PLAINTIFF'S own WiFi

g. Intercept Ms. WARREN'S telecommunications, including her telephone and internet connection, as by paying for the connection out of a "police account."

h. Stop or interfere with PLAINTIFF and/or PLAINTIFF'S mother from obtaining medical help in either Northern or Southern Nevada. Medical help includes dental, medical, psychiatric, physical rehabilitation, psychology and any other "medical" help they may need.

i. Conduct false wellness checks based on hearsay and erroneous information from unknown sources.

34. If LAS VEGAS METROPOLITAN POLICE DEPARTMENT or HENDERSON POLICE DEPARTMENT has a cognizable warrant or probable cause against Ms. WARREN for an alleged violation of the law in Clark County, PLAINTIFF asks to see that document.

35. Barring this, her treatment by LAS VEGAS METROPOLITAN POLICE DEPARTMENT and HENDERSON POLICE DEPARTMENT is harassment meant to frighten, embarass and belittle her.

36. To the extent that LAS VEGAS METROPOLITAN POLICE DEPARTMENT and HENDERSON POLICE DEPARTMENT illegally undertakes such treatment of Ms. WARREN at the behest of or for the benefit of SPARKS POLICE DEPARTMENT in Washoe County, the three police departments are engaged in a civil conspiracy with one another against Ms. WARREN.

37. The "primary purpose" of such partnership is not protection of the community, but rather, "to cause injury" to Ms. WARREN, who is alone but for taking care of her elderly mother. Ungaro v. Desert Palace, Inc., 732 F. Supp. 1522, 1533 n.3 (D. Nev. 1989).

38. And such civil conspiracy, based in intentional tort, is illegal in this state.

39. Accordingly, PLAINTIFF is entitled to recover all available damages, including—but not limited to— lost wages, pain and suffering, emotional distress and punitive damages, if available, as allowed by law, in an amount to be determined at trial.

## VI.

## VIOLATION OF CLEARLY ESTABLISHED LAW

*Unlawful Discrimination, Harassment, and Retaliation Based on Disability Americans with Disabilities Act and Amendments Act, 42 U.S.C. § 12131 et seq. and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794* (Asserted against ALL DEFENDANTS)

19.. PLAINTIFF incorporates by reference all other allegations in this Complaint, as though fully set forth herein.

20. Henderson Police Department is subject to Title II of the ADA since they are public entities as defined by 42 U.S.C. § 12131(1); their operations constitute local government.

21. Under the ADA's anti-discrimination provision, codified at 42 U.S.C. § 12132, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."

22. PLAINTIFF is a qualified individual with a disability as codified at 42 U.S.C. § 12132 because she meets the "essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity."

23. Not only does PLAINTIFF suffer from the physical disability of alopecia, she suffers from mental health conditions that have been exacerbated as the direct and proximate result of her treatment by DEFENDANTS Henderson Police Department.

24. DEFENDANTS Henderson Police Department, and their Officers, were on notice that PLAINTIFF was a qualified individual under Title II for reasons including, but not limited to, the fact that PLAINTIFF'S alopecia was made plain at the time when her booking photo was taken.

25. DEFENDANT Henderson Police Department, through their officers, directors, managers, supervisors, agents, and/or employees discriminated against PLAINTIFF on the basis of her

disabilities by following and chasing Plaintiff from her intended path of travel where she had the legal right to be on two separate dates on May 6, 2023: May 8, 2023.

26. As a result of this intentional discrimination by DEFENDANT Henderson Police Department, in violation of Title II, PLAINTIFF was excluded from equal access to programs and services meant to ameliorate her disability, like the tranquility of her home.

27. As a result of this intentional discrimination by DEFENDANT Henderson Police Department, in violation of Title II, PLAINTIFF was profiled on May 11, 17 and 31, 2023 by OFFICER Colenamn and DOE female officer, by bringing Stephanie Nickson, Licensed Clinical Social Worker of the Mobile Crisis Intervention Team to imply Plaintiff is "unstable" simply because PLAINTIFF is protected herself and her family.

28. By bringing Ms. Nickson and implying PLAINTIFF is unstable, OFFICER Colemanm was likely suggesting that PLAINTIFF needed a Legal 2000—a 72-hour civil commitment that functionally operates as if one were jailed—simply because she has defended herself from racism and illegal activities from law enforcement.

29. PLAINTIFF continues to be profiled by LVMPD and Henderson Police Department in that she is surveilled, followed, harassed, and has had her telecommunications intercepted, as pled elsewhere in this Complaint; all of these actions by HPD prey upon PLAINTIFF as a disabled American, a member of a protected class, at the same time that these actions also exacerbate and make worse PLAINTIFF'S disabilities.

30. PLAINTIFF seeks a permanent injunction requiring DEFENDANT Henderson Police Department, WASHOE to comply with the ADA in the future by ensuring that qualified individuals are not impermissibly profiled as criminal threats on the basis of their disabilities.

31. PLAINTIFF seeks a declaration that DEFENDANTS Henderson Police Department, violated her rights under the ADA.

32. As a direct and proximate result of DEFENDANTS' intentional discrimination against her, PLAINTIFF sustained damages entitling her to equitable relief, as allowed by law, according to proof at trial.

33Accordingly, PLAINTIFF is entitled to recover all available damages, including—but not limited to—punitive damages, if available, as allowed by law, in an amount to be determined at trial.

VII.

*42 U.S.C. § 1981 Impairment of PLAINTIFF'S Equal Rights Under Color of State Law —*

*PROTECTION FROM DISCRIMINATION ON THE BASIS OF RACE—*

(Asserted Against ALL DEFENDANTS)

34. PLAINTIFF incorporates by reference all other allegations in this Complaint, as though fully set forth herein. 64. PLAINTIFF is African-American.

35. During the incidents described above, PLAINTIFF was wrongfully stalked, harassed and surveilled.

36. Throughout this entire ordeal, DEFENDANTS were on notice that PLAINTIFF is African-American.

37. When DEFENDANTS on behalf of the state, their actions were not rationally related to the legitimate government interest of protecting the public from harm; rather, their actions were as a result of discriminatory animus toward AfricanAmericans.

38 It is not in the public interest for the Defendants, acting under color of law, to target individuals on the basis of their race.

39. As such, the behavior of DEFENDANTS is not rationally related to any legitimate government interest.

40. PLAINTIFF'S treatment by the defendants therefore violated her civil right not to have her rights impaired on the basis of race as enshrined at section 1981 of Chapter 42 of the U.S. Code.

41. "There is no statutory cap on damage awards available for § 1981 claims." Pavon v. Swift Transp. Co., Inc., 192 F.3d 902, 910 n.2 (9th Cir. 1999). Accordingly, PLAINTIFF is entitled to recover all available damages, including—but not limited to—punitive damages, if available, as allowed by law, in an amount to be determined at trial.

—THEORIES OF LIABILITY APPLICABLE TO ALL CLAIMS—

X.

*Respondeat Superior Liability4 Vicarious Liability of Employers for Conduct by Their Employees,*

*Occurring in the Course of their Employment*

(Asserted against ALL DEFENDANTS)

---

Respondeat superior is not properly a cause of action or a claim for relief, but rather, a method of assigning liability to an employer for the conduct of its employees. See Fernandez v. Penske Truck Leasing Co., L.P. 2021 WL 1832571, 1 (D. Nev. 2012) (citing Cruz v. Durbin, 2011 WL 1792765 (D. Nev. 2011)). Accordingly, this section is not labeled as a claim for relief, but it seeks to assign liability to all defendants.

42. PLAINTIFF incorporates by reference all other allegations in this Complaint, as though fully set forth herein.

43. At all relevant times herein, OFFICERS Colemanm, and DOE INDIVIDUALS 6 THROUGH 50, and each of them, were under the control of their respective employers, including DEFENDANTS Henderson Police Department, and DOE GOVERNMENT ENTITIES 4 through 10.

44. At all relevant times herein, the acts of OFFICERS Colemanm, and DOE INDIVIDUALS 6 THROUGH 50, and each of them, were under the control of their respective employers, including DEFENDANTS Henderson Police Department, and DOE GOVERNMENT ENTITIES 4 through 10, and each of them, complained of herein, caused injury and harm to PLAINTIFF and created culpability for violating the law, as alleged herein.

45. At all relevant times herein, the culpable and injurious acts of OFFICERS Colemanm, and DOE INDIVIDUALS 6 THROUGH 50, and each of them, were under the control of their respective employers, including DEFENDANTS Henderson Police Department, and DOE GOVERNMENT ENTITIES 4 through 10, and each of them, occurred when they were under the control of their respective employers, DEFENDANTS Henderson Police Department, and DOE GOVERNMENT ENTITIES 4 through 10, and such acts by these employees occurred within the course and scope of their employment.

46.Based on the foregoing, PLAINTIFF is entitled to invoke the doctrine of respondeat superior to impose vicarious liability on DEFENDANTS Henderson Police Department, The City of Henderson , the County of Clark and DOE INDIVIDUALS for the culpable conduct of these employees occurring within the course and scope of their employment.

VIII.

*Negligent Hiring and Entrustment5 Vicarious Liability of Employers for Hiring Bad Employees and Entrusting Sensitive Tasks to Employees not Able to Carry Them Out*

(Asserted against ALL DEFENDANTS)

47. PLAINTIFF incorporates by reference all other allegations in this Complaint, as though fully set forth herein.

48. DEFENDANTS Henderson Police Department, and DOE Government Entities 4 through 10 had a duty to PLAINTIFF and to the public to use reasonable care in the training and supervision of their police employees to ensure that they were fit for their positions, including by training police employees to discern the difference between the true victim and the true perpetrator of a crime and impermissible profiling on the basis of race, gender, and disability.

49. DEFENDANTS Henderson Police Department, and DOE Government Entities 4 through 10 had a duty to Plaintiff and to the public to train their police officers regarding, but not limited to:

a. Recognizing and understanding animal control laws regarding unleashed dogs;

b. Recognizing and understanding when a false police call has occurred;

c. Recognizing and understanding when a hate crime has occurred;

d. Recognizing and understanding what self-defense is and when its use is merited;

e. Recognizing and understanding the difference between genuine mental instability and the instinct that all people have to defend themselves;

f. Recognizing and understanding that an individual cannot trespass when walking peacefully inside their own neighborhood;

g. Recognizing and understanding what constitutes impermissible bias and profiling on the basis of race;

h. Recognizing and understanding what constitutes impermissible bias and profiling on the basis of disability;

i. Recognizing and understanding what constitutes impermissible bias and profiling on the basis of gender; j. Recognizing and understanding how to handle vulnerable Nevadans who are protected by NRS § 41.1395;

k. Recognizing and understanding that ongoing surveillance and harassment of private citizens is not in the public interest, certainly when those individuals are not formal criminal suspects

l. Complying with the Fourth, Eighth, and Fourteenth Amendments to the U.S. Constitution;

m. Complying with all federal laws regarding wiretapping and electronic communication interference.

---

Negligent hiring and entrustment are not properly causes of action or claims for relief, but rather, methods of assigning liability to an employer for the conduct of its employees. To state a claim for negligent training and supervision in Nevada, the Plaintiff must show "(1) a general duty on the employer to use reasonable care in the training and/or supervision of employees to ensure that they are fit for their positions; (2) breach; (3) injury; and (4) causation." Okeke v, Biomat USA, Inc., 927 F. Supp. 2d 1021, 1028 (D. Nev. 2013) citing Reece v. Republic Services, Inc., 2011 WL 868386, *11 (D. Nev. Mar. 10, 2011). Claims for negligent training and supervision are based upon the premise that an employer should be liable when it places an employee—who it knows or should have known behaves wrongfully— in a position in which the employee can harm someone else. Id. citing Daisley v. Riggs Bank, N.A., 372 F.Supp.2d 61, 79 (D.D.C.2005).

50. On information and belief, at all times relevant hereto, DEFENDANTS Henderson Police Department, and DOE GOVERNMENT ENTITIES 4 through 10 through their officers, managers, supervisors, agents, and/or employees, were responsible for training, supervising, and retaining employees, including training and supervision pertaining to OFFICERS Colemanm and DOE INDIVIDUALS 6 THROUGH 50, and each of them.

51. On information and belief, at all times relevant hereto, DEFENDANTS Henderson Police Department, and DOE GOVERNMENT ENTITIES 4 through 10 through their officers, managers, supervisors, agents, and/or employees, through their officers, managers, supervisors, agents, and/or employees, and each of them, owed a general duty to use reasonable care in the training, supervision, and retention of such employees, including OFFICERS Colemanm and DOE INDIVIDUALS 6 THROUGH 50, and each of them, to make sure that their employees are fit for their positions and to prevent harm to third parties, including PLAINTIFF, by the employees' tortious or wrongful conduct, of the type alleged herein.

52. On information and belief, at all times relevant hereto, DEFENDANTS Henderson Police Department, and DOE GOVERNMENT ENTITIES 4 through 10 through their officers, managers, supervisors, agents, and/or employees breached this duty of care when they placed and retained OFFICERS Colemanm and DOE INDIVIDUALS 6 THROUGH 50, and each of them, in their positions as police officers and corrections officers without properly training and supervising OFFICERS Colemanm and DOE INDIVIDUALS 6 THROUGH 50, and each of them, whom they knew or should have known would fail to properly perform their duties, and that in the position in which they were placed and retained, OFFICERS Colemanm and DOE INDIVIDUALS 6 THROUGH 50, and each of them, could harm someone innocent, including PLAINTIFF, as alleged herein to.

53. On information and belief, DEFENDANTS Henderson Police Department, and DOE GOVERNMENT ENTITIES 4 through 10 through their officers, managers, supervisors, agents, and/or employees were negligent in the training, supervision and retention of OFFICERS Colemanm and DOE INDIVIDUALS 6 THROUGH 50, and each of them, including but not limited to training in the areas of: recognizing selfdefense, recognizing trespass, racial bias, use of force, civil rights, deescalation, and identifying the actual victims of crimes, the lack of training in which caused the harm and injuries to PLAINTIFF, as alleged herein.

54. When engaging in their culpable conduct described herein, DEFENDANTS Henderson Police Department, and DOE GOVERNMENT ENTITIES 4 through 10 sued in this cause of action, and each of them, acted with malice, express or implied, in that DEFENDANTS engaged in despicable conduct by virtue of the egregious nature of their failures to properly train, supervise, and retain the individuals responsible for the safety and rights of PLAINTIFF, and these DEFENDANTS had a conscious disregard of the rights or safety of PLAINTIFF and of vulnerable persons similarly situated to PLAINTIFF.

55. DEFENDANTS exhibited a conscious disregard of PLAINTIFF'S rights and/or safety when they knew of the probably harmful consequences of their wrongful acts of neglecting to properly train, supervise, and retain OFFICERS Colemanm and DOE INDIVIDUALS 6 THROUGH 50, and each of them, the probable harmful consequences of which included physical and mental injury as well as the violation of PLAINTIFF'S rights that DEFENDANTS recklessly, willfully, and/or deliberately failed to act to avoid.

56. DEFENDANTS breached their duty to PLAINTIFF when they OFFICERS Colemanm and DOE INDIVIDUALS 6 THROUGH 50, and each of them, to take adverse action against

PLAINTIFF on the basis of profiling bias that targeted PLAINTIFF because of her race, disability, and gender.

57. The hostile and capricious actions of DEFENDANTS' employees directly and proximately caused injury to PLAINTIFF.

58. DEFENDANTS Henderson Police Department, and DOE GOVERNMENT ENTITIES 4 through 10 should have known better than to entrust sensitive screening of individuals to police employees who were liable to treat those individuals as a public threat simply by virtue of their race, disability, and gender.

59. The incompetence of DEFENDANTS' negligently-hired and poorly-trained police employees was both the direct and proximate cause of PLAINTIFF'S injuries.

60. PLAINTIFF has sustained damage including but not limited to: new psychological and physical conditions, moving fees to move both within Reno and from Reno to Las Vegas, embarrassment in front of neighbors and work colleagues, lost work, lost property, damage to her reputation, profiling her for having a disability that is protected by the ADA and Nevada state law, costs associated with having to constantly change telephone numbers, and capricious exclusion from an apartment complex where she had the legal right to be.

61. Accordingly, PLAINTIFF is entitled to recover all available damages, including—but not limited to—punitive damages, if available, as allowed by law, in an amount to be determined at trial.

**—REMEDIES COMMON TO ALL CLAIMS—**

**IX.**

***Declaratory Relief***

62. PLAINTIFF incorporates by reference all other allegations in this Complaint, as though fully set forth herein.

63. Pursuant to NRS 30.030, NRS 30.100, NRS 651.090(2)(a), and the Court's inherent equitable powers, PLAINTIFF seeks, and is entitled to have, declaratory relief awarded in her favor, to declare her rights and obligations of the DEFENDANTS sued herein, where such declaratory relief is necessary and proper to the termination of the disputes raised herein, including as specifically prayed for below.

64. This includes declaratory relief whereby the Court issues a declaration that DEFENDANTS unlawfully discriminated against, harassed, and retaliated against PLAINTIFF and otherwise violated PLAINTIFF'S rights under the law, and any other declaration the Court finds necessary and proper.

## X.

## PRAYER FOR RELIEF

WHEREFORE, PLAINTIFF prays for judgment against the DEFENDANTS as follows:

1. For general damages in an amount in excess of $250,000.00;
2. For special damages in an amount in excess of $250,000.00;
3. For past and future compensatory damages, and other expenses incurred by reason of DEFENDANTS' intentional misconduct, acts, omissions, carelessness, recklessness, negligence, gross negligence, deliberate indifference, and other culpable conduct, described herein, in an amount in excess of $250,000.00;
4. For punitive and exemplary damages as allowed by law;
5. For costs of the suit incurred herein;
6. PLAINTIFF'S medical expenses as a result of DEFENDANT'S actions and conduct.

Dated this 7th day of January, 2023.

/s/Allanna Warren
Pro Se Name Allanna Warren

CERTIFICATE OF SERVICE

I hereby certify that I sent the foregoing COMPLAINT JURY DEMANDED for electronic filing to the Eight Judicial District Court on the 7th day of January, 2023. I caused the foregoing COMPLAINT JURY DEMANDED to be served as follows:

[X ] BY U.S. MAIL: By placing a true and correct copy of the same to be deposited for mailing in the U.S. Mail in Las Vegas, Nevada, enclosed in a sealed envelope upon which First-Class postage was fully prepaid to the following address:268, 270, 217, 272, 274 Bluefield Lane, Henderson, NV 89074, 270 and 272 Fairbrook Drive, Henderson NV 89074

[ ] BY PERSONAL SERVICE: By hand delivery of the document(s) listed above to the person(s) at the following address:

[ ] BY ELECTRONIC FILING: By EFS service pursuant to Rule 5(b)(2)(E) of the NRCP and Rule 9 of the NEFCR.

[X ] BY ELECTRONIC MAIL: By e-mail, consented to in writing, pursuant to Rule 5(b)(2)(F) of the NRCP at the following e-mail address:

Allanna Warren
PLAINTIFF







